# EXHIBIT B, PART 1

Name  DUANE ROY WEIR

Address  C-02190..C.T.F.N. N.D.59L

P.O. BOX 705

Soledad.CA.93960-0705

CDC or ID Number  C-02190

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF MONTEREY

(Court)

| | |
|---|---|
| DUANE ROY WEIR | **PETITION FOR WRIT OF HABEAS CORPUS** |
| Petitioner | |
| vs. | No. _____ |
| BEN CURRY (Warden) | *(To be supplied by the Clerk of the Court)* |
| Respondent | |

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]
**PETITION FOR WRIT OF HABEAS CORPUS**
Penal Code, § 1473 at seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

(A-1)

This petition concerns:

- [ ] A conviction
- [ ] A sentence
- [ ] Jail or prison conditions
- [ ] Other (specify)

- [XX] Parole
- [ ] Credits
- [ ] Prison discipline

1. Your name: DUANE ROY WEIR

2. Where are you incarcerated? Correctional Training Facility.Soledad.CA.93960-0705

3. Why are you in custody? [XX] Criminal Conviction   [ ] Civil Commitment

   Answer subdivisions a. through i. to the best of your ability.

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Sentence under the Felony-Murder Rule as an aider and abettor to the charge of P.C.187; 211 P.C. and 487 P.C..All counts run currently.

   b. Penal or other code sections: P.C.245(a); 12022.7 and 1203.9. All not guilty verdicts.

   c. Name and location of sentencing or committing court: Superior Court. Dept.10. 351 N.Arrowhead Ave.San Bernardino.CA.92415

   d. Case number: CR-34989 (March 2.1978)

   e. Date convicted or committed: January 16.1979

   f. Date sentenced: February 23.1979

   g. Length of sentence: 7-yrs to life for 187 P.C.; 211 P.C. 3-yrs; 487 P.C. 2-yrs.All run currently.

   h. When do you expect to be released? No release date.

   i. Were you represented by counsel in the trial court? [XXX] Yes. [ ] No. If yes, state the attorney's name and address:

   Paul R.Steinman. First American Building. 323 W.Court St. San Bernardino.CA.92401

4. What was the LAST plea you entered? (check one)

   [XX] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other:

5. If you pleaded not guilty, what kind of trial did you have?

   [XX] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page two of six

(A-2)

**Ground 4:** State briefly the ground on which you base your claim for relief. For example, the trial court imposed an illegal enhancement. *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Claim-One at page-11, line 13-28; page-12, line 1-22. See also Claim-

Two, at page-21, line 3 through 28; page-22, line 1 through 14, and Claim-

Three at page-29, line 18-22; page-30, line 1 through 28 and page-31, line-

1-8). Court grant whatever relife deems appropriate.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

(1); Page-7 to 10 the "Introduction" of Board Hearings.

(2): Page-11 to 13. Table of Authorities.

(3): Page-14-15. Index to Exhibits.

(4). Claim-One. Page 1 through 12.

(5). Claim-Two. Page-13 through 22.

(6): Claim-Three. Page-23 through 31.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

Robert M. Rosenkrantz v. John Marshall (Warden)-Case No. Cv 05-3836-

GAF (AJW). United States District Court- Cental Distrcit of Calif-

ornia (June 26.2006) Order released.

(A-3)

*N.A.*

a.  Supporting facts:

*N.A.*

b.  Supporting cases, rules, or other authority:

*N.A.*

MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page four of six

(4-5)

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): _____ No. If yes, give the following information:

N.A.

b. Result _____ c. Date of decision: _____

d. Case number or citation of opinion, if known: _____

e. Issues raised: (1) _____

(2) _____

(3) _____

f. Were you represented by counsel on appeal? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

N.A. _____

9. Did you seek review in the California Supreme Court? ☐ Yes ☐ No. If yes, give the following information:

a. Result _____ b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised: (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

N.A.

_____

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

N.A.

_____

_____

_____

_____

_____

_____

_____

_____

b. Did you seek the highest level of administrative review available? ☐ Yes. ☐ No. **N.A.**
*Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page five of six

(A-5)

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  ☐ Yes. If yes, continue with number 13.  ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _N.A._

   (2) Nature of proceeding (for example, "habeas corpus petition"): _____

   (3) Issues raised: (a) _____

      (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   b. (1) Name of court: _N.A._

   (2) Nature of proceeding: _____

   (3) Issues raised: (a) _____

      (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
   _N.A._

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
   _N.A_

16. Are you presently represented by counsel?  ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:
   _____

17. Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☒ No. If yes, explain:
   _____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
   _I believe this to be proper Court for this Petition for Writ of Habeas Corpus._

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _Dec. 14th 2006_                    _[signature]_ 
                                          (SIGNATURE OF PETITIONER)

MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page six of six

(A-6)

## INTRODUCTION

In the instant Case No. Cr-34989 of March 2.1978. Petitioner was convicted in 1979 of 187 P.C. and 211 P.C. under the Felony-Murder Rule as an aider and abettor and was sentence to the term of seven (7) years to life in which the term Petitioner has now served is twenty-eight (28) years.

## INTIAL PAROLE BOARD HEARING

On February 23.1984. Petitioner appear before Board for his "Intial" Board hearing with the results of a one (1) year denial based on commitment offense and prior record.

## MINIMUM ELIGIBLE PAROLE DATE

ON MARCH 10.1985. PETITIONER'S MINIMUM ELIGIBLE PAROLE DATE.

## SUBSEQUENT PAROLE BOARD HEARINGS

On March 5.1986. Petitioner appear before Board with the results of a one (1) year denial based primary on commitment offense and prior record.

On March 12.1987. Petitioner appear before Board with the results of a one (1) year denial based primary on commitment offense and prior record.

On May 11.1988. Petitioner appear before Board with the results of a one (1) year denial based primary on commitment offense and prior record.

//

(Continue--A- 7 -)

## SUBSEQUENT PAROLE BOARD HEARINGS

On May 26.1989. Petitioner appear before Board with the results of a one (1) year denial based primary on commitment offense and prior record.

On June 29.1990. Petitioner appear before Board with the results of a one (1) year denial based on commitment offense and prior record.

On April 12.1991. Petitioner appear before Board with the results of a one (1) year denial based on commitment offense and prior record.

On June 2.1992. Petitioner appear before board with the results of a one (1) year denial based on commitment offense and prior record.

On July 20.1993. Petitioner appear before Board and during hearing "questions" were ask concerning Petitioner's conviction and Board requested an investigation which ended up with no final decision of the 1993 hearing.

On May 24.1994. Petitioner appear before Board with the results of a one (1) year denial based on commitment offense and prior record.

On October 16.1995. Petitioner appear before Board with the results of a two (2) year denial based primary on commitment offense and prior record.

//

//

//

(Continue--A-8--)

## SUBSEQUENT PAROLE BOARD HEARINGS

On September 24.1997. Petitioner appear before Board with the result of a one (1) year denial based primary on commitment offense and prior record.

On December 16.1998. Petitioner appear before Board with the results of a one (1) year denial based primary on commitment offense and prior record.

On February 5.2001. Petitioner appear before Board with the results of a one (1) year denial based primary on commitment offense and prior record.

## FOUND SUITABLE FOR PAROLE

On April 17.2002. Petitioner appear before Board and board found Petitioner "suitable" for parole and fixed term at 218-months. The term reduced by 88-months credits which total term now as 130-months which Petitioner has already served twenty-eight (28) years  some twenty-one (21) years over the **minimum** term of seven (7) years.

## GOVERNOR REVERSED BOARD'S DECION

on September 13.2002. Former Governor Gray Davis reversed Board's deicion granting parole.

On April 6.2004. Petitioner appear before board with the result of a one (1) year denial based primary on the commitment offense and prior record.

//

(Continue--4-9-)

## SUBSEQUENT BOARD HEARINGS

On March 13.2006. Petitioner appear before the Board with the result of a one (1) year denial based primary on the commitmemt offense and prior record.  **(Petitioner's 17 Subsequent Board Hearing).**

//

//

//

//

//

//

//

//

//

//

//

## TABLE OF AUTHORITIES

CASE:

Page;

In re Powell, 45 Cal. 3d 894.                                   1.

In re Johnson (1995) 35 Cal. App. 4th 160, 169.                1.

In re rosenkrantz, 80 Cal. App. 4th 409, 428.                  1.

Penal Code section §3041, subd, (B).                           5.

Cal. Code regs., tit. 15 §2402, subd, (c)(20.                  8.

In re Rosenkranrz, supra, 29 Cal. 4th at p.653.                8.

Penal Code section §3041 (B).                                  8.

Penal Code section (A).                                        8.

In re Ramirez, 94 Cal. App. 4th 570.                           8.

Penal code section §3041, subd, (A).                           9.

In re Dannenberg, 34 Cal. 4th at 1094, supra.                  9.

(Id., at 1088).                                                9.

(Id., at 1080).                                                9.

Biggs v. Turner, 34 F. 3d at 916, 917, supra.                  9.

Biggs v. Turner (9th cir. 2003) 334 F.3d 910, 916-917).       10.

In re Scott II, 133 Cal. App. 4th 573, 133 Cal. Rptr.3d at
920, supra.                                                    10.

Irons v. Warden of California State Prison-Solano (E.D. Cal.-
2005) 358 F. Supp. 2d 936, 947, fn.2.).                        10.

Irons.                                                         10.

Irons, 358 F.2d at 947.                                        10.

Footnote 2 of Irons, 358 F.2d, at 947.

McQuillon v. Duncan, 342 F.3d 1012, 1016 (9th Cir.2003).      11.

Dannenberg.                                                    11.

Biggs v. Turner, 334 F.3d, 910, supra.                        12.

//

(Continue--*A-11*-)

## TABLE OF AUTHORITIES

CASE:                                                                    Page;

In re Rosenkrantz, (2000) 80 Cal. App. 4th, 427-428.            12.

Penal Code section §3041, Article I, § 7 of the California
Constitution and the Fourteenth Amendment to the United-
States Constitution.                                            12.

Penal code section §5011 (A)(B).                                19.

Penal Code section §3041.                                       20.

Penal code section §3041.                                       20.

Penal Code section (B).                                         20.

Government Code §11342.1                                        20.

Government code §11342.2.                                      20.

Penal Code section §3041.                                       20.

Penal Code section §3041.                                       21.

Penal Code section(B).                                          21.

In re Rodrigues (1975) 14 Cal. 3d 639; 122 Cal. Rptr.552-,
651-652, 537 P.2d 384.                                          21.

McQuillon v. Duncan, 342 F.3d 1012, 1016 (9th Cir.2003).        22.

Penal Code section §3041.                                       23.

Fourteenth Amendment to United States Constitution.             23.

Turner v. Hickman, 342 F. Supp. 2d 887 (E.D. Cal. 2004).        23.
Six, Fourteenth Amendment of the United states Constitution.    23.

In re Mark Smith. 109 Cal. App. 4th 489, 505.                   26.

Cal. Code Regs., tit. 15 §2402, subd,(c)(6).                    26.

In re Mark Smith, 109 Cal. App. 4th 489, 505.                   27.

In re Mark Smith, 109 Cal. App. 4th 489, 505.                   28.

In re Ernest Smith (2003) 114 Cal. App. 4th, 343, 372.          28.

//

//

(Continue--A-12--)

## TABLE OF AUTHORITIES

**CASE:**                                                          **Page:**

Biggs v. Turner, 334 F.3d, at 917, supra.                          28.

Mickens-Thomas v. Vaugh, 355 F. 3d, at 304, supra.                 28.

In re Mark Smith, 109 Cal. App. 4th, 489, 505.(2003).              28.

Fifth and Fourteenth Amendment to the United states-
Constitution.                                                      29.

McQuillon v. Duncan, F.3d 1012  1016 (9th Cir.2003).               30.

In re Rodrigues (1975) 14 Cal. 3d 639, 122 Cal. Rptr. 551-
552; 537 P.2d 384.                                                 30.

Biggs v. Turner, 334 F.3d 910, supra.                              31.

Robert M.Rosenkrantz V. John Marshall (Warden)-Case No.-
Cv 05-3836-GAF (AJW). United States District Court-Cental-
District of California (June 26.2006) Order released.              A-3(b.

//

//

//

//

//

//

//

//

## INDEX TO EXHIBITS                                                    Page:

Exhibit'1'. Board Transcript of page 1 through 69.

Exhibit'2'. Sentence Transcript of page 1 through 13.

Exhibit'3'. Preliminary Transcript of page 104, line 19-26.

Exhibit'4'. Appellate Court opinion of page 1 through 6.

Exhibit'5'. California Attorney Genera;'s Resonse brief at page 10.

Exhibit'6'. Mr.Art Harrison (District Attorny) Response to Board's
            inquiry of three pages.

Exhibit'7'. Classification Program Review of April 17.2001.

Exhibit'8'. Attorney Spowart Memorandum of prior record of three pages.

Exhibit'9'. BPT--1000(a)(Rev. 12/98). Recommendations.

Exhibit'10'. Narcotics Anonymous chrono's.

Exhibit'11'. Therapy.

Exhibit'12'. We Care Program for juveniles.

Exhibit'13'. Library volunter worker.

Exhibit'14'. Certificate Nomination.

Exhibit'15'. Employability Program letter dated Aug.18.2005.

CDC-128-(B) Laudtory chrono for participation in program -
            (Employability Program) dated Aug.18.2005.

Exhibit'17'. Laudtory work chrono's from P.I.A.-Textiles.

Exhibit'18'. Laudtroy work chrono's from living units-Halls.

Exhibit'19'. Classification Annual/Post Board of March 16.2006.

Exhibit'20'. Psychologist Evaluation Report of January 13.2006, by
            Dr.M.Macomber,Ph.D. Psychologist page 1 through 5.

Exhibit'21'. Dr.Bruce M.Bakeman, Ph.D. One-on-One-individual therapy.
            Psychologist.

Exhibit'22'. Psychologist Evaluation Report of December 17.1999, of
            five (5) pages.

INDEX TO EXHIBITS

**EXHIBIT'23'.**    Presiding Commissioner Welch issue on alcoholism at page 68, line 21 through 24.

**Exhibit'24'.**    American Disability Act. BPT-1073-Form filed Dec.7.'04, for the 2005 Board hearing.

**Exhibit'25'.**    Multi-Purpose Form on AA program.

**Exhibit'26'.**    Attorney Spowarts letter dated March 13.2006, Board not giving parole date.

**Exhibit'27'.**    American Disability Act-BPT-1073-Form filed Feb.24.'03, for the 2004 Board hearing.

**Exhibit'28'.**    Board's Matrix for fixing terms.

**Exhibit'29'.**    Board fixed Petitioner's term at 218-months (18 years and two moths).

**Exhibit'30'**    AA chrono's.

//

//

//

//

//

//

//

(Continue-*A-15*)

1     IT WAS A VIOLATION OF PETITIONER'S RIGHT TO DUE
PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH
2     AMENDMENT TO THE UNITED STATES CONSTITUTION FOR
THE BOARD OF PAROLE HEARING TO FIND PETITIONER
3     UNSUITABLE FOR PAROLE AT HIS FIFTEENTH SUBSEQU-
ENT PAROLE HEARING BASED ON IMMUTABLE FACTORS
4     OF THE COMMITMENT OFFENSE AND PRIOR CRIMINAL
HISTORY, RENDERING THE DECISION ARBITRARY AND AN
5     ABUSE OF DISCRETION.

6 On March 13.2006, the Board of Parole hearing held Petition-

7 er's **seventeen** (17) Subsequent parole hearing to determine wheth-

8 er Petitioner is suitable for parole.

9    The Board concluded that Petitioner was not yet suitable for

10 parole and would pose an unreasonable risk of danger to society

11 or threat to public safety if released from prison. This conclu-

12 sion hinged on their finding that the commitment offense which

13 occurred on March 2.1978. The victim in this case was samuel Lo-

14 wery who was shot twice in the commission of robbery A/ and he

15 was **shot** by the **inmate**'s bother (Tony **or** Tyrony Weir), **and** the

16 offense was carried out in a crule manner and was trivial.(See-

17 Ex."1") Board Transcript at page-61,line 6 through 26, and page-

18 62,line 1 through 4).

19

20    Petitioner contends that there was no evidence presented by

21 Board, nor in the record suggesting Petitioner's actions were

22 carried out in cruel manner. The Board is required under due

23 process to form a factual basis for its findings and not simply

24 state conclusion. In re Powell, 45 Cal.3d 894; In re Johnson, (-

25 1995) 35 Cal. App. 4th, 160, 169;  In re Rosnkrantz, 80 Cal. App.

26 4th, 409, 928).

27

28   A/.   In Board Transcript at p.61,line 19..The charge is
     robbery. Not burglary (See Ex."1"

                 (Continue-- 1 --)

1  The Board states that its conclusions are drawn from the statement

2  of facts wherein Petitioner and his brother has been drinking quite

3  heavily and that they ended up robbing and shooting the victim in the

4  stomach and chest, where he later died (April 25.1978) from his wounds,

5  that Petitioner was found guilty under the Felony-Murder Rule, and his

6  brother was **acquitted** of the murder charge.(See Ex. " 1 " Board Transc-

7  ript at p.10,line 19 through 27; p.11,line 1 through 27; p.12,line 1-

8  through 3; p.61,line 15 through 23))

9

10  Petitioner contends not only are those statements surrounding the

11  circumstances of the offense unsupported by the facts of this case,

12  given the nature of the offense, those findings in itself could not

13  possibly be sufficient for a finding unsuitability since it would

14  necessary exclude Petitioner outright from ever having a possibility

15  of parole and this was not the sentence of the court, nor the statutory

16  mandate which governs it (See P.C.§ 190; and P.C. §3041)).

17

18  The Board's decision to find Petitioner unsuitable for parole was

19  based primary on circumstances it stated surrounds the offense itself.

20  In doing so rejected or ignored the evidence and Petitioner's own

21  asseration that he was not the actual shooter in the case and that his

22  conviction or culpability for murder stemmed from the fact that he was

23  an aider and abettor under the Felony-Murder Rule. (See Ex. " 1 " the

24  Board Transcript at p.11,line 25-27; p.12,line 1; and p.59,line 4 -

25  through 19)).

26

27  There is well document and reliable information that the Board  is

28  aware of which contradicts their findings and supports Petitioner's

·(Continue·-2 ·-·)

1   own asseration. At the time set for sentencing the trial court

2   concluded the evidence showed Petitioner was at least an <u>aider and</u>

3   <u>abettor.</u> (See Ex. " 2" Sentence Transcript at p.3,line 7 through 11,and

4   the trial court also went on **striking**   firearm use allegation on all

5   counts in the interest of justice. (See Ex. " 2" Sentence Transcript

6   at p.6,line 17 through 21)). (See also Board Transcript at p.55,line

7   25-27; p.56,line 1-2 -**Ex." 1 ").**

8

9   Petitioner contends when the facts were presented to the Board, the

10  Board conpletely ignored <u>individual culpability</u>, but based its decis-

11  ion largely on what was done not by Petitioner personally but **by what**

12  **Petitioner's brother (Tyrone or Tony Weir) <u>did  the actual shooting</u>**

13  <u>of the victim.</u> Despite further evidence to the contrary by the victim'

14  s <u>own testimony.</u> The victim identified Petitioner's brother (Tony or

15  Tyrone Weir) as the one who shot him. On cross-examination by Petiti-

16  ioner's lawyer the victim states the following:

17      Q. (By Mr.Call):  Mr.Lowery, do you know Tony Weir, your
            next door neighbor?
18      A. (No Audible Response)
19      Q. You're shaking your head yes, is that right?
        A. Yes.
20      Q. Did Tony Weir shoot you, Mr.Lowery?
21      A. I have reason to believe he did.
        Q. Did you see him?
22      A. Yes.
        Q. Did you see him with a gun?
23      A. Yes.
24  (See Ex. "3 " Preliminary Transcript at p.104,line 16 through 24 ).

25

26  It is further noted in the Appellate Courts opinion:

27      "Thus, the defendant's <u>liability</u> for murder was based on his
            involvement of the attempted robbery of the victim."
28  (See Ex. " 4" Appellate Courts Opinion at p-5).

(Continue-- 3 --)

The California Attorney General's Response Brief states:

> "Appellant's **liablity** for murder was based on his invovement
> in the attempted robbery of the victim, (i.e., Felony-Murder
> Rule)).

(See Ex. "5" California Attorney General's Response Brief at p.10).


The Board of Parole Hearing (BPH) has been aware for some time that
Petitioner was not the shooter in this case by its own inquiry regard-
ing the conviction of Petitioner . **Mr.Art Harrison**, San Bernardino
County District Attorney responding to the Board's inquiry made the
following statement:

> "One thing I would point out to the Board is that
> the opinion of the trial prosecutor is that the
> actual shooter in this matter was not Duane Weir,
> but his brother." (Ex. "6").

It should be noted the trial prosecutor was involved in both of the
two separate trials of Petitioner and brother (Tony or Tyrone Weir).


The Board was also advised that the trial prosecutor who now is a
Supesior Court Judge, Judge Ashworth has offer to assist in the resol-
ution of any further questions the Board or its investigators may have.
(See Ex. "6" Board of Prison Terms Inquiry at p.3.)).


With regard to the extent the Board relies on the circumstances sur-
rounding the commitment offense to justify its own finding that
Petitioner's actions were carried out in an cruel manner. .

It can only be seen as remarkable that not only has the Board failed
to present any factual evidence in support of its own findings, it
gives no weight, not even some of the overwhelming well document
evidence of Petitioner's true culpability in this matter.

(Continue-- 4 --)

1   Petitioner contends that there was no evidence presented by the

2   board, nor in the record suggesting Petitioner continues to pose a

3   significant risk of danger to public safety based on Petitioner's past

4   criminal history B/.

5       In California parole must be granted unless certain criteria are

6   met. (P.C.§3041, Sub,(B) [The Board shall set a release date unless it

7   determines that the gravity of the current offense or offenses or the

8   timing and gravity of current or past convited offense or offenses are

9   such that consideration of the public safety requires a more lengthy

10  period of incarceration]. The mandate of P.C.§3041 (B) is clear and

11  the Board is required to base their decision on the gravity of convic-

12  ted offenses.

13      In regards to Petitioner's past criminal history the following

14  statements at Board hearing are as follows:

15          "Presiding Commissioner St.Julien:  Do you have any
            additional documents?
16

17          "Attorney Spowart:  Yes I do, I have a couple of
            memorandum here. Memorandum of support and a memorandum
18          based - it has to do with prior criminal record.

19          "Presiding Commissioner St.Julien: I notice - I guess
            there was so going around and around about this in
20          prior hearings, is that correct?

21          "Attorney Spowart: Yes, and I'm trying to clear it up.

            "Presiding Commissioner St.Julien: Okay. So this is dated
22          today. This memo that you handed me-

23          "Attorney Spowart: Yes, for the hearing today.

24
            "Presiding Commissioner St.Julien: Regarding the criminal
25          history. So let me just take a look at this.

26                          (Continue)

27  B/.    (See Ex20    at p.4- section (V)-A,B and C.).

28

                    (Continue-- 5 --)

1    "Attorney Spowart: I looked at the last hearing
     and they use a lot of prior record --

2

3    "Presiding Commissioner St.Julien: Yes, that's part
     of our --

4    "Attorney Spowart: Cases that (indiscernible) not
     supposed to.  There's no disposition, it was dismissed.

5    "Presiding Commissioner St.Julien:  Thank you. Do you
     have any disagreement - so the disgreement would be

6    perhaps arrests with no disposition that are used as
     opposed to if you spent time - because you had some

7    county jail, probation and stuff like that. So those
     are, at least to me those are clear things that happened.

8

9    "Inmate Weir: true.

10   "Attorney Spowart: It has to do with the showing of prior
     **violence and he didn't have any violence.**

11   "Presiding Commissioner St.Julien:  So just by looking
     at this list where we have burglary, parole violation,

12   which was mischief. It's basically property crimes, is
     that what you were doing?

13

14   "Inmate Weir: Yes, ma'am.

15   "Presiding Commissioner St.Julien: So then also in terms
     of your previous record and at this point in time generally

16   I'd look at what you were- what you actually may have served
     time for  and I have a list and you can tell me if I'm

17   right or wrong. I guess it was in Juvenile Hall - I guess
     that's different than a ranch or anything like that. Did

18   you have time in a juvenile- I think it was a Federal Juven-
     ile--

19
     "Inmate Weir: Yes, it's like a juvenile place. Like a
20   military school.

     "Presiding Commissioner St.Julien: So maybe the equivalent
21   today of a rach or something like that.

22   "Inmate Weir: Something like that, yes.

     "Presiding Commissioner St.Julien: And then juvenile proba-
23   tion, state prison, adult probation, parole and county
     jail. Is that --
24

25   "Inmate Weir: The probation I had was for grand theft. I
     violated the probation for driving tickets, which I wasn't

26   supposed- that's when I was in state prison, which violated
     the probation.

27                         (Continue)

28   _____
     C7. (see Ex."8" prior record at p.3). No parole violation or buglary.

                         (Continue--6 --)

1    "Presiding Commissioner St.Julien:  So we can see
      that list. And I think the Governor- did the
2    Governor's letter point out like thirty-four arr-
      ests or--

3    "Inmate Weir: That's what we're --

4
      "Presiding Commissioner St.Julien: So that's why
5    you want to --

6    "Attorney Spowart: **That's why I submitted that.**

7    "Presiding Commissioner St.Julien: why you wanted
      to bring in (indiscernible --

8    "Inmate Weir: (Indiscernible) -

9    "Presiding Commissioner St.Julien: An accuarte
10   accounting of charges that were actually followed
      through.

11   "Inmate Weir: The non-dispositions. **There was no**
      **dispositions.**

12
      "Attorney Spowart: **Plus a lack of violence in any**
13   **of them.**

14   (See Ex. " 1 " Board Transcript at p.3,line 16-27; p.5,line 7-21;
      p,line 1-18; p,13,line 4-27; p.14,line 1-19; (See also Ex."7"
15   the Classification-Program Review dated April 17.2001, for the
      prior criminal history).

16

17       As the Court notes on page-5-line 15 through 24. Here the

18   attorney Spowart submitted an **accuarte** prior record revealing

19   Petitioner's criminal history (See Ex."8") Attorney Spowart's

20   Memorandum dated March 13.2006.  As the Court notes there are

21   18-charges-page,1 and 2.Some of the charges are the same which

22   there was never **(Disposition)** on any of these charges. And the

23   Court notes on **page-7-line 1-3. Here the Governor** went outside

24   the record and used these charges against Petitioner in taking

25   away Petitioner's parole date. (See Ex. " 8 " ) Attorney Spowart's

26   Memorandum at page-3- for accuarte prior record which there is

27   no violence as the attorney stated on page-7,line 13. It must

28   noted a "previous record of viloence" (meaning an attempt to

                          (Continue--7 --)

1    to inflict serious injury or other "assaultive behavior") is
2    a circumstance tending to establish unsuitability for parole -
3    (Cal. Code Regs., tit. 15§2402, subd. (c)(2); In re Rosenkrantz,
4    supra, 29 Cal. 4th at p.653). There is nothing in the governing
5    statutes or regulations to support the Board's reliance on Petit-
6    ioner's non-violent criminal record. Here, the evidence shows
7    that Petitioner has never been convicted of a violent offense -
8    (either as a juvenile or as an adult). (See Ex."8" prior record.
9       The Court notes Ex."9" Board Transcript at p.6.line 16-17,
10   where Commissioner St.Julien states all **property crimes**. Note -
11   **Ex."8"** at p-3- there was no burglary or parole violation as its
12   stated on line 15 of Ex."9"). In order for the Board to deny
13   parole based on the gravity of Petitioner's past convicted offe-
14   nes. P.C.§3041(B). the Legislature has already considered that
15   fact when it allowed for adjustment of the term based on past
16   offenses P.C.§3041(A). The Board is required to demonstrate the
17   gravity of those offenses by makinf **specific findings** relating
18   to there **severity**. The finding must be **particular egregious** to
19   justify the denial of a parole date and weight not against ordin-
20   ary norms, but against other instances of the same crime or crim-
21   es. The Board must also consider the legthy of time Petitioner
22   has served in relation to the term prescibed for the offense
23   under consideration. In re Ramirez, 94 Cal. App. 4th 549, 570.
24   There is no indication that the Board gave consideration to the
25   gravity of Petitioner's past offenses or the lengthy of time he
26   has served (**28 years**). Petitioner's past offenses did not in-
27   clude any acts of violence suggesting he pose a danger to soci-
28   ety.

(Continue-- 8--)

1   The Court will note on Petitioner's past prior record there

2   was a charge of "Dyer Act" which is taking an stolen vehicle

3   across the State line. That was some (49 years) when Petitioner

4   was a juvenile, and note some (46 years) ago as a juvenile there

5   was a charge of GTA, otherwords grand theft auto. Petitioner's

6   **first** adult charge was for grand theft auto(See Ex. " 8 ")at p-3-

7   prior record (GTA-7-15-66).

8       Petitioner contends for the Board to find Petitioner unsuit-

9   able for parole. It must be noted that the California Supreme

10  Court **"cautioned"**, sole reliance on the commitment offense might,

11  in particular cases, violate section P.C.§3041, subdivision (a)'s

12  provision that a parole date 'shall be set' under 'unform term'

13  principles, and might also contravene the inmates's constitution-

14  ally protected expection of parole" **In re Dannenberg,** 34 Cal.4th,

15  at 1094, **supra).** Petitioner can only be denied parole if the

16  **"violence or viciousness"** of the commitment offense is "more -

17  than minimally necessary to convit him of the offense" (Id., at

18  1095).

19      Taking the offense into consideration, the "abiding concern"

20  is, is the prisoner "still dangerous" (Id., at 1088). Parole may

21  be denied only if the prisoner is **"presently"** too dangerous to

22  grant a fixed parole release date." (Id., at 1080). there is

23  zero evidence in the record that Petitioner is **"presently too**

24  **dangerous** to grant a fixed parole release date."

25

26      The controlling case is **Biggs** v. **Terhune,** 34 F. 3d, at 916-

27  917, **supra** [ when a prisoner demonstrates "exemplary behavior and

28  //

(Continue-- 9 --)

1  evidence of rehabilitation, ... a continuned reliance in the

2  future on an unchanged factor, the circumstance of the offense

3  and conduct prior to imprisonment ... could result in a due

4  proces violation"])., that due process violation has arrived (-

5  See Biggs v. Terhune, ( 9 Cir. 2003) 334 F. 3d  910, 916-917).

6      Petitioner contends after fifteen (15) Subsequent Board

7  hearings resulting in denials on the commitment offense and con-

8  duct prior to imprisonment in light of Petitioner's "exemplary

9  behavior and evidence of rehabilitation."

10     Petitioner contends a recently California Appellate Court

11  opined in In re Scott II, 133 Cal. App. 4th 573,  133 Cal. Rptr.

12  3d, at 920, supra:

13          "The commitment offense can negate suitability only
            if circumstances of the crime reliably establish by
14          evidence in the record rationally indicate that the
            offender will present an unreasonable public safety
15          risk if released from prison, Yet, the predictive
            value of the commitment offense may be very question-
16          able after a long period of time (Irons v. Warden of
            California State Prison-Solano. (E.D. Cal. 2005) 358
17          F. Supp.2d 936, 947, fn.2.) Thus, denial of release
            solely on the basis of the gravity of the commitment
18          offense warrants especially close scrutiny."

19  As the District Court opined in Irons, the same can just as

20  easily be said in case at bench, as opined in Irons, 358 F.2d,

21  at 947:

22          "[C]ontinueous reliance on unchanged circumstances
            transforms an offense for which California law
23          provides eligibility for parole into a de facto life
            imprisonment without the possibility of parole. The
24          Courts asks, rhetorically what is it about the circum-
            stances of Petitioner's crime or motivation which are
25          going to change? The answer is nothing. The circumst-
            ances of the crime [] will always be what they were,
26          and Petitioner's motive for committing[it] will always
            be trivial. Petitioner's has no hope for ever obtaining
27          parole except perhaps that a panel in the future will
            arbitrary hold that the circumstances were not that

28

(Continue-- 10 -)

serious or the motive was more than trivial. Given
that **no one seriously** contends lack of seriousness
or lack of triviality at the present time, the pot-
ential for parole in this case is remote to the point
of non-existence. Petitioner's liberty interest should
not be determine by such arbitrary, remote possibility."

Footnote 2 of <u>Irons</u>, 358 F. Supp.2d, at 947, is squarely on

point and worth noting in closing:

"To a point, it is true, the circumstances of the crime
and motivation for it may indicate a prisoner's in-
stability, cruely, impulsiveness, violent tendencies
and the life. However, after [twenty=eight] years in
the caldron of prison life, not exactly an ideal thera-
peutic environment to say the least, and after repeated
demonstartions that despite the recognized hardships of
prison, this petitioner does not posses those attributes,
the predictive ability of the circumstances of the crime
is near zero."

Petitioner contends the evidence in the record does not sup-

port the decision by the Board to deny Petitioner parole, viola-

ting his right to Due Process guaranteed by the Fifth and Four-

teenth Amendment to the United States Constitution. The writ

sholud be granted and the Board ordered to fix Petitioner's term

accordingly to his **individual culpability** and apply any excess

time earned by good conduct credits to the time he would do on

parole (<u>McQuillon</u> v. <u>Duncan</u>, 342 F.3d 1012, 1016 (9th Cir.2003).


                            CONCLUSION

The Board and Governor of California, through counsel, the

Attorney General's Office, are doing everything they can to up-

hold what is virtually a "no parole" policy for indeterminately

sentenced prisoners in Californi  and their motion to dismiss

on <u>Dannenberg</u>, a case that does not apply. Petitioner has clear-

ly demonstrated that he does have a liberty interest in parole

                        (Continue--11 -)

1  protected by the Due Process Cluase of the Fourteenth Amend-

2  ment and that right to Due Proces pursuant to <u>Biggs</u> v. <u>Terhune</u>

3  334 F.3d 910, surpa, have been violated.

4

5    Petitioner contends in order for the Board to overcome this

6  statutorily created presumption the Board is required by law,

7  P.C.§3041(B) and indeed Due Process, to consider the factual

8  circumstances surrounding Petitioner's offense, which are re-

9  liably document when making its decision, and further to act-

10 ually read the documents and make a reasoned decision based on

11 all the appropriate fators, <u>In re Rosenkrantz</u>, (2000) 80 Cal.

12 App. 4th 409, 427-428. **There** is no indication that the Board has

13 done so here.

14   Therefore, Petitioner contends the Board's decision denying

15 parole was based on an arbitrary and irrational standard of

16 review, in violation of P.C.§3041, Article I, § 7 of the Calif-

17 ornia Constitution and the Fourteenth Amendment to the United

18 Staes Constitution.

19

20   Wherefore, for the foregoing reasons it is respectfully re-

21 quested that the writ be granted, and any other relief this

22 Court deems appropiate.

23

24 Date: _Aug, 14th_ 2006.                    Respectfully

25

26                                           _Duane R. Weir_
                                            DUANE  Roy Weir-C-01290
27

28

(Continue-- **12** --)

CLAIM TWO

PETITIONER WAS ILLEGALLY AND UNCONSTITUTIONALLY
DENIED PAROLE WHEN THE BOARD OF PAROLE HEARING
FOUND PETITIONER NEEDS SELF-HELP AND THERAPY TO
EXPLORE HIS FULL CULPABILITY IN THE CRIME. VIOL-
ATING P.C.§3041, P.C.§5011 AND THE 14TH, AMEND-
MENT TO THE UNITED STATES CONSTITUTION.

In the Board's decision denying parole, the Board made the

following findings:

"Presiding Commissioner St.Julien:  We make the
following findings:  That the inmate's lack of
meaningful self-help programming does not demon-
strate to the panel that you'll have the necess-
ary tools to maintain your gains outside a con-
trolled setting." (See Ex."1" Board Transcript
at p.65,line 9 through 13).

It is further noted the Board of March 13.2006, relied

exclusively upon previous Board of April 6.2004, recommendations

and was the reason the 2004 Board hearing denied parole as to

the following:

"the extent to which the prisoner has explored the
commitment offense and come to terms with the un-
derlying causes." (See Ex."9" BPT-1000(a)(Rev.-
12/98).

Petitioner contends there is overwhelming well document

evidence the Board has completely failed to consider or even

mention the programs of self-help and therapy programs Petition-

er has participated in as follows:

(1). Fifteen (15) years of Alcoholics Anonymous.(See Ex."1"
     Board Transcript at p.35,line19)(See Ex."30" AA chrono's).

(2). Alcoholics Anonymous Big Book/ Twelve Step Study Group-
     (See Ex."1" Board Transcript at p.36,line 26-27 and p.-
     37,line 1-2).

(3). Five (5) years of Narcotics Anonymous. (See Ex."10" no
     history of any kind of drugs.

//

(Continue--13 -)

(4). One-on-One with Dr.Bruce M.Bakeman, Ph.D. Clinical Psychologist. "Topcs:  The commitment offense explored, as well as factors which led upto it. (See Ex."11").

(5). Life Skills Group with Dr.Bruce M.Bakeman, Ph.D. Clinical Psychologist. "Topics:

A. Substance Abused.  B.Overcoming Anger and Aggression.
C. Stress Management. D.Forming Life Goals.
E. Building Self-Esteem.
F. Improving Problem Solving Skills.
G. Re-Entry-Making a successful return to society.(See-Ex."11").

(6). Reality and Decision Making Group. "Topics:
A. Attitude.
B. Values and Feelings Claraification.
C. Goals Orientation.
D. Problem Solving Techniques.
E. Impulisive Behavior and various consepte of Williams Glasser, Ph.D. and Eric Bernie,M.D. (See Ex. "11").

(7). Beginning Stress Management & Relaxtion Training. (See-Ex."11").

(8). Communication Skills Training.(See Ex. "11").

(9). Self-Esteem and Assertiveness Training.(See Ex."11").

(10). Yoke-Followship Groups. (See Ex."11").

(11). We Care Program for juveniles. (See Ex."12").

(12). Education Program.  Completed GED. (See Ex. "1".Board Transcript at p.4-5).

(13). Vocational Auot mechanics completed.(See Ex."1"). Board Transcript at p.35,line 5-8).

(14). North facilty Library volunter worker.(See Ex."13").

(15). Sixteen (16) years in job assignmemt.,P.I.A. Textiles with postive work reports. (See Ex."1" Board Transcript at p.35,line 1-20.

(16). Inmate Employability Program. Certificate nomination Form. (See Ex."14".

(17). Certicificate of Proficiency Machine Operator. (See-Ex."1"").board Transcript at p.38,line 11-14).

(Continue-- 14--)

(18). Inmate Employability Program. (See Ex."15" dated Aug.18.
2005. Former P.I.A. Worker Verification Card to be used
at the **Employment Office** ■ and (See Ex."16").CDC-128-B-
Laudatory Chrono revealing one has to participate in
this program in order to get full benefits of the pro-
gram. (See Ex." 1").Board Transcript at p.66,line 19-20)

Petitioner contends Commissioner Mejia is mis-leading the

reader to believe Petitioner has done nothing but review the

three (3) hour video. the Exhibits explain the true facts about

the video.


### LAUDATORY CHRONO'S

(19). **CDC-128-B-** Laudatory Chrono-Work. Oct.12.2005

(20). **CDC-128-B-** Laudatory Chrono-Work. June 12.2002.

(21). **CDC-128-B-** Laudatory Chrono-Work. Sept.20.1997.

(22). **CDC-128-B-** Laudatory Chrono-Work. Oct.15.1997.

(23). **CDC-128-B-** Laudatory Chrono-Work. February 15.1995.

(24). **CDC-128-B-** Laudatory Chrono-Work. April 14.1994.

(25). **CDC-128-B-** Laudatory Chrono-Work. January 23.1991.

(26). **CDC-128-B-** Laudatory Chrono-Work. May 5.1990.

    (See Ex."17").


### HALL PORTER

(27). CDC-128-B- Laudatory Chrono-Work. May 4.1989.

(28). CDC-128-B- Laudatory Chrono-Work. May 5.1989.

(29). CDC-128-B- Laudatory Chrono-Work. November 9.1989.
    (See Ex."18"").


Petitioner contends the Board's reference to Petitioner not

having participated in self-help and therapy programs refer to

(Continue--15 --)

1  subdivision (d)(9) of section §2402, which lists as a

2  factor demonstrating suitability for parole, the fact Petitioner

3  has participated in institutional activities that indicate an

4  enhance ability to function within the law upon released. the

5  arbitrariness of this concern is demonstrated by the Board's

6  recommendation that Petitioner participate in the IMPACT and

7  also in Anger-Manegement. (See Ex. "11" Board Transcript at p.66,

8  line 18, and p.67,line 9-10).

9

10    Petitioner contends the board has placed Petitioner in an

11  impossible situation knowingly Petitioner will never achieve or

12  participate in the IMPACT or the Anger-Management programs be-

13  neither of the two programs exist.(See Ex. "19" the Classifica-

14  tion Annual/Post Board of March 16.2006, noting the IMPACT and

15  Anger-Management programs has been discontinued.

16

17    Petitioner contends there is no suggestion or evidence in

18  the record or in the report of January 13.2006, by Psychologist,

19  Macomber Ph.D.stating Petitioner had a problem controlling his

20  temper. Dr.Macomber concluded Petitioner had no mental disorder,

21  no personality disorder or no physical disorder that would

22  necessatate treatment. (See Ex. "20" BPH- Psychologist Evaluation

23  Report of January 13.2006,at p.3,4-5 where Dr.Macomber states

24  the following:

25        "By Dr.Macomber: there are no mental or
26        emotional problems in this case that
          would interfere with regular parole
          planning. the prognosis for successful
27        adjustment in the future in the commun-
          ity is excellent."(See Ex. "20") at p.4-
28  //    5.

                    (Continue--16 --)

1    On the contrary, all the evidence presented to the board

2 and in the record, shows that not only doesn't need therapy, but

3 also that he is neither unpredictable nor a threat to others.

4

5    In a report prepared by Dr.Bruce M.Bakeman, Ph.D., Staff

6 Psychologist states:

> "this inmate has completed a course of
> individual therapy. During the course
> of this therapy, his understanding of
> his commitment offense was explored,
> as well as the factors which lead up
> to it. As a result of this therapy and
> his increasing self-understanding, his
> violence and recidivism potential should
> be less than for the average inmate." (See
> Ex. "21" "Psychologist Chrono.).

13    In a report prepared for Board of Prison Terms by Staff

14 Psychohologist., M.Carswell, Ph.D. states as follows:

> "By Dr.Carswell: Under Clinical Assessment"
> Mr.Weir showed- Good insight into his commit-
> ment offense." (See Ex. "22").at p.three (3).

18    Dr.Carswell further states under "Clinical Observations"

19 Comments and Recommendations as follows:

> "This inmate has no mental health disorder
> which would necessitate threatment either
> during his incarceration or after parole.(
> See Ex. "22" at p.4).

23    Dr.Carswell further states, release to community as

24 follows:

> "If released to the community, his violence
> potential is estimated to be no higher than
> the average citizen in the community." (See
> Ex. "22" at p.four-4-).

28 //

(Continue-- 17--)

1  In a report of 2006 prepared for Board of Parole Hearing by

2  Staff Psychologist, Dr.M.Macomber, Ph.D. states as follows:

3                    CLINICAL EVALUATION AND MENTAL STATUS
        "Dr.Macomer states:  Regarding the presence of anti-
4    social personality disorder, Mr.Weir does have strong
     feelings of e,pathy towards others, concerns towards
5    others, and there is no evidence of anti-social or
     criminal thinking or values in his life at this point.
6    This man has changed considerable over his years incar-
     ceration. There is no evidence of a personality disorder
7    at this time." (See Ex."20" at page-3-).

8

9    Dr.Macomber further evaluation under the following:

10                  CURRENT DIAGNOSTIC IMPRESSION

11          AXIS I:  NO MENTAL DISORDER.
            AXIS II: NO PERSONALITY DISORDER.
12          AXIS III.NO PHYSICAL DISORDER.
            AXIS IV: LIFE TERM INCARCERATION.
13          AXIS V:  GAF  90

14

15   Dr.Macomber evaluation of Petitioner's dangerousness in

16   the community as follows:

17                  ASSESSMENT OF DANGEROUSNESS

18   Dr.Macomber states:  In considering a potential for
     dangerous behavior when released to the community on
19   parole, the Level of Services inventory-Revised was
     administered. This is an actuarial measure that ass-
20   esses criminal history which in his case is serious,
     substance abused history which is in his case as
21   serious and his progress in vocational goals, family-
     life, and other factors. His score places him at the
22   5.1 cumulative frequencies in comparison to other pri-
     son inmates.  This means if 100 men were released on
23   parole, he would do better than 94 of them. Based upon
     his current attitude and maturity, his potential for
24   violence in the community is no greater than the aver-
     age citizen and in fact be lower than the average cit-
25   izen based upon his growth and maturity. The prognosis
     for successful adjustment in the future in the community
26   is excellent." (See Ex."20" at page-4-5).

27 //

28 //

                        (Continue--18--)

1  Petitioner contends the evidence shows that Petitioner

2  has already received therapy regarding the commitment offense

3  and also self-help. Petitioner doesn't need therapy, and most

4  importantly can not get therapy no longer which the Board was

5  already aware of before making its decision. (See Ex."7" the

6  Classification Program Review dated April 17.2001).

7

8      The evidence and reports further shows that Petitioner is

9  neither unpredictable, nor a threat to others and has never dis-

10  played assaultive behavior in his past or present which would

11  indicate otherwise.(See Ex."7" Classification Program Review

12  dated April 17.2001, noting no violent crimes or violence).

13

14      The Board is further prohibited by law from requiring an

15  admission of guilt to the crime in its parole determination, not

16  to mention requiring **therapy** in order to explore it. California

17  Penal Code Section §5011(A), (B) states:

18          "Admission of guilt: Prohibited against
            requirment for **treatment, custody or**
19          **setting dates;**

20          **(A)** The Department of Corrections shall
            not require, as condition for any form
21          of treatment or custody that the Depart-
            ment offers, an admission of guilt to
22          any crime for which an inmate was commi-
            tted to the custody of the Department.
23
            **(B) The** Board of Prison Terms shall not
24          require, when setting parole dates, an
            admission of guilt to any crime an in-
25          mate was committed."

26

27      Petitioner contends to the extent the Board relied on

28  therapy for Petitioner to explore his full culpability in its

                        (Continue-- 19 --)

findings to deny parole, it not only violated P.C.§5011,
but also the statutory mandate govern their decision making
process under Cal. P.C.§3041. This statute outlines for the
Board under what set of circumstances it can rely on when making
a decision not to set parole dates, which states under Penal
Code §3041 (B):

> "The Panel or Board shall set a release date
> unless it determines that the gravity of the
> current convicted offense of offenes, or the
> timing and gravity of current or past offense
> or offenes, is such that consideration of the
> public safety requires a more lengthy period
> of incercareation for this individual, and
> that a parole date, therefore, cannot be fixed
> at this meeting."

The statute is clear that when the Board makes its determina
tion it is required to do so based solely on the gravity and
timing of current or past convicted offense leaving silent any-
post-conviction criteria or requirement to consider, such as in
this case the need for therapy. The Board cannot adopt rules, re-
gulations or standards to make its parole determination which
are beyond the authority confered upon it by P.C.§3041,and they
must accord with standards prescribed by other provisions of law
P.C.§5011. (See Gov. Code §11342.1). The Board gives itself much
broader discretion than does P.C.§3041 (B). However, when an
Administrative Rule, Regulation or Standard conflicts with a
statute, the statute controls.  (Government Code§113442.2).There-
fore, the Board must obey Penal Code §3041 without regard to any
post-conviction requirement or provision the Board may have
adopted, or conferred upon itself in its decision making process.
//

(Continue--20-)

1  in the crime and would be a good candidate for parole.

2

3                          RELIEF SOUGHT

4      Since Petitioner's suitability for parole is presumed as a
5  matter of law (P.C.§3041) the Board conducted hearing to deter-
6  mine only if there is nonetheless a preponderance of evidence
7  adduced at the hearing demonstrating a current dangerousness to
8  society sufficient to overcome the presumption, and that a parole
9  date therefore cannot be set at that time. (P.C.§3041(B). But
10  absent the minimal process due at a hearing, a test for unsuit-
11  ability is not even available, and the presumption prevails.
12      What has happened here is that the Board has failed to demon-
13  strate by any evidence that Petitioner poses a current danger to
14  society thereby denying him his statutory right to parole.

15

16      The appropriate relief is order Petitioner's immediate
17  release pursuant to (In re Rodrigues (1975) 14 Cal. 3d 639; 122
18  Cal. Rptr, 552, 651-652, 537 P.2d 384). Petitioner's term
19  should have been fixed years ago, as Petitioner is under the
20  "OLD' Rehabilitation Law of (1978) which Petitioner term is
21  seven(7) years to life (See Ex."1" Board Transcript at page-56,
22  line 2 through 5, and page-59,line 8-9, and note page 68,line 13
23  through 19 where attorney Spowart states as follows:

24          "By Attorney Spowart:  Commissioner, before you
25          go off I'd like to make a statement, just a short
            one. My client's been down twenty-eight years. He
26          was not the shooter and after the hearing today, I
            don't feel he got a fair hearing. The punishment
27          is rapidly escalating to where it's cruel and un-
            usual, for the record.)(See Ex."1" at p.68,line 13
28  //      19.).

                          (Continue-- 21 -)

1     Petitioner contends the evidence in the record does not
2 support the decision by the Board to deny Petitioner parole, vio-
3 lating his right to Due Process guaranteed by the Fifth and
4 Fourteenth amendment to the United states Constitution.
5

6     The writ should be granted and the Board ordered to fix
7 Petitioner's term and apply any excess time earned by good con-
8 duct credits to the time he would do on parole (<u>McQuillon</u> v.
9 <u>Duncan</u>, 342 F. 3d 1012, 1016 (9th Cir. 2003).
10

11     For the foregoing reasons, it is respectfully requested that
12 the writ be granted and Petitioner be appointed counsel to
13 protect his rights. And any other relieft this Court deems
14 appropriate.
15

16

17 Date. *Aug 14th, 2006*    .

                                      Respectfully

18

19                                     DUANE ROY WEIR-C-02190

20

21

22

23

24

25

26

27

28

                           (Continue--22--)

CLAIM THREE

PETITIONER WAS ILLEGALLY AND UNCONSTITUTIONALLY
DENIED PAROLE WHEN THE BOARD OF PAROLE HEARING
USED PETITIONER'S PAST IMMUTABLE HISTORY OF
ALCOHOL ABUSED WHEN THERE IS NO EVIDENCE HE IS
USING OR PRESENTLY ADDICTED TO ALCOHOL.VIOLAT-
ING P.C.§3041,AND THE FOURTEENTH AMENDMENT TO
THE UNITED STATES CONSTITUTION,AND TURNER V.
HICKMAN,342 F. SUPP. 2D 887 (E.D. CAL. 2004).

On March 13.2006, the Board of Parole Hearing held Petitioner's

fifteenth (15) Subsequent Board hearing to determine whether Petition-

er is suitable for parole.  At this Board hearing the **main focus** was

on the **previous Board's recommendation** of 2004 as follows:

> "Presiding Commissioner Welch: We're going to ask
> that a new psychological report especially address
> the issue of alcoholism and prisoner's need for
> further self-help in those areas." (See Ex. "23"
> Board Transcript at page-68,line 21 through 24 ) and
> (See Ex. " 9" the BPT-1000(a)(Rev. 12/98)the recomm-
> endations).

In the Board hearing of March 13.2006, Presiding Commissioner

St.Julien states as follows:

> "Presiding Commissioner St.Julien:  One of the things
> the psychologist in last report was asked to explore
> was your, you know, the history of drinking and where
> you are at this point in time." (See Ex. " 1 " Board -
> Transcript at page-20,line 22 through 26) D 7.

Petitioner contends he was denied effective assistance of counsel,

by attorney David J.Spowart failure to ensure all of Petitioner's

procedural due process rights were protect under the Six, Fourteenth

amendment of the United States Constitution and Federal.

Petitioner contends attorney David J.Spowart failed to protect

Petitioner's rights under the American Disabilities Act (ADA) --

D . Petitioner contends that Commissioner St.Julien is referring to
Board hearing of 2004 in which Commissioner Welch reveals the follow-
ing above lines 11 through 13).

(Continue--23 -)

1    and to ensure the Board would comply with (Turner v. Hickman, 342

2    F. Supp. 2d 887 (E.D. Cal. 2004). The Board knowingly and intentionally

3    discriminated against Petitioner as follows:

4

5    In the instant case, prior to the Board hearing of March 13.2006,

6    Petitioner filed with the Board the **BPT-1073-Form** on December 7.2004,

7    under the **American Disabilities Act (ADA)** and Petitioner had made the

8    following statement"

9       "By Petitioner:  Alcohol not to be used in any
        hearing or decision." (See Ex. "24 " the BPT-1073-
10      Form of American Disabilities Act).

11   Petitioner contends the Board discriminated against Petitioner in

12   that Commissioner Mejia states:

13      "Deputy Commissioner Mejia:  It looks like you have some
        self-help - some - at least fifteen (15) years of AA.
14

15      "Deputy Commissioner Mejia:  What happened? You stopped
        in"99.

16      Deputy Commissioner Mejia: So  you're telling me that they
        don't have an actual meeting,
17

18      "Inmate Weir: No, sometimes they don't. I'm not saying all
        the time, the majority- because you know this lock-down has
19      a lot of problems going on right now and it's hard to keep
        any program  "E ".

20
        "Deputy Commissioner Mejia:  It's been six years, you
21      haven't done any AA, NA.

22      "Deputy Commissioner Mejia:  How do you plan not to drink.

23      "Deputy Commissioner Mejia: I'm concerned about the AA,NA.

24      "Deputy Commissioner Mejia:  You haven't drank. I'm not
        saying that I will even think of denying it based on just
25      that one, but it's a concern for me during this post-con-
        viction here." (See Ex. "1 " Board Transcript at p35,line-
26      17-19);p.35.line 21-22);p.36.line 15-17);p.36.line 18-22);
        p.37.line 12-13);p.37.line20-21);p.38.line 15);p.41.line-
27      10 and lines 14 through 18)."

28   E ".(See Ex. "25 " Multi-Purpose Form- Revealing no AA program. "

                        (Continue--24--)

1    Petitioner contends there is further document evidence the Board

2   knowingly and intentionally denied Petitioner parole date based upon

3   Petitioner not having participate in Alcoholics Anonymous or Narcotics

4   Anonymous program in that the Board Panel reveal to Petitioner's Board

5   attorney-David J.Spowart the following:

6               "By Attorney Spowart:  What happened after your
                hearing on **Tuesday, March 13.2006**. As I was
7               starting to leave the building both commissioners
                stopped me and tried to explain why they had not
8               given you a date. **They said they really wanted to
                give a date** but believe without any current AA it
9               would be rejected upon review in Sacramento and/
                or by Governor." (See Ex."26" attorney Spowart's
10              letter dated March 17.2006 to Petitioner)."

11       Petitioner contends he was put in an impossible situation when

12   trying to explain to the Board no AA program exist (See Ex." 1 " Board

13   Transcript at p.36.line 18 through 22)(See also Ex. "29" the **April 6.**

14   **2006 Multi-Purpose Form**) in which Petitioner question as to the AA -

15   program which there had been no AA for some time and thats prior to

16   the Board hearing of March 13.2006, and after Board hearing. The Board

17   has continue to discriminate against Petitioner knowingly in that the

18   BPT-1073-Form had been filed with the Board on **December 7.2004, which**

19   this document filed would be for the April-2005 Board hearing but there

20   was long delay which ended up being March 13.2006 Board hearing.F/.

21

22       Petitioner contends the Board has in fact foreclosed any possibility

23   of rehabilitation for Petitioner no matter how successful Petitioner

24   has been in not abusing alcohol or how often he has participated in

25   alcohol abuse prevention programs. The Board obviously has presumed

26   that having abused alcohol prior to the commitment offense. Petitioner

27   will alway abuse alcohol regardless how successful Petitioner has been

28   F/.(See Ex "27" BPT-1073-Form file Feb,24.2003, for the 2004 Hearing)

(Continue--25'-)

1  in abstinence from alcohol. Petitioner has been alcohol free for

2  28-years. The presumption by the Board preculde any possibility of

3  rehabilitation and doom  any prospect of parole for Petitioner.

4

5      In the instant case, the Board specifically requested their own

6  forensic expert, Dr.M.Macomber, Ph.D. Staff Psychologist to make and

7  evaluation of Petitioner's alcoholism and need for self-help and the

8  need for therapy (See Ex. "20" Psychologist Evaluation Report of March-

9  13.2006 at page-1-).

10

11     In a report prepared for the Board of Parole hearing by Dr.Macomber,

12 Ph.D. Staff Psychologist states as follows:

13          "In view of Mr.Weir's strongly held values to remain
            clean and sober and his abstinence fro alcohol for
14          28 years, alcohol dependence cannot be a current
            diagnosis. Alcohol was a problem for him up until
15          the age of 34. At this point in time it is no longer
            a problem and it does not warrant a diagnostic label.
16          Therefore, his label will be deleted or noted only as
            a historical factor." (See Ex. "20" at page-3-of the
17          Psychologist Evaluation Report of March 13.2006).

18

19     Dr.Macomber evaluation for "Alcohol Risk" factor:

20          "Mr.Weir's strong values against use of alcohol and
            determination to remain clean and sober no longer
21          makes this a significant risk factor." (see Ex. "20"
            at page-4- of Psychologist Evaluation Report of
22          March 13.2006).

23                              (Continue

24 G. In re Mark Smith, 109 Cal. App. 4th 489, 505..The Court stated
   the following: "There is no evience in the record to show that Smith
25 is presently addicted to drugs.(Cal. Code Regs., tit. 15,§2402,subd.
   (c)(6)[serious misconduct while in prison is a circumstance tending to
26 show unsuitability]). To the contrary,the record establishes that he
   has participated in Alcoholics Anonymous and Narcotics Anonymous in
27 prison, and the only drugs he takes at this time are those prescibed
   for his various medical condition. While there is evidence that he used
28 drugs and abused alcohol at the time of the murder, a prisoner's prior
   addiction is not appropriate consideration in determining parole suit-
   ability).(Continue to next page at bottom of page).

1    Dr.Macomber further evaluation for "Dangerous Behavior":

2         "In considering potential for dangerous behavior when
          released to the community on parole, the <u>Level of</u>
3         <u>Service Inveentory-Revised was administered.</u> This is
          an actuarial measure that assesses criminal history
4         which in his case is serious and his progress in
          vocational goals, family life, and other factots.<u>His</u>
5         <u>score places him at the  5.1 cumulative frequencies</u>
          <u>in comparison to other prison inmates.  This means if</u>
6         <u>100 men were released on parole, he would do better</u>
          <u>than 94 of them."</u> (See Ex "20" at page-4-of Psycholo-
7         gist Evaluation Report of March 13.2006).

8    Dr.Macomber evaluation for "Potential for Violence":

9         "Based upon Mr.Weir's attitude and maturity, his
          potential for violence in the community is no
10        greater than the average citizen and in fact be
          lower than the average citizen based upon his
11        growth and maturity." (See Ex "20" at page4- of
          Psychologist Evaluation Report of March 13.2006).
12

13   Dr.Macomber further evaluation for need of "Self-Help and Therapy":

14        "There are no mental or motional problems in this
          case that would interfere with reguarl parole
15        planning. <u>The prognosis for successful adjustment</u>
          <u>in the community is excellent."</u> (See Ex "20" at
16        page-5- of Psychologist Evaluation Report of March
          13.2006).
17

18    Petitioner contends the Board completely ignored their own expert,

19   Dr.M.Macomber, Ph.D.. Staff Psychologist "Evaluation Report" they

20   specificially requested it done and denied Petitioner parole date so

21   the record on Petitioner's "alcoholism" would be for once and all Clear

22   and free from alcohol abuse. Dr.Macomber further made it clear that

23   Petitioner has no mental or motional problems that would require self-

24   help. Dr.Macomber also made it clear Petitioner no longer has alcohol

25   problem.                    (Continue )

26   _____

27    In the instant case of Mark Smith, 109 Cal. App.4th 489, 505, it
     must be noted Petitioner's case is no difference as Petitioner has been
28   alcohol free for (28-years).The Board's decision was arbitrary and cap-
     ricious in Petitioner's case.

1  Petitioner contends his history of alcohol abuse is just that,

2  **history,** and there is **zero evidence** that he is _presently_ using alcohol.

3  Several lower courts have addressed this, and two of the published

4  opinions, this Court let stand. <u>In re Mark Smith,</u> (2003) 109 Cal.App.

5  4th 489, 505, the Court held that " a prisoner's prior addiction is

6  not an appropriate consideration in determining parole suitability"

7  and in <u>In re Ernest Smith,</u> (2003) 114 Cal. App. 4th 343, 372, the

8  appellate court held that <u>Smith's</u> past desire for drugs was not some

9  evidence that "he _currently_ poses an unreasonable risk of danger with-

10 out further treatment" and to use his **prior history of substance abuse,**

11 an "immutable factor" to deny parole was "arbitrary and capricious."

12  It can be no less so in Petitioner's case, as the record here

13 reveals Petitioner has maintained sobriety for **"28-years"** (See Ex. " 20"

14 Psychologist Evaluation Report of January 13.2006, at page-3-and page-

15 4-at section(c).

16  If Petitioner's past history of alcohol abuse can establish unsuit-

17 ability, then the Board "could deny parole for the rest of [Petitione-

18 er's] life based on the immutable factor" (Id., <u>Biggs.</u> v. <u>Terhune,</u>334

19 F. 3d, at 917, <u>supra;</u> <u>Mickens-Thomas</u> v. <u>Vaugh,</u> 355 F. 3d, at 304,<u>supra;</u>

20 <u>In re Mark Smith,</u> 109 Cal. App. 4th 489, 505 (2003)[unless there is

21 evidence in the record that a prisoner **"presently"** uses drugs or

22 alcohol, "a prisoner's prior addiction is not an appropriate consider-

23 ation in determining parole suitability"]).

24

25                           CONCLUSION

26  Petitioner was convicted for First Degree Murder under the Felony-

27 Murder Rule as an Aider and Abettor (See Ex. " 2 " at p.3-line 7-11) in

28 //

1  same crime and has been imprisoned for his role in that for twenty-

2  eight (28) **years**. Petitioner has been eligible for parole since **March**

3  **10.1985** and has had **seventeen(17)** parole consideration hearings **H** re-

4  sulting in denials.  However, our laws recognize that even those con-

5  victed of murder can pay their debt to society and be returned to so-

6  ciety as productive, law-abiding members of the community.

7

8      The Legislature has decreed that unless the Board finds that the

9  release of a person convicted of murder poses a threat to public safe-

10  ty, such a person should be paroled.

11

12      In this case, there was no evidence to support the Board's finding

13  that Petitioner poses an unreasonable risk of danger to society or a

14  threat to public safety. On the contrary, the overwhelming evidence

15  demonstrates Petitioner has paid his debt for his role in the crime

16  and would be a good candidate for parole.

17

18                            RELIEF SOUGHT

19      Petitioner contends the evidence in the record does not support

20  the decision by the Board to deny Petitioner parole, violating his

21  right to due process guaranteed by the Fifth and Fourteenth amendment

22  to the United States constitution. the writ should be granted and the

23                              (Continue)

24  **H** In the instant case. Petitioner has a term of seven (7) years to
    life sentence of **March 2.1978:** The Court will noted (**Exhibit "28"**) the

25  Board's **"Matrix"** revealing the terms one would be under.As the Court
    noted Petitioner was **sentence** as an Aider and Abettor. In (**Ex. "28"**)-

26  Petitioner's term is in section(A)(3)-term, ## 13 and 15). As the Court
    will note Petitioner was found suitable April 17.2002(See **Ex. "29"**)the

27  Board fixed Petitioner's term at 218-months which 88-months had to be
    taken off for credits which term now is "130-months" thats ten years

28  and ten-months. the term for Petitioner. (Continue to next page).

1  Board ordered to fix Petitioner's term to his individual culpabil-
2  ity under the guidelines of the "Matrix" that is established by CCR-
3  Title 15 (See Ex. "28") and apply any excess time earned by good con-
4  duct credits to the time he would do on parole (McQuillon v. Duncan
5  F. 3d 1012, 1016 (9th Cir. 2003) I/.

6

7  As the Court noted when Petitioner's term was fixed by the Board
8  (See Ex. "29") the total term was (218-months) which is (18-years and
9  2-months) this is with no credits to reduce the term . It is noted
10 Board apply (88-months) credits to reduce the term to (130-months)
11 which the total term now is (10-years and 10-months). Petitioner by
12 rights should be "discharged" completely as the Court will note that
13 Petitioner has served (24-years) with no credits . Petitioner has
14 exceed the complete term, and now Petitioner has (28-years) with no
15 credits to reduce the term. The Court notes the (Ex. "28") Title 15-
16 the highest term is (22-years) note (D)(4). Petitioner was sentence
17 as an Aider(See Ex. "2") with the term of seven (7) years to life of
18 March 2.1978, and as attorney Spowart reveal as follows:

19        "By Attorney Spowart:  Commissioner, before you go
          off I'd like to make a statement, just a short one.
20        My client's been down twenty-eight years. He was not
          the shooter and after the hearing today, I don't feel
21        he got a fair hearing. The punishment is rapidly
          escalating to where it's cruel and unusual, for the
22        record." (See Ex. "1" Board Transcript at page-68,line
          13 through 19).
23

24 Petitioner has served more than twenty-eight (28-years) and served
25 (21) years beyond the minimum seven (7) year term prescribed by law.
26

27 I/.Petitioner contends his term should be fixed under (In re Rodrigues
   (1975) 14 Cal. 3d 639,  122 Cal. Rptr, 551-652; 537 P. 2d 384. As the
28 attorney Spowart reveal Petitioner is under the old Rehabiliatation
   law of 1978 (See Ex. "1" Board Transcript at p.59,line 8-9 and 13-19)

(Continue- 30 -)

1    Petitioner has clearly demonstrated that he does have a liberty

2    interest in parole protected by the Due Process Clause of the Fourteen-

3    th Amendment and that right to due process pursuant to <u>Biggs</u> v. <u>Terhune</u>

4    334 F. 3d 910, <u>supra,</u> have been violated.

5

6    Wherefore, for the foregoing reason it is respectfully requested

7    that the writ be granted and **any** other relife this Court deems appro-

8    priate and just.

9

10    Date: _Aug. 14th 2006_.                          Respectfully

11                                                      _Duane R. Weir_

12    //                                               DUANE ROY/WEIR-C-02190

13

14    //

15

16    //

17

18    //

19

20    //

21

22    //

23

24    //

25

26    //

27

28    //

( 31 )

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life )
Term Parole Consideration )
Hearing of: )               CDC No. C-02190
                          )
Duane Weir                )
                          )
_____)

CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

MARCH 13, 2006

3:35 P.M.

PANEL PRESENT:

Ms. Tracey St. Julien, Presiding Commissioner
Mr. Orlando Mejia, Deputy Commissioner

OTHERS PRESENT:

Mr. Duane Weir, Inmate
Mr. David Spowart, Attorney for Inmate
Mr. Harold Wilson, Deputy District Attorney, San
Bernardino County (Video Conference)
Correctional Officers Unidentified

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____ No      See Review of Hearing
_____ Yes     Transcript Memorandum

**Rheanna Bernard, Peters Shorthand Reporting**



INDEX

|                            | PAGE |
|----------------------------|------|
| Proceedings                | 1    |
| Case Factors               | 6    |
| Pre-Commitment Factors     | 13   |
| Parole Plans               | 23   |
| Post-Commitment Factors    | 34   |
| Closing Statements         | 51   |
| Recess                     | 33   |
| Decision                   | 60   |
| Adjournment                | 68   |
| Transcriber Certification  | 69   |

--oOo--

1              P R O C E E D I N G S

2          PRESIDING COMMISSIONER ST. JULIEN: Good

3    Afternoon, this is a subsequent parole hearing

4    for Duane Weir; and it's 3:35 P.M.  Today is

5    March 13, 2006 and we are at CTF Soledad.  Mr.

6    Weir's CDC number C-02190.  Mr. Weir was

7    received March 1, 1979.  Life term started the

8    same day, count 1, murder first, violation of

9    Penal Code Section 187.  Term received – seven

10   years to life.  Minimum eligible parole date of

11   March 10, 1985.  This is from San Bernardino

12   County, case number SCR34989.  Okay, is that

13   correct?

14          INMATE WEIR: Yes, ma'am.

15          PRESIDING COMMISSIONER ST. JULIEN: We'll

16   go around the room and for the tape recording

17   and introduce ourselves, say our first and last

18   names, the reason why we're here, spell our

19   names and if you'd also state your CDC number.

20   My name is Tracey St. Julien, T-R-A-C-E-Y S-T-J-

21   U-L-I-E-N, Commissioner.

22          DEPUTY COMMISSIONER MEJIA: Orlando Mejia,

23   Deputy Commissioner.

24          DEPUTY DISTRICT ATTORNEY WILSON: Harold

25   Wilson, W-I-L-S-O-N, Deputy District Attorney,

26   San Bernardino County.

27          ATTORNEY SPOWART: David Spowart, S-P-O-W-

1  A-R-T, Attorney for Mr. Weir.

2        INMATE WEIR: Duane Weir Jr., W-E-I-R. 'C'

3  number, C-02190.

4        PRESIDING COMMISSIONER ST. JULIEN: Can

5  you go ahead and spell Duane?

6        INMATE WEIR: D-U-A-N-E.

7        PRESIDING COMMISSIONER ST. JULIEN: And we

8  also have two correctional officers in the room

9  who are here for security purposes.  Okay Mr.

10 Weir, and your attorney had just shown you this

11 form and explained your accommodations for

12 disabilities, is that correct?

13        INMATE WEIR: Yes, ma'am.

14        PRESIDING COMMISSIONER ST. JULIEN: As

15 well as the overview of the hearing procedure.

16 I notice you have — is that an asthma inhaler?

17        INMATE WEIR: Yes, ma'am.

18        PRESIDING COMMISSIONER ST. JULIEN: Okay,

19 so do you suffer from asthma?

20        INMATE WIER: Yes, ma'am.

21        PRESIDING COMMISSIONER ST. JULIEN: So if

22 you need it then you'll have it and they're in

23 working order.  Okay, is there any reason why

24 you can't participate in the hearing today?

25        INMATE WEIR: No.

26        PRESIDING COMMISSIONER ST. JULIEN: And

27 you had enough of these hearings so you could

1    probably give me an overview of the hearing; but

2    do you have any questions before we get started?

3          INMATE WEIR: No I don't.

4          PRESIDING COMMISSIONER ST. JULIEN: Okay.

5    And Mr. Spowart, are you satisfied that your

6    client's ADA rights have been met?

7          ATTORNEY SPOWART: Yes they have.

8          PRESIDING COMMISSIONER ST. JULIEN: Mr.

9    Weir you also have the right to be heard by a

10   fair and impartial panel. Now that you seen the

11   panel here today, do you have any objections?

12         INMATE WEIR: No.

13         PRESIDING COMMISSIONER ST. JULIEN: And

14   Mr. Spowart, any objections?

15         ATTORNEY SPOWART: I have no objections.

16         PRESIDING COMMISSIONER ST. JULIEN: Do you

17   have any additional documents?

18         ATTORNEY SPOWART: Yes I do, I have a

19   couple of memorandums here. Memorandums of

20   support and a memorandum based — it has to do

21   with prior criminal record.

22         PRESIDING COMMISSIONER ST. JULIEN: I

23   notice — I guess there was so going around and

24   around about this in prior hearings, is that

25   correct?

26         ATTORNEY SPOWART: Yes, and I'm trying to

27   clear it up.

4

1          PRESIDING COMMISSIONER ST. JULIEN: Okay.

2    And then do you have any preliminary objections?

3          ATTORNEY SPOWART: I have none.

4          PRESIDING COMMISSIONER ST. JULIEN: Okay.

5    And are you passed over the Exhibit 1 and that

6    was to your --

7          ATTORNEY SPOWART: Yes, I had all of

8    those.

9          PRESIDING COMMISSIONER ST. JULIEN: Thank

10   you.  Mr. Wilson, 'Exhibit 1' - I'm looking at

11   the hearing checklist, it's not dated by anybody

12   here at the institution.

13         DEPUTY DISTRICT ATTORNEY WILSON:

14   (Indiscernible) in itself and I have the undated

15   (indiscernible) I also have the documents.

16         ATTORNEY SPOWART: I have three letters of

17   support here too.

18         PRESIDING COMMISSIONER ST. JULIEN: And

19   maybe - I think the officer would hand me that.

20   That might be a little easier, thank you.  Okay,

21   thank you.  Is there any confidential

22   information?

23         DEPUTY COMMISSIONER MEJIA: No, no

24   confidential information.

25         PRESIDING COMMISSIONER ST. JULIEN: I

26   think we'll get started and - is Mr. Weir going

27   to be discussing the crime with the panel today?

1          ATTORNEY SPOWART: He will be talking

2    about everything except the life crime and the

3    priors.

4          PRESIDING COMMISSIONER ST. JULIEN: Oh

5    okay.

6          ATTORNEY SPOWART: Thoroughly and --

7          PRESIDING COMMISSIONER ST. JULIEN: Okay.

8    So this is dated today.  This memo that you

9    handed me --

10          ATTORNEY SPOWART: Yes, for the hearing

11    today.

12          PRESIDING COMMISSIONER ST. JULIEN:

13    Regarding the criminal history. So let me just

14    take a look at this.

15          ATTORNEY SPOWART: I looked at the last

16    hearing and they use a lot of prior record --

17          PRESIDING COMMISSIONER ST. JULIEN: Yes,

18    that's part of our --

19          ATTORNEY SPOWART: Cases that

20    (indiscernible) not supposed to.  There's no

21    disposition, it was dismissed.

22          PRESIDING COMMISSIONER ST. JULIEN: Okay,

23    but before I forget I need to give you an oath

24    sir.  Do you solemnly swear or affirm that the

25    testimony you give today will be the truth, the

26    whole truth and nothing but the truth?

27          INMATE WEIR: I do.

1    PRESIDING COMMISSIONER ST. JULIEN: Thank

2    you.  Do you have any disagreement - so the

3    disagreement would be perhaps arrests with no

4    disposition that are used as opposed to if you

5    spent time - because you had some county jail,

6    probation and stuff like that.  So those are, at

7    least to me those are clear things that

8    happened.

9    INMATE WEIR: True.

10    ATTORNEY SPOWART: It has to do with the

11    showing of prior violence and he didn't have any

12    violence.

13    PRESIDING COMMISSIONER ST. JULIEN: So

14    just by looking at this list where we have

15    burglary, parole violation, which was mischief.

16    It's basically property crimes, is that what you

17    were doing?

18    INMATE WEIR: Yes, ma'am.

19    PRESIDING COMMISSIONER ST. JULIEN:

20    Burglary.  What's (Indiscernible)?

21    INMATE WEIR: I don't know.

22    PRESIDING COMMISSIONER ST. JULIEN:

23    (Indiscernible) junior.

24    INMATE WEIR: I think that's Pomona - I'm

25    not sure, I think that's --

26    PRESIDING COMMISSIONER ST. JULIEN: Were

27    you taking Oranges or something?

1         INMATE WEIR: I think it was witness.

2         PRESIDING COMMISSIONER ST. JULIEN: Oh.

3         INMATE WEIR: I'm not sure.

4         PRESIDING COMMISSIONER ST. JULIEN: So I

5    will note that.  And then also in the additional

6    documents that you presented there is - you talk

7    about the procedural background and

8    circumstances of the offense and there's some

9    testimony that you were - I guess a witness ID

10   of the victim - "On cross-examination by the

11   prisoner's lawyer the victim stated the

12   following." Who cross-examined the victim?

13        INMATE WEIR: (Indiscernible) attorney, it

14   was David (indiscernible) attorney.

15        PRESIDING COMMISSIONER ST. JULIEN: Before

16   he died?

17        INMATE WEIR: Yes.

18        ATTORNEY SPOWART: He didn't die for a

19   couple of months.

20        PRESIDING COMMISSIONER ST. JULIEN: Yes I

21   know that.

22        INMATE WEIR: The preliminary hearing was

23   held in the County Hospital.

24        PRESIDING COMMISSIONER ST. JULIEN: And

25   was that on the burglary?

26        INMATE WEIR: No, this was on the robbery

27   charge.  He died later.

1          PRESIDING COMMISSIONER ST. JULIEN: Right,

2    right.  Okay, so then he was able to make --

3          INMATE WEIR: (Indiscernible).

4          PRESIDING COMMISSIONER ST. JULIEN: Okay.

5    So you got felony - "The Appellant's liability

6    for murder is based on his involvement in the

7    attempted robbery."  So, felony murder.  So

8    you're not going to discuss the crime and I'm

9    going to review - we'll review in greater depth

10   - unless you want me to read this.  Do you want

11   me to read this into the record?

12         ATTORNEY SPOWART: No, being that I

13   submitted it Commissioner - I represented Mr.

14   Weir --

15         PRESIDING COMMISSIONER ST. JULIEN: Yes,

16   we saw that. 2001.

17         ATTORNEY SPOWART: And at that time they

18   were still arguing that he was shooter.  They

19   had investigations through the Board of Prison

20   Terms, they had the Attorney General's answer to

21   it, all saying that he was not the shooting, so

22   I just want to make sure that's understood now

23   at this time.  But he was never the shooter.

24   (Indiscernible) aid and abettor --

25         PRESIDING COMMISSIONER ST. JULIEN: Tony

26   is your brother.

27         INMATE WEIR: Yes, ma'am.

1          PRESIDING COMMISSIONER ST. JULIEN: And is

2     he still alive?

3          INMATE WEIR: Yes.

4          PRESIDING COMMISSIONER ST. JULIEN: And

5     has he ever written anything. I mean --

6          INMATE WEIR: Yes, there's --

7          PRESIDING COMMISSIONER ST. JULIEN: Saying

8     that --

9          INMATE WEIR: Yes, he wrote a declaration

10    that should be in my file. I think I submitted

11    it in 1983, should be the declaration.

12         PRESDING COMMISSIONER ST. JULIEN: Because

13    he was tried by a jury, right?

14         INMATE WEIR: Yes, ma'am. Here, it's here.

15    I think that was submitted in '84, excuse me, I

16    think that was '84. It was submitted in - I

17    think it was my initial hearing.

18         PRESIDING COMMISSIONER ST. JULIEN: So he

19    was sentenced for the robbery?

20         INMATE WEIR: Yes, ma'am.

21         PRESIDING COMMISSIONER ST. JULIEN: And he

22    got four years.

23         INMATE WEIR: Yes, ma'am.

24         PRESIDING COMMISSIONER ST. JULIEN: And he

25    was paroled. And he says that he thinks - "I

26    feel that like should anyone be serving a life

27    sentence it should be I, for the simple reason

1    it was I —"  I can't make out this word.  Maybe
2    plan.  "I planned the robbery."
3         INMATE WEIR: Planned, I think.
4         PRESIDING COMMISSIONER ST. JULIEN: "And
5    the shooting.  At that point of the robbery my
6    brother, Duane Weir, was not even on the
7    victim's property.  He was somewhere on my
8    property next to the victims —" in something — I
9    can't read it.
10        "Had my brother not tried to protect me
11        he surely would not be carrying this
12        burden.  At the same time, had my brother
13        been given a fair trial it would have been
14        proven that even the victim was shot twice
15        it was a proven fact he did not die from
16        the gun shot wounds."
17        I guess that's been a point of contention
18   throughout the years.
19        ATTORNEY SPOWART: There were two
20   different trials.  My client went to the first
21   trial and he was found convicted.  His brother
22   went to the second trial and the jury found him
23   not guilty.
24        PRESIDING COMMISSIONER ST. JULIEN: So in
25   any case, the crime was on March 2, 1978 and
26        "Mr. Samuel Lowery, L-O-W-E-R-Y, who was
27        age eighty at the time, was shot in the

1       chest and abdomen while he was the yard at

2       his residence in Fontana.  Mr. Lowery was

3       interviewed by police at the hospital

4       regarding the shooting.  Lowery reported

5       that he had been robbed and then shot by

6       two white males, both between the ages of

7       twenty-five and thirty. Lowery states he

8       was knocked to the ground, could not

9       remember what had happened (Indiscernible).

10      Lowery had been living in a camper in the

11      back of his truck because his residence had

12      recently been burned.  Mr. Lowery said he

13      believed it was Tony and Tyrone Weir who

14      had shot him.  Mr. Lowery died on April 25,

15      1978 and his death was caused by

16      Subphrenic, S-U-B-P-H-R-E-N-I-C, abscess,

17      due to gunshot wounds to the diaphragm,

18      stomach and spleen."

19          So you maintain your innocence in this

20  crime?

21          **INMATE WEIR:** No.

22          **PRESIDING COMMISSIONER ST. JULIEN:** Well you

23  weren't — did you say that you weren't there — well,

24  we're talking about it.

25          **ATTORNEY SPOWART:** He maintains that he

26  was aider and abettor, murder/felony rule that

27  he's been convicted.  He understands that.  He

1   just was not the shooter, and for years and

2   years that used to be at hearings.  That was a

3   big contention.

4           PRESIDING COMMISSIONER ST. JULIEN: Were

5   you there though?

6           INMATE WEIR: I was there, yes, yes; but

7   not on that property, just like he said in the

8   statement.

9           PRESIDING COMMISSIONER ST. JULIEN: Well,

10  then you weren't --

11          ATTORNEY SPOWART: He came on the property

12  after the fact.

13          PRESIDING COMMISSIONER ST. JULIEN: You

14  were on the property, but you were not in the

15  same room --

16          INMATE WEIR: When the shooting occurred.

17          PRESIDING COMMISSIONER ST. JULIEN: Or

18  area, when the shooting occurred.

19          INMATE WEIR: True, that is correct.

20          PRESIDING COMMISSIONER ST. JULIEN: Okay.

21          ATTORNEY SPOWART: Just to clarify.  He

22  has never denied that he wasn't guilty, he just

23  always denied that he wasn't the shooter.

24  Originally he was upset because he brother got

25  off and he - there were two different trials and

26  there was a question about the pathologist, so

27  that went on for years; but that's been

1  resolved.  My client accepts he's guilty and

2  he's talked about this for the last couple of

3  hearings.

4       PRESIDING COMMISSIONER ST. JULIEN: So

5  then also in terms of your previous record and

6  at this point in time generally I'd look at what

7  you were – what you actually may have served

8  time form and I have a list and you can tell me

9  if I'm right or wrong.  I guess it was in

10 Juvenile Hall – I guess that's different then a

11 ranch or anything like that.  Did you have time

12 in a juvenile – I think it was a Federal

13 Juvenile --

14       INMATE WEIR: Yes, it's like a juvenile

15 place.  Like a military school.

16       PRESIDING COMMISSIONER ST. JULIEN: So

17 maybe the equivalent today of a ranch or

18 something like that.

19       INMATE WEIR: Something like that, yes.

20       PRESIDING COMMISSIONER ST. JULIEN: And

21 then juvenile probation, state prison, adult

22 probation, parole and county jail.  Is that --

23       INMATE WEIR: The probation I had was for

24 grand theft.  I violated the probation for

25 driving tickets, which I wasn't supposed –

26 that's when I was in state prison, which

27 violated the probation.

14

```
 1              PRESIDING COMMISSIONER ST. JULIEN: So we
 2    can see that list.  And I think the Governor -
 3    did the Governor's letter point out like thirty-
 4    four arrests or --
 5              INMATE WEIR: That's what we're --
 6              PRESIDING COMMISSIONER ST. JULIEN: So
 7    that's why you want to --
 8              ATTORNEY SPOWART: That's why I submitted
 9    that.
10              PRESIDING COMMISSIONER ST. JULIEN: Why
11    you wanted to bring in (indiscernible) --
12              INMATE WEIR: (Indiscernible) --
13              PRESIDING COMMISSIONER ST. JULIEN: An
14    accurate accounting of charges that were
15    actually followed through.
16              INMATE WEIR: The non-dispositions.  There
17    was no dispositions.
18              ATTORNEY SPOWART: Plus a lack of violence
19    in any of them.
20              PRESIDING COMMISSIONER ST. JULIEN: So
21    lets continue - to step back just for a couple
22    of minutes and - you went to school until the
23    ninth grade --
24              INMATE WEIR: Somewhere around there,
25    eighth, ninth, somewhere around there.
26              PRESIDING COMMISSIONER ST. JULIEN: And
27    then you dropped out?
```

1       INMATE WEIR: Yes, ma'am.

2       PRESIDIGN COMMISSIONER ST. JULIEN: And

3   why did you drop out?

4       INMATE WEIR: Work.

5       PRESIDING COMMISSIONER ST. JULIEN: Family

6   reasons?

7       INMATE WEIR: Work.

8       PRESIDING COMMISSIONER ST. JULIEN: So you

9   needed to contribute to the family income. Was

10  this - I'm looking for my - you have three

11  folders here so it's kind of hard to find

12  anything.  Did you - what state were you in when

13  you were growing up?

14      INMATE WEIR: Well, several states.

15      PRESIDING COMMISSIONER ST. JULIEN: So

16  you're family moved around.

17      INMATE WEIR: They were always moving

18  somewhere.

19      PRESIDING COMMISSIONER ST. JULIEN: Where

20  did you spend most of your time growing up?

21      INAMTE WEBSTER: Probably out in

22  California.

23      PRESIDING COMMISSIONER ST. JULIEN: So you

24  have the one brother?

25      INMATE WEBSTER: No, I have four other

26  brothers.

27      PRESIDING COMMISSIONER ST. JULIEN: And

1    where are they now?

2         INMATE WEIR: Well, I know two are in

3    Texas.  One brother I haven't seen since 1966,

4    and it's my brother that I got in trouble with,

5    he's in (indiscernible).

6         PRESIDING COMMISSIONER ST. JULIEN: I'm

7    sorry where?

8         INMATE WEIR: He's in Huntsville.

9         PRESIDING COMMISSIONER ST. JULIEN:

10   Where's that?

11        INMATE WEIR: State Prison, in the prison.

12        PRESIDING COMMISSIONER ST. JULIEN: Oh

13   okay.  What about your other brother?

14        INMATE WEIR: I don't know where they're

15   at.

16        PRESIDING COMMISSIONER ST. JULIEN: So

17   describe your life growing up.

18        INMATE WEIR: Describe my life growing up.

19   Well, it wasn't very good.

20        PRESIDING COMMISSIONER ST. JULIEN: And

21   why is that?

22        INMATE WEIR: Well, all the family moving

23   around and unstable.

24        PRESIDING COMMISSIONER ST. JULIEN: So

25   where'd you move - because your father needed to

26   find work or why was there so much moving

27   around?