104

1    after request, is giving Mr. Lowery some water?

2          THE NURSE:  Suck with the straw.  Do you want

3    to try real hard?

4          THE WITNESS:  Oh, I don't know.

5          THE NURSE:  Do you want to try again with the

6    water?

7          You want to try a drink of water?

8    THE WITNESS:  I don't --

9          THE NURSE:  Did you get some?

10         Here, try another swallow.  A little bit.  Here

11    you go.  A little bit more.

12         Okay, now you got some.

13         THE WITNESS:  You call this water?

14         THE NURSE:  Yes, this was water.  You got some.

15         THE WITNESS:  I call it (unintelligible) water.

16  Q   (By Mr. Call:)  Mr. Lowery, do you know Tony Wier, your

17    next door neighbor?

18  A   (No audible response.)

19  Q   You're shaking your head yes; is that right?

20  A   Yes.

21  Q   Did Tony Wier shoot you, Mr. Lowery?

22  A   I have reason to believe he did.

23  Q   Did you see him?

24  A   Yes.

25  Q   Did you see him with a gun?

26  A   Yes.

Ex. 3"

COURT OF APPEAL, FOURTH DISTRICT

SECOND DIVISION

STATE OF CALIFORNIA

COURT OF APPEAL · FOURTH DIST.

F I L E D

JAN 3 0 1980

ROBERT L. FORD, Clerk

_____

Deputy Clerk

PEOPLE OF THE STATE OF CALIFORNIA,

        Plaintiff and Respondent,

    v.

DUANE ROY WEIR,

        Defendant and Appellant.

4 Crim. 10552
(Sup.Ct.CR-34989)

O P I N I O N

APPEAL from the Superior Court of San Bernardino County. J. Steve Williams, Judge. Affirmed.

Allen R. Crown, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, and Jesus Rodriguez, Deputy Attorney General, for Plaintiff and Respondent.

Defendant was convicted of murder, robbery and grand theft. A use allegation was found to be true. He was found not guilty of assault with a deadly weapon.

Defendant and his brother wanted some guns. The brother said he knew an old man who had some. They went to the home of 90 year old Samuel Lowery and, armed with a .22, told him to give them his money or his life. The old man would have none of this nonsense and he opened up on them with his .38. Unfortunately, his marksmanship was not of the same caliber as his enthusiasm. He missed but they did not. He was shot twice

-1-

Ex "4"

in the abdomen and the defendant and his brother took the old man's
.38. The defendant then placed a gun to the victim's head and
ordered him to crawl under a truck and to remove his pants. De-
fendant and his brother showed a witness a .38 and other weapons --
a shotgun and two rifles -- and said they took them from Lowery.

Lowery then drove his truck to a public telephone and
called the police. When they arrived, they found him in his truck.
He was taken to a hospital and underwent surgery. He had two
gunshot wounds in his abdomen and his spleen was removed. He was
discharged two weeks later. He was readmitted to the hospital
and died.

Defendant was arrested and found in possession of
Lowery's guns. Defendant denied any knowledge or ownership of
the guns and denied any part in the shooting.

An autopsy surgeon testified that the cause of the
death was a subphrenic abscess which was caused by a gunshot
wound which perforated the victim's stomach. The abscess
produced poisonous substances which spread through the victim's
body leading to his death. The pathologist also testified that
the gunshot wound which perforated the stomach could have caused
the urinary infection which was found in the old man's body at
his death.

The defense was two-fold. The first was diminished
capacity based on intoxication. The second defense was that the
gunshot wounds were not the cause of death. The defendant's
pathologist testified that in his opinion the subphrenic abscess

found inside the victim's body did not cause his death but that the victim died of blood poisoning caused by a severe infection of the urinary tract.  This pathologist did agree with the prosecution's pathologist that it was possible that the gunshot wound which perforated the victim's stomach could have affected the urinary infection thus worsening or hastening the victim's death regardless of the presence of the abscess.  No one argues that the gunshot wound in the abdomen unduly prolonged this 90 year old man's life.

On appeal, defendant contends:

(1)  That the court erred in denying his motion for new trial grounded on newly discovered evidence.  This evidence consisted of additional medical reports of the victim which were claimed to have been lost in the San Bernardino County Medical Center but which were subsequently located.

In granting a motion for new trial on this ground, the evidence must be (a) newly discovered, (b) it must be evidence which could not with reasonable diligence have been produced at trial, (c) it must not be cumulative and (d) it must be such that it would render a different result probable on retrial.  (People v. McDaniel, 16 Cal. 3d 156.)  Obviously, such motions are addressed to the sound discretion of the trial court.

The argument was made that these records would bolster the pathologist's opinion that the subphrenic abscess did not cause Lowery's death.  However, it was shown in the hearing that the prosecution's pathologist's opinion would be the same in spite of

-3-

the additional medical records. In addition, defense counsel agreed that his pathologist would not change his initial testimony that the gunshot wounds undoubtedly hastened the death of the old gentleman. Rather obviously, these wounds hastened his death. They were a contributing cause of his death. Thus, the trial court's finding that the newly discovered evidence would not render a different result on retrial is supported by substantial evidence and is not an abuse of discretion.

(2) That there is a fatal inconsistency in the verdicts, i.e., that the not guilty on the assault with the deadly weapon was fatally inconsistent on the guilty verdict of murder and robbery.

Seemingly inconsistent verdicts are not necessarily fatal. Penal Code § 954 provides that an acquittal of one or more counts shall not be deemed an acquittal of any other count. These acquittals may indicate that the jury has given the defendant the benefit of some compassion which was not called for. (See cases collected in Witkin, Calif.Crim.Proc., paragraphs 548, 549; People v. Hamilton, 80 Cal.App. 3d 124, 130.) A verdict of conviction on one count which appears inconsistent with a verdict of acquittal on another count affords no basis for a reversal where the evidence is sufficient to support the conclusion that the defendant is guilty of the offense of which he stands convicted. (In re Johnston, 3 Cal. 2d 32.) Even trial counsel agreed that the not guilty verdict on the assault with a deadly weapon was not inconsistent with the verdicts on the other counts. Counsel did argue that

-4-

the assault with a deadly weapon verdict was inconsistent
with the use allegation, a matter made moot by the court's
striking of the use allegation.  It would appear that the assault
with a deadly weapon allegation was put in in view of the de-
fendant's denial of having anything to do with the robbery or
murder but the admission to a witness that he placed a gun to the
old man's head, ordered him to crawl under a truck and remove his
pants.  Thus, the defendant's liability for murder was based on his
involvement of the attempted robbery of the victim.  The assault
with a deadly weapon would come into play if the jury disbelieved
that but believed tha he did threaten the old man after the old
man shot at him.  Thus, there is no inconsistency in the verdicts.

(3)  That photographs of Mr. Lowery's trousers were
improperly admitted into evidence.

The first contention is that there was no foundation
for the photographs.  There was a foundation.  An officer testified
that he took the photographs and that they depicted the clothing
worn by the victim at the time of the acts.  He took them from the
hospital to the police station where he photographed them.  There
was ample foundation.

Next, the defendant contends they were inflammatory.
There is hardly anything inflammatory about a pair of trousers
showing a bullet hole and some bloodstains.

(4)  That the instruction on flight was improper.  It
was not.

. After the shooting, the defendant and his brother
left (fled).  They certainly did not stand around and face the

-5-

responsibility for their acts.

There was no error in giving this instruction.

(5) Good time/work time.

When the Supreme Court decides Sage, if that decision is favorable to the position of the defendant, the matter will undoubtedly be taken care of uniformly on a statewide basis. Lacking that, the defendant will have recourse by writ to the trial court. We do not disturb the judgment at this time.

Judgment affirmed.


                                        /s/  Gardner
                                        _____
                                                        P.J.

We concur:


/s/  Tamura
_____
                J.


/s/  McDaniel
_____
                J.                    NOT TO BE PUBLISHED in official reports

on the assault with a deadly weapon charge by the court was consistent with the jury's verdict on Counts I, II, and IV.[5/] (RT 540.)

Moreover, the essential elements of assault with a deadly weapon (Count III) are not required to be proven to establish and sustain the murder and robbery convictions in the instant case. (<u>People</u> v. <u>Hamilton</u>, <u>supra</u>, 80 Cal.App.3d 124.) Here, appellant's liability for murder was based on his involvement in the attempted robbery of the victim. i.e., felong murder rule. The assault with a deadly weapon played no part in the murder since the evidence reasonably shows the alleged assault with a deadly weapon occurred after the attempted robbery and shooting of the victim. (RT 133-134, 368-377.) Thus, the verdicts are not inconsistent.

\* \* \* \* \*

---

5. Defense counsel below did argue the verdicts were inconsistent. However, his argument was that the special findings, i.e., gun use allegations, were inconsistent with the not guilty verdict on the assault with a deadly weapon charge. (RT 539-541.) Of course, this specific argument is now moot since the court struck the gun use allegations. (RT 555, 558.)

10.

Ex "5"

Date:     February 15, 1994

To:       Dennis Smith
           Board of Prison Terms

From:    Art Harrison
           San Bernardino Co.
           District Attorney's Office
           (909) 387-6814

Subject:  BPT Inquiry regarding the conviction of Inmate Duane Weir
           C-02190.


    This is intended as a summary response to the query of the
Board of Prison Terms into the circumstances of the underlying
conviction of Life Inmate Duane Weir.


    1.) The Board has solicted comments by the District Attorney
on the autopsy procedures used in this case," noting that c/p
Tyrone Weir was acquited of the same murder-due to forensic
findings of same victim that the cause of death was not from
gunshot wounds". While it is true that Tyrone was acquited of the
murder count, it is also true that he was convicted of the robbery
which was concomitant to the felony murder charge. Both juries
heard in essence the same evidance. Dr. Scott testified for the
prosecution, and each defense team called Dr. Rene Modglin to
counter with an opposing opinion as to the cause of death. Both
were highly credentialed, highly experienced, and well respected
in their field. Dr. Modglin testified that he held Dr. Scott and
his work in high regard.

    One jury found sufficient evidence "beyond a reasonable
doubt", and the other did not. It's just that simple, its a
subjective determination by the jury which is/should be based on
an objective weighing of the evidence. The trial judge in Duane's
matter denied his motion for new trial which was based on a claim
of newly discovered evidence pertaining to these cause of death
issues. Additionally, the appeal waged on behalf of Duane Weir in
the appelate court aggressively asserted that an injustice had been
committed in the denial of a new trial based on new evidence, i.e.
medical records which were not available at the trial of Duane
Weir, but which surfaced (having been in the possession of the
treating physician) and were used in the trial of Tyrone Weir.
The response by the Appellate Court found at page 3 of the opinion
(attachment one) was as follows:


        "The arguement was made that these records would bolster
        the pathologist's opinion that the subphrenic abcess did



Ex "6"

not cause Lowery's death. However, it was shown in the hearing that the prosecution's pathologist's opinion would be the same in spite of the additional medical records. In addition, defense counsel agreed that his pathologist would not change his initial testimony that the gunshot wounds undoubtedly hastened the death of the old gentleman. Rather obviously, these wounds hastened his death. Thus, the trial court's finding that the newly discovered evidence would not render a different result on retrial is supported by substantial evidence and is not an abuse of discretretion."

2.)  Dr. Scott along with his partner Dr. Irving Root had for many years held a contract to perform autopsies for the County of San Bernardino. Pursuant to that contract, each pathologist performed numerous post mortem examinations each day. Subsequent to this case it was revealed that Dr. Scott had lapsed into the practise of using a "canned" autopsy format with which he would in essence fill in the blanks to make the protocol case specific. In the Renova case it became apparent that some of the work claimed to have been done By Dr. Scott via the autopsy protocol had not in fact been done. The points of dicrepancy in that case involved the finding of intact organs, which were claimed to have been resected in the earlier autopsy. The organs involved were not germaine to the determination of cause of death, but were customarily resected during a post mortem examination. It is significant to note that the findings as to cause of death did not vary between the two autopsies. Both autopsy surgeons determined the shotgun wound to the head caused the death and that the stab wounds sustained were of a fatal nature and would have caused death but for the intervening shotgun wound.

The board is aware the above circumstance generated a significant amount of media attention. The result was that an agreement was apparently reached wherein Dr. Scott would no longer conduct autopsies. Within a short while the partnership was dissolved and Dr. Root as an individual held the contract with the Coroner's Office. The prevailing belief seems to have been that Dr. Scott's errors were of negligent or careless ommission as opposed to any willful scheme te deceive or defraud.

3.)  I have consulted with the trial prosecutor who was involved in both the trial of Duane and Tyrone Weir, that being Steve Ashworth, now a Superior Court Judge in the Victorville Court in our county. He confirms my conclusion that the differing end results of the two trials was not predicated upon any new information or evidence of which Duane Weir was deprived or of any injustice created by Dr. Scott's failure to comply with professional standards. Instead, he cites the differing

perspective that jurors sometimes have as to evidence and the differing beliefs and biases which are inate to varying backgrounds.

Judge Ashworth has offered to make himself available by telephonic conference to assist in the resolution of any further questions the Board or its investigators may have. I can provide the necessary phone numbers upon request.

The point we need to emphasize here is that the victim in this matter was in his eighties. He had for a lengthy time (approximately ten years) lived an active, independent lifestyle wherein he was mobile and agile. He was shot down during the robbery incident on 3/2/78. Mr. Lowery died on 4/25/78 without ever having gotten up again after having been shot. His release from the hospital was simply to a convalescent setting. All who have looked at this case are in agreement that the wounds sustained in the shooting incident at least accelerated the death of Lowery, thereby being a proximate cause of his death.

One thing I would point out to the Board is that the opinion of the trial prosecutor is that the actual shooter in this matter was not Duane Weir, but was his brother Tyrone. This is so inspite of the finding of personal use of a firearm by the jury. The penalty precribed for that particular enhancement was striken by the trial court at the time of sentencing.

If Inmate Duane Weir is to be found suitable for the granting of a parole date, it is our posture that it should not be predicated upon the issues put forth in the current inquiry.

If I can be of any further assistance in this matter please don't hesitate to contact me.

A. Harrison, DDA

Summary:   PROGRAM   INMATE REQUEST FOR PROGRAM REVIEW.
           REVIEW:

| | | | | | | |
|---|---|---|---|---|---|---|
| Custody: | MED A | Release: | MEPD 3/10/85 | Level: | II |
| GPL: | 8.3 | Reclass: | 1-02 | CS: | 0 |
| Work Group: | A1 | Privilege Group: | A | RPS: | N/A |

WEIR appeared before Unit V U.C.C. today for a Program Review. Purpose of Review: Inmate Weir, C02190 submitted a CDC 602 2-22-01 requesting to appear before U.C.C. for the following reasons: 1) Whether he was a threat to staff or inmates; 2) The Board of Prison Terms requirement for Participation in Self Help/Therapy. He also states that he does not have a history of violence except for his offense.. COMMITTEE ACTIONS: Committee notes that after a review of Inmate Weir's central file (Disciplinary Section) there is no documentation (CDC 115) reflecting any kind of aggressive or problematic behavior. The central file reflects Inmate Weir has participated in Narcotics Anonymous, Alcoholic Anonymous, Roadsider AA Fellowship (4-13-88), Reality and Decision Making Group (9-10-87), Completed Individual Therapy (8-1-94), and actively and successfully participated in the self-help group YOKEFELLOWS (1987), completed Cat X (1988) actively participated in CTF "We Care" Program, actively and successfully participated in "Life Skills" (1-25-91). It should also be noted that per memorandum dated 8-13-99 authored by S. Terrini, Ph.D. that states in part that there is no psychotherapy available in CDC that deals with Lifers commitment offense. It appears he has a viable claim in that he has not received any disciplinary action for violence against staff/inmate. He has actively participated in self-help/therapy in the past. A review of his arrest report reflects an escalating pattern criminal behavior that did that was not violent (GTA, Grand Theft, DUI, Evading Arrest, Driving with a Suspended License). COMMENTS: WEIR participated in today's U.C.C. and acknowledged his understanding of the Committee's actions. He stated that he agreed with the Committee's actions. WEIR was advised of his right to appeal Committee actions. 72 hour written notification provided per CCR 3375(f)(1), 128-B-1 on file.

CHAIRPERSON: A. SHINAULT, FC                    Recorder: L.J. HUNTER, CCI
Panel:    A. SHINAULT, FC: S. DIXON, CCI: L.J. HUNTER, CCI /ljh

Dist.:  C-File
        Inmate

DATE: 4/17/01          Classification  PROGRAM REVIEW          Inst: CTF-North

Ex. "7"

DAVID J. SPOWART
Attorney at Law
71 Via Encina
Monterey, CA 93940
Phone (831) 649 8127


To:       Board of Parole Hearings Panel
Date:     March 13, 2006
Subject:  Criminal History Duane Weir, C-02190


Background

On April 6, 2004, the Board of Parole Hearings denied Duane Weir a parole date
based partly on Mr. Weir's criminal history. The lengthy list of criminal activity
referred to in the hearing transcrip is a distortion of the prisoner's record. The
Board is barred from considering "other criminal misconduct" which is not
"reliably documented", see People v. Callaway (1974) 37 C.A. 3d 905; In re
DeLuna (2005) 126 Cal. App. 4th 585, 598; Cf. Van Houten, 116 Cal. App. 4th at
353 (inmate's arrest record did not constitute "some evidence" of a threat to public
safety because the alleged acts did not involve serious injury or attempted serious
injury to a victim). The following charges should not have been considered in the
Board hearing:

1.  5-6-57.  Dyer Act.  (Board transcript at pg. 17, line 9  through 14).

2.  7-19-61.  Burglary  (Board transcript at  pg. 18, line22-25).

3.  7-21--61.  Parole violation (Board transcript at pg. 22)  This is the same charge
    as  #2 above.

4.  11-22-62.  Citizen arrest-Malicious Mischief  (Board transcript at page 19, line
    1-2)

5.  11-23-62.  Malicious Mischief  (Board transcript at  pg. 19, line 3,4 and 5.  The
    11-22-62 at  #4 above is the same charge.

6.  7-12-64.  D. C.  (Board transcript at pg. 9, line 10-11.

7.  1-5-65.  LL.  (Board transcript at pg. 19 line 13-14).

8.  6-20-65  Dram Shop  (Board transcript at pg. 19, line 115-18)



Ex. "8"

9. 6-21-65. Violation of Dram Shop (Board transcript at pg. 19, line 20-21. The 6-20-65 charge at #8 above is the same charge).

10. 1-13-65. Citrus Jr. (Board transcript at pg. 20 line 1-4).

11. 12-1-51. Violation of probation (Board transcript at pg. 20, line 11-12).

12. 1-30-66. Burglary (Board transcript at pg. 20, line 6-7).

13. 11-9-68. Burglary (Board Transcript at pg. 20, line 26-27).

14. 110-70. Accessory to felony (Board transcript at pg. 21, line 5-9).

15. 610-70. Prisoner witness (Board transcript at pg. 21, line 5-9).

16. Assault to police officer (Board Transcript at pg. 21, line 24-25).

17. 32-78. DWI (Board transcript at pg. 21, line 27 and pg. 22, line 1-4).

18 156. Grand theft (Board transcript at pg. 17, line 7 through 14)

Mr. Weir's actual record is correctly reflected by the attached copy of Prior Record.


Submitted by

David J. Spowart, Attorney at Law



c/c Duane R. Weir

WEIR, DUANE ROY                                          February 20, 1979

PRIOR RECORD:                              According to the Federal Bureau of

Investigation, the Bureau of Identification and the San Bernardino Sheriff's Office,

the defendant has the following prior record:

| DATE | AGENCY | CHARGE | DISPOSITION |
|------|--------|--------|-------------|
| 5-6-47 | PD Muskogee, OK | Dyer Act | 11-28-56 2 yrs. prob. 6-10-56 3 yrs. custody of Att. General National Training School 10-1-58 Term 3 yrs. |
| 3-1-60 | PD Beverly Hills | GTA | 5-16-60 CYA 12-20-60 Paroled 7-23-64 discharged |
| 1-5-65 | SO Hefferson, WI | | P/G Disorderly Conduc 3 days jail |
| 7-15-65 | SO San Bernardino | Grand Theft | 6-30-66 State Prison 7-1-68 Paroled 7-26-72 Discharged |
| 5-1-66 | PD Long Beach | Evade Arrest; Reckless Driving | 5-2-66 P/G to Reckle Fine $275 |
| 8-28-69 | SO Riverside | Drive w/License Susp. or Revoked | 8-28-69 Serve 180 dy |
| 5-11-70 | SO Riverside | Drive w/License Revoked or Susp.; Escape | 9-4-70 State Prison susp., 3 yrs. prob. 60 dys. cust. |
| 9-27-73 | PD Long Beach | Carry Conc. Weapon Loaded Firearm w/in City Limits | Fine $150 |
| 11-8-73 | SO Riverside | Driving While Intoxicated | P/G fine $182, 24 mo prob. |
| 12-4-73 | SO San Bernardino | Driving While Intoxicated | P/G fine $240, 3 yrs Summary Probation |
| 2-20-74 | PD Pomona | DWI; Drive w/License Susp. or Revoked | FTA forfeit bond 3-10-78 P/G to DWI, Serve 9 dys. |

1513

## 11. NOTE TO CDC STAFF: RECOMMENDATIONS AND REQUESTS

☒ 3. the panel's belief that the prisoner's current mental health is an important issue. In the new full evaluation, the panel requests that the clinician specifically address the following:

☐ a. the prisoner's violence potential in the free community;

☒ b. the significance of alcohol/drugs as it relates to the commitment offense and an estimate of the prisoner's ability to refrain from use/abuse of same when released;

☐ c. the prisoner's psycho-sexual problems;

☒ d. the extent to which the prisoner has explored the commitment offense and come to terms with the underlying causes;

☐ e. the need for further therapy programs while incarcerated.

☒ f. other: *Please review Governor reversal ltr date 9-13-03 regarding the need for participation in Alcoholics Anonymous*

☐ 4. the panel's belief that the prisoner has deteriorated psychologically and there appears to be a need for treatment. The panel bases this conclusion upon

*[signature] 4-6-04*

☐ B. (Other requests to CDC staff):

*Weir, Duane          C-02190*

Ex. "9"

has been attending narcotics anonymous for the past six (6) months.
He has actively participated in the program and
he has good attendance habits.


Central file
CC 1
Instructor file
✓Inmate copy

DATE        January—June 1989

GENERAL CHRONO

---

NAME and NUMBER                                                    CDC-128-B (Rev. 4/7

          WEIR.D          02190          LB-330

    INMATE.D.WEIR,C-02190,LB-330,HAS PARTICIPATED IN NARCOTICS ANONYMOUS
PROGRAM FOR APPROXIMATELY EIGHT (8) MONTHS. I/M WEIR'S, ACTIVE PARTICIPATION
HAS BEEN MINIMAL; HOWEVER,ATTENDS THE MEETING REGULARLY. I EXPECT FUTURE
ACTIVE PARTICIPATION.

CC:ALL CONCERNED
C-FILE
CC-I                                R.E. LARUE
CC-II                        NARCOTICS ANONYMOUS/SPONSOR
INMATE COPY

DATED: 2/17/89

---

DATE

                                                        GENERAL CHRONO

NAME and NUMBER     Weir, D.     C-02190     NIN N.D. 64U        CDC-128-B (Rev. 4/74

    Inmate   Weir                      has been attending
narcotics anonymous for the past six (6) months.
He has actively participated in the program and
he has good attendance habits.


Central file
CC 1
Instructor file
✓Inmate copy

DATE        July—December 1989

Ex. "10"

GENERAL CHRONO

anonymous for the last three (3) months.

He has been actively participating and he has had a good

attendance record.

Central File
CC-I
Instructor File
Inmate Copy

*LR Gaines*

Lee GAINES
N.A. Sponsor
CTF-NORTH Facility

DATE    March 31/1990

GENERAL CHRONO

NAME and NUMBER    WEIR    C-02190    ND-64U    CDC-128-B (Rev. 4/74)

Inmate   WEIR   has attended narcotics

anonymous for the last six (6) months.

He has been actively participating and has had a good

attendance record.

Original; C-File
cc; inmate

*LR Gaines*

Lee Gaines N.A. Sponsor

C.T.F. North Facility

DATE  JAN/4/1991

GENERAL CHRONO

NAME and NUMBER    WEIR, D.    C-02190    ND-64-L    CDC-128-B (Rev. 4/74)

Mr. Weir has been a member of the Narcotics Anonymous program at the
Correctional Training Facility--North for the quarter ending March 1991 He
has shown the ability to relate with the group and to improve himself through
involvement with it.  His participation in this program has demonstrated a
willingness to cooperate in the smooth atmosphere of the Narcotics Anonymous
environment.

ORIGINAL:  Central File
    CC:  Inmate

*Mona Kilgore*
Mona Kilgore
Sponsor, North Facility N.A. Group

DATE:  May 30, 1991    LAUDATORY    GENERAL CHRONO

NAME and NUMBER     WIER        C–02190      RB–307                    CDC-128-B (Rev. 4/74)

Inmate Wier, C-02190, RB-307, became an active member of Narcotics Anonymous here
at North Facility on 01/01/92 through 03/31/92. Narcotics Anonymous is a self-help
program, and I hope that he continues to participate in this program in the future.


Original: Central File
        CC: Inmate __

P.T. Nielsen
N. Anonymous Sponser
CTF-North Facility


DATE  04/13/92    (INFORMATIONAL: SELF-HELP-N. ANONYMOUS)   CTF-N          GENERAL CHRONO

le group as  he continues to participate as he contributes positively.

Original:  Central File
CC:  Sponser
     Inmate

P.T. Nielsen, CC-I
Sponser, Narcotics Anonymous
CTF-North Facility

DATE:  07/27/92  ( INFORMATIVE: PARTICIPATION IN NARC. ANONYMOUS)          GENERAL CHRONO

NAME and NUMBER    WEIR, D.                    C-02190    ND 07L
                                                          CDC-128-B (Rev. 4/74)

Mr. Weir is a member of the Narcotics Anonymous program at the Correctional
Training Facility--North. The NA Program was discontinued in December 1992
due Lock Downs, Fog Counts and to Mission Change at CTF.  The NA Program was
resumed in June of 1993.  Mr. Weir has shown the ability to relate with the
group and to improve himself through involvement with it.  His participation
in this program has demonstrated a willingness to cooperate in the smooth
atmosphere of the Narcotics Anonymous environment.

Mary CB. Johnson
Sponsor, North Facility N.A. Group

ORIGINAL:  Central File
CC:  Inmate

DATE    June 16, 1993          LAUDATORY          GENERAL CHRONO

NAME and NUMBER    WEIR, C02190                    DO07L
                                                          CDC-128-B (Rev. 4/74)

Mr. WEIR has been a member of the Narcotics Anonymous program at the
Correctional Training Facility--North for the quarter ending December 1993.
He has shown the ability to relate with the group and to improve himself
through involvement with it.  His participation in this program has
demonstrated a willingness to cooperate in the smooth atmosphere of the
Narcotics Anonymous environment.

ORIGINAL:  Central File
CC:  Inmate

Mary Johnson-Mulhern
Sponsor, North N.A. Group

DATE    December 30, 1993          LAUDATORY          GENERAL CHRONO

This inmate ... in a course of individual therapy. During the course of this therapy, his understanding of his commitment offense was explored, as well as the factors which led up to it. Programs completed and other evidence of his efforts to change were discussed, and he detailed his future plans and goals. As a result of this therapy and his increasing self-understanding, his violence and recidivism potentials should be less than for the average inmate

Orig: C-file:
Copy: Unit PA/CC
      Inmate
      Medical file
      Chrono file

*Bruce Bakeman, Ph.D.*
BRUCE M. BAKEMAN, Ph.D.
Clinical Psychologist
CTF - Soledad

DATE: 8/1/94   WEIR      C-02190     ch  MEDICAL-PSYCHIATRIC-DENTAL

---

NAME and NUMBER: WEIR   C-02190   N.D. 064   SEE CENTRAL CDC 128-G

Inmate Weir was an active and successful participant in the Lifeskills Group. This group met one hour per week for ten weeks. Its purpose was to encourage better impulse control and more effective living. Topics discussed included substance abuse, overcoming anger and aggression, stress management, forming life goals, building self-esteem, improving problem-solving skills, and re-entry--making a successful return to society.

Orig: C-file
CC:  Unit PA/CC-I
     Inmate
     Psych file
     Chrono file

*Bruce Bakeman, Ph.D.*
BRUCE M. BAKEMAN, Ph.D.
Staff Psychologist
CTF, Soledad

DATE: 01/25/91   WEIR   C-02190   gj  MEDICAL-PSYCHIATRIC-DENTAL

---

NAME and NUMBER WEIR, DUANE
              C-02190                              CDC

Mr. Weir requested verification of his completion of the following therapy groups while at CMC-East:

   Beginning Stress Management & Relaxation Training
   Communication Skills Training
   Self-Esteem and Assertiveness Training
   Reality and Decision Making Skills.

This chrono reflects that he did complete all four groups with regular attendance while at CMC-East.

*Gary A. Elem, Ph.D.*       Ex. "11"
Gary A. Elem, Ph.D.
Staff Psychologist
Group Treatment Coordinator

DATE 3-28-88                  MEDICAL-PSYCHIATRIC-DENTAL
                THERAPY GROUP COMPLETION

Original – C-File
   cc – Psych
      AWC
      Inmate

*Joe Reed*
JOE REED
CSPP DOCTORAL TRAINEE

*Gary Elem*
GARY ELEM, Ph.D.
STAFF PSYCHOLOGIST

T:   08-10-87/peg


DATE   06-25-87   BEGUN GROUP          CMC-EAST               MEDICAL—PSYCHIATRIC—DENTAL

NAME and NUMBER     WEIR, Duane          C 02190          Room ~~5402X~~          CDC-128-

Inmate has successfully completed an eight-week Reality and Decision Making Group.  Course
work focused upon the following topical areas:  attitude, problem solving techniques;
values and feelings clarification; goal orientation, impulsive behavior; and various
concepts of William Glasser, Ph.D., Eric Bernie, M.D., etc.  The inmate actively
participated in class discussions and exercises.  He demonstrated a good working knowledge
of the latter topical areas.

ORIG:  Central File
  cc:  Psych File
      AWC File
      Inmate

*Joe Reed*
JOE REED
CSPP Doctoral Trainee

*Gary Elem*
GARY ELEM, Ph.d.
Staff Psychologist


DATE    8/27/87   END GROUP          CMC-EAST               MEDICAL—PSYCHIATRIC—DENTAL

NAME and NUMBER     WEIR, Duane Roy          C-02190      6104          CDC-128-C

Subject has requested that his name be placed on the group therapy waiting list
for the following groups, as the Board of Prison Terms has recommended that he
complete these before his next Board hearing:

Stress Management and Relaxation Training
Self Esteem and Assertiveness Group.


cc:  Psych, AWC, Inmate

*Gary Elem*
Gary A. Elem, Ph.D.
Staff Psychologist


8-10-87          GROUP THERAPY W/I          CMC-E. am     XXXXXXXX—PSYCHIATRIC—DENXXXXX

# YUKEFELLUWS

*Plaza View Chapel, California men's Colony*

NAME: Duane Weir   NUMBER: C-02190   ROOM: 610L

You have been assigned to Yokefellow Group # 60, effective 9/28/87.

Your group meets: MONDAY at 7:00 pm. Hosp. Corr., B-106.
DAY   TIME   PLACE OF MEETING

Sponsor Chuck Deale

THIS IS YOU TEMPORARY ACTIVITY CARD
(Expires 30 days from effective date)

Moderator Brian Thomas

THANK YOU:

Bruce Gordon
Yokefellow Coordinator

Dr. Stanley L.H. McGuire,
Protestant Chaplain

---

# YOKEFELLOWS

*Plaza View Chapel, California men's Colony*

NAME: Duane Weir   NUMBER: C-02190   ROOM: 610L

You have been assigned to Yokefellow Group # 30, effective 10/27/87.

Your group meets: Tuesday at 6:30 pm. Hosp. Corr. Rm B-108
DAY   TIME   PLACE OF MEETING (or B-106

Sponsor Keith Brummel

THIS IS YOU TEMPORARY ACTIVITY CARD
(Expires 30 days from effective date)

THANK YOU:

Bruce Gordon
Yokefellow Coordinator

Dr. Stanley L.H. McGuire
Protestant Chaplain

---

...terviewed this 43-year-old white native of Edgeston, Wisconsin, married two daughters, with an 8th grade education, a mechanic by trade, this ...ing in the Men's Clinic, per inmate request.

"...fer" (187 P.C.), having been told by the Board (his third) that he ...to get into some kind of Group", and expressing an interest in ...ling, inmate is referred to this writer's Wednesday 1930 hours Psycho-...peutic Group.

and NUMBER   WEIR, D.   C-02190/06-87

CDC:128-C

A.M. Charlens, Ph.D.
Staff Psychologist

MEDICAL-PSYCHIATRIC-...

---

E 10/20/86   WEIR, C-02190   CRC/Norco AMC/wd
writer/chrono file
CCI/Psych file
g:   Central file

Karl Loresch

YOKEFELLOW DIRECTOR    To    Duane Weir    C-02190    Rm 61

Plaza View Chapel - California Mens Colony    Phone: Ext. 7539

Dear Duane,

Here is the temporary activity card for Yokefellow Group 30, Which meets on Tuesday at 6:30 pm. The next meeting will be in the Hospital Corridor on Oct. 28, this Tuesday. They are scheduled for room B-108, but they may meet in room B-106. One topic which will be discussed will be the possibility of moving the meeting to the Protestant Chapel. But for now, they meet in the Hosp. Corr.

Yours in Christ,

Bruce Gordon
Yokefellow Coordinator

---

### INMATE ACTIVITY CARD

No. C-02190    Name WEIR, DUANE R.

IS AUTHORIZED TO PARTICIPATE IN

THERAPY    QUA

(Name of Activity)

6:00 pm    A.M.    A.M.
P.M. To    P.M.

During the hours of
on the following days or dates:

L. S. Smith
Department Head

CDC-133    EXPIRES    NOV 15 1987

AME and NUMBER WEIR , D    C-02190    LB-330    CDC-128-B (Rev. 4/74)

The above mentioned inmate is an active member of the "We Care" program at CTF-North. The "We Care" program is designed to introduce juvenile offenders to the realities of prison life as a deterrent to continued criminal behavior. Members of the "We Care" program, shares what they perceive to be the causative factors that brought them into conflict with their peers, parents, teachers, and finally the criminal justice system, with youths who are starting to experience varying levels of anti-social behavior.

Inmate, WEIR, is a member of the "We Care" program, as of January 27, 1989.

                                        V. JORN
    cc:  Inmate C-File                  "We Care" Sponsor
         CC-I                           CTF-North & South
         Inmate
         "We Care" file

DATE    2/14/89                                    GENERAL CHRONO

---

NAME and NUMBER  WEIR, D.    C-02190    ND/64-U    CDC-128-B (Rev. 4/74)

Inmate Weir has been an active member of the CTF-North "We Care" program since September, 1988. The "We Care" program has been designed to be a deterrent for criminal behavior in juveniles. Inmate Weir shares with these juveniles what he percieves to be the causative factors that brought these juveniles into conflict with their parents, teachers, peers, and finally the criminal justice system. Inmate Weir is a very conscientious and concerned individual when it comes to these youths. His participation in the "We Care" program has not only given insight to these youths, but has also given Weir positive insight that he will need to participate in the world once released back into society. Inmate Weir has been an asset to the "We Care" program and on behalf of the group and myself, I thank him and encourage continued positive behavior.
ORIG: C-File
   cc: Inmate
       CC-I
       Sponsor                          V. JORN
       "We Care" File                   "We Care" Sponsor
                                        CTF-North/South Facilities
DATE   June 12, 1990
                                                   GENERAL CHRONO

Ex. "12"

NAME and NUMBER    DUANE W. R    C-02190    LB-330    Cl. North    CDC-128-B (Rev. 4/74)

LAUDATORY CHRONO

Since October 1, 1988, Mr. Weir has donated 6-18 hours per week of his own time to work in the North Facility Library as a volunteer. During this time he has assisted the Chief Legal Clerk in cataloguing a large portion of the law collection. A process which is both tedious and lengthy. Mr. Weir's generosity is much appreciated and merits recognition.

cc: Records
    CCI
    Library
    Inmate

M. LeDonne, Sen. Librarian
CTF-North Library

DATE  February 14, 1989

GENERAL CHRONO

Ex "13"

Prison Industry Authority
Inmate Employability Program

## Certificate Nomination Form

Date: __July 31, 2002__

### Identifying Information

| | |
|---|---|
| Inmate Name (first, last): Duane Weir    CDC# C-02190 | |
| Job Title: Journeyman | |
| D.O.T. Code: 787682058 | |
| Specialty (if applicable): | |
| Number of hours (to date) in this job: 14,842.13 | |
| Institution: C.T.F. | |
| Enterprise: P.I.A. | |
| Supervisor Name: S. Franklin | |

### Criteria Checklist*

All of the following criteria must be met before an inmate is nominated to receive a skills certificate:

- ☒ Must have a minimum of 1,500 hours on the same equipment/job.
- ☒ Demonstrates a comprehensive knowledge of machinery/equipment, including set-up, operation, and/or maintenance & repair.
- ☒ Understands the safety requirements of the job and regularly incorporates safety procedures.
- ☒ Consistently meets or exceeds production standards.
- ☒ Understands and achieves quality standards.
- ☒ Consistently demonstrates a good attitude and work habits.

* For a more detailed explanation of the above criteria, please refer to the attached guidelines which show which jobs are certifiable (by specific enterprise) and present examples of how these criteria are met.

### Supervisor Certification

*I hereby certify that the above referenced inmate worker has met all of the minimum requirements (shown above) necessary to be nominated to receive a PIA Skills Certification in his/her job area.*

_____ 8/02/02            _____ 8/2/02
Supervisor's Signature   (date)         Superintendent's Signature   (date)
S. Franklin                             E. Robinson

Note: Send a copy of this form to the Inmate Employability Program (IEP) Coordinator in PIA Central Office at 560 E. Natoma Street, Folsom, CA 95630. Keep a copy in your inmate/factory file. Questions? Contact IEP Coordinator at (916) 358-2656.





STATE OF CALIFORNIA
CDC 101 (Rev. 4/92)

# WORK SUPERVISOR'S REPORT

DEPARTMENT OF CORRECTIONS

| GRADES | GRADE | | | GRADE |
|---|---|---|---|---|
| 1 = Exceptional | 2 | A. Demonstrated Skill and Knowledge | F. Teamwork and Participation | 2 |
| 2 = Above Average | 2 | B. Attitude Toward Fellow Inmates and Workers | G. Learning Ability | 2 |
| 3 = Satisfactory | 2 | C. Attitude To Supervisors and Staff | H. Use of Tools and Equipment | 2 |
| 4 = Below Average | 2 | D. Interest in Assigned Work | I. Quality of Work | 2 |
| 5 = Unsatisfactory | 2 | E. Effort Displayed in Assigned Work | J. Quantity of Work | 2 |

PAY STATUS: From $ 2/4.75    To $ SAME    From Job No. TEX-N.508    To Job No. SAME

Total No. Hours Assigned _____    Total No. Hours Worked _____

| SUBJECT ASSIGNED TO | DATE ASSIGNED | ACTUAL WORK CONSISTS OF: | PERIOD COVERED BY REPORT |
|---|---|---|---|
| Z-SHIFT TEXTILES | 12-01-89 | GARMENT ASSEMBLER / DARNER | JOURNEYMAN |

RECOMMEND FOR:  ☐ REASSIGNMENT    ☐ RETAIN    ☐ PAY INCREASE    ☐ PAY DECREASE

COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE) WEIR HAS WORKED IN NKCGH TEXTILES FOR 13 YEARS. HE HAS NO
SUPERVISORY PROBLEMS, AND IS CURRENTLY AT A JOURNEYMAN LEVEL WITH 14,842.13 EXPERIENCE.

| SUPERVISOR | WORK DETAIL | ETHNICITY |
|---|---|---|
| S. FRANKLIN, SUPERVISOR | P.I.A. | WHT |
| INMATE'S NAME | NUMBER | INSTITUTION | DATE |
| WEIR, D. | C-02190 | CMF-NORTH | 7-31-02 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128 A (8-87)

**NAME AND NUMBER**      WEIR, D.         C-02190

In sincere appreciation for your dedication, support, and hard work, as a Leadman, to the Prison Industry Authority's Fabric Enterprise. Your team efforts achieved a $546,000.00 production level with no past due orders for the Month of April 2002.

Thank you for all your hard work.

Orig: Central File
cc:    Inmate File
       Inmate

E. Robinson, Superintendent  II
CTF-North Textiles

DATE  6-12-02                 (LAUDATORY CHRONO)

**CUSTODIAL COUNSELING**

california **prison industry authority**

State of California • Department of Corrections

DATE: August 18, 2005

TO: California State Board of Prison Terms

FROM: Prison Industry Authority, CTF-Soledad

SUBJECT: FORMER P.I.A. WORKER VERIFICATION CARD

We would like to inform the Panel that upon receiving an established parole date and being ready to parole, Inmate **WEIR** will receive a Former P.I.A. Worker Card (yellow in color) indicating the following:

PAROLEE'S NAME: WEIR

TO: PAROLE AGENT

Be advised that this Inmate has a work history with the **Prison Industry Authority (P.I.A.)** where he learned specific job skills and developed valuable work habits in a business-like production setting.

Please ensure that this parolee is given **PRIORITY** in any job placement efforts by referring him to one of the following programs which may be available in your jurisdiction:

* Offender Employment Continuum

* Employment Development Dept. (EDD)

**WORK EXPERIENCE EVALUATION FORM**

This parolee should have a copy of his most recent P.I.A. Work Experience Evaluation which was given to him upon release. If you need to validate this work information or need an additional copy of this form, please contact the P.I.A. Inmate Employment Program Coordinator at: 1-877-276-7290

CHARLIE D. WALKER
Superintendent I / I.E.P. Coordinator
Prison Industry Authority
CTF-Soledad

Ex. "15"

**Correctional Training Facility • P.O. Box 700 • Soledad, CA 93960–0700**

NAME and NUMBER    WEIR   C-02190

CDC-128-B (Rev. 4/74)

Inmate **WEIR** has voluntarily participated in three (3) hours of Video Instruction / Discussion of issues related to successfully re-engaging into society. These instructions review the importance of having a strong support group, developing the ability to follow directions, the importance of substance abuse programs, identifying and controlling antisocial behavior, and changing the way we interact with others in society. With these attributes, Inmate **WEIR**'s chance for a successful re-entry into his community is greater. He is commended for his diligence and participation in our **Inmate Employability Program**.

CHARLIE D. WALKER
Superintendent II / I.E.P. Coordinator
Prison Industry Authority
CTF-Soledad

DATE  **AUGUST 18, 2005**              **LAUDATORY CHRONO**                    GENERAL CHRONO

Ex "16"

Case 3:07-cv-05955-TEH   Document 75   Filed 07/01/2008   Page 32 of 66

is voluntarily without pay or personal benifit of any kind. I commend WEIR for his exemplary
ttitude and recommend him for job placement of any kind.

R. Beaudreau, C/O
Position #540
Badger Section

UG:  C-File
     Counselor
     Inmate

TE 11-26-83        (LAUDATORY CHRONO)        S.Q.        GENERAL CHRONO

AME and NUMBER        WEIR, D        C-02190        ND-64U        CDC-128-B (Rev. 4/74)

## LAUDATORY CHRONO

Inmate Weir, D. C-02190, ND-64U, was assigned to North Fabric Products on 12-1-89.
Since that time Weir has become a skilled operator and has learned several different
operations on blue jeans as well as jumpsuits. Weir has always been punctual and
has never been a supervisory problem. He gets along well with staff and peers.

        Orig: Central File
        cc: Unit I P.A./North Dorm          G. Soltani
            North Dorm CCI                  Asst. Superintendent
            Textiles File                   Fabric Products
            Inmate                          5/5/90

ATE  May 5, 1990                                    GENERAL CHRONO

NAME and NUMBER        WEIR, D.        C-02190        ND-64-L        CDC-128-B (Rev. 4/74)

Inmate WEIR, D. C-02190 has been assigned to North Textile Factory since 12-1-89. Since
such time, inmate WEIR has steadily progressed in this program. His skills encompass, Over-Lock
operator, Bar-tack an Single Needle sewing machine. Inmate WEIR demonstrates a positive
aattitude toward his assignment and fellow inmates and staff, as well as demonstrating good
work habits. It is the opinion of this writer that inmate WEIR has used his time wisely while
assigned to this program.

        DIST: Central File
        cc:  Counselor CCI
             Textile File
             Inmate
                                    S.M. MARTINE, Supervisor
                                    North Fabric Textile

                                                    Ex."17"

DATE:    Jan. 23rd, 1991        Laudatory        GENERAL CHRONO

Inmate WEIR, D. C-02190 has been assigned to North Textile Factory since 12-1-89. Since that time, inmate WEIR has become a skilled leadman (Position #4073-P). Inmate WEIR has shown excellent work habits and has been dedicated to a quality attitude. His work has helped keep the Z-shift's production floor running smoothly. Inmate WEIR is always willing to help where ever he is needed and aways shows respects towards his supervisors. Inmate WEIR is an asset to the North Textile Factory program.

cc: C-file
    CCI
    Supervisor
    Inmate

S.H.MARTIN SUPERVISOR
NORTH FABRIC PRODUCTS
CTF-SOLEDAD

DATE 8-10-91

(LAUDATORY CHRONO)

GENERAL CHRONO

---

NAME and NUMBER WEIR, D. C-02190 POS# 4071-P ND-07L

CDC-128-B (Rev. 4/74)

I/M WEIR,D. ,C-02190 POSITION # 4071-P,HAS BEEN ASSIGNED TO THE NORTH TEXTILE ROGRAM SINCE 12-01-89. DURING THIS ASSIGNMENT PERIOD SUBJECT HAS RECEIVED NUMEROUS 90-DAY 101 ORK SUPERVISOR REPORTS WHICH REFLECT ABOVE AVERAGE TO EXCEPTIONAL GRADING.I/M WEIR HAS MAINTAINE POSITIVE ATTITUDE AND A HIGH STANDARD OF WORK ETHICS.SUBJECT HAS PROGRESSED THROUGH ALL PHASES F OPERATIONS WITHIN THE SCOPE OF THIS GARMENT FACTORY.CONSEQUENTLY I/M WEIR WAS ASSIGNED AS A AA" LEADMAN/TRAINER ON 12-01-92.I/M WEIR CARRIES AN ABUNDANCE OF RESPONSIBILITY AND ALWAYS ONDUCTS HIMSELF IN A PROFESSIONAL MANNER WITH SUPERVISORS AND PEERS.I/M WEIR IS CONSIDERED A TOP EVEL EMPLOYEE AND ALWAYS STRIVES FOR QUALITY AND QUANTITY IN PRODUCTION.SUBJECT IS TO BE OMMENDED FOR HIS EFFORT AND POSITIVE INFLUENCES IN HIS ROLE AS A "AA" LEADMAN/TRAINER.

RIG: C-FILE
CC: UNIT COUNSELOR
    FACTORY FILE
    INMATE ✓

(128-B LAUDATORY CHRONO)

G. SOLTANI, SUPERINTENDENT-I
CTF-NORTH FABRIC PRODUCTS

DATE 4-14-94

GENERAL CHRONO

---

NUMBER Weir, D. C-02190 ND-07L (4071)

CDC-128-B (Rev. 4/74)

Laudatory Information. Inmate Weir has been assigned as the Supervisory Leadman in the North Facility Garment Factory since 1989. His professional approach in achieving factory milestones, coupled with his attentive progression in meeting program training standards has earned him respect and responsibility in the work-place. His interpersonal skills in communicating with staff and inmates has always been honest and professional. His influenes to fellow inmates in the factory] are positive motivators for both the quality and quantity of our manufactured goods. Inmate Weir's four years of performance evaluations grade him as above average to exceptional. He has always maintained an acquiescent attitude with his supervisors; and should be commended for his positive contributions as a Supervisory Leadman to the Correctional Training Facilities Textiles Program.

Orig: Central File
    cc: CCI
        Inmate/File

P.H. Greenwood
Superintendent I

DATE February 15, 1995 CTF-North

GENERAL CHRONO

E WAS GREAT... SITUATION. HIS ATTITUDE WAS COMMENDABLE.

_____          _____
T. K. HOWARD, SUPV.              K. CARTER, SUPT. II

LAUDATORY CHRONO

GENERAL CHRONO

DATE        11-15-07        CTF-NORTH

NAME and NUMBER    Weir, D.     C-02190     LB-330L        CDC-128-B (Rev. 4/74)

This writer has known and observed Inmate Weir, C-02190, LB-330L, for approximately one (1) year. In this time, I have observed Inmate Weir to be both considerate and respectful towards staff and inmates alike. Inmate Weir is always willing to offer his assistance in any Hall clean-up/job. I would like to commend Inmate Weir for his behavior/attitude.

Orig: C-File
cc: Unit P.A.
    CC-I
    Inmate

W.B. Garnett C/o
W.B. Garnett, C/O
Lassen 'B' Section Officer
CTF-North Facility

DATE    5-4-89        (LAUDATORY CHRONO)        GENERAL CHRONO

NAME and NUMBER    WEIR, Duane    C-02190    LB-330L    CDC-128-B (Rev. 4/74)

Inmate Weir, C-02190, has been assigned, under my direct supervision, as a Lassen 'B' Section Porter, P.M. (Pos. #4660N) for approximately seven (7) months. During that time Weir's conduct has been exemplary. He is courteous towards Supervisors and Staff and is a dependable self-motivated worker. He gets along well with other workers and is a good team worker. This chrono acts to commend Inmate Weir for his conscientious work habits and his exemplary attitude towards work and staff.

Orig: Central File
cc: P.A. Lassen Hall
    CC-I
    Inmate

G. Schlittenhart  C/o
G. Schlittenhart, Correctional Officer
Lassen Hall, 'B' Section, Third Watch
CTF - North Facility

Ex. "18"

DATE    5/5/89        (LAUDATORY)        CTF-N

GENERAL CHRONO

Case 3:07-cv-05955-LH Document 25 Filed 07/01/2008 Page 35 of 66

e both considerate/and respectful towards staff and inmates. Weir is a dependable self-motivated worker and is always willing to offer his assistance in any Hall clean-up job. This Chrono is to commend Weir for his conscientious work habits and his exemplary attitude towards work and staff.

Orig: C-File
cc: Unit P.A.
     CC-I
     Inmate

D. Kelley, C/O
Lassen "B" Section Officer
Third Watch
CTF-North Facility

11-7-89       DATE       (LAUDATORY CHRONO)

GENERAL CHRONO

NAME and NUMBER    Weir, D.      CO2190      LB-330L      CDC-128-B (Rev. 4/74)

This Writer has known Inmate Weir, CO2190, LB-330 for approximately Sixteen (16) months. In this time, this Writer has observed Inmate Weir be both courteous and respectful to Staff and his fellow inmates. Inmate Weir has also shown a willingness to preform more than his normal share of work in maintaining the cleanness of the Hall. This Writer wishes to commend Inmate Weir for both his attitude and his good sense of responsibility in the time that this Writer has known him.

Orig: C-File
cc: Unit P.A.
     CC-I
     Inmate

W.B. Garnett, C/O
Lassen 'B' Section, 2nd Watch
CTF-North Facility

DATE 11-9-89      (LAUDATORY CHRONO)

GENERAL CHRONO

POST BOARD: IN ABSENTIA

CPP TEXTILES, BPT RX REVIEWED, I/M UNDERSTANDS, DOUBLE CELL/DORM OK, NO MDO CONCERNS PER 3375.2, LEVEL II HOUSING APPROPRIATE.

| | | | | | |
|---|---|---|---|---|---|
| Custody: | MED A | Next BPT: | 3/07 | Level: | II |
| GPL: | GED | Reclass: | 3/07 | CS: | 19 |
| Work Group: | A1 | Privilege Group: | A | RPS: | n/a |

WEIR case factors were reviewed in absentia by Unit V U.C.C. today for a Post Board Program Review. The Board of Prison Terms conducted a Subsequent Parole Consideration Hearing on 3/13/06. The Board made the following decisions and recommendations: Parlole denied 1 year. Stay discipline free. Get self-help. Earn positive chronos. WEIR was informed that his next anticipated Board of Prison Terms Hearing is 3/07. He was issued a copy of the hearing results at an interview on 3/16/06. WEIR stated that he understands the contents and disagrees with the Board's findings. WEIR asked at the interview if there were still the programs, Impact and Project C.H.A.N.G.E. At the present time both programs have been discontinued. There are limited opportunities for self-help programs. COMMITTEE ACTIONS: The Committee elects to continue the present program for textiles. COMMENTS: WEIR participated in today's U.C.C. and acknowledged his understanding of the Committee's actions. Committee's actions are not adverse and the action was taken at the inmate's written request. WEIR will be notified of the Committee's action. This classification was held within 15 days of receipt of decision. This UCC acts as WEIR's Annual Classification. He received 2 periods of no 115's and 2 periods of average or better for work.

CHAIRPERSON: C. PLYMESSER, FC(A)

Panel:      C. PLYMESSER, FC(A): R. STRICKLIN, CCI(A): J. STUDEBAKER, CCI /jjs

Recorder: J. STUDEBAKER, CCI

Dist.: C-File
        Inmate

DATE: 3/16/06          Classification: ANNUAL/POST BOARD          Inst: CTF-N

Ex."19"

## PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
### UPDATE CLINICAL EVALUATION
### JANUARY 2006

### CORRECTIONAL TRAINING FACILITY
### JANUARY 13, 2006

| | |
|---|---|
| NAME: | WEIR, DUANE |
| CDC#: | C-02190 |
| DOB: | 7/10/43 |
| OFFENSE: | PC 187, Murder, First Degree |
| SENTENCE: | 7 years to life |
| DATE OF OFFENSE: | 3/2/78 |
| MEPD: | 3/10/85 |
| EVALUATION DATE: | 1/13/06 |

## I.   IDENTIFYING INFORMATION

Mr. Duane Weir is a second term, 62 year old, Caucasian, male from Los Angeles County. He is a Christian. He has remained married to the same woman that he was married to prior to his incarceration. The marriage is still intact and is supportive. He has 28 years in custody.

## II.  SOURCES OF INFORMATION

This report is based upon a single 90 minute interview, plus review of the Central file and medical file.

The previous psychological evaluation dated 12-24-99 by M. Carswell PHD. Psychologist at CTF Soledad is still current and valid. The psychosocial assessment done at that time was reviewed with Mr. Weir. It remains current and valid. Therefore, this information will not be repeated in this report.

A current psychological evaluation was requested to focus on the issue of Mr. Weir's alcoholism and whether this is a current problem in his life. The need for forward participation and self-help or therapy was to also be addressed.



Ex. "20"

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

## III.  CLINICAL EVALUATION AND MENTAL STATUS

Mr. Weir appears to be his chronological age of 62. Hygiene and grooming was good. He was alert and well oriented.  His thinking was rational chronological, and coherent. His speech was normal, fluent and goal oriented. Eye contact was good. Affect was appropriate. There is no evidence of anxiety or depression. Intellectually he is functioning in the average ranges. His judgment was in tact. His memory is in tact and his self awareness and insight was very good.

Mr. Weir is a second termer. He does have a history of criminal involvement. He is a product of a criminally oriented family in which the parents encouraged the children to steal from stores in order to support the family. He began drinking alcohol as a teenager with his parent's approval. His parents were both alcoholics and were frequently in bars. He began delinquent behavior as a young teenager and continued then a life of crime until the commended offense. Mr. Weir did maintain stable employment prior to the commended offense. He was working as a journeyman mechanic and he specialized in the repair of transmissions. He has continued to work steadily throughout his years of incarceration. He is now a lead man in the PIA textiles program. He has well developed work ethics.

In an effort to address the issues raised by the board of prison terms panel, he was carefully interrogated about his thoughts and feelings about drinking alcohol at this point in his life. He stated that he thoroughly understands the severe harm that alcohol causes. He has developed deep feelings of revulsion against use of alcohol in his own life and in the life of others. He stated that at this point in his life that any indulgence in alcohol will make him physically sick. Alcohol has created irresponsible and irrational behavior in his past. Any use of alcohol would break his wife's heart. It is remarkable that the woman he was married to at the time of the commended offense has stuck with him throughout these 28 years of his incarceration. She is heavily involved in her church activities in West Covina. He spoke at length about how any use of alcohol in his life deeply hurt his wife, his other family members that have stuck with and his grand children. He spoke of how alcohol has caused 28 years of grief and loss to his family members as well as himself. He knew that inmate manufactured alcohol is readily available at this institution. Those who desire to use alcohol can access it easily. He has remained clean and sober throughout the 28 years since the commended offense occurred. This is evidence how his self control, and new found values to remain clean and sober, and his ability to say no to alcohol. He also spoke about his Christian beliefs. He spoke about his allegiance to Christ who is his Savior and Lord. He knows that the use of intoxicating alcohol is forbidden in the Christian Life. His values in this area appear to be thoroughly thought out, deep and

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

genuine. His commitment to remain clean and sober in the future and when he is released on parole appear to be sincere. He does continue to attend alcoholics anonymous as regularly as he can. Since he is housed in a dormitory at North Facility, and because North Facility is frequently locked down due to inmate riots, this program is often canceled. However attends as often as he can.   He states that he believes in AA and he enjoys participating in it.

In considering the current diagnostic impression he has been consistently diagnosed in the past as having alcohol dependence in institution remission as well as an anti-social personality disorder. In view on his strongly held values to remain clean and sober and his abstinence from alcohol for 28 years, alcohol dependence cannot be a current diagnosis. Alcohol dependence was a problem for him up until the age of 34. At this point in time it is no longer a problem and it does not warrant a diagnostic label. Therefore, his label will be deleted or noted only as a historical factor. Regarding the presence of anti-social personality disorder, Mr. Weir does have strong feelings of empathy towards other, concern towards others, and there is no evidence of anti-social or criminal thinking or values in his life at this point. He looks back on his out of control childhood and early years with feelings of sorrow, remorse and unhappiness. This man has changed considerably over his years of incarceration. There is no evidence of a personality disorder at this time. .

Current diagnostic impression

AXIS I:      No mental disorder.
AXIS II:     No personality disorder
AXIS III     No physical disorder
AXIS IV     Life term incarceration
AXIS V      GAF 90

## IV.   **REVIEW OF LIFE CRIME**

Mr. Weir stated that the victim in the commitment offense was shot during the time that Mr. Weir was walking towards the victim's house from his brother's house. He arrived after the shooting. However, he accepts full responsibility for his involvement in this robbery which led to the death of the victim. He indicated that if he had not become involved in the robbery that the victim would have not been attacked and hurt. In the past he has minimized his involvement in the commended offense. However, at this point I do not see evidence that he is minimizing his involvement. He looks back at his life at that time with unhappiness, recognizing that his values and thinking were irresponsible and

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

antisocial. He stated that he feels terrible about the elderly victim's death due to health problems as a result of the gun shot wound. His feelings of remorse appear to be sincere and genuine.

Mr. Weir's brother, the person that actually shot the victim, continued to lead a life of crime. After doing four years in participation in robbery he was never held responsible for the victim's death. He continued to engage in criminal behavior in Texas and is still in custody as a habitual offender.

V.  **ASSESSMENT OF DANGEROUSNESS**

A.  In considering a potential for dangerous behavior in the institution, Mr. Weir continues to remain disciplinary free. He has not had any serious disciplinary since 1983. He is holding a responsible position in PIA textiles. His thinking is pro-social and responsible. His potential for violence in the institutional environment is essentially nil.

B.  In considering potential for dangerous behavior when released to the community on parole, the Level of Service Inventory-Revised was administered. This is an actuarial measure that assesses criminal history which in his case is serious, substance abuse history which is in his case as serious and his progress in vocational goals, family life, and other factors. His score places him at the 5.1 cumulative frequencies in comparison to other prison inmates. This means if 100 men were released on parole, he would do better than 94 of them. The only negative factor is in his life are the historical ones that all occurred before he was 34 years of age. Based upon his current attitude and maturity, his potential for violence in the community is no greater than the average citizen and in fact be lower than the average citizen based upon his growth and maturity.

C.  The most significant risk factor in this significant case would be the use of alcohol. As outlined above in this report, his strong values against use of alcohol and his determination to remain clean and sober no longer makes this a significant risk factor.

VI.  **CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS**

There are no mental or emotional problems in this case that would interfere with regular parole planning. He does have excellent vocational skills that will enable him to secure

WEIR, DUANE
CDC NUMBER: C-02190
BPT TSYCHOLOGICAL EVALUATION
PAGE FIVE

employment easily in the community. He has a strong work ethic. He has a very supportive wife who has remained faithful and loyal over the years. He plans on attending his wife's church in West Covina. This church has numerous substance abuse programs. He plans on participating in these programs in his effort to remain clean and sober in the future. He spoke at length about his eleven grandchildren that he keeps in close contact With, through communication by phone and letters. His family appears to be very supportive and committed to him and his future success. All of these factors contribute towards a successful adjustment on parole. The prognosis for successful adjustment in the future in the community is excellent.


M. Macomber, PH. D.
Staff Psychologist
Correctional Training Facility, Soledad


B. Zika, PH. D.
Senior Psychologist
Correctional Training Facility, Soledad


MM/lc


D:    1/13/06
T:    1/13/06


Weir, Duane  C-02190              CTF-Soledad              1/13/06      lc

of this therapy his increasing rates of individual therapy. During the course as well as the factors which led up to it. Programs completed and other evidence of his efforts to change were discussed, and he detailed his future plans and goals. As a result of this therapy and his increasing self-understanding, his violence and recidivism potentials should be less than for the average inmate.

Orig: C-file:
Copy: Unit PA/CC
     Inmate
     Medical file
     Chrono file

*Bruce Bakeman, PhD.*
BRUCE M. BAKEMAN, Ph.D.
Clinical Psychologist
CTF - Soledad

**Ex. 21**

DATE: 8/1/94   WEIR     C-02190     ch  MEDICAL-PSYCHIATRIC-DENTAL

---

NAME and NUMBER:  WEIR  C-02190  N.D. 064  CTF-CENTRAL CDC-128-C

Inmate Weir was an active and successful participant in the Lifeskills Group. This group met one hour per week for ten weeks. Its purpose was to encourage better impulse control and more effective living. Topics discussed included substance abuse, overcoming anger and aggression, stress management, forming life goals, building self-esteem, improving problem-solving skills, and re-entry - making a successful return to society.

Orig: C-file
CC:  Unit PA/CC-I
     Inmate
     Psych file
     Chrono file

*Bruce Bakeman, PhD.*
BRUCE M. BAKEMAN, Ph.D.
Staff Psychologist
CTF, Soledad

DATE 01/25/91  WEIR  C-02190    gj  MEDICAL-PSYCHIATRIC-DENTAL

---

NAME and NUMBER WEIR, DUANE
      C-02190                                     CDC-128

Mr. Weir requested verification of his completion of the following therapy groups while at CMC-East:

Beginning Stress Management & Relaxation Training
Communication Skills Training
Self-Esteem and Assertiveness Training
Reality and Decision Making Skills.

This chrono reflects that he did complete all four groups with regular attendance while at CMC-East.

*Gary A. Elem*
Gary A. Elem, Ph.D.
Staff Psychologist
Group Treatment Coordinator

**Ex. 21**

DATE 3-28-88             MEDICAL-PSYCHIATRIC-DENTAL
         THERAPY GROUP COMPLETION

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
DECEMBER 1999 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SÓLEDAD
DECEMBER 17, 1999

This is the 13th psychological evaluation for the Board of
Prison Terms on inmate Duane Weir.  This report is the
product of a personal interview, conducted on 12/17/99, as
well as a review of his Central file and unit health record.
This single contact interview was for the express purpose of
preparing this report.

I.    IDENTIFYING INFORMATION:

      Inmate Weir is a 56-year-old, married, Caucasian male.
      His stated religious affiliation is Protestant.  No
      unusual physical characteristics were noted and he
      denied the use of any nicknames or aliases.

II.   DEVELOPMENTAL HISTORY:

      Inmate Weir is the third of nine children.  He stated
      there were no prenatal or perinatal concerns or birth
      defects.  He had no abnormalities of developmental
      milestones.  All speech, language and motor development
      occurred unremarkably.  He denied any history of
      cruelty to animals or any history of arson.  He stated
      he had no significant childhood medical history and
      denied any childhood history of physical or sexual
      abuse as either a perpetrator or a victim.

III.  EDUCATIONAL HISTORY:

      Inmate Weir attended public school through the eighth
      grade.  He received his GED in 1982 at San Quentin.
      Recent TABE scores were unavailable.

IV.   FAMILY HISTORY:

      Inmate Weir states that his mother died in 1997 and
      father soon after, also in 1997.  He has many siblings.
      He is particularly close to one sister and calls

WEIR      C-02190      CTF-NORTH      12/24/99      gmj

*Ex-22*

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

frequently. He characterizes his family relationships as close both historically and currently.

V. <u>PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION</u>:

Inmate Weir states that he is a heterosexual male. He denied any history of high-risk sexual behavior either prior to or since incarceration.

VI. <u>MARITAL HISTORY</u>:

Inmate Weir has been married for 27 years. He has two daughters who are now 27 and 26. He also has five grandchildren. He states that he phones every week and that he and his family are very close.

VII. <u>MILITARY HISTORY</u>:

Inmate Weir denied any history of military service.

VIII. <u>EMPLOYMENT AND INCOME HISTORY</u>:

Prior to his incarceration, inmate Weir was employed as an auto mechanic. Since incarceration, he has completed vocational auto mechanics in 1986. He has worked in textiles for the last ten years and has good chronos.

IX. <u>SUBSTANCE ABUSE HISTORY</u>:

Inmate Weir states that he started using alcohol approximately in his early 20s. He was under the influence of his commitment offense. He has attended Alcoholics Anonymous for approximately 15 years. He has also completed a Life Skills program and one on one therapy with Dr. Bakeman. He also completed self-help groups through CMC.

X. <u>PSYCHIATRIC AND MEDICAL HISTORY</u>:

Inmate Weir has no prior diagnoses nor serious illnesses. He has a current growth removed from his nose area and a biopsy is being performed this month (results unknown). He has had no medical or psychiatric hospitalizations and has had no serious accidents or head injuries. He has no history of

WEIR        C-02190        CTF-NORTH        12/24/99        gmj

WEIR, DUANE
CDC NUMBER:  C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

suicidal ideation or suicide attempts.  He has had no seizures or any other neurological condition.  He has had no history of disabilities or significant impairments.  He is on no medication at this time.

XI.  <u>PLANS IF GRANTED RELEASE</u>:

Should inmate Weir be given a parole date, he would parole to Los Angeles County and live with his wife. He will more than likely find employment as an auto mechanic and believes he will do fine on parole.

CLINICAL ASSESSMENT

XII. <u>CURRENT MENTAL STATUS/TREATMENT NEEDS</u>:

A.  Inmate Weir is a 56-year-old, Caucasian male.  He was appropriately dressed and groomed.  He was cooperative, calm and alert during the interview.  His speech was clear and readily understandable.  His affect was normal.  His flow of thought was normal with no hallucinations nor delusions noted.  He was fully oriented and his intellectual functioning was estimated to be in the average range.  His attention and concentration were adequate for purposes of this examination.  There was no evidence of a mood or thought disorder.  His insight and judgment appeared to be intact.  He showed good insight into his commitment offense.

B.  <u>CURRENT DIAGNOSTIC IMPRESSIONS</u>:

AXIS I:     Alcohol Dependence, in institutional remission.
AXIS II:    Personality Disorder, NOS.
AXIS III:   No Contributory Physical Disorder.
AXIS IV:    Incarceration.
AXIS V:     GAF = 75.

This inmate's ability to maintain his present gains in the community after release is positive.

XIII. <u>REVIEW OF LIFE CRIME</u>:

Inmate Weir continues to assert that his brother shot the victim, who died months later, and there is now

WEIR      C-02190      CTF-NORTH      12/24/99      gmj

WEIR, DUANE
CDC NUMBER:  C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

some question and controversy concerning the cause of
the victim's death.  Investigations have been held
recently.  The inmate does state, however, that he is
guilty of the robbery.  He takes responsibility for the
robbery and states that he is very sad that the victim
was shot.

XIV.  ASSESSMENT OF DANGEROUSNESS:

A.  This inmate has not received any CDC-115 violations
    since 1983.  Therefore, it is felt that he would
    pose a less than average risk for violence when
    compared to this Level II inmate population.

B.  If released to the community, his violence
    potential is estimated to be no higher than the
    average citizen in the community.

C.  Clearly, the most significant risk factor as a
    precursor to violence for this inmate would be a
    return to the use of alcohol.

XV.  CLINICIAN OBSERVATIONS, COMMENTS AND RECOMMENDATIONS:

A.  This inmate is responsible for his behavior.  He
    has the ability to abide by institutional standards
    and has been disciplinary-free for 17 years.

B.  This inmate has no mental health disorder which
    would necessitate treatment either during his
    incarceration period or after parole.

C.  Since this inmate admits having an alcohol abuse
    problem, he should attend Alcoholics Anonymous and
    have periodic testing as a mandatory part of
    parole.

*M. Carswell Php*

M. CARSWELL, Ph.D.
Staff Psychologist
Correctional Training Facility, Soledad

WEIR       C-02190       CTF-NORTH       12/24/99       gmj

WEIR, DUANE
CDC NUMBER:  C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FIVE


STEVEN J. TERRINI, Ph.D.
Senior Supervising Psychologist
Correctional Training Facility, Soledad

MC/gmj

D:  12/17/99
T:  12/24/99

1    from the Sheriff's office speaking in opposition.

2    The Panel makes the following findings: The Panel

3    finds that the prisoner has made progress.

4    However, the prisoner needs to certainly involve

5    himself in positive kinds of self-help programs,

6    the kinds that would enable him to face, discuss,

7    and understand and cope with stress in a non-

8    destructive manner.  At the top of the list

9    certainly would be substance abuse, anger

10   management, self-control, those kinds of programs.

11   Nevertheless, there are some things we want to

12   commend the prisoner for.  Disciplinary behavior

13   since 1983 certainly is commendable.  His work

14   reports, we certainly want to give him some

15   accolades for that.  However, those positive

16   aspects does not outweigh the fact of his

17   unsuitability.  Parole is going to be denied for

18   one year.  Also, another issue.  We really feel

19   that the Governor raised some valid points in his

20   denial letter, some issues that certainly need to

21   be resolved.  And we're going to ask that a new

22   psychological report especially address the issue

23   of alcoholism and the prisoner's need for further

24   self-help in those areas.  We also are going to

25   recommend that the prisoner remain disciplinary

26   free and that he participate in self-help programs.

27   **DUANE WEIR C-02190        DECISION PAGE 5      4/6/04**


Ex. "23"

BOARD OF PRISON TERMS                                                STATE OF CALIFORNIA
BPT 1073 - NOTICE AND REQUEST FOR REASONABLE ACCOMMODATION

**I. PRE-INTERVIEW FILE REVIEW (STAFF ONLY)**

Documents verifying/identifying disability:  (Check all verifying documents and attach copies to 1073.)

☐ CDC 128C  ☐ CDC 128C-1  ☐ CDC 128C-2  ☐ CDC 611  ☐ CDC 1845  ☐ CDC 1515  ☐ Current BPT 1073

☐ CDC 128B (TABE 4.0 or lower) Score/GPL _8.3_  ☐ Other documents_____  ☐ No verifying documents in file

☐ Accommodation is required for effective communication and/or access (enter type, i.e., sign language interpreter, staff assistance, assistive listening device, alternate accessible location, etc.):

**II. PRISONER/PAROLEE RIGHTS & SELF-IDENTIFICATION**

The Americans with Disabilities Act (ADA) is a law to help people with disabilities.  Disabilities are problems that make it harder for some people to see, hear, breathe, talk, walk, learn, think, work, or take care of themselves than it is for others.  Nobody can be kept out of public places or activities because of a disability.  If you have a disability, you have the right to ask for help to get ready for your BPT hearing, get to the hearing, talk, read forms and papers, and understand the hearing process.  BPT will look at what you ask for to make sure that you have a disability, that is covered by the ADA, and that you have asked for the right kind of help.  If you do not get help, or if you don't think you got the kind of help you need, ask for a BPT 1074 Grievance Form.  You can also get help to fill it out.

☐ I **do not** have a disability.  (Sign and date at the "X" below.)

☒ I **do** have a disability.

**My disability is:**

☐ Seeing      ☐ Talking      ☐ Reading  ☐ Hearing      ☐ Walking

☐ Understanding/Learning      ☐ Mental Problems   ☒ Other _Alcohol Not To be use in any hearing or decisions._

**I need help for my parole hearing:** (Check all boxes that apply to you)

☐ Reading        ☐ Understanding      ☐ Talking

☐ Hearing Device (type)_____              ☐ Wheelchair or _____

☐ Visual Aids/optical device (type)_____        ☐ Walking

☐ Sign language Interpreter (type)_____         ☐ Other _____

☐ Attorney                      ☐ I do not need help for my parole hearing.

X _Alfonso R. Weis_          _C-02190_          X _12-7-04_
  Prisoner/Parolee Signature        CDC #              Date Signed

**III. INITIAL SERVICE OF RIGHTS (STAFF ONLY)**

I have informed prisoner/parolee of the above information, and any relevant charges, and have determined that he/she:  ☒ Appears to understand.    ☐ Appears to have difficulty understanding.

☐ Non—English Speaking (indicate language): _____

☐ EFFECTIVE COMMUNICATION METHOD USED: (Sign language interpreter, staff assistance, assistive device, alternate accessible location, etc.): _____

Comments:_____

_J. Studobaker CCI_          _(signature)_          _12-7-04_
Staff Name and Title (please print)    Staff Signature          Date

**IV. REVIEW INDICATING NO CHANGES**

| TYPE OF HEARING | PRINT NAME AND WRITE INITIALS | TITLE | INSTITUTION/REGION | DATE |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Ex. 24

| NAME | CDC # | TYPE OF HEARING | DATE OF HEARING | LOCATION |
|---|---|---|---|---|
| Weir | C 02190 | SUB |  | CTF |

BPT-1073 (REV. 01/02)   Distribution: White-Central File, Yellow-BPT ADACU, Pink- Inmate, Goldenrod-Field File

*Belinda Hendrick* **MULTI-PURPOSE FORM**

TO: _____  DATE: _____

(Name)                              (Title)

RECEIVED

APR 1 9 2006

CBM II

- ☐ MEDICAL CONCERN
- ☐ DENTAL CONCERN
- ☐ VISITING CONCERN
- ☐ REQUEST FOR INTERVIEW
- ☐ PACKAGE ROOM
- ☐ REQUEST FOR I.D. CARD
- ☐ REQUEST TO REVIEW CENTRAL FILE
- ☐ MAIL ROOM: Request for metered envelopes (No Funds)
- ☐ E.P.R.D.: You should be within six (6) months of release date to inquire

- ☐ TRUST ACCOUNT BALANCE  $ _____
- ☐ TRUST ACCOUNT WITHDRAWAL
- ☐ REQUEST FOR ROOM CHANGE
- ☐ REQUEST FOR UNIT CHANGE
- ☐ FAMILY HOUSING UNIT VISIT INTERVIEW
- ☐ REQUEST FOR CHAPLAIN INTERVIEW
- ☐ MEDICALLY CLEARED FOR CULINARY REQUEST

REASON FOR REQUEST (Be specific: Explain your problem): *I need information concerning AA - It has been long time without AA program - Need to know when it may start again. Need documentation on this issue.*

DATE: *4-19-06*   STAFF RESPONSE: *We are working on putting together a new and improved programs. Please be patient. B. Hedrick*

INMATE NAME: *Wein*

INMATE NUMBER: *C-02190*   CELL: *N. W. 159L*

ASSIGNMENT: _____   HOURS: _____   RDOs: _____

CTF 304 (Rev. 4/97)

*Ex. "25"*



David J. Spowart
Attorney at Law
71 Via Encina
Monterey CA  93940

March 17, 2006

Dear Mr. Weir;

Just a short note to tell you what happened after your hearing on Tuesday, March 13. As I was starting to leave the building both commissioners stopped me and tried to explain why they had not given you a date. Basically, they said they really wanted to give a date but believed that without any current AA it would be rejected upon review in Sacramento and/or by the Governor. The deputy commissioner especially claimed he wanted to vote for a date. Well, in my opinion, they should have voted for a date and let the review authorities make their own decisions. At least my objection certainly got their attention.

Enclosed is the letter from your wife postmarked the 11th of March. There was just no way I could have gotten it on time. It arrived in my mail on the 16th.

Dave Spowart

Dave Spowart

Ex 26

Documents verifying/identifying disability: (Check all verifying documents and attach copies to 1073.)

☑ CDC 128C ☐ CDC 128C-1 ☐ CDC 128C-2 ☐ CDC 611 ☐ CDC 1845 ☐ CDC 1515 ☐ Current BPT 1073
☐ CDC 128B (TABE 4.0 or lower) Score/GPL _8.3_ ☐ Other documents _____ ☑ No verifying documents in file

☐ Accommodation is required for effective communication and/or access (enter type, i.e., sign language interpreter, staff assistance, assistive listening device, alternate accessible location, etc.):

## II. PRISONER/PAROLEE RIGHTS & SELF IDENTIFICATION

The Americans with Disabilities Act (ADA) is a law to help people with disabilities. Disabilities are problems that make it harder for some people to see, hear, breathe, talk, walk, learn, think, work, or take care of themselves than it is for others. Nobody can be kept out of public places or activities because of a disability. If you have a disability, you have the right to ask for help to get ready for your BPT hearing, get to the hearing, talk, read forms and papers, and understand the hearing process. BPT will look at what you ask for to make sure that you have a disability, that is covered by the ADA, and that you have asked for the right kind of help. If you do not get help, or if you don't think you got the kind of help you need, ask for a BPT 1074 Grievance Form. You can also get help to fill it out.

☐ I **do not** have a disability. (Sign and date at the "X" below.)

☑ I **do** have a disability.

**My disability is:**

☐ Seeing ☐ Talking ☐ Reading ☐ Hearing ☐ Walking

☐ Understanding/Learning ☐ Mental Problems ☑ Other _Alcohol_

**I need help for my parole hearing:** (Check all boxes that apply to you)    _Not to be used in any hearings or decisions._

☐ Reading ☐ Understanding ☐ Talking

☐ Hearing Device (type)_____  ☐ Wheelchair or _____

☐ Visual Aids/optical device (type)_____  ☐ Walking

☐ Sign language Interpreter (type)_____  ☐ Other _____

☐ Attorney  ☐ I do not need help for my parole hearing.

X _Alvaro R. Weir_     _C-02190_     X _2-24-03_
  Prisoner/Parolee/Signature     CDC #     Date Signed

## III. INITIAL SERVICE OF RIGHTS (STAFF ONLY)

I have informed prisoner/parolee of the above information, and any relevant charges, and have determined that he/she: ☑ Appears to understand. ☐ Appears to have difficulty understanding.

☐ **Non—English Speaking** (indicate language): _____

☐ **EFFECTIVE COMMUNICATION METHOD USED:** (Sign language interpreter, staff assistance, assistive device, alternate accessible location, etc.): _____

Comments: _____

_J. Studebaker CCI_     _(signature)_     _2-24-03_
Staff Name and Title (please print)     Staff Signature     Date

## IV. REVIEW INDICATING NO CHANGES

| TYPE OF HEARING | PRINT NAME AND WRITE INITIALS | TITLE | INSTITUTION/REGION | DATE |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

_Ex. 27_

| NAME | CDC # | TYPE OF HEARING | DATE OF HEARING | LOCATION |
|---|---|---|---|---|
| _Weir, D_ | _C02190_ | _Sub_ | _4/2/03_ | _CTF_ |

BPT 1073 (REV. 01/02)   Distribution: White-Central File, Yellow-BPT ADACU, Pink- Inmate, Goldenrod-Field File

_4/6/04_

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or the prisoner has given indications that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress had built over a long period of time.

(5) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(6) Age. The prisoner's present age reduces the probability of recidivism.

(7) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(8) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

NOTE: Authority cited: Section 5076.2. Penal Code Reference: Section 3041, Penal Code.

HISTORY

1. Amendment of subsection (c) filed 6–28–79; effective thirtieth day thereafter (Register 79, No. 26).

2. Amendment of subsection (d)(7) filed 5–1–80; effective thirtieth day thereafter (Register 80, No. 18).

## § 2282. Base Term.

(a) General. The panel shall set a base term for each life prisoner who is found suitable for parole. The base term shall be established solely on the gravity of the base offense, taking into account all of the circumstances of that crime. The base offense is the most serious of all life offenses for which the prisoner has been committed to prison.

The base term shall be established by utilizing the appropriate matrix of base terms provided in this section for the base offense of which the prisoner was convicted. The panel shall determine the category most closely related to the circumstances of the crime. The panel shall impose the middle base term reflected in the matrix unless the panel finds circumstances in aggravation or mitigation.

If the panel finds circumstances in aggravation or in mitigation as provided in § 2283 or 2284, the panel may impose the upper or lower base term provided in the matrix, stating the specific reason for imposing such a term. A base term other than the upper, middle or lower base term provided in the matrix may be imposed by the panel if justified by the particular facts of the individual case.

(b) Matrix of Base Terms for First Degree Murder.

| 2282(b) FIRST DEGREE MURDER Penal Code § 189 (in years and does not include post conviction credit as provided in § 2290) | A. Indirect Victim died of causes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force; e.g., shock producing heart attack; a crime partner actually did the killing. | B. Direct or Victim Contribution Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g., victim initiated struggle or had goaded the prisoner. This does not include victims acting in defense of self or property. | C. Severe Trauma Death resulted from severe trauma inflicted with deadly intensity; e.g., beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or actions calculated to induce terror in the victim. | D. Torture Victim was subjected to the prolonged infliction of physical pain through the use of nondeadly force prior to act resulting in death. |
|---|---|---|---|---|
| I. Participating Victim Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred; e.g., crime partner, drug dealer, etc. | 8-10-12 | 10-12-14 | 11-13-15 | 13-15-17 |
| II. Prior Relationship Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc.) which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense, see Category IV. | 10-12-14 | 12-14-16 | 13-15-17 | 15-17-19 |
| III. No Prior Relationship Victim had little or no personal relationship with prisoner; or motivation for act resulting in death was related to the accomplishment of another crime; e.g., death of victim during robbery, rape, or other felony. | 11-13-15 | 13-15-17 | 14-16-18 | 16-18-20 |
| IV. Threat to Public Order or Murder for Hire The act resulting in the victim's death constituted a threat to the public order include the murder of a police officer, prison guard, public official, fellow patient or prisoner, any killing within an institution, or any killing where the prisoner hired and/or paid another person to commit the offense. | 13-15-17 | 15-17-19 | 16-18-20 | 18-20-22 |

**SUGGESTED BASE TERM**

LIFE PRISONER: PAROLE CONSIDERATION
PROPOSED DECISION (BPT §2041)

I.  [ ]  **PAROLE DENIED**

If this proposed decision denying parole is approved, the Board will send you a copy of the approved decision, including the reasons for denial of parole, within 30 days of the hearing.

II.  [✓]  **PAROLE GRANTED**

A.  Base Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . = **156** Months

**SCR34989**    **01**    **MURDER 1ST**
Case No.      Count No.      Offense

B.  Firearm Enhancement . . . . . . . . . . . . . . . . . . . . . . . . . . . + **0** Months

C.  Other Crimes Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + **62** Months

**SCR34989**    **02**    **ROBBERY**    **12** mos.
Case No.      Count No.      Offense

**SCR34989**    **04**    **GRAND THEFT**    **8** mos.
Case No.      Count No.      Offense      **PRIOR PRISON TERM**

**UNKNOWN**    **01**    **GRAND THEFT**    **36** mos.
Case No.      Count No.      Offense
**PRIOR FELONY CONVICTION W/ PRIMATIVE**    **6**

D.  Total Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = **218** Months

E.  Postconviction Credit From **3·1·79** To **4·7·02** − **88** Months
                                  (Date)         (Date)

F.  Total Period of Confinement . . . . . . . . . . . . . . . . . . . . . . = **130** Months

The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days. At that time appropriate pre-prison credits will be applied and a parole release date computed.

You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or postponement of your parole date.

III.  If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be scheduled for a new hearing, as appropriate.

**PANEL HEARING CASE**

| Name | | Date |
|------|--|------|
| | | 04 |
| Name | N/A PER SB 777 | Date |
| | | 17 |
| Name | | Date |
| | | 02 |

| NAME | CDC NUMBER | INSTITUTION | HEARING DATE |
|------|-----------|-------------|--------------|
| WEIR, DUANE | C02190 | CTF-SOLEDAD | APRIL 17, 2002 |

BPT 1005 (Rev. 8/1/81)

Ex. 29.

Distribution: White—C. File
              Canary—BPT
              Pink—Prisoner

unlock for approximately six (6) months. During this time he will demonstrate a sincere desire to attend the meetings and a positive attitude regarding the lengthy waiting period.  Due to the fact that we are limited in the number of inmates permitted to attend the meetings and the large number of White inmates on the waiting list, it takes approximately six to eight months for a White inmate to be placed on the unlock.  This chrono is being issued at the request of this inmate's counselor.  We are looking forward to placing Mr. Weir on the unlock within the month.

cc; C-File
    A.S.P.S. File
    Counselor File  (Mr. French)
    Sponsor
    A. A. File
    Inmate

M. GAINES
Staff Sponsor/Correctional Officer

DATE 10 October 1985        "INFORMATIVE"        D.V.I.        GENERAL CHRONO

---

NAME and NUMBER        WEIR        C-02190        G-139        (W)        CDC-128-B (Rev. 4/74)

Inmate WEIR, C-02190, has been in regular attendance (after a lengthy waiting period on our waiting list) since October 23, 1985, here at Deuel Vocational Institution.  He voluntarily participates during group discussions and always helps cleanup after meetings.  Duane seems sincere in his attempts at solving his problems.  He is to be commended for the above actions and is encouraged to continue his growth in the A. A. Program.

cc: C-file
    A.S.P.S. File
    Counselor File
    Sponsor
    A. A. File
    Inmate

B. HERRERA
Staff Sponsor/Correctional Officer

DATE  15 January 1986        "PROGRESS"        D.V.I.        GENERAL CHRONO

---

NAME and NUMBER  WIER        C-02190        G-139        CDC-128-B (Rev. 4/74)

INMATE W-ER, C-02190, has been in regular attendance here at the ALCOHOLICS ANONYMOUS meetings at DEUEL VOCATIONAL INSTITUTION since beeing placed on the unlock list on October 23, 1985.  During this period he has demonstrated a sincere desire to solve his problems by participating during group discussions and helping with the cleanup after meetings as well as volunteering for special events.  He is encouraged to continue his growth in the program.

CC:  C-FILE
     A.S.P.S. FILE
     COUNSELOR FILE
     SPONSOR
     A. FILE
     INMATE

M. BOTTO
STAFF SPONSOR/CORRECTIONAL OFFICE

Ex. "30"

DATE MAY 14, 1986        "PROGRESS"        D.V.I.        GENERAL CHRONO

mate WEIR participates in the groups discussion and has shown an interest in working th some of the special D.V.I.–A.A. programs. WEIR appears to have a sincere sire in solving some of his past problems.

:   C-FILE
    A.S.P.S. FILE
    COUNSELOR FILE
    SPONSER
    A.A. FILE
    INMATE

/s/ _____
S. SEARCY
STAFF SPONSER
CORRECTIONAL OFFICER

ATE   SEPTEMBER 3, 1986   "PROGRESS"   D.V.I.      GENERAL CHRONO

AME and NUMBER    DUANE, R. WEIR    C# 02190      1-69A      CDC-128-B (Rev. 4/74)

INMATE WEIR HAS BEEN ATTENDING THE ROADSIDERS ALCOHOLICS ANONYMOUS MEETING SINCE HIS ARRIVEL ON 1-16-87.MR. WEIR HAS ALSO BEEN ATTENDING ALL BIG BOOK & TWELVE STEP STUDY GROUPS.INMATE WEIR GETS ALONG WELL WITH OTHERS AND IS NO CUSTODY PROBLEM.

cc: C- FILE
    DORM- FILE
    INMATE
    A.A. SPONSER

MR. Q. QUIGLEY/A.A. SPONSOR      ROBERT WADDELL/SECRETARY of A.A.

DATE   FEB. 9, 1987      GENERAL CHRONO

AME and NUMBER:  WEIR, DUANE    C-02190    2-50A      CDC-128-B (Rev. 4/74)

    Mr. Weir has been an active member of the Roadsider's A.A. Fellowship, at California Correctional Institution (C.C.I.) Tehachapi, Ca., since his arrival on January 21, 1983. Mr. Weir is an active participant in the Big Book and 12x 12 study groups. He is also a member of the Steering Committee.
    Mr. Weir, over a ten year period, has been an active member of A.A. groups in several other institutions. Mr. Weir appears to be utilizing this self-help group, as a means to better himself, so that he may return to society as a productive and useful member of his community.

Orig: C-File
cc: Roadsider
    File
    Inmate

Ron Kidd  (C-60037)
Secretary, Roadsider's A.A.
Fellowship

Mr. Q. Quigley
Roadsider's Admin. Sponsor

ATE: 4-13-88      (INFORMATION CHRONO)      GENERAL CHRONO

their sponsor due to transfers and could not continue their meetings. On March 23, 1989, CTF-North Facilities Alcoholics Anonymous received a new sponsor and the meetings were resumed. Therefore, no chronos were issued for this period.

A. Pugnier
A.A. Sponser
CTF-North Facility

Orig: C-File
  cc: Inmate

DATE April 10, 1989  (INFORMATIVE CHRONO)

CTF N.

GENERAL CHRONO

---

NAME and NUMBER     **WEIR, C-02190**          **LB-330**

CDC-128-B (Rev. 4/74)

Subject has attended the Alcoholics Anonymous meetings at CTF-North Facility on a regular basis for the quarter ending July 20, 1989.

A. Pugnier
A.A. Sponser
CTF-North Facility

Orig: C-File
  cc: Inmate

CTF N.
DATE July 27, 1989  (INFORMATIVE CHRONO/A.A. ATTENDANCE)          GENERAL CHRONO

---

NAME and NUMBER  **WEIR, C-02190**          **LB-330**

CDC-128-B (Rev. 4/74)

Through Alcoholics Anonymous, subject has sought self help by communicating with others who share a common problem.

Subject has regularly attended Alcoholics Anonymous throughout the quarter ending on October 20, 1989.

A. Pugnier
A.A. Sponser
CTF-North Facility

Orig: C-File
  cc: Inmate

DATE   October 24, 1989  (INFORMATIVE CHRONO/A.A. ATTENDANCE)     GENERAL CHRONO
CTF N.

cating with others who share a common problem. Subject has sought self help by communi- Subject has regularly attended Alcoholics Anonymous throughout the quarter ending on January 20, 1990.

A. Pugnier
A.A. Sponsor
CTF-North Facility

Orig: C-File
cc: Inmate

DATE February 5, 1990    (INFORMATIVE CHRONO/A.A. ATTENDANCE)   GENERAL CHRONO

CTF N.

---

NAME and NUMBER.   WEIR, C-02190            ND-064

CDC-128-B (Rev. 4/74)

Through Alcoholics Anonymous, subject has sought self help by communicating with others who share a common problem.

Subject has regularly attended Alcoholics Anonymous throughout the quarter ending on April 19, 1990.

A. Pugnier
A.A. Sponsor
CTF-North Facility

Orig: C-File
cc: Inmate

DATE April 19, 1990 (INFORMATIVE CHRONO/A.A. ATTENDANCE)     GENERAL CHRONO

CTF N.

---

NAME and NUMBER WEIR, C-02190. HOUSING-ND-064.

CDC-128-B (Rev. 4/74)

LAUDATORY CHRONO / ALCOHOLICS ANONYMOUS

Subject has regularly attended Alcoholics Anonymous meeting at C.T.F. North facility throughout the quarter ending July 19, 1990. Alcoholics Anonymous encourages the expression of emotion and understanding concerning alcoholism and its related problems. Its members attempt to combat alcoholism, either actively, by voicing their thoughts and feelings, or passively, by listening to what others have to say. The group is structured and serious; that is, the primary objective of A.A. is sobriety.

Subject is to be commended for his participation in Alcoholics Anonymous. A.A. and N.A are, at this time, the cheif solutions to the the problem of substance abuse inside and outside of institutional settings.

Ramona Kilgore

DATE  07-20-90      Alan Pugnier / A.A. Sponsor       GENERAL CHRONO
                    C.T.F. North Facility

Mr. Weir has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending September 1990 He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:  Central File
    CC:  Inmate

Allen J. Pugnier
Computer Coordinator
Sponsor, North Facility A.A. Group

DATE:     15 October, 1990          LAUDATORY          GENERAL CHRONO
F.N.

NAME and NUMBER

    WEIR, D R          C02190          ND064          CDC-128-B (Rev. 4/74)

Mr. WEIR is a current member of the Alcoholics Anonymous program here at the Correctional Training Facility--North. Mr. WEIR has been a member of the group for the quarter ending December 1990 and has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:  Central File
    CC:  Inmate

Allen J. Pugnier
Computer Coordinator
Sponsor, North Facility A.A. Group

DATE
    19 December, 1990          LAUDATORY          GENERAL CHRONO

NAME and NUMBER     WEIR, D. R.          C-02190          ND-064     CDC-128-B (Rev. 4/74)

Mr. Weir has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending March 1991 He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:  Central File
    CC:  Inmate

Allen J. Pugnier
Computer Coordinator
Sponsor, North Facility A.A. Group

DATE:  15 May, 1991          LAUDATORY          GENERAL CHRONO

Mr. WEIR has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending June 1991 He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL: CENTRAL FILE
    cc: Inmate

*Larry Ronneberg*
Sponsor, North Facility A.A. Group

DATE:     May 30, 1991     (LAUDATORY)     GENERAL CHRONO

NAME and NUMBER   WEIR   C02190   ND064

CDC-128-B (Rev. 4/7

Mr. WEIR has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending September 30, 1991. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous enviornment.

*Larry Rosenberg*
Sponsor, North Facility
AA Group

ORIGINAL : CENTRAL FILE
    CC : INMATE

DATE    October 1, 1991    ( LAUDATORY )    GENERAL CHRONO
*CTF AN.*

NAME and NUMBER   WEIR, C02190   DO 007L

CDC-128-B (Rev. 4/74)

Mr. WEIR has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending June 1992 He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:  Central File
    CC:  Inmate

*Larry Ronneberg*
Sponsor, North Facility A.A. Group

DATE    June 30. 1992    I.AUDATORY    GENERAL CHRONO

Mr. WEIR has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending September 1992 He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL: Central File
CC: Inmate

*Marty DoLove*
Larry Ronneberg
Sponsor, North Facility A.A. Group

DATE September 30, 1992   LAUDATORY   GENERAL CHRONO

NAME and NUMBER WEIR , C02190    D007L

CDC-128-B (Rev. 4/74)

Mr. Weir has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending September 1993. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL: Central File
CC: Inmate ✓

*Marty DoLove*
Marty DoLove
Sponsor, North Facility A.A. Group

DATE September 30, 1993   LAUDATORY   GENERAL CHRONO

NAME and NUMBER WEIR , C02190    D007L

CDC-128-B (Rev. 4/7.

Mr. WEIR is a member of the Alcoholics Anonymous program at the Correctional Training Facility--North. The AA Program was discontinued in December of 1992 due to Lock Downs, Fog Counts and to Mission change at CTF. The AA Program was resumed in June of 1993. Mr. WEIR has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL: Central File
CC: Inmate

*Marty DoLove*
Marty DoLove
Sponsor, North Facility A.A. Group

DATE June 30, 1993   LAUDATORY   GENERAL CHRONO

Mr. Weir has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending December 1993. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:   Central File
    CC:   Inmate ✓
          Sponsor

*Madge Casacca*
Madge Casacca
Sponsor, North A.A. Group

DATE      December 30, 1993      LAUDATORY      GENERAL CHRONO

NAME and NUMBER   WEIR,      C02190       ND-07

CDC-128-B (Rev. 4/74)

---

MR. WEIR HAS BEEN A MEMBER OF THE ALCOHOLICS ANONYMOUS PROGRAM AT THE CORRECTIONAL TRAINING FACILITY--NORTH FOR THE QUARTER ENDING SEPTEMBER 1994. HE HAS SHOWN THE ABILITY TO RELATE WITH THE GROUP AND TO IMPROVE HIMSELF THROUGH INVOLVEMENT WITH IT. HIS PARTICIPATION IN THIS PROGRAM HAS DEMONSTRATED A WILLINGNESS TO COOPERATE IN THE SMOOTH ATMOSPHERE OF THE ALCOHOLICS ANONYMOUS ENVIRONMENT.

ORIGINAL:   CENTRAL FILE
    CC:   INMATE
          SPONSOR

*Madge Casacca*
MADGE CASACCA
SPONSOR, NORTH A.A. GROUP

DATE     SEPTEMBER 30, 1994      LAUDATORY      GENERAL CHRONO

NAME and NUMBER   WEIR,      C02190       ND-07

CDC-128-B (Rev. 4/74)

---

MR. WEIR HAS BEEN A MEMBER OF THE ALCOHOLICS ANONYMOUS PROGRAM AT THE CORRECTIONAL TRAINING FACILITY--NORTH FOR THE QUARTER ENDING DECEMBER 1994. HE HAS SHOWN THE ABILITY TO RELATE WITH THE GROUP AND TO IMPROVE HIMSELF THROUGH INVOLVEMENT WITH IT. HIS PARTICIPATION IN THIS PROGRAM HAS DEMONSTRATED A WILLINGNESS TO COOPERATE IN THE SMOOTH ATMOSPHERE OF THE ALCOHOLICS ANONYMOUS ENVIRONMENT.

ORIGINAL:   CENTRAL FILE
    CC:   INMATE
          SPONSOR

*Madge Casacca*
MADGE CASACCA
SPONSOR, NORTH A.A. GROUP

DATE     DECEMBER 31, 1994      LAUDATORY      GENERAL CHRONO

at the Correctional Training Facility--North for the Quarter ending March 1995. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous Environment.

Original: Central File
CC: Inmate
Sponsor

*Madge Casacca*
Madge Casacca
Sponser, North A.A. Group

.TE    March 31, 1995    Laudatory    GENERAL CHRONO

NAME and NUMBER    Weir    C02191    ND7    CDC-128-B (Rev. 4/

Mr. Weir has been a member of the Alcoholics Anonymous Program at the Correctional Training Facility-North for the Quarter ending September 1996. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous Environment.

Original : Central File
CC : Inmate
Sponsor

*Madge Casacca*
Madge Casacca
Sponser, North A.A.Group

DATE    November 18, 1996    Laudatory    GENERAL CHRONO

NAME and NUMBER.    WEIR    C-02191    ND-07    CDC-128-B  (Rev. 4/74)

MR. WEIR HAS BEEN A MEMBER OF THE ALCOHOLICS ANONYMOUS PROGRAM AT THE CORECTIONAL TRAINING FACILITY-NORTH FOR THE QUARTER ENDING MARCH 1997. HE HAS SHOWN THE ABILITY TO RELATE WITH THE GROUP AND IMPROVE HIMSELF THROUGH INVOLVEMENT WITH IT. HIS PARTICIPATION IN THIS PROGRAM HAS DEMONSTRATED A WILLINGNESS TO COOPERATE IN THE SMOOTH ATMOSPHERE OF THE ALCOHOLICS ANONYMOUS ENVVIRONMENT.

ORIGINAL: CENTRAL FILE
CC: INMATE
SPONSOR

*Madge Casacca*
MADGE CASACCA
SPONSER, NORTH-A.A. GROUP

DATE:    GENERAL CHRONO

JUNE 16,1997    LAUDATORY

OF THE ALCOHOLICS ANONYMOUS PROGRAM AT THE CORRECTIONAL TRAINING FACILITY-NORTH FOR THE QUARTER ENDING MARCH 1997. HE HAS SHOWN THE ABILITY TO RELATE WITH THE GROUP AND TO IMPROVE HIMSELF THROUGH HIS INVOLVEMENT WITH IT. HIS PARTICIPATION IN THIS PROGRAM HAS DEMONSTRATED A WILLINGNESS TO COOPERATE IN THE SMOOTH ATMOSPHERE OF THE ALCOHOLICS ANONYMOUS ENVIRONMENT.

ORIGINAL: CENTRAL FILE
CC: INMATE
SPONSOR

*Madge Casacca*
MADGE CASACCA
SPONSOR, NORTH-A.A. GROUP

DATE: JUNE 19-1997          LAUDATORY

GENERAL CHRONO

---

**NAME and NUMBER**   WEIR   C-02190        RA-306/L

CDC-128-B

Mr. Weir has been a member of the Alcoholics Anonymous Program at the Correctional Training Facility-North for the Quarter ending September 1998.. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

Original: Central file
CC: Inmate
Sponsor

*M. Casacca*
M. Casacca
Sponsor, North A.A.

**DATE** September 30, 1998          LAUDATORY          **GENERAL CHRONO**

---

**NAME and NUMBER**   WEIR   C-02190      RA-306

CDC-128-B

Mr. Weir has been a member of the Alcoholics Anonymous Program at the Correctional Training Facility-North for the Quarter ending September 1998. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

Original: Central file
CC: Inmate
Sponsor

*M. Casacca*
M. Casacca
Sponsor, North A.A.

**DATE** October 1, 1998          LAUDATORY

**GENERAL CHRONO**

Mr. Weare is a current member of Alcoholics Anonymous, at the Correctional Training Facility-North, for the ending September 1999. He has shown the ability to relate with the group and to improve himself through invc with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmospher AA environment.

ORIGINAL:   Central File
    CC:   Inmate
        Sponsor

Madge Casacca, Sponsor
Alcoholics Anonymous Program
CTF-North

DATE : September 27, 1999

LAUDATORY

GENERAL CHR

# **M e m o r a n d u m**

Date  :   12 February 1987

To   :   CC 1 J. GARZA, CC1 DORMS 06/07, UNIT I


A.A. / N.A. SELF HELP GROUP
From     California Rehabilitation Center, Norco, Ca. 91760


Subject:   MEETING ATTENDED BY INMATE D. WEIR, C-02190 AT C.R.C. NORCO

The Self Help Group files of A.A. AND N.A. here at C.R.C. indicate that Inmate Weir,
C-02190 attended the below listed meetings while here at C.R.C.

A.A. = 10-14-86, 10-21-86, 10-28-86, 11-4-86, 11-11-86, 11-18-86, 11-25-86, 12-2-86,
       12-9-86, and 12-16-86. Total of Ten (10) meetings.

N.A. = 10-27-86, 11-3-86, 11-10-86, 11-17-86, 11-24-86, 12-1-86, 12-8-86, and 12-29-86.
       TOTAL of Eight (8) meetings.


Respectfuly,

Dean L. Hancock, D-18907, 0772
A.A. SELF HELP GROUP CHAIRMAN


E. EASON, SC 1 ex. 4326
A.A./N.A. SPONSOR


dlh/LE

GA-47-E

(1)