# EXHIBIT E, PART 1

JUN 2 8 2007

MC-275

Name   DUANE ROY WEIR

Address  C-02190..C.T.F.N. N.D.59L

P.O. BOX 705

Soledad.California 93960-0705

CDC or ID Number   C-02190

**FILED**

JUN 29 2007

COURT OF APPEAL FOURTH DISTRICT

### STATE COURT OF APPEAL

### FOURTH DISTRCIT-DIVISION TWO

(Court)

| |
|---|
| DUANE ROY WEIR |
| Petitioner |
| vs. |
| BEN CURRY (Warden) |
| Respondent |

PETITION FOR WRIT OF HABEAS CORPUS

No. _E043443_

*(To be supplied by the Clerk of the Court)*

### INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court [as amended effective January 1, 2007]. Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved for Optional Use
Judicial Council of California
MC-275 [Rev. January 1, 2007]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page 1 of 6

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 8.380
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

E043443



# Superior Court of California
# County of Monterey

## MEMORANDUM



**FILED**

JUN 29 2007

COURT OF APPEAL FOURTH DISTRICT

**TO:**      DUANE ROY WEIR

**FROM:**   K. HANSON , DEPUTY COURT CLERK III

**DATE:**   DEC. 4, 2006

**SUBJECT:**   HABEAS CORPUS PETITION  HC5456

Your Habeas Corpus petition was transferred to San Bernadino County per the attached order.

"Note Habeas Corpus filed "First" in Monterey - County Superior Ct. #HC-5456# filed August 16-2006. See attached "Order" date Sept, 28-2006 - suppose to have been transferred - note above Dec, 4-2006 - See attached San Bernardino Superior Court January 8, 2007-

Note error on Order denying petition - Note transferred date Dec, 28-2006 - note above - Dec, 4-2006 - Note the other error of petitioner's subsequent parole hearing - Nov. 14 - & - 17 - See attached order of Monterey County Order of Sept. 28-2006 -

See attached "Exhibit " "31" "32" "35"."

COPY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MONTEREY

FILED

SEP 28 2006

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
S. GARSIDE                DEPUTY

In re                                              ) Case No.: HC 5456
                                                   )
        Duane Weir (C-02190)                       ) ORDER
                                                   )
                            On Habeas Corpus.      )
                                                   )
_____    )

    Petitioner, although currently housed at the CTF-Soledad in Monterey County, was convicted and sentenced in San Bernadino County. He challenges the finding of the Board of Prison Hearings subsequent to Petitioner's seventeenth parole suitability hearing that Petitioner remains unsuitable for parole. Under prevailing law, the proper venue for habeas petitions challenging determinations made by the Board of Prison Hearings concerning parole matters is the court of the Petitioner's conviction and sentencing. *In re Sena* (2001) 94 Cal.App.4th 836, 840 [a habeas petition attacking parole denial is a challenge to the sentence itself]; *Griggs v. Superior Court* (1976) 16 Cal.3d 341, 343 [petition challenging denial of parole does not concern a condition of confinement]; *U.S. v. Pascow* (9th Cir. 1993) 11 F.3d 873, 879 [a parole decision flows from the relates to the sentence initially imposed]. Thus, the Court finds that the petition should properly be considered by San Bernadino County Superior Court, San Bernardino Courthouse. Cal. Rules of Court, Rule 4.552(b)(2)(A).

    Accordingly, the petition is hereby ordered TRANSFERRED to San Bernadino County Superior Court, San Bernardino Courthouse.

    IT IS SO ORDERED.

Dated:    SEP 28 2006

Hon. Marla O. Anderson
Judge of the Superior Court

1

1

## CERTIFICATE OF MAILING

2

### C.C.P. SEC. 1013a

3

I do hereby certify that I am not a party to the within stated cause and that on

4

_____**JAN 0 5 2007**_____ I deposited true and correct copies of the following document:

5

ORDER in sealed envelopes with postage thereon fully prepaid, in the mail at Salinas,

6

California, directed to each of the following named persons at their respective addresses as

7

hereinafter set forth:

8

Duane Weir (C-02190)

9

CTF-Soledad, ND 59L
P.O. Box 705

10

Soledad, CA  93960-0705

11

Office of the Attorney General

12

455 Golden Gate Ave., Suite 11000
San Francisco, CA  94102-7004

13

Attn:  Correctional Law Section

14

Court Clerk, Crim. Div.
San Bernadino County Superior Court

15

351 N. Arrowhead Ave.
San Bernadino, CA  92415

16

17

Pam Ham, DDA
Office of the District Attorney

18

240 Church St., Rm. 101
Salinas, CA  93901

19

Dated: **JAN 0 5 2007**

LISA M. GALDOS,

20

Clerk of the Court

21

22

By: _____
        Deputy   S. GARSIDE

23

24

25

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SAN BERNARDINO

ACIS Case No.:

CASE NO.:SWHSS- **9118**

DEPT.: S-16

REPORTER: --

JUDGE: BOB N. KRUG

CLERK: V. GAYTON

BAILIFF: --

DATE: January 22, 2007

COUNSEL:

CASE TITLE:   In the Matter of the Application of
**DUANE ROY WEIR**
on Habeas Corpus

NATURE OF PROCEEDINGS:

## ORDER DIRECTING RESPONDENT TO FILE LETTER RESPONSE

MINUTE ORDER:

Petitioner has filed a Petition for Writ of Habeas Corpus. Respondent is directed to file and serve, on or before February 23, 2007 a letter response to the contentions contained in the Petition.

Petitioner may file a reply to this Informal Response within fifteen (15) days after its receipt. A copy of any reply or other documentation filed with the court is to be served on counsel for the Respondent and Proof of Service thereof filed with the court.

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN BERNARDINO, CENTRAL DISTRICT

TITLE OF CASE (ABBREVIATED):

In the Matter of the Application of
**DUANE ROY WEIR**
on Habeas Corpus

CASE NUMBER:

SWHSS – **9118**

---

## DECLARATION OF SERVICE BY MAIL

My business address is:  San Bernardino Superior Court, 351 N. Arrowhead Avenue, San Bernardino, California 92415.

I hereby declare that I am a citizen of the United States, over the age of 18, employed in the above-named county, and not a party to nor interested in this proceeding. On _____January 22, 2007_____, I deposited in the United States mail at San Bernardino, California, a sealed envelope (postage prepaid) which contained a true copy of the attached:

NAME OF DOCUMENT:

## ORDER DIRECTING RESPONDENT TO FILE LETTER RESPONSE

which was addressed as follows:

**Name and Address of Persons Served:**

Duane Roy Weir, C-02190
C.T.F.N., N.D. 59 L
P.O. Box 705
Soledad, CA 93960-0705

Bill Lockyer,  Attorney General
State of California
P.O. Box 85266
San Diego, CA  92186-5266

(Together with copy of Minute Order)

At the time of mailing this notice there was regular communication between the place of mailing and the place(s) to which this notice was addressed.

I declare under penalty of perjury the foregoing to be true and correct.

DATED:  _____January 22, 2007_____

by ____*Mary Jo Phipps*____

Mary Jo Phipps
Judicial Secretary

**This petition concerns:**

[ ] A conviction     [X] Parole

[ ] A sentence     [ ] Credits

[ ] Jail or prison conditions     [ ] Prison discipline

[ ] Other (specify): _____

1. Your name: **DUANE ROY WEIR**

2. Where are you incarcerated? **Correctional Training Facility.Soledad.CA. 93960**

3. Why are you in custody? [X] Criminal Conviction [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Sentence under the Felony-Murder Rule as an aider and abettor to

   P.C. 187; 211 P.C. and 487 P.C.. All counts are run currently.

b. Penal or other code sections: 245(a); 12022.7; 1203.9. All not guilty verdicts.

c. Name and location of sentencing or committing court: Superior Court.Dept. 10.

   351 N.Arrowhead Ave. San Bernardino.CA. 92415

d. Case number: CR-34989.

e. Date convicted or committed: January 16.1979

f. Date sentenced: February 23.1979

g. Length of sentence: 7-yrs to life for 187; 3-yrs for 211 and 2-yrs for 487. All counts are run currently.

h. When do you expect to be released? _____

i. Were you represented by counsel in the trial court? [X] Yes. [ ] No. If yes, state the attorney's name and address:

   Mr.Paul R.Stienman. First American Building. 323 W,Court St.

   San Bernardino.CA. 92401

4. What was the LAST plea you entered? *(check one)*

   [X] Not guilty [ ] Guilty [ ] Nolo Contendere [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [X] Jury [ ] Judge without a jury [ ] Submitted on transcript [ ] Awaiting trial

(A-2)

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Claim-One at page-11, line 13-28; page-12, line 1-22. See also Claim-

Two, at page-21, line 3 through 28; page-22, line 1 through 14, and Claim-

Three at page-29, line 18-22; page-30, line 1 through 28 and page 31, line-

1-8). Court grant whatever relife deems appropriate.

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

(1): Page-7 to 10 the "Introduction" of Board Hearings.

(2): Page-11 to 12. Table of Authorities.

(3): Page-13-14. Index to Exhibits.

(4): Claim-One. Page-1 through 12.

(5): Claim-Two. Page-13 through 22.

(6): Claim-Three. Page-23 through 31.

(7): Declaration of Service by Mail.

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

Robert M.Rosenkrantz v. John Marshall (Warden)-Case No. CV 05-3836-

GAF (AJW). United States District Court-Cental Distcrict of Calif-

ornia (June 26.2006) Order released.

(A-3)

7. **Ground 2 or Ground _____** *(if applicable):*

_____

_____

_____

_____

a. Supporting facts:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority:

_____

_____

_____

_____

_____

(A-4)

8. Did you appeal from the conviction, sentence, or commitment?    ☐ Yes.    ☐ No.  If yes, give the following information:

   a.  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

     **N.A.**

   b.  Result _____    c.  Date of decision: _____

   d.  Case number or citation of opinion, if known: _____

   e.  Issues raised:  (1) _____

           (2) _____

           (3) _____

   f.  Were you represented by counsel on appeal?    ☐ Yes.    ☐ No. If yes, state the attorney's name and address, if known:

     **N.A.**

9. Did you seek review in the California Supreme Court?    ☐ Yes    ☐ No.   If yes, give the following information:

   a.  Result  **N.A.** _____    b.  Date of decision: _____

   c.  Case number or citation of opinion, if known: _____

   d.  Issues raised:  (1) _____

           (2) _____

           (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    **N.A.**

11. Administrative Review:

   a.  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].)  Explain what administrative review you sought or explain why you did not seek such review:

    **N.A.**

   b.  Did you seek the highest level of administrative review available?    ☐ Yes.    ☐ No.  **N.A.**
    *Attach documents that show you have exhausted your administrative remedies.*

(A-5)

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction,    **MC–275**
commitment, or issue in any court? ☐ Yes. If yes, continue with number 13.    ☒ No. If no, skip to number 15.

13. a.  (1) Name of court: _____

(2) Nature of proceeding (for example, "habeas corpus petition"): _____

(3) Issues raised: (a) _____

(b) _____

(4) Result *(Attach order or explain why unavailable):* _____

(5) Date of decision: _____

b.  (1) Name of court: _____

(2) Nature of proceeding: _____

(3) Issues raised: (a) _____

(b) _____

(4) Result *(Attach order or explain why unavailable):* _____

(5) Date of decision: _____

c.  For additional prior petitions, applications, or motions, *provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

_____

_____

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

_____

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

*I believe this to be the proper Court after Superior decision*

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: *June 25th. 2007*                          *signature*
                                                    (SIGNATURE OF PETITIONER)

MC-275 (Rev. January 1, 2007)        **PETITION FOR WRIT OF HABEAS CORPUS**        Page 6 of 6

( A - 6 )

## DECLARATION OF SERVICE BY MAIL

I. DUANE ROY WEIR, DO HEREBY DECLARE THAT I am a citizen of the United States. And over 18 years of age. My address is Correctional Training — Facility. Soledad. California 93960-0705


On the date set forth below. I deposited in the mail box at Correctional Training Facilty. P.O. BOX 705. Soledad. California. True copy of the Petition for writ of Habeas Corpus and the following sent copy to the following:


(1). Edmund G. Brown Jr.
     Attorney General of the State of California
     300 South Spring Street, Suite 1702
     Los Angeles.CA.90013


(2). Court of Appeal
     Fourth District Court of Appeal. Division '2'
     3389 12th, Street
     Riverside.CA.92501


I.DUANE ROY WEIR, DECLARE UNDER PENALTY OF PERJURY AND UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE ABOVE IS TRUE AND CORRECT.

Executed:__June 25.2007.__ at Soledad. California

                              Respectfully

                              *Duane R. Weir*
                              DUANE ROY WEIR

## INTRODUCTION

In the instant Case No.CR-34989 of March 2.1978.
Petitioner was convicted in 1979 of 187 P.C. and 211 P.C.
under the Felony-Murder Rule as an aider and abettor and was
sentence to the term of seven (7) years to life in which the
term Petitioner has now served is twenty-eight (28) years.

## INTIAL PAROLE BOARD HEARING

On February 23.1984. Petitioner appear before board for
his "Initial" board hearing with the results of a two (2)
year denial based on commitment offense and prior record.

## MINIMUM ELIGIBLE PAROLE DATE

. On March 10.1985 Petioner's minimum eligible parole date.

## SUBSEQUENT PAROLE BOARD HEARINGS

. On March 5.1986. Petitioner appear before board with the
results of a one (1) denial based primary on commitment
offense and prior record.

On March 12.1987. Petitioner appear before board with the
results of a one (1) year denial based primary on commitment
offense and prior record.

On May 11.1988. Petitioner appear before board with the
results of a one (1) year denial based primary on commitment
offense and prior record.

//

(Continue to page-7-)

## SUBSEQUENT PAROLE BOARD HEARINGS

1

2  On May 26.1989. Petitioner appear before board with the

3  results of a one (1) year denial based primary on commitment

4  offense and prior record.

5

6  On June 29.1990. Petitioner appear before board with the

7  results of a one (1) year denial based on commitment offense

8  and prior record.

9

10  On April 12.1991. Petitioner appear before board with the

11  results of a one (1) year denial based on commitment offense

12  and prior record.

13

14  On June 2.1992. Petitioner appear before board with the

15  results of a one (1) year denial based primary on commitment

16  offense and prior record.

17

18  on July 20.1993. Petitioner appear before board and during

19  hearing "questions" were ask concerning Petitioner's convic-

20  tion and Board requested an investigation which ended up

21  with no final decision of the 1993 hearing.

22

23  On May 24.1994. Petitioner appear before board with the

24  results of a one (1) year denial based primary on commitment

25  offense and prior record.

26

27  On October 16.1995. Petitioner appear before board with the

28  results of a two (2) year denial based primary on commitment

offense and prior record.

(Continue to page- 8 -)

## SUBSEQUENT PAROLE BOARD HEARINGS

1

2  On September 24.1997. Petitioner appear before board with

3  the results of a one (1) year denial based primary on commit-

4  ment offense and prior record.

5

6  On December 16.1998. Petitioner appear before board with

7  the results of a one (1) year denial based primary on commit-

8  ment offense and prior record.

9

10  On February 5.2001. Petitioner appear before board with the

11  results of a one (1) year denial based on commitment offense

12  and prior record.

13                    FOUND SUITABLE FOR PAROLE

14  On April 17.2002. Petitioner appear before board and board

15  found Petitioner "suitable" for parole and fixed term at 218-

16  months. The term reduced by 88-months credits which total –

17  term now as 130-months which Petitioner has already served

18  twenty-four (24) years. Fourteen (14) years over term that

19  was set.

20              GOVERNOR REVERSED BOARD'S DECISION

21  On September 13.2002. Former Governor Gray Davis reversed

22  Board's decision granting parole.

23

24  Æ April 6.2004. Petitioner appear before board with the

25  results of a one (1) year denial based primary on commitment

26  offense and prior record.

27  //

28  //

(Continue to page-9-)

## SUBSEQUENT BOARD HEARINGS

On March 13, 2006, Petitioner appear before the Board with the result of a one (1) year denial based primary on the commitment offense and prior record. (Petitioner's 17 Subsequent Board Hearing).

//

//

//

//

//

//

//

//

//

//

//

( A-10 )

## TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGE:**

In re Powell, 45 Cal. 3d 894.                                              1.

In re Thonson (1995) 35 Cal. App. 4th, 160, 169.                          1.

In re Rosenkrantz, 80 Cal. App. 4th, 409, 428.                            1.

Penal Code §3041 (B).                                                     5.

Cal. Code of Regulation, tit. 15 §2402, subd.(c)(2); In re-
Rosenkrantz, supra, 29 Cal. 4th at p.653.                                 8.

Penal Code §3041 subdivision (a).                                         9.

In re Dannenberg, 34 Cal. 4th, at 1094, supra. (id., at 1095).           9.

(Id., at 1088).                                                          9.

(Id., at 1080).                                                          9.

Biggs v. Terhune, 34 F. 3d at 916, 916, supra.                          9.

Biggs v. terhune (9 Cir. 2003) 334 F. 3d 910, 916-917.                  10.

In re Scott II, 133 Cal. App. 4th 573, 133 Cal. Rptr. 3d, at-
920, supra.                                                             10.

Irons v. Warden of California State Prison-Solano. (E.D. Cal.-
2005) 358 F. Supp. 2d 936, 947, Fn.2,).                                 10.

Irons.                                                                  10.

Irons, 358 F.2d, at 947.                                                10.

Irons, 358 F. Supp.2d, at 947.                                          11.

McQuillon v. Duncan, 342 F.3d 1012, 1016 (9th Cir.2003).                11.

Dannenberg.                                                             11.

Biggs v. Terhune, 334 F.3d 910, supra.                                  12.

In re Rosenkrantz, (2000) 80 Cal. App. 4th, 409, 427-428.              12.

Penal Code §3041(B).                                                    12.

Penal Code §3041, Article I, §7 of the California Constitution-
and the Fourteenth Amendment of the United States Constitution.        12.

Penal Code §5011 (A) and (B).                                          19.

Penal Code §3041.                                                      20.

Penal Code §3041 (B).                                                  20.

Penal Code§3041.                                                       20.

Penal Code §5011 (See Gov. Code §11342 (B).                            20.

Government Code §113442.2.                                             20.

(Continue--A-11-)

## TABLE OF AUTHORITIES

**CASE:**                                                                    **PAGE:**

In re Rodrigues (1975) 14 Cal. 3d 639; 122 Cal. Rotr. 552-
651, 537 P.2d 384.                                                              21.
McQuillon v. Duncan, 342 F. 3d 1012, 1016 (9th Cir.2003).       22.
Penal Code §3041,                                                              23.
Fourteenth Amendment to the United States Constitution.          23.
Turner v. Hickman, 342 F. Supp. 2d 887 (E.D. Cal. 2004).        23.
In re Mark Smith, 109 Cal. App. 4th 489, 505.                       26.
Cal. Code Regs. tit. 15 §2402,subdd. (c)(6).                         26.
In re Mark Smith, 109 Cal. App. 4th 489, 505.                       27.
In re Mark Smith (2003) 109 Cal. App. 4th, 489, 505.             28.
In re Ernest Smith (2003) 114 Cal. App. 4th, 343, 372.           28.
(Id., Biggs v. Terhune, 334 F. 3d at 917, supra.                     28.
Mickens-Thomas v. Vaugh, 355 F. 3d at 304, supra.                 28.
In re Mark Smith. 109 Cal. App. 4th 489, 505 (2003).             28.
McQuillon v. Duncan, F.3d 1012, 1016 (9th Cir.2003).            30.
In re Rodrigues (1975) 14 Cal. 3d 639, 122 Cal. Rptr, 551-
652; 537 P. 2d 384.                                                             30.
Biggs v. Terhune, 334 F. 3d 910, supra.                                31.

//

//

//

//

//

//

//

//

## INDEX TO EXHIBITS

Exhibit"1" Board Transcript of page 1 through 69.

Exhibit"2" Sentence Transcript of page 1 through 13.

Exhibit"3" Preliminary Hearing Transcript of page-104.line 19 through 26.

Exhibit"4" Appellate Court opinion of page-1 through 6.

Exhibit"5" California Attaorney General's Response at page-10.

Exhibit"6' Mr.Art Harrison(District Attorney) Response to Board's
          inquiry -three pages.

Exhibit"7' Claasification Program Review of April 17.2001.

Exhibit"8" Attorney Spowart Memorandum of prior record of three pages.

Exhibit"9" BPT-1000(a) (Rev. 12/98.) Recommentations.

Exhibit"9" Narcotics Anonymous chrono's.

Exhibit"11" Therapy.

Exhibit"12" We Care Program for juveniles.

Exhibit"13" Library volunter worker.

Exhibit"14" Certification Nomination.

Exhibit"15" Employabilty Program letter dated August 18.2005.

Exhibit"16" CDC-128- Laudtory chrono for participation in program.
           (Employabili·y Program) dated August 18.2005.

Exhibit"17" Laudtory work chrono's from P.I.A.-Textiles.

Exhibit"18" Laudtroy work chrono from living Unit-Halls.

Exhibit"19" Classification Annual/Post Board of March 13.2006.

Exhibit"20. Psychologist Evaluation Report of January 13.2006 by
           Dr.M.Macomber,Ph.D. Psychologist page-1 through 6.

Exhibit"21' Dr.Bruce M.Bakman. Ph. D. One-on-One- individual therapy.
           Psychologist.

Exhibit"22" Psychologist Evaluation Report of December 17.1999, of
           five (5) pages.

Exhibit"23" Board Commissioner Welch issue on alcoholism at page 68,
           line 21 through 24.

Exhibit"24" American Disability Act. BPT-1073-Form filed for the 2005-
           Board hearing.

( A-13-)

(Continue)

## INDEX TO EXHIBITS

Exhibit"25" Multi-Purpose Form on AA program.

Exhibit"26" Attorney Spowart letter dated March 13.2006, Board not
            giving parole date.

Exhibit"27" American Disabilty Act-BPT-1073-Form filed Feb.24.2003.
            for the 2004 Board hesring.

Exhibit"28" Board's Matrix for fixing terms.

Exhibit"29" Board fixed Petitioner's term at 218-months (18 years and
            two months.

Exhibit"30" AA chrono's.

Exhibit"31" Attorney General's Informal Response dated March 22.2007.

Exhibit"32" Appellant's Informal Reply dated May 9th.2007.

Exhibit"33" Superior Court decision dated May 25.2007.

//

//

//

//

//

//

//

//

//

//

//

IT WAS A VIOLATION OF PETITIONER'S RIGHT TO DUE
PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH
AMENDMENT TO THE UNITED STATES CONSTITUTION FOR
THE BOARD OF PAROLE HEARING TO FIND PETITIONER
UNSUITABLE FOR PAROLE AT HIS FIFTEENTH SUBSEQU-
ENT PAROLE HEARING BASED ON IMMUTABLE FACTORS
OF THE COMMITMENT OFFENSE AND PRIOR CRIMINAL
HISTORY, RENDERING THE DECISION ARBITRARY AND AN
ABUSE OF DISCRETION.

On March 13.2006, the Board of Parole hearing held Petition-
er's seventeen (17) Subsequent parole hearing to determine wheth-
er Petitioner is suitable for parole.

The Board concluded that Petitioner was not yet suitable for
parole and would pose an unreasonable risk of danger to society
or threat to public safety if released from prison. This conclu-
sion hinged on their finding that the commitment offense which
occurred on March 2.1978. The victim in this case was samuel Lo-
wery who was shot twice in the commission of robbery A/ and he
was shot by the inmate's bother (Tony or Tyrony Weir), and the
offense was carried out in a crule manner and was trivial.(See-
Ex."1 ") Board Transcript at page-61,line 6 through 26, and page-
62,line 1 through 4).


Petitioner contends that there was no evidence presented by
Board, nor in the record suggesting Petitioner's actions were
carried out in cruel manner. The Board is required under due
process to form a factual basis for its findings and not simply
state conclusion. In re Powell, 45 Cal.3d 894; In re Johnson,(-
1995) 35 Cal. App. 4th, 160, 169;  In re Rosnkrantz, 80 Cal. App.
4th, 409, 928).

---

A/.    In Board Transcript at p.61,line 19..The charge is
robbery. Not burglary (See Ex." 1"

(Continue--1 --)

1    own asseration. At the time set for sentencing the trial court

2    concluded the evidence showed Petitioner was at least an <u>aider and</u>

3    <u>abettor.</u> (See Ex," 2" Sentence Transcript at p.3,line 7 through 11,and

4    the trial court also went on **striking**  firearm use allegation on all

5    counts in the interest of justice. (See Ex." 2" Sentence Transcript

6    at p.6,line 17 through 21)). (See also Board Transcript at p.55,line

7    25-27; p.56,line 1-2 -**Ex." 1 ").**

8

9    Petitioner contends when the facts were presented to the Board, the

10   Board conpletely ignored <u>individual culpability</u>, but based its decis-

11   ion largely on what was done not by Petitioner personally but **by what**

12   **Petitioner's brother (Tyrone** or Tony Weir) <u>did  the actual shooting</u>

13   <u>of the victim.</u> Despite further evidence to the contrary by the victim'

14   s <u>own testimony.</u> The victim identified Petitioner's brother (Tony or

15   Tyrone Weir) as the one who shot him. On cross-examination by Petiti-

16   ioner's lawyer the victim states the following:

17         Q. (By Mr.Call):  Mr.Lowery, do you know Tony Weir, your
              next door neighbor?

18         A. (No Audible Response)

19         Q. You're shaking your head yes, is that right?
           A. Yes.

20         Q. Did Tony Weir shoot you, Mr.Lowery?

21         A. I have reason to believe he did.
           Q. Did you see him?

22         A. Yes.
           Q. Did you see him with a gun?

23         A. Yes.

24   (See Ex."3 " Preliminary Transcript at p.104,line 16 through 24 ).

25

26   It is further noted in the Appellate Courts opinion:

27         "Thus, the defendant's <u>liability</u> for murder was based on his
              involvement of the attempted robbery of the victim."

28   (See Ex." 4 " Appellate Courts Opinion at p-5).

                          (Continue-- 3 --)

The California Attorney General's Response Brief states:

> "Appellant's **liablity** for murder was based on his invovement in the attempted robbery of the victim, (i.e., Felony-Murder Rule)).

(See Ex."5 " California Attorney General's Response Brief at p.10).

The Board of Parole Hearing (BPH) has been aware for some time that Petitioner was not the shooter in this case by its <u>own inquiry regarding the conviction of Petitioner</u> . **Mr.Art Harrison,** San Bernardino County District Attorney responding to the Board's inquiry made the following statement:

> "One thing I would point out **to the Board** is that the opinion of the trial prosecutor is that the actual shooter in this matter was **not Duane Weir, but his brother."** (Ex."6").

It should be noted the trial prosecutor was involved in both of the two separate trials of Petitioner and brother (Tony or Tyrone Weir).

The Board was also advised that the trial prosecutor who now is a Supesior Court Judge, Judge Ashworth has offer to assist in the resolution of any further questions the Board or its investigators may have. (See Ex." 6 " Board of Prison Terms Inquiry at p.3.)).

With regard to the extent the Board relies on the circumstances surrounding the commitment offense to justify its own finding that Petitioner's actions were carried out in an cruel manner. .

It can only be seen as remarkable that not only has the Board failed to present any factual evidence in support of its own findings, it gives no weight, not even some of the overwhelming well document evidence of Petitioner's true culpability in this matter.

(Continue-- 4 --)

1   Petitioner contends that there was no evidence presented by the

2   board, nor in the record suggesting Petitioner continues to pose a

3   significant risk of danger to public safety based on Petitioner's past

4   criminal history B /.

5   In California parole must be granted unless certain criteria are

6   met. (P.C.§3041, Sub,(B) [The Board shall set a release date unless it

7   determines that the gravity of the current offense or offenses or the

8   timing and gravity of current or past convited offense or offenses are

9   such that consideration of the public safety requires a more lengthy

10  period of incarceration]. The mandate of P.C.§3041 (B) is clear and

11  the Board is required to base their decision on the gravity of convic-

12  ted offenses.

13  In regards to Petitioner's past criminal history the following

14  statements at Board hearing are as follows:

15      "Presiding Commissioner St.Julien:  Do you have any
         additional documents?
16

17      "Attorney Spowart:  Yes I do, I have a couple of
         memorandum here. Memorandum of support and a memorandum
18       based - it has to do with prior criminal record.

19      "Presiding Commissioner St.Julien: I notice - I guess
         there was so going around and around about this in
20       prior hearings, is that correct?

21      "Attorney Spowart: Yes, and I'm trying to clear it up.

22      "Presiding Commissioner St.Julien: Okay. So this is dated
         today. This memo that you handed me-

23      "Attorney Spowart: Yes, for the hearing today.

24      "Presiding Commissioner St.Julien: Regarding the criminal
         history. So let me just take a look at this.
25

26                          (Continue)

27  B /.    (See Ex."20" at p.4- section (V)-A,B and C.).

28

1    "Attorney Spowart: I looked at the last hearing
      and they use a lot of prior record --

2    "Presiding Commissioner St.Julien: Yes, that's part
      of our --

3

4    "Attorney Spowart: Cases that (indiscernible) not
      supposed to.  There's no disposition, it was dismissed.

5    "Presiding Commissioner St.Julien:  Thank you. Do you
      have any disagreement - so the disgreement would be

6    perhaps arrests with no disposition that are used as
      opposed to if you spent time - because you had some

7    county jail, probation and stuff like that. So those
      are, at least to me those are clear things that happened.

8

9    "Inmate Weir: true.

10   "Attorney Spowart: It has to do with the showing of prior
      **violence and he didn't have any violence.**

11   "Presiding Commissioner St.Julien:  So just by looking
      at this list where we have burglary, parole violation C/,

12   which was mischief. It's basically property crimes, is
      that what you were doing?

13

14   "Inmate Weir: Yes, ma'am.

15   "Presiding Commissioner St.Julien: So then also in terms
      of your previous record and at this point in time generally

16   I'd look at what you were- what you actually may have served
      time for  and I have a list and you can tell me if I'm

17   right or wrong. I guess it was in Juvenile Hall - I guess
      that's different than a ranch or anything like that. Did

18   you have time in a juvenile- I think it was a Federal Juven-
      ile--

19   "Inmate Weir: Yes, it's like a juvenile place. Like a
      military school.

20

21   "Presiding Commissioner St.Julien: So maybe the equivalent
      today of a rach or something like that.

22   "Inmate Weir: Something like that, yes.

23   "Presiding Commissioner St.Julien: And then juvenile proba-
      tion, state prison, adult probation, parole and county

24   jail. Is that --

25   "Inmate Weir: The probation I had was for grand theft. I
      violated the probation for driving tickets, which I wasn't

26   supposed- that's when I was in state prison, which violated
      the probation.

27                    (Continue)

28   C /.  (see Ex."8" prior record at p.3).No parole violation or buglary.

(Continue--6 --)

1   "Presiding Commissioner St.Julien: So we can see
that list. And I think the Governor- did the

2   Governor's letter point out like thirty-four arr-
ests or--

3

   "Inmate Weir: That's what we're --

4

   "Presiding Commissioner St.Julien: So that's why

5   you want to --

6   "Attorney Spowart: **That's why I submitted that.**

   "Presiding Commissioner St.Julien: why you wanted

7   to bring in (indiscernible --

8   "Inmate Weir: (Indiscernible) -

9   "Presiding Commissioner St.Julien: An accuarte
accounting of charges that were actually followed

10   through.

11   "Inmate Weir: The non-dispositions. **There was no
dispositions.**

12

   "Attorney Spowart: **Plus a lack of violence in any**

13   **of them.**

14 (See Ex."1" Board Transcript at p.3,line 16-27; p.5,line 7-21;
p,line 1-18; p,13,line 4-27; p.14,line 1-19; (See also Ex."7"

15 the Classification-Program Review dated April 17.2001, for the
prior criminal history).

16

17   As the Court notes on page-5-line 15 through 24. Here the

18 attorney Spowart submitted an **accuarte** prior record revealing

19 Petitioner's criminal history (See Ex."8") Attorney Spowart's

20 Memorandum dated March 13.2006.  As the Court notes there are

21 18-charges-page,1 and 2.Some of the charges are the same which

22 there was never **(Disposition)** on any of these charges. **And the**

23 **Court notes on page-7-line 1-3. Here the Governor** went outside

24 the record and used these charges against Petitioner in taking

25 away Petitioner's parole date. (See Ex."8" ) Attorney Spowart's

26 Memorandum at page-3- for accuarte prior record which there is

27 no violence as the attorney stated on page-7,line 13. It must

28 noted a "previous record of viloence" (meaning an attempt to

1  to inflict serious injury or other "assaultive behavior") is
2  a circumstance tending to establish unsuitability for parole -
3  (Cal. Code Regs., tit. 15§2402, subd. (c)(2); **In re Rosenkrantz,**
4  **supra,** 29 Cal. 4th at p.653). There is nothing in the governing
5  statutes or regulations to support the Board's reliance on Petit-
6  ioner's non-violent criminal record. Here, the evidence shows
7  that Petitioner has never been convicted of a violent offense -
8  (either as a juvenile or as an adult). (See Ex."8" prior record.
9  The Court notes "Ex."1" Board Transcript at p.6.line 16-17,
10 where Commissioner St.Julien states all **property crimes. Note** -
11 **Ex."8"** at p-3- there was no burglary or parole violation as its
12 stated on line 15 of Ex."1".). In order for the Board to deny
13 parole based on the gravity of Petitioner's past convicted offe-
14 nes. P.C.§3041(B). the Legislature has already considered that
15 fact when it allowed for adjustment of the term based on past
16 offenses P.C.§3041(A). The Board is required to demonstrate the
17 gravity of those offenses by makinf **specific findings** relating
18 to there **severity.** The finding must be **particular egregious** to
19 justify the denial of a parole date and weight not against ordin-
20 ary norms, but against other instances of the same crime or crim-
21 es. The Board must also consider the legthy of time Petitioner
22 has served in relation to the term prescibed for the offense
23 under consideration. **In re Ramirez,** 94 Cal. App. 4th 549, 570.
24 There is no indication that the Board gave consideration to the
25 gravity of Petitioner's past offenses or the lengthy of time he
26 has served (**28 years**). Petitioner's past offenses did <u>not in-</u>
27 <u>clude any acts of violence suggesting he pose a danger to soci-</u>
28 <u>ety.</u>

(Continue--  8--)

1    The Court will note on Petitioner's past prior record there
2    was a charge of "Dyer Act" which is taking an stolen vehicle
3    across the State line. That was some (49 years) when Petitioner
4    was a juvenile, and note some (46 years) ago as a juvenile there
5    was a charge of GTA, otherwords grand theft auto. Petitioner's
6    first adult charge was for grand theft auto(See Ex." 8 ")at p-3-
7    prior record (GTA-7-15-66).

8    Petitioner contends for the Board to find Petitioner unsuit-
9    able for parole. It must be noted that the California Supreme
10   Court "cautioned", sole reliance on the commitment offense might,
11   in particular cases, violate section P.C.§3041, subdivision (a)'s
12   provision that a parole date 'shall be set' under 'unform term'
13   principles, and might also contravene the inmates's constitution-
14   ally protected expection of parole" In re Dannenberg, 34 Cal.4th,
15   at 1094, supra). Petitioner can only be denied parole if the
16   "violence or viciousness" of the commitment offense is "more
17   than minimally necessary to convit him of the offense" (Id., at
18   1095).

19   Taking the offense into consideration, the "abiding concern"
20   is, is the prisoner "still dangerous" (Id., at 1088). Parole may
21   be denied only if the prisoner is "presently" too dangerous to
22   grant a fixed parole release date." (Id., at 1080). there is
23   zero evidence in the record that Petitioner is "presently too
24   dangerous to grant a fixed parole release date."

25

26   The controlling case is Biggs v. Terhune, 34 F. 3d, at 916-
27   917, supra [ when a prisoner demonstrates "exemplary behavior and
28   //

(Continue-- 9 --)

1   evidence of rehabilitation, ... a continued reliance in the

2   future on an unchanged factor, the circumstance of the offense

3   and conduct prior to imprisonment ... could result in a due

4   proces violation"])., that due process violation has arrived (-

5   See **Biggs** v. **Terhune**, ( 9 Cir. 2003) 334 F. 3d **910**, **916-917**).

6   Petitioner contends after fifteen (1 ) Subsequent Board

7   hearings resulting in denials on the commitment offense and con-

8   duct prior to imprisonment in light of Petitioner's **"exemplary**

9   **behavior and evidence of rehabilitation."**

10  Petitioner contends a recently California Appellate Court

11  opined in **In re Scott II,** 133 Cal. App. 4th 573, 133 Cal. Rptr.

12  3d, at 920, **supra:**

13          "The commitment offense can negate suitability only
            if circumstances of the crime reliably establish by
14          evidence in the record rationally indicate that the
            offender will present an unreasonable public safety
15          risk if released from prison, Yet, the predictive
            value of the commitment offense may be very question-
16          able after a long period of time **(Irons v. Warden of**
            **California State Prison-Solano.** (E.D. Cal. 2005) 358
17          F. Supp.2d 936, 947, fn.2.) Thus, denial of release
            solely on the basis of the gravity of the commitment
18          offense warrants especially close scrutiny."

19  As the District Court opined in **Irons,** the same can just as

20  easily be said in case at bench, as opined in **Irons,** 358 F.2d,

21  at 947:

22          "[C]ontinueous reliance on unchanged circumstances
            transforms an offense for which California law
23          provides eligibility for parole into a de facto life
            imprisonment without the possibility of parole. The
24          Courts asks, rhetorically what is it about the circum-
            stances of Petitioner's crime or motivation which are
25          going to change? The answer is nothing. The circumst-
            ances of the crime [] will always be what they were,
26          and Petitioner's motive for committing[it] will always
            be trivial. Petitioner's has no hope for ever obtaining
27          parole except perhaps that a panel in the future will
            arbitrary hold that the circumstances were not that
28

1  serious or the motive was more than trivial. Given
2  that **no one seriously** contends lack of seriousness
   or lack of triviality at the present time, the pot-
3  ential for parole in this case is remote to the point
   of non-existence. Petitioner's liberty interest should
4  not be determine by such arbitrary, remote possibility."

5  Footnote 2 of **Irons,** 358 F. Supp.2d, at 947, is squarely on

6  point and worth noting in closing:

7      "To a point, it is true, the circumstances of the crime
        and motivation for it may indicate a prisoner's   in-
8      stability, cruely, impulsiveness, violent tendencies
        and the life. However, after [twenty=eight] years in
9      the caldron of prison life, not exactly an ideal thera-
        peutic environment to say the least, and after repeated
10     demonstartions that despite the recognized hardships of
        prison, this petitioner does not posses those attributes,
11     the predictive ability of the circumstances of the crime
        is near zero."

12

13  Petitioner contends the evidence in the record does not sup-

14  port the decision by the Board to deny Petitioner parole, viola-

15  ting his right to Due Process guaranteed by the Fifth and Four-

16  teenth Amendment to the United States Constitution. The writ

17  sholud be granted and the Board ordered to fix Petitioner's term

18  accordingly to his **individual culpability** and apply any excess

19  time earned by good conduct credits to the time he would do on

20  parole (**McQuillon** v. **Duncan,** 342 F.3d 1012, 1016 (9th Cir.2003).

21

22                          CONCLUSION

23  The Board and Governor of California, through counsel, the

24  Attorney General's Office, are doing everything they can to up-

25  hold what is virtually a "no parole" policy for indeterminately

26  sentenced prisoners in Californi ,and their motion to dismiss

27  on **Dannenberg,** a case that does not apply. Petitioner has clear-

28  ly demonstrated that he does have a liberty interest in parole

(Continue--11--)

1   protected by the Due Process Cluase of the Fourteenth Amend-

2   ment and that right to Due Proces pursuant to **Biggs v. Terhune**

3   **334 F.3d 910, surpa**, have been violated.

4

5   Petitioner contends in order for the Board to overcome this

6   statutorily created presumption the Board is required by law,

7   P.C.§3041(B) and indeed Due Process, to consider the factual

8   circumstances surrounding Petitioner's offense, which are re-

9   liably document when making its decision, and further to act-

10  ually read the documents and make a reasoned decision based on

11  all the appropriate fators, **In re Rosenkrantz**, (2000) 80 Cal.

12  **App. 4th 409, 427-428.** There is no indication that the Board has

13  done so here.

14  Therefore, Petitioner contends the Board's decision denying

15  parole was based on an arbitrary and irrational standard of

16  review, in violation of P.C.§3041, Article I, § 7 of the Calif-

17  ornia Constitution and the Fourteenth Amendment to the United

18  Staes Constitution.

19

20  Wherefore, for the foregoing reasons it is respectfully re-

21  quested that the writ be granted, and any other relief this

22  Court deems appropiate.

23

24  Date: _____ 2006.                    Respectfully

25                                         _____

26                                         DUANE  Roy Weir-C-01290

27

28

(Continue-- 12 --)

1

CLAIM TWO

2  PETITIONER WAS ILLEGALLY AND UNCONSTITUTIONALLY
   DENIED PAROLE WHEN THE BOARD OF PAROLE HEARING
3  FOUND PETITIONER NEEDS SELF-HELP AND THERAPY TO
   EXPLORE HIS FULL CULPABILITY IN THE CRIME. VIOL-
4  ATING P.C.§3041, P.C.§5011 AND THE 14TH, AMEND-
   MENT TO THE UNITED STATES CONSTITUTION.
5

6  In the Board's decision denying parole, the Board made the

7  following findings:

8      "Presiding Commissioner St.Julien:  We make the
       following findings:  That the inmate's lack of
9      meaningful self-help programming does not demon-
       strate to the panel that you'll have the necess-
10     ary tools to maintain your gains outside a con-
       trolled setting." (See Ex."1" Board Transcript
11     at p.65,line 9 through 13).

12  It is further noted the Board of March 13.2006, relied

13  exclusively upon previous Board of April 6.2004, recommendations

14  and was the reason the 2004 Board hearing denied parole as to

15  the following:

16     "the extent to which the prisoner has explored the
       commitment offense and come to terms with the un-
17     derlying causes." (See Ex."9" BPT-1000(a)(Rev.-
       12/98).
18

19  Petitioner contends there is overwhelming well document

20  evidence the Board has completely failed to consider or even

21  mention the programs of self-help and therapy programs Petition-

22  er has participated in as follows:

23     (1). Fifteen (15) years of Alcoholics Anonymous.(See Ex."1"
       Board Transcript at p.35,line19) (See Ex.'30' AA chrono's)
24

25     (2). Alcoholics Anonymous Big Book/ Twelve Step Study Group-
       (See Ex."1" Board Transcript at p.36,line 26-27 and p.-
26     37,line 1-2).

27     (3). Five (5) years of Narcotics Anonymous. (See Ex."10" no
       history of any kind of drugs.
28  //

## THERAPY

(4). One-on-One with Dr.Bruce M.Bakeman, Ph.D. Clinical Psychologist. **"Topcs:** The commitment offense explored, as well as factors which led upto it. (See Ex."11 ").

(5). Life Skills Group with Dr.Bruce M.Bakeman, Ph.D. Clinical Psychologist. **"Topics:**

A. Substance Abused. **B.**Overcoming Anger and Aggression.
C. Stress Management. D.Forming Life Goals.
E. Building Self-Esteem.
F. Improving Problem Solving Skills.
G. Re-Entry-Making a successful return to society.(See-Ex."11").

(6). Reality and Decision Making Group. **"Topics:**

A. Attitude.
B. Values and Feelings Claraification.
C. Goals Orientation.
D. Problem Solving Techniques.
E. Impulisive Behavior and various consepte of Williams Glasser, Ph.D. and Eric Bernie,M.D. (See Ex."11").

(7). Beginning Stress Management & Relaxtion Training. (See-Ex."11 ").

(8). Communication Skills Training.(See Ex."11 ").

(9). Self-Esteem and Assertiveness Training.(See Ex."11").

(10). Yoke-Followship Groups. (See Ex." 11").

(11). We Care Program for juveniles. (See Ex."12").

(12). Education Program.  Completed GED. (See Ex."1").Board Transcript at p.4-5).

(13). Vocational Auot mechanics completed.(See Ex."1"). Board Transcript at p.35,line 5-8).

(14). North facilty Library volunteer worker.(See Ex."13").

(15). Sixteen (16) years in job assignmemt..P.I.A. Textiles with postive work reports. (See Ex."1" Board Transcript at p.35,line 1-20.

(16). Inmate Employability Program. Certificate nomination Form. (See Ex." 14").

(17). Certicificate of Proficiency Machine Operator. (See-Ex."1 ").board Transcript at p.38,line 11-14).

(Continue-- 14--)

(18). Inmate Employability Program. (See Ex."15" dated Aug.18.
       2005. Former P.I.A. Worker Verification Card to be used
       at the **Employment Office**" and (See Ex."16").CDC-128-B-
       Laudatory Chrono revealing one has to participate in
       this program in order to get full benefits of the pro-
       gram. (See Ex." 1"").Board Transcript at p.66,line 19-20)

Petitioner contends Commissioner Mejia is mis-leading the

reader to believe Petitioner has done nothing but review the

three (3) hour video. the Exhibits explain the true facts about

the video.


## LAUDATORY CHRONO'S

**(19).** CDC-128-B- Laudatory Chrono-Work. Oct.12.2005

(20). CDC-128-B- Laudatory Chrono-Work. June 12.2002.

(21). CDC-128-B- Laudatory Chrono-Work. Sept.20.1997.

(22). CDC-128-B- Laudatory Chrono-Work. Oct.15.1997.

(23). CDC-128-B- Laudatory Chrono-Work. February 15.1995.

(24). CDC-128-B- Laudatory Chrono-Work. April 14.1994.

(25). CDC-128-B- Laudatory Chrono-Work. January 23.1991.

(26). CDC-128-B- Laudatory Chrono-Work. May 5.1990.
       (See Ex." 17").


## HALL PORTER

(27). CDC-128-B- Laudatory Chrono-Work. May 4.1989.

(28). CDC-128-B- Laudatory Chrono-Work. May 5.1989.

(29). CDC-128-B- Laudatory Chrono-Work. November 9.1989.
       (See Ex."18 ").


Petitioner contends the Board's reference to Petitioner not

having participated in self-help and therapy programs refer to

(Continue--15 --)

1  subdivision (d)(9) of section §2402, **which** <u>**lists as a**</u>
2  <u>**factor demonstrating suitability for parole,**</u> the fact Petitioner
3  has <u>**participated in institutional activities that indicate an**</u>
4  <u>**enhance ability to function within the law upon released.**</u> the
5  arbitrariness of this concern is demonstrated by the Board's
6  recommendation that Petitioner participate in the **IMPACT** and
7  also in **Anger-Manegement.** (See Ex."**1** " Board Transcript at p.66,
8  line 18, and p.67,line 9-10).

9

10  Petitioner contends the board has placed Petitioner in an
11  impossible situation knowingly Petitioner will never achieve or
12  participate in the **IMPACT** or the **Anger-Management** programs be-
13  neither of the two programs **exist.**(See Ex."**19** " the Classifica-
14  tion Annual/Post Board of March 16.2006, **noting the IMPACT and**
15  **Anger-Management programs has been discontinued.**

16

17  Petitioner contends there is no suggestion or evidence in
18  the record or in the report of January 13.2006, by Psychologist,
19  Macomber Ph.D.stating Petitioner had a problem controlling his
20  temper. Dr.Macomber concluded Petitioner had no mental disorder,
21  no personality disorder or no physical disorder that would
22  necessatate treatment. (See Ex."**20** "BPH- Psychologist Evaluation
23  Report of January 13.2006,at p.3,4-5 where Dr.Macomber states
24  the following:

25          "By Dr.Macomber: there are no mental or
            emotional problems in this case that
26          would interfere with regular parole
            planning. the prognosis for successful
27          adjustment in the future in the commun-
            ity is excellent."(See Ex."**20**") at p.4-
28  //      5.

                        (Continue--**16** --)

On the contrary, all the evidence presented to the board and in the record, shows that not only doesn't need therapy, but also that he is neither unpredictable nor a threat to others.

In a report prepared by Dr.Bruce M.Bakeman, Ph.D., Staff Psychologist states:

> "this inmate has completed a course of individual therapy. During the course of this therapy, his understanding of his commitment offense was explored, as well as the factors which lead up to it. As a result of this therapy and his increasing self-understanding, his violence and recidivism potential should be less than for the average inmate." (See Ex. "23" Psychologist Chrono.).

In a report prepared for Board of Prison Terms by Staff Psychohologist., M.Carswell, Ph.D. states as follows:

> "By Dr.Carswell: Under Clinical Assessment" Mr.Weir showed- Good insight into his commitment offense." (See Ex. "22").at p.three (3).

Dr.Carswell further states under "Clinical Observations" Comments and Recommendations as follows:

> "This inmate has no mental health disorder which would necessitate threatment either during his incarceration or after parole.( See Ex. "22" at p.4).

Dr.Carswell further states, release to community as follows:

> "If released to the community, his violence potential is estimated to be no higher than the average citizen in the community." (See Ex. "22" at p.four-4-).

//

(Continue-- 17--)

1      In a report of 2006 prepared for Board of Parole Hearing by

2  Staff Psychologist, Dr.M.Macomber, Ph.D. states as follows:

3              CLINICAL EVALUATION AND MENTAL STATUS
       "Dr.Macomer states:  Regarding the presence of anti-
4      social personality disorder, Mr.Weir does have strong
       feelings of e,pathy towards others, concerns towards
5      others, and there is no evidence of anti-social or
       criminal thinking or values in his life at this point.
6      This man has changed considerable over his years incar-
       ceration. There is no evidence of a personality disorder
7      at this time." (See Ex."20." at page-3-).

8

9      Dr.Macomber further evaluation under the following:

10             CURRENT DIAGNOSTIC IMPRESSION

11         AXIS I:  NO MENTAL DISORDER.
           AXIS II: NO PERSONALITY DISORDER.
12         AXIS III.NO PHYSICAL DISORDER.
           AXIS IV: LIFE TERM INCARCERATION.
13         AXIS V:  GAF  90

14

15     Dr.Macomber evaluation of Petitioner's dangerousness in

16  the community as follows:

17             ASSESSMENT OF DANGEROUSNESS

18     Dr.Macomber states:  In considering a potential for
       dangerous behavior when released to the community on
19     parole, the Level of Services inventory-Revised was
       administered. This is an actuarial measure that ass-
20     esses criminal history which in his case is serious,
       substance abused history which is in his case as
21     serious and his progress in vocational goals, family-
       life, and other factors. His score places him at the
22     5.1 cumulative frequencies in comparison to other pri-
       son inmates. This means if 100 men were released on
23     parole, he would do better than 94 of them. Based upon
       his current attitude and maturity, his potential for
24     violence in the community is no greater than the aver-
       age citizen and in fact be lower than the average cit-
25     izen based upon his growth and maturity. The prognosis
       for successful adjustment in the future in the community
26     is excellent." (See Ex."20" at page-4-5).

27  //

28  //

                        (Continue--18--)

1    Petitioner contends the evidence shows that Petitioner

2  has already received therapy regarding the commitment offense

3  and also self-help. Petitioner doesn't need therapy, and most

4  importantly can not get therapy no longer which the Board was

5  already aware of before making its decision. (See Ex." 7 " the

6  Classification Program Review dated April 17.2001).

7

8    The evidence and reports further shows that Petitioner is

9  neither unpredictable, nor a threat to others and has never dis-

10  played assaultive behavior in his past or present which would

11  indicate otherwise.(See Ex." 7 " Classification Program Review

12  dated April 17.2001, noting no violent crimes or violence).

13

14    The Board is further prohibited by law from requiring an

15  admission of guilt to the crime in its parole determination, not

16  to mention requiring **therapy** in order to explore it. California

17  Penal Code Section §5011(A), (B) states:

18       "Admission of guilt: Prohibited against
          requirment for**treatment, custody or**
19       **setting dates;**

20       **(A)** The Department of Corrections shall
          not require, as condition for any form
21       of treatment or custody that the Depart-
          ment offers, an admission of guilt to
22       any crime for which an inmate was commi-
          tted to the custody of the Department.
23

24       **(B) The** Board of Prison Terms shall not
          require, when setting parole dates, an
25       admission of guilt to any crime an in-
          mate was committed."

26

27    Petitioner contends to the extent the Board relied on

28  therapy for Petitioner to explore his full culpability in its

(Continue--19--)

1  findings to deny parole, it not only violated P.C.§5011,

2  but also the statutory mandate govern their decision making

3  process under Cal. P.C.§3041. This statute outlines for the

4  Board under what set of circumstances it can rely on when making

5  a decision not to set parole dates, which states under Penal

6  Code §3041 (B):

7      "The Panel or Board shall set a release date
       unless it determines that the **gravity of the**

8      **current convicted offense of offenes, or the**
       **timing and gravity of current or past offense**

9      **or offenes,** is such that consideration of the
       public safety requires a more lengthy period

10     of incarceation for this individual, and
       that a parole date, therefore, cannot be fixed

11     at this meeting."

12

13  The statute is clear that when the Board makes its determina

14  tion it is required to do so based **solely on the gravity and**

15  **timing of current or past convicted offense** <u>leaving silent any-</u>

16  <u>post-conviction criteria or requirement to consider,</u> such as in

17  <u>this case the need for therapy.</u> The Board cannot adopt **rules, re-**

18  **gulations or standards** to make its parole determination which

19  are beyond the **authority** confered upon it by **P.C.§3041,**and they

20  **must accord with standards prescribed by other provisions of law**

21  **P.C.§5011** (See Gov. Code §11342.1). The Board gives itself much

22  broader discretion than does P.C.§3041 (B). However, when an

23  Administrative Rule, Regulation or Standard <u>conflicts with a</u>

24  <u>statute, the statute controls.</u>  (Government Code§113442.2).There-

25  fore, the Board must obey Penal Code §3041 without regard to <u>any</u>

26  <u>post-conviction requirement or provision the Board may have</u>

27  <u>adopted, or conferred upon itself in its decision making process.</u>

28  <u>//</u>

(Continue--20-)

1 | in the crime and would be a good candidate for parole.

2

3 | ### RELIEF SOUGHT

4 | Since Petitioner's suitability for parole is presumed as a

5 | matter of law (P.C.§3041) the Board conducted hearing to deter-

6 | mine only if there is nonetheless a preponderance of evidence

7 | adduced at the hearing demonstrating a current dangerousness to

8 | society sufficient to overcome the presumption, and that a parole

9 | date therefore cannot be set at that time. (P.C.§3041(B). But

10 | absent the minimal process due at a hearing, a test for unsuit-

11 | ability is not even available, and the presumption prevails.

12 | What has happened here is that the Board has failed to demon-

13 | strate by any evidence that Petitioner poses a current danger to

14 | society thereby denying him his statutory right to parole.

15

16 | The appropriate relief is order Petitioner's immediate

17 | release pursuant to (In re Rodrigues (1975) 14 Cal. 3d 639; 122

18 | Cal. Rptr. 552, 651-652, 537 P.2d 384). Petitioner's term

19 | should have been fixed years ago, as Petitioner is under the

20 | "OLD' Rehabilitation Law of (1978) which Petitioner term is

21 | seven(7) years to life (See Ex."1" Board Transcript at page-56,

22 | line 2 through 5, and page-59, line 8-9, and note page 68, line 13

23 | through 19 where attorney Spowart states as follows:

24 | "By Attorney Spowart: Commissioner, before you
go off I'd like to make a statement, just a short
25 | one. My client's been down twenty-eight years. He
was not the shooter and after the hearing today, I
26 | don't feel he got a fair hearing. The punishment
is rapidly escalating to where it's cruel and un-
27 | usual, for the record.)(See Ex."1" at p.68, line 13
19.).

28 | //

(Continue-- 21 -)

1    Petitioner contends the evidence in the record does not

2  support the decision by the Board to deny Petitioner parole, vio-

3  lating his right to Due Process guaranteed by the Fifth and

4  Fourteenth amendment to the United states Constitution.

5

6    The writ should be granted and the Board ordered to fix

7  Petitioner's term and apply any excess time earned by good con-

8  duct credits to the time he would do on parole (**McQuillon** v.

9  **Duncan**, 342 F. 3d 1012, 1016 (9th Cir. 2003).

10

11    For the foregoing reasons, it is respectfully requested that

12  the writ be granted and Petitioner be appointed counsel to

13  protect his rights. And any other relief this Court deems

14  appropriate.

15

16

17  Date. Aug 14th - 2008.                    Respectfully

18

19                                  DUANE ROY WEIR-C-02190

20

21

22

23

24

25

26

27

28

(Continue--22--)

CLAIM THREE

PETITIONER WAS ILLEGALLY AND UNCONSTITUTIONALLY
DENIED PAROLE WHEN THE BOARD OF PAROLE HEARING
USED PETITIONER'S PAST IMMUTABLE HISTORY OF
ALCOHOL ABUSED WHEN THERE IS NO EVIDENCE HE IS
USING OR PRESENTLY ADDICTED TO ALCOHOL.VIOLAT-
ING P.C.§3041,AND THE FOURTEENTH AMENDMENT TO
THE UNITED STATES CONSTITUTION,AND TURNER V.
HICKMAN,342 F. SUPP. 2D 887 (E.D. CAL. 2004).

On March 13.2006, the Board of Parole Hearing held Petitioner's
fifteenth (1.) Subsequent Board hearing to determine whether Petition-
er is suitable for parole.   At this Board hearing the **main focus** was
on the **previous Board's recommendation** of **2004** as follows:

> "Presiding Commissioner Welch:  We're going to ask
> that a new psychological report especially address
> the issue of alcoholism and prisoner's need for
> further self-help in those areas." (See Ex."23"
> Board Transcript at page-68,line 21 through 24 ) and
> (See Ex."2" the BPT-1000(a)(Rev. 12/98)the recomm-
> endations).

In the Board hearing of March 13.2006, Presiding Commissioner
St.Julien states as follows:

> "Presiding Commissioner St.Julien:  One of the things
> the psychologist in last report was asked to explore
> was your, you know, the history of drinking and where
> you are at this point in time." (See Ex."1" Board -
> Transcript at page-20,line 22 through 26) D/.

Petitioner contends he was denied effective assistance of counsel,
by attorney David J.Spowart failure to ensure all of Petitioner's
procedural due process rights were protect under the Six, Fourteenth
amendment of the United States Constitution and Federal.

Petitioner contends attorney David J.Spowart failed to protect
Petitioner's rights under the American Disabilities Act.(ADA) --

---

D/. Petitioner contends that Commissioner St.Julien is referring to
Board hearing of 2004 in which Commissioner Welch reveals the follow-
ing above lines 11 through 13).

1   and to ensure the Board would comply with (Turner v. Hickman, 342

2   F. Supp. 2d 887 (E.D. Cal. 2004). The Board knowingly and intentionally

3   discriminated against Petitioner as follows:

4

5       In the instant case, prior to the Board hearing of March 13.2006,

6   Petitioner filed with the Board the **BPT-1073-Form on December 7.2004,**

7   **under the American Disabilities Act (ADA) and** Petitioner had made the

8   following statement"

9               "By Petitioner:  Alcohol not to be used in any
                hearing or decision." **(See Ex."24."**the BPT-1073-
10              Form of American Disabilities Act).

11      Petitioner contends the Board discriminated against Petitioner in

12  that Commissioner Mejia states:

13              "Deputy Commissioner Mejia:  It looks like you have some
                self-help - some - at least fifteen (15) years of AA.
14
                "Deputy Commissioner Mejia:  What happened? You stopped
15              in"99.

16              Deputy Commissioner Mejia: So  you're telling me that they
                don't have an actual meeting,
17
18              "Inmate Weir: No, sometimes they don't. I'm not saying all
                the time, the majority- because you know this lock-down has
19              a lot of problems going on right now and it's hard to keep
                any program."**E 7.**
20
                "Deputy Commissioner Mejia:  It's been six years, you
21              haven't done any AA, NA.

22              "Deputy Commissioner Mejia:  How do you plan not to drink.

23              "Deputy Commissioner Mejia: I'm concerned about the AA,NA.

24              "Deputy Commissioner Mejia:  You haven't drank. I'm not
                saying that I will even think of denying it based on just
25              that one, but it's a concern for me during this post-con-
                viction here." (See Ex."1 " Board Transcript at p35,line-
26              17-19);p.35.line 21-22);p.36.line 15-17);p.36.line 18-22);
                p.37.line 12-13);p.37.line20-21);p.38.line 15);p.41.line-
27              10 and lines 14 through 18)."

28  E /.(See Ex."25" Multi-Purpose Form- Revealing no AA program.

                        (Continue--24--)

1  Petitioner contends there is further document evidence the Board

2  knowingly and intentionally denied Petitioner parole date based upon

3  Petitioner not having participate in Alcoholics Anonymous or Narcotics

4  Anonymous program in that the Board Panel reveal to Petitioner's Board

5  attorney-David J.Spowart the following:

6        "By Attorney Spowart:  What happened after your
      hearing on **Tuesday, March 13.2006.** As I was

7        starting to leave the building both commissioners
      stopped me and tried to explain why they had not

8        given you a date. **They said they really wanted to**

9        **give a date** but believe without any current AA it
      would be rejected upon review in Sacramento and/ or
      or by Governor." **(See Ex."26" attorney Spowart's**

10       **letter dated March 17.2006 to Petitioner)."**

11  Petitioner contends he was put in an impossible situation when

12  trying to explain to the Board no AA program exist (See Ex." **1** " Board

13  Transcript at p.36.line 18 through 22)(See also Ex."**27**" the **April 6.**

14  **2006 Multi-Purpose Form**) in which Petitioner question as to the AA -

15  program which there had been no AA for some time and thats prior to

16  the Board hearing of March 13.2006, and after Board hearing. The Board

17  has continue to discriminate against Petitioner knowingly in that the

18  BPT-1073-Form had been filed with the Board on **December 7.2004, which**

19  this document filed would be for the April-2005 Board hearing but there

20  was long delay which ended up being March 13.2006 Board hearing.**F /.**

21

22  Petitioner contends the Board has in fact foreclosed any possibility

23  of rehabilitation for Petitioner no matter how successful Petitioner

24  has been in not abusing alcohol or how often he has participated in

25  alcohol abuse prevention programs. The Board obviously has presumed

26  that having abused alcohol prior to the commitment offense. Petitioner

27  will alway abuse alcohol regardless how successful Petitioner has been

28  **F /.**(See Ex."**27**" BPT-1073-Form file Feb,24.2003, for the 2004 Hearing)

1   in abstinence from alcohol. Petitioner has been alcohol free for

2   28-years. The presumption by the Board preculde any possibility of

3   rehabilitation and doom any prospect of parole for Petitioner.

4

5   In the instant case, the Board specifically requested their own

6   forensic expert, Dr.M.Macomber, Ph.D. Staff Psychologist to make and

7   evaluation of Petitioner's alcoholism and need for self-help and the

8   need for therapy (See Ex."20" Psychologist Evaluation Report of March-

9   13.2006 at page-1-).

10

11  In a report prepared for the Board of Parole hearing by Dr.Macomber,

12  Ph.D. Staff Psychologist states as follows:

13      "In view of Mr.Weir's strongly held values to remain
        clean and sober and his abstinence fro alcohol for

14      28 years G/, alcohol dependence cannot be a current
        diagnosis. Alcohol was a problem for him up until

15      the age of 34. At this point in time it is no longer
        a problem and it does not warrant a diagnostic label.

16      Therefore, his label will be deleted or noted only as
        a historical factor." (See Ex."20" at page-3-of the

17      Psychologist Evaluation Report of March 13.2006).

18

19  Dr.Macomber evaluation for "Alcohol Risk" factor:

20      "Mr.Weir's strong values against use of alcohol and
        determination to remain clean and sober no longer

21      makes this a significant risk factor." (see Ex."20"
        at page-4- of Psychologist Evaluation Report of

22      March 13.2006).

23                          (Continue

24  G/. In re Mark Smith, 109 Cal. App. 4th 489, 505..The Court stated
    the following: "There is no evience in the record to show that Smith

25  is presently addicted to drugs.(Cal. Code Regs., tit. 15,§2402,subd.
    (c)(6)[serious misconduct while in prison is a circumstance tending to

26  show unsuitability]). To the contrary,the record establishes that he
    has participated in Alcoholics Anonymous and Narcotics Anonymous in

27  prison, and the only drugs he takes at this time are those prescibed
    for his various medical condition. While there is evidence that he used

28  drugs and abused alcohol at the time of the murder, a prisoner's prior
    addiction is not appropriate consideration in determining parole suit-
    ability).(Continue to next page at bottom of page).

(Continue-26 --)

1   Dr.Macomber further evaluation for "**Dangerous Behavior**":

2       "In considering potential for dangerous behavior when
        released to the community on parole, the Level of
3       Service Inveentory-Revised was administered. This is
        an actuarial measure that assesses criminal history
4       which in his case is serious and his progress in
        vocational goals, family life, and other factots.**His**
5       **score places him at the  5.1 cumulative frequencies**
        **in comparison to other prison inmates.  This means if**
6       **100 men were released on parole, he would do better**
        **than 94 of them.**" (See Ex."20" at page-4-of Psycholo-
7       gist Evaluation Report of March 13.2006).

8   Dr.Macomber evaluation for "**Potential for Violence**":

9       "Based upon Mr.Weir's attitude and maturity, his
        potential for violence in the community is no
10      greater than the average citizen and in fact be
        lower than the average citizen based upon his
11      growth and maturity." (See Ex."20" at page4- of
        Psychologist Evaluation Report of March 13.2006).

12

13  Dr.Macomber further evaluation for need of "**Self-Help and Therapy**":

14      "There are **no mental or motional problems in this**
        **case that would interfere with reguarl parole**
15      **planning. The prognosis for successful adjustment**
        **in the community is excellent.**" (See Ex."20" at
16      page-5- of Psychologist Evaluation Report of March
        13.2006).

17

18  Petitioner contends the Board completely ignored their own expert,

19  Dr.M.Macomber, Ph.D.. Staff Psychologist "Evaluation Report" they

20  specificially requested it done and denied Petitioner parole dates so

21  the record on Petitioner's "alcoholism" would be for once and all Clear

22  and free from alcohol abuse. Dr.Macomber further made it clear that

23  Petitioner has no mental or motional problems that would require self-

24  help. Dr.Macomber also made it clear Petitioner no longer has alcohol

25  problem.                    (Continue )

26

27  In the instant case of Mark Smith, 109 Cal. App.4th 489, 505, it
    must be noted Petitioner's case is no difference as Petitioner has been
28  alcohol free for (28-years).The Board's decision was arbitrary and cap-
    ricious in Petitioner's case.

1    Petitioner contends his history of alcohol abuse is just that,

2    **history,** and there is **zero evidence** that he is **presently** using alcohol.

3    Several lower courts have addressed this, and two of the published

4    opinions, this Court let stand. In re Mark Smith, (2003) 109 Cal.App.

5    4th 489, 505, the Court held that " a prisoner's prior addiction is

6    **not an appropriate consideration in determining parole suitability"**

7    and in In re Ernest Smith, (2003) 114 Cal. App. 4th 343, 372, the

8    appellate court held that Smith's past desire for drugs was not some

9    **evidence that "he currently poses an unreasonable risk of danger with-**

10   out further treatment" and to use his **prior history of substance abuse,**

11   an "immutable factor", to deny parole was "arbitrary and capricious."

12   It can be no less so in Petitioner's case, as the record here

13   reveals Petitioner has maintained sobriety for **"28-years"** (See Ex. "28"

14   Psychologist Evaluation Report of January 13.2006, at page-3-and page-

15   4-at section(c).

16   If Petitioner's past history of alcohol abuse can establish unsuit-

17   ability, then the Board "could deny parole for the rest of [Petitione-

18   er's] life based on the immutable factor" (Id., Biggs. v. Terhune,334

19   F. 3d, at 917, supra; Mickens-Thomas v. Vaugh, 355 F. 3d, at 304,supra;

20   In re Mark Smith, 109 Cal. App. 4th 489, 505 (2003)[unless there is

21   evidence in the record that a prisoner **"presently"** uses drugs or

22   alcohol, "a prisoner's prior addiction is not an appropriate consider-

23   ation in determining parole suitability"]).

24

25                              CONCLUSION

26   Petitioner was convicted for First Degree Murder under the Felony-

27   Murder Rule as an Aider and Abettor (See Ex." 2 " at p.3-line 7-11) in

28

(Continue-- 28 --)

1  the crime and has been imprisoned for his role in that for twenty-

2  eight (28) **years.** Petitioner has been eligible for parole since **March**

3  **10.1985** and has had **seventeen(17)** parole consideration hearings H /re-

4  sulting in denials.  However, our laws recognize that even those con-

5  victed of murder can pay their debt to society and be returned to so-

6  ciety as productive, law-abiding members of the community.

7

8  The Legislature has decreed that unless the Board finds that the

9  release of a person convicted of murder poses a threat to public safe-

10 ty, such a person should be paroled.

11

12 In this case, there was no evidence to support the Board's finding

13 that Petitioner poses an unreasonable risk of danger to society or a

14 threat to public safety. On the contrary, the overwhelming evidence

15 demonstrates Petitioner has paid his debt for his role in the crime

16 and would be a good candidate for parole.

17

18 <u>RELIEF SOUGHT</u>

19 Petitioner contends the evidence in the record does not support

20 the decision by the Board to deny Petitioner parole, violating his

21 right to due process guaranteed by the Fifth and Fourteenth amendment

22 to the United States constitution. the writ should be granted and the

23 (Continue)

---

24 H /.In the instant case. Petitioner has a term of seven (7) years to
life sentence of **March 2.1978:** The Court will noted (Exhibit "28" the

25 Board's "Matrix" revealing the terms one would be under.As the Court
noted Petitioner was <u>sentence</u> as an Aider and Abettor. In (Ex. "28")

26 Petitioner's term is in section(A)(3)-term, **11**, 13 and 15). As the Court
will note Petitioner was found suitable April 17.2002(See Ex. "29" the

27 Board fixed Petitioner's term at 218-months which 88-months had to be
taken off for credits which term now is **"130-months"** thats ten years

28 and ten-months. the term for Petitioner. (Continue to next page).

1   Board ordered to fix Petitioner's term to his individual culpabil-

2   ity under the guidelines of the "Matrix" that is established by CCR-

3   Title 15 (See Ex."28 ") and apply any <u>excess time</u> earned by good con-

4   duct credits to the time he would do on parole (**McQuillon** v. **Duncan**

5   **F. 3d 1012, 1016 (9th Cir. 2003)).I/.**

6

7   As the Court noted when Petitioner's term was fixed by the Board

8   (See Ex."29 ") the total term was (218-months) which is (18-years and

9   2-months) this is with no credits to reduce the term . It is noted

10  Board apply (88-months) credits to reduce the term to (130-months)

11  which the total term now is (10-years and 10-months). Petitioner by

12  rights should be "discharged" completely as the Court will note that

13  Petitioner has <u>served</u> (24-years) with **no credits** . Petitioner has

14  exceed the complete term, and now Petitioner has (28-years) with no

15  credits to reduce the term. The Court notes the (Ex."28 ") Title 15-

16  the highest term is (22-years) note (D)(4). Petitioner was sentence

17  as an Aider(See Ex." 2 ") with the term of seven (7) years to life of

18  **March 2.1978,** and as attorney Spowart reveal as follows:

19        "By Attorney Spowart:  Commissioner, before you go
          off I'd like to make a statement, just a short one.
20        My client's been down twenty-eight years. He was not
          the shooter and after the hearing today, I don't feel
21        he got a fair hearing. **The punishment is rapidly
          escalating to where it's cruel and unusual, for the**
22        **record."** (See Ex." 1 " Board Transcript at page-68,line
          13 through 19).

23

24  Petitioner has served more than twenty-eight (28-years) and served

25  (21) years beyond the minimum seven (7) year term prescribed by law.

26

27  I/ Petitioner contends his term should be fixed under (In re Rodrigues
    (1975) 14 Cal. 3d 639,  122 Cal. Rptr. 551-652; 537 P. 2d 384. As the

28  attorney Spowart reveal Petitioner is under the old Rehabiliatation
    law of 1978 (See Ex." 1 " Board Transcript at p.59,line 8-9 and 13-19)

(Continue- 30-)

1    **Petitioner** has clearly demonstrated that he does have a liberty

2    interest in parole protected by the Due Process Clause of the Fourteen-

3    th Amendment and that right to due process pursuant to **Biggs v. Terhune**

4    334 F. 3d 910, supra, have been violated.

5

6    Wherefore, for the foregoing reason it is respectfully requested

7    that the writ be granted and **any** other relife this Court deems appro-

8    priate and just.

9

10    Date: _Aug 14th 2006_ .                          Respectfully

11                                                      _Duane R. Weir_

12    //                                               DUANE ROY WEIR-C-02190

13

14    //

15

16    //

17

18    //

19

20    //

21

22    //

23

24    //

25

26    //

27

28    //

( 31 )

1          CALIFORNIA BOARD OF PAROLE HEARINGS

2                    D E C I S I O N

3          **DEPUTY COMMISSIONER MEJIA:** We're back on

4    record for our decisions. All the participants

5    are back for Mr. Duane Weir.

6          **PRESIDING COMMISSIONER ST. JULIEN:** Mr.

7    Weir, we are going to deny parole today. We're

8    going to give you a year. I'll read the

9    decision and then give some suggestions. We've

10   reviewed all information received from the

11   public and relied upon the following

12   circumstances in concluding that the inmate is

13   not yet suitable for parole and would pose an

14   unreasonable risk of danger if released from

15   prison. As it regards the commitment offense,

16   which occurred on March 2, 1978. The victim in

17   this case was Samuel Lowery, who was aged eighty

18   at the time. He was shot twice in the

19   commission of a burglary and he was shot by the

20   inmate's brother and Mr. Lowery was in the yard

21   of his residence in Fontana, California. And

22   Mr. Lowery did not die immediately. It was

23   about two months later. His death was

24   subphrenic abscess due to gunshot wounds to the

25   diaphragm, stomach and spleen. Again, this

26   offense was carried out in a cruel manner in

27   **DUANE WEIR C-02190    DECISION PAGE 1 3/13/06**

1   that Mr. Lowery was shot in the commission of a

2   robbery, so it would have been for monetary

3   gain, which indeed would be a trivial reason in

4   relation to the offense of murder - the victim

5   subsequently loosing his life.  In terms of a

6   previous record, the inmate has failed to profit

7   from society's previous attempts to correct his

8   criminality.  Such attempts include juvenile

9   probation, adult probation, parole, county jail,

10   state prison and state prison.  In terms of

11   institutional behavior, Mr. Weir has not yet

12   sufficiently participated in beneficial self-

13   help and therapy programs and we'll elaborate on

14   that shortly.  The psychological report, dated

15   January 13, 2006, by Dr. MacComber is favorable

16   in that the doctor says that you would pose a

17   low risk of future violence if released from

18   prison.  In terms of parole plans, you do have

19   letters of support from your wife and two

20   daughters and next year it would be - you should

21   really have your wife write out a detailed

22   letter - where you would live, you know the

23   address, if you have - kind of describe the

24   house, where you would be living and that type

25   of thing.  You should probably put together a

26   sketch of how you would be able to support

27   **DUANE WEIR C-02190 DECISION PAGE 2 3/13/06**

63

1   yourself.  You know, you have 'x' amount of

2   dollars from Social Security.  You'd look for a

3   part-time job or whatever – you're on

4   disability.  But give us something to look at.

5   Something really detailed in terms of your

6   parole plans because parole plans are very

7   important.  So I would really encourage you to

8   make those documents as detailed as possible.  I

9   would also suggest that perhaps your wife can

10  get a pamphlet or whatever from the church

11  listing what kind of 12 Step programs they offer

12  there.  So, you know, like you said they're

13  probably all the time so try to get a listing of

14  those so you can really show the Board, "Okay,

15  this is what I'm going to be doing.  I know I

16  need to go to these programs and I'm going to go

17  on Wednesday and Sunday," or whatever.  But make

18  it something that again, nobody will have a

19  question for you.  You need to answer our

20  questions in advance if possible.  And I would

21  also like to suggest that you think about some

22  kind of a transitional living type situation,

23  because if you haven't lived with your wife in

24  almost thirty years and she hasn't lived with

25  you, you might need a slow transition for both

26  of you.  Another Board might suggest that, so

27  **DUANE WEIR  C-02190   DECISION PAGE 3  3/13/06**

64

1    you don't want for somebody to suggest it and

2    then, okay, there's another reason for a denial.

3    So if I were you I would just as an option

4    number two – because I heard Board's suggest it.

5    You need to look at a transitional housing.  So

6    before somebody can ask you, again, present it

7    to them and I think in that area – you know,

8    there's all kinds of homes and maybe even the

9    church, you know, your wife can identify one

10   easily.  Some people will have the concern,

11   again, and I would also have the concern – you

12   know, if this doesn't go smoothly then where are

13   you going to go, okay?  IF you both need some

14   cooling out time or whatever you need to build

15   one in.  So I would suggest that you do that.

16   You do have a marketable skill.  I think in the

17   Governor's letter they listed a lack of a job

18   offer.  You might also want to detail in

19   writing.  "I'm a trained mechanic, I've been

20   doing PIA for all thing time. I'm sixty-two.  I

21   would only seek part-time employment."  List it

22   out so that we can read it in advance or when

23   your counselor talks to you to go over these

24   things, so that it's in the report.  So that

25   we're not having a question mark.  Before he

26   didn't have a job offer.  Does he have one now?

27   **DUANE WEIR C-02190 DECISION PAGE 4 3/13/06**

65

1   What's he going to do?  You're giving us a

2   reason to have all these questions.  We also

3   note that in response to 3042 Notices,

4   opposition to a finding of parole suitability

5   have been expressed by the San Bernardino DA,

6   and I think we have a police department, I don't

7   remember what police department it was, but we

8   do — it was the County of San Bernardino

9   Sheriff.  We make the following findings: that

10  the inmate's lack of meaningful self-help

11  programming does not demonstrated to the panel

12  that you'll have the necessary tools to maintain

13  your gains outside of a controlled setting.  So

14  you need to demonstrate to us — because you have

15  a remarkable disciplinary record, one 115,

16  that's remarkable.  You have a lot of things

17  going for you, but it's the things that you're

18  lacking that scream out at us.  And when we give

19  a date everything has to be perfect, okay?

20  Commissioner, do you have any commendations?

21      **DEPUTY COMMISSIONER MEJIA:** You have a

22  satisfactory work report and you have a

23  laudatory chrono for being involved — for having

24  been a supportive employee for the PIA, about

25  seven hundred thousand production level — you

26  were a part of the team to do that. You

27  **DUANE WEIR C-02190   DECISION PAGE 5 3/13/06**

1   completed your GED in prison. You have a

2   vocation, which I'm sure you can use in the

3   streets, auto mechanics, because you were an

4   auto mechanic before. You have no 115s – to be

5   honest with you sir, when you said that – you'd

6   gotten a date in 2002 and I'm sure you read the

7   Governor's concern about your self-help, if I

8   were you I would have proven him wrong. I would

9   have continued on and did something to prove I

10  can sustain my self-help. That's one of the

11  concerns of the Governor, that's one of the

12  recommendations of the last panel. You have to

13  do something about that, and I'm looking at your

14  file. Since 1999 you don't have anything

15  meaningful to show about your self-help. You've

16  been busy working, but you can still do it by,

17  like I said, reading books, making a list of it,

18  signing up for IMPACT or any other program that

19  will count towards self-help. But you can not

20  just come again and show me you have three-hour

21  video participation.

22         **INMATE WEIR:** You know I've asked the

23  psychologists what do I need. Is there any

24  programs I need and they tell me no, so what am

25  I supposed to --

26         **DEPUTY COMMISSIONER MEJIA:** Unless you're

27  **DUANE WEIR C-02190  DECISION PAGE 6 3/13/06**

1  CCCMS they won't give you any programming.  Just

2  like I said you can go to the library and get

3  some books and read it, check it out and make a

4  list of what you read about self-help. There's a

5  lot of books there about self-help and --

6          **PRESIDING COMMISSIONER ST. JULIEN:**

7  (Indiscernible) something - sorry - from the

8  outside.

9          **DEPUTY COMMISSIONER MEJIA:** IMPACT.  Those

10  groups about victim awareness, anger-management,

11  all these things - I know you did it but you

12  should do it almost every year to show that

13  you're consistent.  Just like she said, you're

14  doing okay in everything else.  No disciplinary,

15  you've got a marketable skill, you're at the age

16  where the risk for violence is know to be really

17  diminishing.  You've got everything else other

18  then to prove to us that you can maintain out

19  there and you've haven't maintained.  1990 was -

20  that's a long time to be out of self-help.  I

21  want somebody to be in self-help the last minute

22  they're in prison because I know they will cope

23  on the outside.  But just like I said you've got

24  a lot of things going for you.  You already got

25  a date and that really gave me some hope that

26  you'll get a date, but start looking at

27  **DUANE WEIR C-02190  DECISION PAGE 7 3/13/06**

1  everything else, you don't do much for the last

2  six years, or even three years after you got the

3  date. Do not be discouraged. You've got to

4  prove yourself. Doing time is not going to get

5  you out of here. You've got to prove that you

6  are worthy to be out there by making — cross

7  your 'ts' and dot the periods. You can't do

8  that. You can't give them any — she already

9  said that — you can not give them any angle not

10  too, because we can get over the crime because

11  it's been a long time, but not what happens

12  after that, okay? Good luck to you sir.

13      **ATTORNEY SPOWART:** Commissioner, before

14  you go off I'd like to make a statement, just a

15  short one. My client's been down twenty-eight

16  years. He was not the shooter and after the

17  hearing today, I don't feel he got a fair

18  hearing. The punishment is rapidly escalating

19  to where it's cruel and unusual, for the record.

20      **PRESIDING COMMISSIONER ST. JULIEN:** Thank

21  you sir.

22                  --oOo--

23  **PAROLE DENIED ONE YEAR.**          JUL 1 1 2006

24  **THIS DECISION WILL BE FINAL ON:**_____

25  **YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT**

26  **DATE, THE DECISION IS MODIFIED.**

27  **DUANE WEIR C-02190 DECISION PAGE 8  3/13/06**

69

CERTIFICATE AND
DECLARATION OF TRANSCRIBER

I, Rheanna Bernard, a duly designated
transcriber, PETERS SHORTHAND REPORTING, do hereby
declare and certify under penalty of perjury that I
have transcribed tape(s) which total one in number and
cover a total of pages numbered 1 - 68, and which
recording was duly recorded at CORRECTIONAL TRAINING
FACILITY, SOLEDAD, CALIFORNIA, in the matter of the
SUBSEQUENT PAROLE CONSIDERATION HEARING OF DUANE WEIR,
CDC #C-02190, ON MARCH 13, 2006, and that the
foregoing pages constitute a true, complete, and
accurate transcription of the aforementioned tape to
the best of my ability.

I hereby certify that I am a disinterested
party in the above-mentioned matter and have no
interest in the outcome of the hearing.

Dated April 8, 2006, at Sacramento, California.


_____
RHEANNA C. BERNARD
TRANSCRIBER
**PETERS SHORTHAND REPORTING**

ORIGINAL

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN BERNARDINO

THE PEOPLE OF THE STATE OF CALIFORNIA,

        Plaintiff,

    vs.

DUANE ROY WEIR,

        Defendant.

NO. SCR-34989

## PROCEEDINGS AT TIME OF PRONOUNCEMENT OF JUDGMENT

The above-entitled cause coming on regularly for hearing in Department 10 of the above-entitled Court on Friday, February 23, 1979, at the hour of 8:45 A.M., before HON. J. STEVE WILLIAMS, JUDGE; the People of the State of California being represented by James M. Cramer, District Attorney, by Stephen Ashworth, Deputy District Attorney; the Probation Office being represented by Thomas Alderson, Probation Officer; and the defendant being present in court and represented by his counsel, Paul R. Steinman, Esq., Attorney at Law, the following proceedings were taken and had:

THE COURT:  People versus Duane Roy Weir.

MR. STEINMAN:  Yes, your Honor. We are ready to continue with the proceedings that were adjourned on February the 20th, to wit:  Motion for New Trial or Striking

2

1    and/or Striking Specific and Special Jury Verdict Findings

2    and Pronouncement of Judgment.

3              THE COURT:  I take it from what you have just said

4    that you have thought of a few other things that you wish to

5    point out to the Court.

6              MR. STEINMAN:  The only thing I wish to point out

7    to the Court is that I feel that the verdict in the next

8    court somewhat bore my argument out with regard to the

9    distinct materiality of those medical records, in that that

10   particular jury, when presented with that evidence, returned

11   a not guilty verdict on that particular count.

12             Other than that, your Honor, I would submit it.

13             MR. ASHWORTH:  I would only indicate this to the

14   Court:  I don't think the Court should consider the other

15   verdict.  I don't think it has any place in a motion for new

16   trial, especially according to the Code under 1181, sub-

17   section (8), where the motion for new trial on newly discovered

18   evidence has to be based on -- it cannot be based on hearsay;

19   it has to be based on affidavits filed by the witnesses that

20   allegedly are to offer the newly discovered evidence.  That

21   hasn't been done.  And, actually, it's nothing more than one

22   jury sees the facts one way and another jury sees them another

23   way, and that could happen in any case that's ever taken to

24   trial.  I don't think it has any bearing on this.  I ask the

25   Court not to consider it.

26             THE COURT:  The motion for new trial as to Counts I,

1    II and IV is denied. I find that there was certainly

2    sufficient basis from the evidence in light of the

3    instructions on the law for the verdict as to each of those

4    counts, and I do consider the evidence that was adduced

5    during the course of this trial in this Department relating

6    to this defendant and the instructions and the law that were

7    furnished to the jury that deliberated in this case. It is

8    clear to me that there was no miscarriage of justice and that

9    it was clearly established by the evidence that, at the very

10   least, the defendant was a principal, an aider and abetter,

11   in the murder and the robbery and the grand theft.

12          I consider the medical evidence alluded to as,

13   strictly speaking, newly discovered evidence, but the essence

14   of the reason for my feeling that the differences in the

15   medical testimony wouldn't make a difference is that it is

16   clear that the infliction of the gunshot wound was one of the

17   causes of the death of the decedent. It certainly hastened

18   his death, was a contributing proximate cause of the death of

19   the decedent. It's obvious that there may well have been a

20   number of things that contributed to his death, considering

21   his age and his medical history, but I can't believe any

22   rational jury would believe or any duly qualified physician

23   would suggest that that gunshot wound had no part in hastening

24   the death of the decedent.

25          Having been convicted of the offense of Murder in

26   the First Degree, the defendant is not eligible for probation.

1    but even if by some stretch of the imagination there was some

2    way to find something in the new determinate sentence law

3    that may have been overlooked, I would not in light of the

4    evidence in this case and the circumstances described

5    consider that an extension of probation would be appropriate

6    nor would it be realistic.

7            With reference to the --  and I think I have said

8    that I am satisfied that the evidence was sufficient and the

9    prosecution met the burden of proof for the charges for which

10    the defendant stands convicted.

11            Now, looking at the probation officer's report,

12    particularly on page 5 --

13            MR. STEINMAN:  I believe, your Honor, that on

14    page 5, the word "Count II," where it says, "Assault with

15    a deadly weapon," in talking with the probation officer, he

16    indicated that is a typographical error.  It should read,"

17    Robbery, in violation of Section 211 of the Penal Code."

18    Further, on that page where it says "Count III," that is a

19    typographical error and it should be "Count IV."  Other than

20    that, I believe the numerical terms set forth in there meet

21    the determinate sentencing law for the counts and the charges

22    as amended.

23            It further presents some interesting --

24            THE COURT:  There are a number of interesting

25    technical procedural questions that are presented in this

26    case, whether there's a 654 consideration.  We are aware,

1  first of all, that a life sentence cannot be enhanced.  It's

2  a life sentence.

3          MR. STEINMAN:  That's correct.

4          THE COURT:  With reference to the special allega-

5  tion, I harken to the power of the Court that was discussed

6  at an earlier time in one of the cases that I had the first

7  year or two I was on the Bench, People v. Dorsey, 28 Cal.

8  App. 3d 15.  The principles that were enunciated in that case

9  are still applicable.

10          I am aware that the jury who tried the defendant's

11  brother found the defendant's brother not guilty of the charge

12  of murder.  I cannot believe that any jury that heard the

13  evidence that I heard in this trial would have found the

14  defendant's brother not guilty, but I didn't hear the evidence

15  in the other trial and I didn't hear the arguments and I don't

16  know how the jury may have been affected.  I have heard

17  speculation as to why they found the way they did, but I have

18  heard speculation about a lot of other things in this and

19  other cases.

20          First of all, as I pointed out, there's no way to

21  enhance a life sentence.  Further, I do take into considera-

22  tion the fact that the defendant's brother has been acquitted

23  on the murder charge and I am satisfied that the imposition

24  of a life sentence in and of itself would meet the ends of

25  justice.  With reference to the findings relating to the use

26  of a firearm allegation that was found true with reference to

Counts I, II and IV, I order that they be stricken.

It is the judgment of the Court that the defendant, Duane Roy Weir, be sentenced to the State Prison for the term prescribed by law for the offense of Murder in the First Degree, in violation of Section 187 of the Penal Code.

Before I proceed further, the Clerk has called to my attention that I got through my incantations out of order.

Having ruled on the motion for new trial, with reference to Counts I, II and IV, this is the time set for pronouncement of judgment.

Do you waive formal arraignment for pronouncement of judgment?

MR. STEINMAN: Yes, I do, your Honor.

Without waiving and still preserving those grounds that I made that motion for, we have no other legal cause why judgment ought not now be pronounced on the remaining counts.

THE COURT: I adopt the statements that I made with reference to striking the allegations relating to the use of a firearm which were found to be true with reference to Counts I, II and IV, and I confirm the order made striking those in the interests of justice.

It is the judgment of the Court that the defendant, Duane Roy Weir, be sentenced to the State Prison for the term prescribed by law for the offense of Murder in the First Degree, in violation of Penal Code Section 187.

The defendant shall be given credit for time served

1    Have you computed that?

2         MR. STEINMAN:  I believe, your Honor, there were

3    to be an additional three days to be added to the 348.

4         THE PROBATION OFFICER:  Two days.

5         MR. STEINMAN:  This is the 23rd.  That was computed

6    as of the 20th, so it would be three additional days.

7         THE PROBATION OFFICER:  That's right.

8         THE COURT:  The defendant shall be given credit for

9    time served, a matter of 351 days.

10        With reference to Count II, it is the judgment of

11   the Court that the defendant, Duane Roy Weir, be sentenced to

12   the State Prison for a term of three years, which is the

13   middle term provided by the determinate sentence law, for his

14   violation of Section 211 of the Penal Code.  Execution of that

15   sentence is stayed pending any appeal, and during service of

16   the sentence with reference to Count I.  Upon completion of

17   service of that sentence, the stay shall become permanent,

18   this in accordance with People v. Niles.  I recognize what a

19   delight that could prove to be for scholars as well.

20        Further, it is the judgment of the Court that the

21   defendant, Duane Roy Weir, be sentenced to the State Prison

22   for a term of two years, which is the middle term for his

23   violation of Penal Code Section 487, the offense of Grand

24   Theft, for which he stands convicted, just as he was convicted

25   of the other two counts by virtue of verdicts returned by the

26   jury in this case.  The sentence with reference to Count IV

1  is stayed pending any appeal and during the period of time

2  the defendant is serving the sentence imposed with reference

3  to Count I.   Upon completion of the service of that sentence,

4  the stay shall become permanent.

5       Again, I have alluded to People v. Niles,

6  227 Cal.App.2d 749.

7       Further, I will state that it is my intention in

8  imposing the sentences as I did, in the manner that I did,

9  that this is not intended to preclude the defendant from

10  parole consideration at some future time.   The defendant may

11  be eligible for the period of parole after he has served a

12  period of time.   I believe that period is seven years, but

13  there may be some modification of the rules that govern that

14  determination and I do not intend to make any change in what

15  are the established guidelines with reference to an inmate's

16  eligibility for parole following his conviction of murder in

17  the first degree.   If the defendant is placed on parole, he

18  may be under parole supervision for a period of three to four

19  years, depending on his performance while on parole.

20       The defendant is remanded to the custody of the

21  Sheriff of the County of San Bernardino, to be by him

22  delivered to the Reception Guidance Center of the California

23  Institution for Men at Chino, California.

24       MR. STEINMAN:   Your Honor, does the Court at this

25  time make any particular finding with regard to Penal Code

26  Section 654 as to Counts II and IV?   It would appear that

1  tells me that somewhere within yourself you have the capacity
2  to do something more with your life than you have up to this
3  point. Now, you are going to do a period of time, and you
4  may do what many alcoholics do and take the approach that the
5  world is passing you by, that there are all kinds of
6  injustices that have befallen you, and you can dwell on the
7  past, which none of us can change. I don't know what your
8  plans are with your life in the future, but it occurs to me
9  that if you have the ability to express yourself and have the
10  energy to write the length that you do, perhaps you might be
11  well advised to try to prepare yourself to do something more
12  when you are released. You will be entitled to good time and
13  work time. There will come a day.
14          I don't know why the jury didn't find your brother
15  guilty on the offense in Count I, and I said what I meant and
16  I meant what I said, and I feel that he was just as guilty as
17  you were and I don't understand how it was that he wasn't
18  convicted and I don't know what evidence was presented to
19  that jury and I don't know what arguments were made and I
20  don't know how that jury reacted. If I had any doubt in my
21  mind, honestly, as to whether or not your guilt had been
22  established, I would have granted the motion for new trial.
23  I gave it a lot of thought, but I didn't have that doubt, and
24  I tell you that frankly.
25          That you have a problem with alcohol, I suppose any-
26  body would understand, but you have gone through a considerable

1  period of time where you haven't had anything to drink
2  because it's not accessible. I have to assume you must feel
3  differently than you felt before. It's very likely that you
4  may appeal this case. I won't be surprised if you do, and a
5  transcript will be prepared. You will be looking through the
6  transcripts for a lot of things, but there's one thing I want
7  to add to what you might be looking for, and that is, read
8  the testimony about your drinking and your pattern of behavior
9  and look at yourself as you were described by people who were
10 close to you and then ask yourself what you are going to do
11 with your life when the time comes that you are on the streets.
12 It isn't going to be anybody else's decision but yours.
13       At this time, Mr. Weir, it is my duty to advise you
14 of your right to appeal to the appellate courts from the
15 judgment of this Court in imposing sentence as I have done
16 today. Upon any such appeal, the appellate court may review
17 the order of this Court in denying your motion for new trial
18 in reference to the three charges that you were convicted of.
19       If you want to file an appeal, there's a 60-day time
20 limit within which you must act by filing a written notice of
21 appeal, and this 60 days starts to run from today.
22       Your notice of appeal must be filed in this Court
23 and not in the Court of Appeal. Your notice of appeal must
24 clearly specify that you are appealing, just what it is that
25 you are appealing from, whether you are appealing from the
26 whole judgment or just part of it, and also whether you are

12

1    appealing from the denial of the motion for new trial.

2            Your notice of appeal must be signed by you or

3    your attorney.

4            If you appeal, you have the right at no cost to

5    you to a transcript and record of the trial court proceedings

6    as provided under the California Rules of Court.

7            If you appeal and you don't have the money to hire

8    a lawyer, the appellate court will appoint a lawyer to

9    represent you on appeal. It is your obligation to keep the

10   appellate court advised of your current mailing address.

11   They then will be in touch with you to see whether you have

12   a right to a free lawyer after you have filed the notice of

13   appeal.

14           My experience and understanding is that if an

15   attorney is requested and if one is appointed, it is not the

16   practice to appoint the attorney who represented the

17   defendant during the course of the trial, so that it's not

18   likely that Mr. Steinman would be appointed to represent you,

19   whether you wanted it or didn't want it.

20           Do you understand your rights to appeal as I have

21   explained them to you?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Do you understand that unless your

24   present lawyer is going to file a notice of appeal for you,

25   it is your duty to file your own notice of appeal and it must

26   be done within 60 days from today?

13

1          THE DEFENDANT:   Yes.

2          THE COURT:  Do you have any questions you want to

3    ask about your appellate rights?

4          THE DEFENDANT:  No.

5          THE COURT:  The Reporter is ordered to prepare a

6    transcript of these proceedings and have it certified and

7    filed with the Clerk of this Court.

8          The defendant is remanded to the custody of the

9    Sheriff.

10          MR. STEINMAN:  Thank you, your Honor.

11          (Proceedings concluded.)

12                         ---oOo---

13

14

15

16

17

18

19

20

21

22

23

24

25

26

103

1  A    Well, I -- I tell you -- oh, it's quite a story.  I

2       figured that --

3  Q    Well, I know what you figure, but did you give it to

4       anybody that night?

5  A    (No audible response.)

6            MR. CALL:  Shaking his head yes.

7  Q    (By Mr. Ashworth:)  Sam, did you give your gun away to

8       somebody?

9  A    Well, he held me up.  I give it to him.

10  Q    Are you saying that they took it from you?

11  A    (No audible response.)

12  Q    Say yes or no, Sam.

13  A    Yes.

14            MR. ASHWORTH:  I have nothing further.

15            Thank you, Sam.

16            MR. CALL:  May I, your Honor?

17            THE COURT:  Yes.

18

19              CROSS-EXAMINATION

20  BY MR. CALL:

21  Q    Mr. Lowery, do you know your next door neighbor, Tony

22       Wier?

23  A    (No audible response.)

24  Q    Do you know him?

25  A    Could I have some water?

26            MR. CALL:  May the record reflect the nurse,

104

1    after request, is giving Mr. Lowery some water?

2             THE NURSE:  Suck with the straw.  Do you want

3    to try real hard?

4             THE WITNESS:  Oh, I don't know.

5             THE NURSE:  Do you want to try again with the

6    water?

7             You want to try a drink of water?

8             THE WITNESS:  I don't --

9             THE NURSE:  Did you get some?

10            Here, try another swallow.  A little bit.  Here

11    you go.  A little bit more.

12            Okay, now you got some.

13            THE WITNESS:  You call this water?

14            THE NURSE:  Yes, this was water.  You got some.

15            THE WITNESS:  I call it (unintelligible) water.

16  Q    (By Mr. Call:)  Mr. Lowery, do you know Tony Wier, your

17    next door neighbor?

18  A    (No audible response.)

19  Q    You're shaking your head yes; is that right?

20  A    Yes.

21  Q    Did Tony Wier shoot you, Mr. Lowery?

22  A    I have reason to believe he did.

23  Q    Did you see him?

24  A    Yes.

25  Q    Did you see him with a gun?

26  A    Yes.

COURT OF APPEAL, FOURTH DISTRICT

SECOND DIVISION

STATE OF CALIFORNIA

COURT OF APPEAL · FOURTH DIST.

# F I L E D

JAN 3 0 1980

ROBERT L. FORD, Clerk

_____
Deputy Clerk

PEOPLE OF THE STATE OF CALIFORNIA,       )
                                          )
      Plaintiff and Respondent,           )        4 Crim. 10552
                                          )        (Sup.Ct.CR-34989)
   v.                                     )
                                          )
DUANE ROY WEIR,                           )        O P I N I O N
                                          )
      Defendant and Appellant.            )
                                          )
_____

     APPEAL from the Superior Court of San Bernardino
County.  J. Steve Williams, Judge.  Affirmed.

     Allen R. Crown, under appointment by the Court of
Appeal, for Defendant and Appellant.

     George Deukmejian, Attorney General, and Jesus Rodriguez,
Deputy Attorney General, for Plaintiff and Respondent.

     Defendant was convicted of murder, robbery and grand
theft.  A use allegation was found to be true.  He was found not
guilty of assault with a deadly weapon.

     Defendant and his brother wanted some guns.  The
brother said he knew an old man who had some.  They went to the
home of 90 year old Samuel Lowery and, armed with a .22, told
him to give them his money or his life.  The old man would have
none of this nonsense and he opened up on them with his .38.
Unfortunately, his marksmanship was not of the same caliber as
his enthusiasm.  He missed but they did not.  He was shot twice

-1-

in the abdomen and the defendant and his brother took the old man's
.38. The defendant then placed a gun to the victim's head and
ordered him to crawl under a truck and to remove his pants. De-
fendant and his brother showed a witness a .38 and other weapons --
a shotgun and two rifles -- and said they took them from Lowery.

Lowery then drove his truck to a public telephone and
called the police. When they arrived, they found him in his truck.
He was taken to a hospital and underwent surgery. He had two
gunshot wounds in his abdomen and his spleen was removed. He was
discharged two weeks later. He was readmitted to the hospital
and died.

Defendant was arrested and found in possession of
Lowery's guns. Defendant denied any knowledge or ownership of
the guns and denied any part in the shooting.

An autopsy surgeon testified that the cause of the
death was a subphrenic abscess which was caused by a gunshot
wound which perforated the victim's stomach. The abscess
produced poisonous substances which spread through the victim's
body leading to his death. The pathologist also testified that
the gunshot wound which perforated the stomach could have caused
the urinary infection which was found in the old man's body at
his death.

The defense was two-fold. The first was diminished
capacity based on intoxication. The second defense was that the
gunshot wounds were not the cause of death. The defendant's
pathologist testified that in his opinion the subphrenic abscess

found inside the victim's body did not cause his death but that the victim died of blood poisoning caused by a severe infection of the urinary tract. This pathologist did agree with the prosecution's pathologist that it was possible that the gunshot wound which perforated the victim's stomach could have affected the urinary infection thus worsening or hastening the victim's death regardless of the presence of the abscess. No one argues that the gunshot wound in the abdomen unduly prolonged this 90 year old man's life.

On appeal, defendant contends:

(1) That the court erred in denying his motion for new trial grounded on newly discovered evidence. This evidence consisted of additional medical reports of the victim which were claimed to have been lost in the San Bernardino County Medical Center but which were subsequently located.

In granting a motion for new trial on this ground, the evidence must be (a) newly discovered, (b) it must be evidence which could not with reasonable diligence have been produced at trial, (c) it must not be cumulative and (d) it must be such that it would render a different result probable on retrial. (People v. McDaniel, 16 Cal. 3d 156.) Obviously, such motions are addressed to the sound discretion of the trial court.

The argument was made that these records would bolster the pathologist's opinion that the subphrenic abscess did not cause Lowery's death. However, it was shown in the hearing that the prosecution's pathologist's opinion would be the same in spite of

-3-

the additional medical records. In addition, defense counsel
agreed that his pathologist would not change his initial testi-
mony that the gunshot wounds undoubtedly hastened the death of the
old gentleman. Rather obviously, these wounds hastened his death.
They were a contributing cause of his death. Thus, the trial
court's finding that the newly discovered evidence would not
render a different result on retrial is supported by substantial
evidence and is not an abuse of discretion.

(2) That there is a fatal inconsistency in the verdicts,
i.e., that the not guilty on the assault with the deadly weapon
was fatally inconsistent on the guilty verdict of murder and
robbery.

Seemingly inconsistent verdicts are not necessarily
fatal. Penal Code § 954 provides that an acquittal of one or
more counts shall not be deemed an acquittal of any other count.
These acquittals may indicate that the jury has given the defendant
the benefit of some compassion which was not called for. (See
cases collected in Witkin, Calif.Crim.Proc., paragraphs 548, 549;
People v. Hamilton, 80 Cal.App. 3d 124, 130.) A verdict of conviction
on one count which appears inconsistent with a verdict of acquittal
on another count affords no basis for a reversal where the evidence
is sufficient to support the conclusion that the defendant is
guilty of the offense of which he stands convicted. (In re Johnston,
3 Cal. 2d 32.) Even trial counsel agreed that the not guilty
verdict on the assault with a deadly weapon was not inconsistent
with the verdicts on the other counts. Counsel did argue that

-4-

the assault with a deadly weapon verdict was inconsistent with the use allegation, a matter made moot by the court's striking of the use allegation.  It would appear that the assault with a deadly weapon allegation was put in view of the de-fendant's denial of having anything to do with the robbery or murder but the admission to a witness that he placed a gun to the old man's head, ordered him to crawl under a truck and remove his pants.  Thus, the defendant's liability for murder was based on his involvement of the attempted robbery of the victim.  The assault with a deadly weapon  would come into play if the jury disbelieved that but believed that he did threaded the old man after the old man shot at him. Thus, there is no inconsistency in the verdicts.

(3)  That photographs of Mr. Lowery's trousers were improperly admitted into evidence.

The first contention is that there was no foundation for the photographs. There was a foundation. An officer testified that he took the photographs and that they depicted the clothing worn by the victim at the time of the acts.  He took them from the hospital to the police station where he photographed them.  There was ample foundation.

Next, the defendant contends they were inflammatory. There is hardly anything inflammatory about a pair of trousers showing a bullet hole and some bloodstains.

(4)  That the instruction on flight was improper.  It was not.

After the shooting, the defendant and his brother left (fled).  They certainly did not stand around and face the

-5-

responsibility for their acts.

There was no error in giving this instruction.

(5)  Good time/work time.

When the Supreme Court decides <u>Sage</u>, if that decision is favorable to the position of the defendant, the matter will undoubtedly be taken care of uniformly on a statewide basis. Lacking that, the defendant will have recourse by writ to the trial court.  We do not disturb the judgment at this time.

Judgment affirmed.

/s/   Gardner
P.J.

We concur:

/s/   Tamura
J.

/s/   McDaniel
J.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

-6-

on the assault with a deadly weapon charge (Count III) was

consistent with the jury's verdict on Counts I, II, and IV.[5/]

(RT 540.)

Moreover, the essential elements of assault with a

deadly weapon (Count III) are not required to be proven to

establish and sustain the murder and robbery convictions in

the instant case. (People v. Hamilton, supra, 80 Cal.App.3d

124.) Here, appellant's liability for murder was based on

his involvement in the attempted robbery of the victim. i.e.,

felong murder rule. The assault with a deadly weapon played

no part in the murder since the evidence reasonably shows the

alleged assault with a deadly weapon occurred after the

attempted robbery and shooting of the victim. (RT 133-134,

368-377.) Thus, the verdicts are not inconsistent.

* * * * *

---

5. Defense counsel below did argue the verdicts were
inconsistent. However, his argument was that the special
findings, i.e., gun use allegations, were inconsistent with
the not guilty verdict on the assault with a deadly weapon
charge. (RT 539-541.) Of course, this specific argument is
now moot since the court struck the gun use allegations. (RT
555, 558.)

## ATTACHMENT

Date:        February 15, 1994

To:          Dennis Smith
             Board of Prison Terms

From:        Art Harrison
             San Bernardino Co.
             District Attorney's Office
             (909) 387-6814

Subject:     BPT Inquiry regarding the conviction of Inmate Duane Weir
             C-02190.


     This is intended as a summary response to the query of the
Board of Prison Terms into the circumstances of the underlying
conviction of Life Inmate Duane Weir.


     1.) The Board has solicted comments by the District Attorney
on the autopsy procedures used in this case," noting that c/p
Tyrone Weir was acquited of the same murder-due to forensic
findings of same victim that the cause of death was not from
gunshot wounds". While it is true that Tyrone was acquited of the
murder count, it is also true that he was convicted of the robbery
which was concomitant to the felony murder charge. Both juries
heard in essence the same evidance. Dr. Scott testified for the
prosecution, and each defense team called Dr. Rene Modglin to
counter with an opposing opinion as to the cause of death. Both
were highly credentialed, highly experienced, and well respected
in their field. Dr. Modglin testified that he held Dr. Scott and
his work in high regard.

     One jury found sufficient evidence "beyond a reasonable
doubt", and the other did not. It's just that simple, its a
subjective determination by the jury which is/should be based on
an objective weighing of the evidence. The trial judge in Duane's
matter denied his motion for new trial which was based on a claim
of newly discovered evidence pertaining to these cause of death
issues. Additionally, the appeal waged on behalf of Duane Weir in
the appelate court aggressively asserted that an injustice had been
committed in the denial of a new trial based on new evidence, i.e.
medical records which were not available at the trial of Duane
Weir, but which surfaced (having been in the possession of the
treating physician) and were used in the trial of Tyrone Weir.
The response by the Appellate Court found at page 3 of the opinion
(attachment one) was as follows:


          "The argument was made that these records would bolster
          the pathologist's opinion that the subphrenic abcess did