# EXHIBIT E, PART 2

not cause Lowery's death. However, it was shown in the hearing that the prosecution's pathologist's opinion would be the same in spite of the additional medical records. In addition, defense counsel agreed that his pathologist would not change his initial testimony that the gunshot wounds undoubtedly hastened the death of the old gentleman. Rather obviously, these wounds hastened his death. Thus, the trial court's finding that the newly discovered evidence would not render a different result on retrial is supported by substantial evidence and is not an abuse of discretretion."

2.) Dr. Scott along with his partner Dr. Irving Root had for many years held a contract to perform autopsies for the County of San Bernardino. Pursuant to that contract, each pathologist performed numerous post mortem examinations each day. Subsequent to this case it was revealed that Dr. Scott had lapsed into the practise of using a "canned" autopsy format with which he would in essence fill in the blanks to make the protocol case specific. In the Renova case it became apparent that some of the work claimed to have been done By Dr. Scott via the autopsy protocol had not in fact been done. The points of dicrepancy in that case involved the finding of intact organs, which were claimed to have been resected in the earlier autopsy. The organs involved were not germaine to the determination of cause of death, but were customarily resected during a post mortem examination. It is significant to note that the findings as to cause of death did not vary between the two autopsies. Both autopsy surgeons determined the shotgun wound to the head caused the death and that the stab wounds sustained were of a fatal nature and would have caused death but for the intervening shotgun wound.

The board is aware the above circumstance generated a significant amount of media attention. The result was that an agreement was apparently reached wherein Dr. Scott would no longer conduct autopsies. Within a short while the partnership was dissolved and Dr. Root as an individual held the contract with the Coroner's Office. The prevailing belief seems to have been that Dr. Scott's errors were of negligent or careless ommission as opposed to any willful scheme te deceive or defraud.

3.) I have consulted with the trial prosecutor who was involved in both the trial of Duane and Tyrone Weir, that being Steve Ashworth, now a Superior Court Judge in the Victorville Court in our county. He confirms my conclusion that the differing end results of the two trials was not predicated upon any new information or evidence of which Duane Weir was deprived or of any injustice created by Dr. Scott's failure to comply with professional standards. Instead, he cites the differing

perspective that jurors sometimes have as to evidence and the differing beliefs and biases which are inate to varying backgrounds.

Judge Ashworth has offered to make himself available by telephonic conference to assist in the resolution of any further questions the Board or its investigators may have. I can provide the necessary phone numbers upon request.

The point we need to emphasize here is that the victim in this matter was in his eighties. He had for a lengthy time (approximately ten years) lived an active, independent lifestyle wherein he was mobile and agile. He was shot down during the robbery incident on 3/2/78. Mr. Lowery died on 4/25/78 without ever having gotten up again after having been shot. His release from the hospital was simply to a convalescent setting. All who have looked at this case are in agreement that the wounds sustained in the shooting incident at least accelerated the death of Lowery, thereby being a proximate cause of his death.

One thing I would point out to the Board is that the opinion of the trial prosecutor is that the actual shooter in this matter was not Duane Weir, but was his brother Tyrone. This is so inspite of the finding of personal use of a firearm by the jury. The penalty precribed for that particular enhancement was striken by the trial court at the time of sentencing.

If Inmate Duane Weir is to be found suitable for the granting of a parole date, it is our posture that it should not be predicated upon the issues put forth in the current inquiry.

If I can be of any further assistance in this matter please don't hesitate to contact me.

A. Harrison, DDA

Summary:    PROGRAM    INMATE REQUEST FOR PROGRAM REVIEW.
            REVIEW:

| Custody: MED A | Release: MEPD 3/10/85 | Level: II |
| GPL: 8.3 | Reclass: 1-02 | CS: 0 |
| Work Group: A1 | Privilege Group: A | RPS: N/A |

WEIR appeared before Unit V U.C.C. today for a Program Review. Purpose of Review: Inmate Weir, C02190 submitted a CDC 602 2-22-01 requesting to appear before U.C.C. for the following reasons: 1) Whether he was a threat to staff or inmates; 2) The Board of Prison Terms requirement for Participation in Self Help/Therapy. He also states that he does not have a history of violence except for his offense.. COMMITTEE ACTIONS: Committee notes that after a review of Inmate Weir's central file (Disciplinary Section) there is no documentation (CDC 115) reflecting any kind of aggressive or problematic behavior. The central file reflects Inmate Weir has participated in Narcotics Anonymous, Alcoholic Anonymous, Roadsider AA Fellowship (4-13-88), Reality and Decision Making Group (9-10-87), Completed Individual Therapy (8-1-94), and actively and successfully participated in the self-help group YOKEFELLOWS (1987), completed Cat X (1988) actively participated in CTF "We Care" Program, actively and successfully participated in "Life Skills" (1-25-91). It should also be noted that per memorandum dated 8-13-99 authored by S. Terrini, Ph.D. that states in part that there is no psychotherapy available in CDC that deals with Lifers commitment offense. It appears he has a viable claim in that he has not received any disciplinary action for violence against staff/inmate. He has actively participated in self-help/therapy in the past. ~~[illegible struck-through text]~~ COMMENTS: WEIR participated in today's U.C.C. and acknowledged his understanding of the Committee's actions. He stated that he agreed with the Committee's actions. WEIR was advised of his right to appeal Committee actions. 72 hour written notification provided per CCR 3375(f)(1), 128-B-1 on file.

CHAIRPERSON: A. SHINAULT, FC         Recorder: L.J. HUNTER, CCI
Panel:     A. SHINAULT, FC: S. DIXON, CCI: L.J. HUNTER, CCI /ljh

Dist.: C-File
     Inmate

DATE: [illegible]          Classification: PROGRAM REVIEW          Inst: CTF-North

DAVID J. SPOWART
Attorney at Law
71 Via Encina
Monterey, CA 93940
Phone (831) 649 8127


To:      Board of Parole Hearings Panel
Date:    March 13, 2006
Subject: Criminal History Duane Weir, C-02190


Background

On April 6, 2004, the Board of Parole Hearings denied Duane Weir a parole date.. based partly on Mr. Weir's criminal history. The lengthy list of criminal activity referred to in the hearing transcrip is a distortion of the prisoner's record. The Board is barred from considering "other criminal misconduct" which is not "reliably documented", see People v. Callaway (1974) 37 C.A. 3d 905; In re-DeLuna (2005) 126 Cal. App. 4th 585, 598; Cf. Van Houten, 116 Cal. App. 4th at 353 (inmate's arrest record did not constitute "some evidence" of a threat to public safety because the alleged acts did not involve serious injury or attempted serious injury to a victim). The following charges should not have been considered in the Board hearing:

1.  5-6-57.  Dyer Act.  (Board transcript at pg. 17, line 9 through 14).

2.  7-19-61.  Burglary  (Board transcript at pg. 18, line22-25).

3.  7-21--61.  Parole violation (Board transcript at pg. 22)  This is the same charge
    as #2 above.

4.  11-22-62.  Citizen arrest-Malicious Mischief  (Board transcript at page 19, line
    1-2)

5.  11-23-62.  Malicious Mischief (Board transcript at pg. 19, line 3,4 and 5.  The
    11-22-62 at  #4 above is the same charge.

6.  7-12-64.  D. C.  (Board transcript at pg. 9, line 10-11.

7.  1-5-65.  LL.  (Board transcript at pg. 19 line 13-14).

8.  6-20-65  Dram Shop  (Board transcript at pg. 19, line 115-18)

9.   6-21-65.   Violation of Dram Shop (Board transcript at pg. 19, line 20-21. The 6-20-65 charge at #8 above is the same charge).

10.   7-13-65.   Citrus Jr.  (Board transcript at pg. 20 line 1-4).

11.   12-1-51.   Violation of probation (Board transcript at pg. 20, line 11-12).

12.   1-30-66.   Burglary  (Board transcript at pg. 20, line 6-7).

13.   11-9-68.   Burglary  (Board Transcript at pg. 20, line 26-27).

14.   3-10-70.   Accessory to felony (Board transcript at pg. 21, line 5-9).

15.   6-10-70.   Prisoner witness (Board transcript at pg. 21, line 5-9).

16.   Assault to police officer  (Board Transcript at pg. 21, line 24-25).

17.   3-2-78.   DWI  (Board transcript at pg. 21, line 27 and pg. 22, line 1-4).

18   1966.  Grand theft  (Board transcript at pg. 17, line 7 through 14)

Mr. Weir's actual record is  correctly reflected by the attached copy of Prior Record.

Submitted by

David J. Spowart, Attorney at Law

c/c  Duane R. Weir

2

WLSH, FRANK BOY

PRIOR RECORD:                                          February 20, 1979

                                        According to the Federal Bureau of
Investigation, the Bureau of Identification and the San Bernardino Sheriff's Office,
the defendant has the following prior record:

| DATE | AGENCY | CHARGE | DISPOSITION |
|------|--------|--------|-------------|
| 5-6-57 | PD Muskogee, OK | Dyer Act | 11-28-56 2 yrs. prob.<br>6-10-56 3 yrs.<br>custody of Att.<br>General National<br>Training School<br>10-1-58 Term 3 yrs. |
| 3-1-60 | PD Beverly Hills | GTA | 5-16-60 CYA<br>12-20-60 Paroled<br>7-23-64 discharged |
| 1-5-65 | SO Hefferson, WI | | P/G Disorderly Conduct<br>3 days jail |
| 7-15-65 | SO San Bernardino | Grand Theft | 6-30-66 State Prison<br>7-1-68 Paroled<br>7-26-72 Discharged |
| 5-1-66 | PD Long Beach | Evade Arrest;<br>Reckless Driving | 5-2-66 P/G to Reckless<br>Fine $275 |
| 8-28-69 | SO Riverside | Drive w/License<br>Susp. or Revoked | 8-28-69 Serve 180 dys. |
| 55-11-70 | SO Riverside | Drive w/License<br>Revoked or Susp.;<br>Escape | 9-4-70 State Prison<br>susp., 3 yrs. prob.<br>60 dys. cust. |
| 9-27-73 | PD Long Beach | Carry Conc. Weapon<br>Loaded Firearm w/in<br>City Limits | Fine $150 |
| 11-8-73 | SO Riverside | Driving While<br>Intoxicated | P/G fine $182, 24 mos.<br>prob. |
| 12-4-73 | SO San Bernardino | Driving While<br>Intoxicated | P/G fine $240; 3 yrs.<br>Summary Probation |
| 2-20-74 | PD Pomona | DWI; Drive w/License<br>Susp. or Revoked | FTA forfeit bond<br>3-10-78 P/G to DWI,<br>Serve 9 dys. |

3

BOARD OF PRISON TERMS                                            STATE OF CALIFORNIA

## SETTING A LIFE PRISONER TERM - PAROLE DENIED

### 11. NOTE TO CDC STAFF: RECOMMENDATIONS AND REQUESTS

☒ 3. the panel's belief that the prisoner's current mental health is an important issue. In the new full evaluation, the panel requests that the clinician specifically address the following:

☒ a. the prisoner's violence potential in the free community;

☒ b. the significance of alcohol/drugs as it relates to the commitment offense and an estimate of the prisoner's ability to refrain from use/abuse of same when released;

☐ c. the prisoner's psycho-sexual problems;

☒ d. the extent to which the prisoner has explored the commitment offense and come to terms with the underlying causes;

☐ e. the need for further therapy programs while incarcerated.

☒ f. other: _Please review Governor reversal ltr date 9-13-03 regarding the need for Participation in Alcoholics Anonymous_

☐ 4. the panel's belief that the prisoner has deteriorated psychologically and there appears to be a need for treatment. The panel bases this conclusion upon

_[signature]_

_4-6-04_

☐ B. (Other requests to CDC staff): _____

_Weir, Duane_          _C-02190_

NAME and NUMBER    Wei.    C-02190    N.D. 640    CDC-128-B (Rev. 4/74)

Inmate  **Weir**  has been attending narcotics anonymous for the past six (6) months. He has actively participated in the program and he has good attendance habits.

Central file
CC 1
Instructor file
✓Inmate copy

DATE    January—June 1989

GENERAL CHRONO

---

NAME and NUMBER    WEIR.D    C-02190    LB-330    CDC-128-B (Rev. 4/7

INMATE.D.WEIR, C-02190, LB-330, HAS PARTICIPATED IN NARCOTICS ANONYMOUS PROGRAM FOR APPROXIMATELY EIGHT (8) MONTHS. I/M WEIR'S, ACTIVE PARTICIPATION HAS BEEN MINIMAL; HOWEVER, ATTENDS THE MEETING REGULARLY. I EXPECT FUTURE ACTIVE PARTICIPATION.

_____
R.E. LARUE
NARCOTICS ANONYMOUS/SPONSOR

CC:ALL CONCERNED
C-FILE
CC-I
CC-II
INMATE COPY

DATED: 2/17/89

DATE    GENERAL CHRONO

---

NAME and NUMBER    **Weir, D.**    C-02190    N.D. 64U    CDC-128-B (Rev. 4/74)

Inmate  **Weir**  has been attending narcotics anonymous for the past six (6) months. He has actively participated in the program and he has good attendance habits.

Central file
CC 1
Instructor file
✓Inmate copy

DATE    July—December 1989

GENERAL CHRONO

Inmate _____WEIR_____ has attended narcotics

anonymous for the last three (3) months.

He has been actively participating and he has had a good

attendance record.

Central File
CC-I
Instructor File
Inmate Copy

*L.R. Gaines*

Lee GAINES
N.A. Sponsor
CTF-NORTH Facility

March 31/1990

DATE                                                                  GENERAL CHRONO

---

NAME and NUMBER    WEIR                    C-02190              ND-64U   CDC-128-B (Rev. 4/74)


Inmate _____WEIR_____ has attended narcotics

anonymous for the last six (6) months.

He has been actively participating and has had a good

attendance record.

Original; C-File
cc; inmate

*L.R. Gaines*

Lee Gaines N.A. Sponsor
C.T.F. North Facility

DATE  JAN/4/1991                                                      GENERAL CHRONO

---

NAME and NUMBER        WEIR, D.            C-02190        ND-64-L    CDC-128-B (Rev. 4/74)

Mr. Weir has been a member of the Narcotics Anonymous program at the
Correctional Training Facility--North for the quarter ending March 1991 He
has shown the ability to relate with the group and to improve himself through
involvement with it. His participation in this program has demonstrated a
willingness to cooperate in the smooth atmosphere of the Narcotics Anonymous
environment.

ORIGINAL:  Central File
     CC:  Inmate

*Mona Kilgore*
Mona Kilgore
Sponsor, North Facility N.A. Group


DATE:  May 30, 1991              LAUDATORY              GENERAL CHRONO

nmate WEIR, C02190, was released from the CTF-North Facility Narcotics Anonymous rogram, on the Unit-I Yard, for the fourth Quarter of 1992, May, April and June. He as shown considerable interest in the program and a willingness to participate with e group as a whole. I hope he continues to participate as he contributes positively.

*K.T. Nielsen*

P.T. Nielsen, CC-I
Sponsor, Narcotics Anonymous
CTF-North Facility

riginal:  Central File
    CC:  Sponsor
         Inmate

ATE:  07/27/92  ( INFORMATIVE: PARTICIPATION IN NARC. ANONYMOUS)        GENERAL CHRONO

---

AME and NUMBER    WEIR, D.              C-02190    ND 07L        CDC-128-B (Rev. 4/74)

Mr. Weir is a member of the Narcotics Anonymous program at the Correctional Training Facility--North. The NA Program was discontinued in December 1992 due Lock Downs, Fog Counts and to Mission Change at CTF. The NA Program was resumed in June of 1993. Mr. Weir has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Narcotics Anonymous environment.

*Mary B. Johnson*

Mary CB. Johnson
Sponsor, North Facility N.A. Group

ORIGINAL:  Central File
     CC:  Inmate

ATE    June 16, 1993            LAUDATORY            GENERAL CHRONO

---

AME and NUMBER    WEIR, C02190              DO07L        CDC-128-B (Rev. 4/74)

Mr. WEIR has been a member of the Narcotics Anonymous program at the Correctional Training Facility--North for the quarter ending December 1993. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Narcotics Anonymous environment.

ORIGINAL:  Central File
     CC:  Inmate

*Mary Johnson-Mulhern*

Mary Johnson-Mulhern
Sponsor, North N.A. Group

ATE        December 30, 1993        LAUDATORY        GENERAL CHRONO

This inmate has completed a course of individual therapy. During the course of this therapy, his understanding of his commitment offense was explored, as well as the factors which led up to it. Programs completed and other evidence of his efforts to change were discussed, and he detailed his future plans and goals. As a result of this therapy and his increasing self-understanding, his violence and recidivism potentials should be less than for the average inmate

Orig: C-file:
Copy: Unit PA/CC
      Inmate                    *Bruce Bakeman (Ph.D.)*
      Medical file              BRUCE M. BAKEMAN, Ph.D.
      Chrono file               Clinical Psychologist
                                CTF - Soledad

DATE:  8/1/94   WEIR          C-02190          ch  MEDICAL-PSYCHIATRIC-DENTAL

---

NAME and NUMBER: WEIR   C-02190   N D A 054   CTF-GENERAL (CDC-128-G)

Inmate Weir was an active and successful participant in the life skills group. This group met one hour per week for ten weeks. Its purpose was to encourage better impulse control and more effective living. Topics discussed included substance abuse, developing anger and aggression, stress management, forming life goals, building self-esteem, improving problem-solving skills, and re-entry — making a successful return to society.

Orig: C-File
CC:   Unit PA/CC-I              *Bruce Bakeman (Ph.D.)*
      Inmate                    BRUCE M. BAKEMAN, Ph.D.
      Psych file                Staff Psychologist
      Chrono file               CTF, Soledad

DATE: 01/25/91   WEIR   C-02190   gj   MEDICAL-PSYCHIATRIC-DENTAL

---

NAME and NUMBER WEIR, DUANE          CDC-12
                C-02190

Mr. Weir requested verification of his completion of the following therapy groups while at CMC-East:

   Beginning Stress Management & Relaxation Training
   Communication Skills Training
   Self-Esteem and Assertiveness Training
   Reality and Decision Making Skills.

This chrono reflects that he did complete all four groups with regular attendance while at CMC-East.

                        *Gary A. Elem*
                        Gary A. Elem, Ph.D.
                        Staff Psychologist
                        Group Treatment Coordinator    MEDICAL PSYCHIATRIC DENTAL

DATE 3-28-88          THERAPY GROUP COMPLETION

Mr. Weir has been a participant in an eight-week Reality and Decision-Making Group led by Doctoral Trainee, Joe Reed.

Original – C-File
    cc – Psych
        AWC
        Inmate

*JOE REED*
CSPP DOCTORAL TRAINEE

*GARY ELEM, Ph.D.*
STAFF PSYCHOLOGIST

T: 08-10-87/peg

---

DATE 06-25-87    BEGUN GROUP      CMC-EAST      MEDICAL—PSYCHIATRIC—DENTAL

NAME and NUMBER    WEIR, Duane      C 02190      Room        CDC-128-C

Inmate has successfully completed an eight-week Reality and Decision Making Group. Course work focused upon the following topical areas: attitude, problem solving techniques; values and feelings clarification; goal orientation, impulsive behavior; and various concepts of William Glasser, Ph.d., Eric Bernie, M.D., etc. The inmate actively participated in class discussions and exercises. He demonstrated a good working knowledge of the latter topical areas.

ORIG:   Central File
  cc:   Psych File
       AWC File
       Inmate

*JOE REED*
CSPP Doctoral Trainee

*GARY ELEM, Ph.d.*
Staff Psychologist

---

DATE   8/27/87    END GROUP      CMC-EAST      MEDICAL—PSYCHIATRIC—DENTAL

NAME and NUMBER    WEIR, Duane Roy      C-02190    6104      CDC-128-C

Subject has requested that his name be placed on the group therapy waiting list for the following groups, as the Board of Prison Terms has recommended that he complete these before his next Board hearing:

   Stress Management and Relaxation Training
   Self Esteem and Assertiveness Group.

cc:   Psych, AWC, Inmate

*Gary A. Elem, Ph.D.*
Staff Psychologist

8-10-87      GROUP THERAPY W/L      CMC-E, am    MEDICAL—PSYCHIATRIC—DENTAL

# YOKEFELLOWS

*Plaza View Chapel, California men's Colony*

NAME: Duane Weir
NUMBER: C-02190    ROOM: 610L

I have been assigned to Yokefellow Group # 60 , effective 9/28/87.

Your group meets: MONDAY at 7:00 p.m. Hosp. Corr., B-106 .
　　　　　　　　　DAY　　　　TIME　　　PLACE OF MEETING

Moderator Karl Loresch　　　　Sponsor Chuck Deale

THIS IS YOU TEMPORARY ACTIVITY CARD

(Expires 30 days from effective date)

THANK YOU:

*Bruce Gordon*
Bruce Gordon
Yokefellow Coordinator

*Stanley McGuire*
Dr. Stanley L.H. McGuire,
Protestant Chaplain

---

# YOKEFELLOWS

*Plaza View Chapel, California men's Colony*

NAME: Duane Weir
NUMBER: C-02190    ROOM: 610L

You have been assigned to Yokefellow Group # 30 , effective 10/21/87.

You're group meets: Tuesday at 6:30 p.m. Hosp. Corr., Rm B-108
　　　　　　　　　DAY　　　　TIME　　　PLACE OF MEETING (or B-106

Moderator Brian Thomas　　　　Sponsor Keith Brummel

THIS IS YOU TEMPORARY ACTIVITY CARD

(Expires 30 days from effective date)

THANK YOU:

*Bruce Gordon*
Bruce Gordon
Yokefellow Coordinator

*Stanley McGuire*
Dr. Stanley L.H. McGuire
Protestant Chaplain

---

NAME and NUMBER     WEIR, D.   C-02190/06-87

CDC128-C

Interviewed this 43-year-old white native of Edgeston, Wisconsin, married with two daughters, with an 8th grade education, a mechanic by trade, this evening in the Men's Clinic, per inmate request.

A "lifer" (187 P.C.), having been told by the Board (his third) that he had to get into some kind of Group", and expressing an interest in Counseling, inmate is referred to this writer's Wednesday 1930 hours Psycho-Therapeutic Group.

*A.M. Charlens, Ph.D.*

A.M. Charlens, Ph.D.
Staff Psychologist

Orig: Central file
CC:  CCI/Psych file
　　　writer/chrono file

DATE 10/20/86.  WEIR, C-02190. CRC/Norco AMC/wd

MEDICAL-PSYCHIATRIC-RMM,.rK

AME and NUMBER WEIR, D.                  C-02190                          LB-330          CDC-128-B (Rev. 4/74)

The above mentioned inmate is an active member of the "We Care" program at CTF-North. The "We Care" program is designed to introduce juvenile offenders to the realities of prison life as a deterrent to continued criminal behavior. Members of the "We Care" program, shares what they perceive to be the causative factors that brought them into conflict with their peers, parents, teachers, and finally the criminal justice system, with youths who are starting to experience varying levels of anti-social behavior.

Inmate, WEIR, is a member of the "We Care" program, as of January 27, 1989.

cc:  Inmate C-File
     CC-I
     Inmate
     "We Care" file

                                          V. JORN
                                          "We Care" Sponsor
                                          CTF-North & South

                                                          GENERAL CHRONO
DATE  2/14/89

---

NAME and NUMBER  WEIR, D.          C-02190              ND/64-U      CDC-128-B (Rev. 4/74)

Inmate Weir has been an active member of the CTF-North "We Care" program since September, 1988.  The "We Care" program has been designed to be a deterrent for criminal behavior in juveniles.  Inmate Weir shares with these juveniles what he perceives to be the causative factors that brought these juveniles into conflict with their parents, teachers, peers, and finally the criminal justice system.  Inmate Weir is a very conscientious and concerned individual when it comes to these youths.  His participation in the "We Care" program has not only given insight to these youths, but has also given Weir positive insight that he will need to participate in the world once released back into society. Inmate Weir has been an asset to the "We Care" program and on behalf of the group and myself, I thank him and encourage continued positive behavior.

ORIG:  C-File
  cc:  Inmate
       CC-I
       Sponsor                            V. JORN
       "We Care" File                     "We Care" Sponsor
                                          CTF-North/South Facilities

DATE  June 12, 1990                                       GENERAL CHRONO

NAME and NUMBER    DUANE W. ⌐    C—02190    LB—330    CTF North    CDC-128-B (Rev. 4/74)

<u>LAUDATORY CHRONO</u>

Since October 1, 1988, Mr. Weir has donated 6-18 hours per week of his own time to work in the North Facility Library as a volunteer. During this time he has assisted the Chief Legal Clerk in cataloguing a large portion of the law collection. A process which is both tedious and lengthy. Mr. Weir's generosity is much appretiated and merits recognition.

cc: Records
    CCI
    Library
    Inmate

M. LeDonne, Sen. Librarian
CTF—North Library

Prison Industry Authority
Inmate Employability Program

## Certificate Nomination Form

Date: __July 31, 2002__

### Identifying Information

| | |
|---|---|
| Inmate Name (first, last): Duane Weir    CDC# C-02190 | |
| Job Title: Journeyman | |
| D.O.T. Code: 787682058 | |
| Specialty (if applicable): | |
| Number of hours (to date) in this job: 14,842.13 | |
| Institution: C.T.F. | |
| Enterprise: P.I.A. | |
| Supervisor Name: S. Franklin | |

### Criteria Checklist*

All of the following criteria must be met before an inmate is nominated to receive a skills certificate:

- ☒ Must have a minimum of 1,500 hours on the same equipment/job.
- ☒ Demonstrates a comprehensive knowledge of machinery/equipment, including set-up, operation, and/or maintenance & repair.
- ☒ Understands the safety requirements of the job and regularly incorporates safety procedures.
- ☒ Consistently meets or exceeds production standards.
- ☒ Understands and achieves quality standards.
- ☒ Consistently demonstrates a good attitude and work habits.

\* For a more detailed explanation of the above criteria, please refer to the attached guidelines which show which jobs are certifiable (by specific enterprise) and present examples of how these criteria are met.

### Supervisor Certification

*I hereby certify that the above referenced inmate worker has met all of the minimum requirements (shown above) necessary to be nominated to receive a PIA Skills Certification in his/her job area.*

_____    8/02/02        _____    8/2/02
Supervisor's Signature    (date)         Superintendent's Signature    (date)
S. Franklin                              E. Robinson

Note: Send a copy of this form to the Inmate Employability Program (IEP) Coordinator in PIA Central Office at 560 E. Natoma Street, Folsom, CA 95630. Keep a copy in your inmate/factory file. Questions? Contact IEP Coordinator at (916) 358-2656.



COPY

 california **prison industry authority**

State of California • Department of Corrections

**DATE:** August 18, 2005

**TO:** California State Board of Prison Terms

**FROM:** Prison Industry Authority, CTF-Soledad

**SUBJECT:** FORMER P.I.A. WORKER VERIFICATION CARD

We would like to inform the Panel that upon receiving an established parole date and being ready to parole, Inmate WEIR will receive a Former P.I.A. Worker Card (yellow in color) indicating the following:

**PAROLEE'S NAME: WEIR**

**TO: PAROLE AGENT**

Be advised that this Inmate has a work history with the Prison Industry Authority (P.I.A.) where he learned specific job skills and developed valuable work habits in a business-like production setting.

Please ensure that this parolee is given **PRIORITY** in any job placement efforts by referring him to one of the following programs which may be available in your jurisdiction:

* **Offender Employment Continuum**

* **Employment Development Dept. (EDD)**

### WORK EXPERIENCE EVALUATION FORM

This parolee should have a copy of his most recent P.I.A. Work Experience Evaluation which was given to him upon release. If you need to validate this work information or need an additional copy of this form, please contact the P.I.A. Inmate Employment Program Coordinator at: 1-877-276-7290

**CHARLIE D. WALKER**
Superintendent I / I.E.P. Coordinator
Prison Industry Authority
CTF-Soledad

---

**Correctional Training Facility • P.O. Box 700 • Soledad, CA 93960-0700**

NAME and NUMBER    WEIR    C-02190

CDC-128-B (Rev. 4/74)

Inmate **WEIR** has voluntarily participated in three (3) hours of Video Instruction / Discussion of issues related to successfully re-engaging into society. These instructions review the importance of having a strong support group, developing the ability to follow directions, the importance of substance abuse programs, identifying and controlling antisocial behavior, and changing the way we interact with others in society. With these attributes, Inmate **WEIR's** chance for a successful re-entry into his community is greater. He is commended for his diligence and participation in our **Inmate Employability Program.**

CHARLIE D. WALKER
Superintendent II / I.E.P. Coordinator
Prison Industry Authority
CTF-Soledad

DATE    **AUGUST 18, 2005**

**LAUDATORY CHRONO**

GENERAL CHRONO

See attached
two documents.

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128 A (8-87)

**NAME AND NUMBER**    WEIR, D.        C-02190

In sincere appreciation for your dedication, support, and hard work, as a Leadman, to the Prison Industry Authority's Fabric Enterprise. Your team efforts achieved a $546,000.00 production level with no past due orders for the Month of April 2002.

Thank you for all your hard work.

Orig: Central File
cc:   Inmate File
      Inmate

E. Robinson, Superintendent    II
CTF-North Textiles

**DATE  6-12-02**            (LAUDATORY CHRONO)            **CUSTODIAL COUNSELING**

STATE OF CALIFORNIA
DC 101 (Rev. 4/82)

# WORK SUPERVISOR'S REPORT

DEPARTMENT OF CORRECTIONS

| | GRADE | | | | GRADE |
|---|---|---|---|---|---|
| GRADES | 2 | A. Demonstrated Skill and Knowledge | | 2 | F. Teamwork and Participation |
| 1 = Exceptional | 2 | B. Attitude Toward Fellow Inmates and Workers | | 2 | G. Learning Ability |
| 2 = Above Average | 2 | C. Attitude To Supervisors and Staff | | 2 | H. Use of Tools and Equipment |
| 3 = Satisfactory | 2 | D. Interest in Assigned Work | | 2 | I. Quality of Work |
| 4 = Below Average | 2 | E. Effort Displayed in Assigned Work | | 2 | J. Quantity of Work |
| 5 = Unsatisfactory | | | | | |

PAY STATUS: From $ **2/h.75**    To $ **SAME**    From Job No. **TSX-N.503**    To Job No. **SAME**

Total No. Hours Assigned                Total No. Hours Worked

| SUBJECT ASSIGNED TO | DATE ASSIGNED | ACTUAL WORK CONSISTS OF: | PERIOD COVERED BY REPORT | LENGTH OF SUPERVISION |
|---|---|---|---|---|
| **2-SHIFT TEXTILES** | **12-01-89** | **GARMENT ASSEMBLER / DARNER** | **JOURNEYMAN** | |

RECOMMEND FOR:   ☐ REASSIGNMENT    ☐ RETAIN    ☐ PAY INCREASE    ☐ PAY DECREASE    INMATE'S INITIALS

COMMENTS (IF MORE SPACE REQUIRED, USE REVERSE SIDE) **HEIR HAS WORKED IN ROUGH TEXTILES FOR 13 YEARS. HE HAS NO**
**SUPERVISORY PROBLEMS, AND IS CURRENTLY AT A JOURNEYMAN LEVEL WITH 14,842.13 EXPERIENCE.**

| SUPERVISOR | | WORK DETAIL | |
|---|---|---|---|
| **S. FRANKLIN, SUPERVISOR** | | P.I.A. | |
| SUPERVISOR | | INSTITUTION | ETHNICITY |
| | | CIF-NORTH | WHT |
| INMATE'S NAME | NUMBER | INSTITUTION | DATE |
| **WEIR, D.** | **C-02190** | | **7-31-02** |

CDC-128-B (Rev. 4/74)

LAUDATORY CHRONO/REQUEST FOR RETENTION

Inmate WEIR, D. C-02190 has been assigned to North Textile Factory since 12-1-89. Since that time, inmate WEIR has become a skilled leadman (Position #4073-P). Inmate WEIR has shown excellent work habits and has been dedicated to a quality attitude. His work has helped keep the Z-shift's production floor running smoothly. Inmate WEIR is always willing to help where ever he is needed and aways shows respects towards his supervisors. Inmate WEIR is an asset to the North Textile Factory program.

cc:   C-file
      CCI
      Supervisor
      Inmate

S.H.MARTIN  SUPERVISOR
NORTH FABRIC PRODUCTS
CTF-SOLEDAD

DATE 8-10-91

(LAUDATORY CHRONO)                                    GENERAL CHRONO

---

NAME and NUMBER   WEIR, D.        C-02190      POS# 4071-P      ND-07L      CDC-128-B (Rev. 4/74)

I/M WEIR,D. ,C-02190 POSITION # 4071-P,HAS BEEN ASSIGNED TO THE NORTH TEXTILE PROGRAM SINCE 12-01-89. DURING THIS ASSIGNMENT PERIOD SUBJECT HAS RECEIVED NUMEROUS 90-DAY 101 WORK SUPERVISOR REPORTS WHICH REFLECT ABOVE AVERAGE TO EXCEPTIONAL GRADING.I/M WEIR HAS MAINTAINED POSITIVE ATTITUDE AND A HIGH STANDARD OF WORK ETHICS.SUBJECT HAS PROGRESSED THROUGH ALL PHASES OF OPERATIONS WITHIN THE SCOPE OF THIS GARMENT FACTORY.CONSEQUENTLY I/M WEIR WAS ASSIGNED AS A "AA" LEADMAN/TRAINER ON 12-01-92.I/M WEIR CARRIES AN ABUNDANCE OF RESPONSIBILITY AND ALWAYS CONDUCTS HIMSELF IN A PROFESSIONAL MANNER WITH SUPERVISORS AND PEERS.I/M WEIR IS CONSIDERED A TOP LEVEL EMPLOYEE AND ALWAYS STRIVES FOR QUALITY AND QUANTITY IN PRODUCTION.SUBJECT IS TO BE COMMENDED FOR HIS EFFORT AND POSITIVE INFLUENCES IN HIS ROLE AS A "AA" LEADMAN/TRAINER.

ORIG: C-FILE
CC: UNIT COUNSELOR
    FACTORY FILE
    INMATE ✓      (128-B LAUDATORY CHRONO)

G. SOLTANI, SUPERINTENDENT-I
CTF-NORTH FABRIC PRODUCTS

DATE 4-14-94                                         GENERAL CHRONO

---

NUMBER    Weir, D.      C-02190    ND-07L     (4071)      CDC-128-B (Rev. 4/74)

Laudatory Information.  Inmate Weir has been assigned as the Supervisory Leadman in the North Facility Garment Factory since 1989.  His professional approach in achieving factory milestones, coupled with his attentive progression in meeting program training standards has earned him respect and responsibility in the workplace.   His interpersonal skills in communicating with staff and inmates has always been honest and professional.  His influences to fellow inmates in the factory are positive motivators for both the quality and quantity of our manufactured goods. Inmate Weir's four years of performance evaluations grade him as above average to exceptional.  He has always maintained an acquiescent attitude with his supervisors; and should be commended for his positive contributions as a Supervisory Leadman to the Correctional Training Facilities Textiles Program.

Orig:  Central File
  cc:  CCI
       Inmate/File

P.H. Greenwood
Superintendent I

DATE   February 15, 1995    CTF-North

GENERAL CHRONO

Case 3:07-cv-05955-TEH   Document 9   Filed 07/03/2008   Page 23 of 83

or approximately the last four months, Inmate WEIR, C-02190, has assisted this Officer and other Staff with the cleaning of the food utensils for all three meals. WEIR has done this voluntarily, without pay or personal benifit of any kind. I commend WEIR for his exemplary attitude and recommend him for job placement of any kind.

R. Beaudreau, C/O
Position #540
Badger Section

IG: C-File
Counselor
Inmate

TE 11-26-83         (LAUDATORY CHRONO)         S.Q.         GENERAL CHRONO

NAME and NUMBER     WEIR, D.          C-02190          ND-64U          CDC-128-B (Rev. 4/74)

### LAUDATORY CHRONO

Inmate Weir, D. C-02190, ND-64U, was assigned to North Fabric Products on 12-1-89.
Since that time Weir has become a skilled operator and has learned several different
operations on blue jeans as well as jumpsuits. Weir has always been punctual and
has never been a supervisory problem. He gets along well with staff and peers.

Orig: Central File
cc: Unit I P.A./North Dorm
North Dorm CCI
Textiles File
Inmate

G. Soltani
Asst. Superintendent
Fabric Products
5/5/90

ATE   May 5, 1990         GENERAL CHRONO

NAME and NUMBER     WEIR, D.          C-02190          ND-64-L          CDC-128-B (Rev. 4/74)

Inmate WEIR, D. C-02190 has been assigned to North Textile Factory since 12-1-89. During such time, inmate WEIR has steadily progressed in this program. His skills encompass, Over-Lock operator, Bar-tack an Single Needle sewing machine. Inmate WEIR demonstrates a positive attitude toward his assignment and fellow inmates and staff, as well as demonstrating good work habits. It is the opinion of this writer that inmate WEIR has used his time wisely while assigned to this program.

DIST: Central File
cc: Counselor CCI
Textile File
Inmate

S.M. MARTINE,Supervisor
North Fabric Textile

DATE:   Jan. 23rd, 1991         Laudatory         GENERAL CHRONO

THANK YOU FOR YOUR HELP DURING THE RECENT LOCKDOWN SITUATION.
IT WAS GREATLY APPRECIATED BY THE STAFF AT NORTH TEXTILES. YOU WORKED WHERE EVER NEEDED AND
YOUR ATTITUDE WAS COMMENDABLE.

T. W. HOWARD, SUPV.                    K. CARTER, SUPT. II

LAUDATORY CHRONO

CDC FILE
(REVISED)
DATE
DATE          11-15-97        CTF-NORTH

GENERAL CHRONO

NAME and NUMBER      Weir, D.      C-02190      LB-330L      CDC-128-B (Rev. 4/74)

This writer has known and observed Inmate Weir, C-02190, LB-330L, for approximately one
(1) year. In this time, I have observed Inmate Weir to be both considerate and respectful
towards staff and inmates alike. Inmate Weir is always willing to offer his assistance
in any Hall clean-up/job. I would like to commend Inmate Weir for his behavior/attitude.

Orig:  C-File
cc:  Unit P.A.
     CC-I
     Inmate

W. B. Garnett C/O
W.B. Garnett, C/O
Lassen 'B' Section Officer
CTF-North Facility

DATE    5-4-89      (LAUDATORY CHRONO)      GENERAL CHRONO

NAME and NUMBER      WEIR, Duane      C-02190      LB-330L      CDC-128-B (Rev. 4/74)

Inmate Weir, C-02190, has been assigned, under my direct supervision, as a Lassen 'B'
Section Porter, P.M. (Pos. #4660N) for approximately seven (7) months. During that time
Weir's conduct has been exemplary. He is courteous towards Supervisors and Staff and is a
dependable self-motivated worker. He gets along well with other workers and is a good team
worker. This chrono acts to commend Inmate Weir for his conscientious work habits and his
exemplary attitude towards work and staff.

Orig:  Central File
cc:  P.A. Lassen Hall
     CC-I
     Inmate

G. Schlittenhart  C/O
G. Schlittenhart, Correctional Officer
Lassen Hall, 'B' Section, Third Watch
CTF - North Facility

DATE    5/5/89      (LAUDATORY)      CTF-N      GENERAL CHRONO

nmate Weir, C02190, has been assign. d under my direct supervision as a passes B Section ...ter for approximately six (6) Months. During that time I have observed Inmate Weir to ...e both considerate and respectful towards staff and inmates. Weir is a dependable self-...otivated worker and is always willing to offer his assistance in any Hall clean-up job. This ...hrono is to commend Weir for his conscientious work habits and his exemplary attitude towards ...ork and staff.

```
rig:  C-File
  cc:  Unit P.A.
       CC-I
       Inmate
```

*E. Kelley*

D. Kelley, C/O
Lassen "B" Section Officer
Third Watch
CTF-North Facility

11-7-89                    (LAUDATORY CHRONO)
'ATE

GENERAL CHRONO

---

AME and NUMBER    Weir, D.          C02190        LB-330L        CDC-128-B (Rev. 4/74)

This Writer has known Inmate Weir, C02190, LB-330 for approximately Sixteen (16) months. In this time, this Writer, has observed Inmate Weir be both courteous and respectful to Staff and his fellow inmates. Inmate Weir has also shown a willingness to preform more than his normal share of work in maintaining the cleanness of the Hall. This Writer wishes to commend Inmate Weir for both his attitude and his good sense of responsibility in the time that this Writer has known him.

```
Orig:  C-File
  cc:  Unit P.A.
       CC-I
      (Inmate)
```

W.B. Garnett, C/O
Lassen 'B' Section, 2nd Watch
CTF-North Facility

DATE 11-9-89        (LAUDATORY CHRONO)

GENERAL CHRONO

Case 3:07-cv-05955-TEH    Document 7-9    Filed 07/01/2008    Page 26 of 83

| Summary: | ANNUAL POST BOARD: IN ABSENTIA | CPP TEXTILES, BPT RX REVIEWED, I/M UNDERSTANDS, DOUBLE CELL/DORM OK, NO MDO CONCERNS PER 3375.2, LEVEL II HOUSING APPROPRIATE. |
|---|---|---|

| Custody: | MED A | Next BPT: | 3/07 | Level: | II |
|---|---|---|---|---|---|
| GPL: | GED | Reclass: | 3/07 | CS: | 19 |
| Work Group: | A1 | Privilege Group: | A | RPS: | n/a |

WEIR case factors were reviewed in absentia by Unit V U.C.C. today for a Post Board Program Review. The Board of Prison Terms conducted a Subsequent Parole Consideration Hearing on 3/13/06. The Board made the following decisions and recommendations: Parole denied 1 year. Stay discipline free. Get self-help. Earn positive chronos. WEIR was informed that his next anticipated Board of Prison Terms Hearing is 3/07. He was issued a copy of the hearing results at an interview on 3/16/06. WEIR stated that he understands the contents and disagrees with the Board's findings. WEIR asked at the interview if there were still the programs, Impact and Project C.H.A.N.G.E. At the present time both programs have been discontinued. There are limited opportunities for self-help programs. COMMITTEE ACTIONS: The Committee elects to continue the present program for textiles. COMMENTS: WEIR participated in today's U.C.C. and acknowledged his understanding of the Committee's actions. Committee's actions are not adverse and the action was taken at the inmate's written request. WEIR will be notified of the Committee's action. This classification was held within 15 days of receipt of decision. This UCC acts as WEIR's Annual Classification. He received 2 periods of no 115's and 2 periods of average or better for work.

CHAIRPERSON: C. PLYMESSER, FC(A)                    Recorder: J. STUDEBAKER, CCI

Panel:          C. PLYMESSER, FC(A): R. STRICKLIN, CCI(A): J. STUDEBAKER, CCI /jjs

Dist.:  C-File
          Inmate

DATE: 3/16/06          Classification: ANNUAL POST BOARD          Inst: CTF-N

MALE COPY

# PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
## UPDATE CLINICAL EVALUATION
### JANUARY 2006

## CORRECTIONAL TRAINING FACILITY
### JANUARY 13, 2006

| | |
|---|---|
| NAME: | WEIR, DUANE |
| CDC#: | C-02190 |
| DOB: | 7/10/43 |
| OFFENSE: | PC 187, Murder, First Degree |
| SENTENCE: | 7 years to life |
| DATE OF OFFENSE: | 3/2/78 |
| MEPD: | 3/10/85 |
| EVALUATION DATE: | 1/13/06 |

## I.   IDENTIFYING INFORMATION

Mr. Duane Weir is a second term, 62 year old, Caucasian, male from Los Angeles County. He is a Christian. He has remained married to the same woman that he was married to prior to his incarceration. The marriage is still intact and is supportive. He has 28 years in custody.

## II.   SOURCES OF INFORMATION

This report is based upon a single 90 minute interview, plus review of the Central file and medical file.

The previous psychological evaluation dated 12-24-99 by M. Carswell PHD. Psychologist at CTF Soledad is still current and valid. The psychosocial assessment done at that time was reviewed with Mr. Weir. It remains current and valid. Therefore, this information will not be repeated in this report.

A current psychological evaluation was requested to focus on the issue of Mr. Weir's alcoholism and whether this is a current problem in his life. The need for forward participation and self-help or therapy was to also be addressed.



WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

## III. CLINICAL EVALUATION AND MENTAL STATUS

Mr. Weir appears to be his chronological age of 62. Hygiene and grooming was good. He was alert and well oriented. His thinking was rational chronological, and coherent. His speech was normal, fluent and goal oriented. Eye contact was good. Affect was appropriate. There is no evidence of anxiety or depression. Intellectually he is functioning in the average ranges. His judgment was in tact. His memory is in tact and his self awareness and insight was very good.

Mr. Weir is a second termer. He does have a history of criminal involvement. He is a product of a criminally oriented family in which the parents encouraged the children to steal from stores in order to support the family. He began drinking alcohol as a teenager with his parent's approval. His parents were both alcoholics and were frequently in bars. He began delinquent behavior as a young teenager and continued then a life of crime until the commended offense. Mr. Weir did maintain stable employment prior to the commended offense. He was working as a journeyman mechanic and he specialized in the repair of transmissions. He has continued to work steadily throughout his years of incarceration. He is now a lead man in the PIA textiles program. He has well developed work ethics.

In an effort to address the issues raised by the board of prison terms panel, he was carefully interrogated about his thoughts and feelings about drinking alcohol at this point in his life. He stated that he thoroughly understands the severe harm that alcohol causes. He has developed deep feelings of revulsion against use of alcohol in his own life and in the life of others. He stated that at this point in his life that any indulgence in alcohol will make him physically sick. Alcohol has created irresponsible and irrational behavior in his past. Any use of alcohol would break his wife's heart. It is remarkable that the woman he was married to at the time of the commended offense has stuck with him throughout these 28 years of his incarceration. She is heavily involved in her church activities in West Covina. He spoke at length about how any use of alcohol in his life deeply hurt his wife, his other family members that have stuck with and his grand children. He spoke of how alcohol has caused 28 years of grief and loss to his family members as well as himself. He knew that inmate manufactured alcohol is readily available at this institution. Those who desire to use alcohol can access it easily. He has remained clean and sober throughout the 28 years since the commended offense occurred. This is evidence how his self control, and new found values to remain clean and sober, and his ability to say no to alcohol. He also spoke about his Christian beliefs. He spoke about his allegiance to Christ who is his Savior and Lord. He knows that the use of intoxicating alcohol is forbidden in the Christian Life. His values in this area appear to be thoroughly thought out, deep and

Weir, Duane  C-02190                 CTF-Soledad                    1/13/06        lc



WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

genuine. His commitment to remain clean and sober in the future and when he is released on parole appear to be sincere. He does continue to attend alcoholics anonymous as regularly as he can. Since he is housed in a dormitory at North Facility, and because North Facility is frequently locked down due to inmate riots, this program is often canceled. However attends as often as he can. He states that he believes in AA and he enjoys participating in it.

In considering the current diagnostic impression he has been consistently diagnosed in the past as having alcohol dependence in institution remission as well as an anti-social personality disorder. In view on his strongly held values to remain clean and sober and his abstinence from alcohol for 28 years, alcohol dependence cannot be a current diagnosis. Alcohol dependence was a problem for him up until the age of 34. At this point in time it is no longer a problem and it does not warrant a diagnostic label. Therefore, his label will be deleted or noted only as a historical factor. Regarding the presence of anti-social personality disorder, Mr. Weir does have strong feelings of empathy towards other, concern towards others, and there is no evidence of anti-social or criminal thinking or values in his life at this point. He looks back on his out of control childhood and early years with feelings of sorrow, remorse and unhappiness. This man has changed considerably over his years of incarceration. There is no evidence of a personality disorder at this time.

Current diagnostic impression

AXIS I:     No mental disorder.
AXIS II:    No personality disorder
AXIS III:   No physical disorder
AXIS IV:    Life term incarceration
AXIS V      GAF 90

IV.   REVIEW OF LIFE CRIME

Mr. Weir stated that the victim in the commitment offense was shot during the time that Mr. Weir was walking towards the victim's house from his brother's house. He arrived after the shooting. However, he accepts full responsibility for his involvement in this robbery which led to the death of the victim. He indicated that if he had not become involved in the robbery that the victim would have not been attacked and hurt. In the past he has minimized his involvement in the commended offense. However, at this point I do not see evidence that he is minimizing his involvement. He looks back at his life at that time with unhappiness, recognizing that his values and thinking were irresponsible and

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

antisocial. He stated that he feels terrible about the elderly victim's death due to health problems as a result of the gun shot wound. His feelings of remorse appear to be sincere and genuine.

Mr. Weir's brother, the person that actually shot the victim, continued to lead a life of crime. After doing four years in participation in robbery he was never held responsible for the victim's death. He continued to engage in criminal behavior in Texas and is still in custody as a habitual offender.

## V.    ASSESSMENT OF DANGEROUSNESS

A.    In considering a potential for dangerous behavior in the institution, Mr. Weir continues to remain disciplinary free. He has not had any serious disciplinary since 1983. He is holding a responsible position in PIA textiles. His thinking is pro-social and responsible. His potential for violence in the institutional environment is essentially nil.

B.    In considering potential for dangerous behavior when released to the community on parole, the Level of Service Inventory-Revised was administered. This is an actuarial measure that assesses criminal history which in his case is serious, substance abuse history which is in his case as serious and his progress in vocational goals, family life, and other factors. His score places him at the 5.1 cumulative frequencies in comparison to other prison inmates. This means if 100 men were released on parole, he would do better than 94 of them. The only negative factor is in his life are the historical ones that all occurred before he was 34 years of age. Based upon his current attitude and maturity, his potential for violence in the community is no greater than the average citizen and in fact be lower than the average citizen based upon his growth and maturity.

C.    The most significant risk factor in this significant case would be the use of alcohol. As outlined above in this report, his strong values against use of alcohol and his determination to remain clean and sober no longer makes this a significant risk factor.

## VI.    CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS

There are no mental or emotional problems in this case that would interfere with regular parole planning. He does have excellent vocational skills that will enable him to secure

Weir, Duane  C-02190                 CTF-Soledad                 1/13/06       lc

WEIR, DUANE
CDC NUMBER: C-02190
BPT TSYCHOLOGICAL EVALUATION
PAGE FIVE

employment easily in the community. He has a strong work ethic. He has a very
supportive wife who has remained faithful and loyal over the years. He plans on attending
his wife's church in West Covina. This church has numerous substance abuse programs.
He plans on participating in these programs in his effort to remain clean and sober in the
future. He spoke at length about his eleven grandchildren that he keeps in close contact
With, through communication by phone and letters. His family appears to be very
supportive and committed to him and his future success. All of these factors contribute
towards a successful adjustment on parole. The prognosis for successful adjustment in the
future in the community is excellent.


M. Macomber, PH. D.
Staff Psychologist
Correctional Training Facility, Soledad


B. Zika, PH. D.
Senior Psychologist
Correctional Training Facility, Soledad


MM/lc

D:     1/13/06
T:     1/13/06

NAME AND NUMBER:    WEIR        C-02190      ND 7        ORTH        CDC-128-C

This inmate has completed a course of individual therapy. During the course of this therapy, his understanding of his commitment offense was explored, as well as the factors which led up to it. Programs completed and other evidence of his efforts to change were discussed, and he detailed his future plans and goals. As a result of this therapy and his increasing self-understanding, his violence and recidivism potentials should be less than for the average inmate.

Orig: C-file:
Copy: Unit PA/CC
      Inmate
      Medical file
      Chrono file

*Bruce Bakeman, Ph.D.*

BRUCE M. BAKEMAN, Ph.D.
Clinical Psychologist
CTF - Soledad

DATE: 8/1/94    WEIR        C-02190        ch  MEDICAL-PSYCHIATRIC-DENTAL

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
DECEMBER 1999 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
DECEMBER 17, 1999

This is the 13th psychological evaluation for the Board of
Prison Terms on inmate Duane Weir. This report is the
product of a personal interview, conducted on 12/17/99, as
well as a review of his Central file and unit health record.
This single contact interview was for the express purpose of
preparing this report.

I.    IDENTIFYING INFORMATION:

      Inmate Weir is a 56-year-old, married, Caucasian male.
      His stated religious affiliation is Protestant.  No
      unusual physical characteristics were noted and he
      denied the use of any nicknames or aliases.

II.   DEVELOPMENTAL HISTORY:

      Inmate Weir is the third of nine children.  He stated
      there were no prenatal or perinatal concerns or birth
      defects.  He had no abnormalities of developmental
      milestones.  All speech, language and motor development
      occurred unremarkably.  He denied any history of
      cruelty to animals or any history of arson.  He stated
      he had no significant childhood medical history and
      denied any childhood history of physical or sexual
      abuse as either a perpetrator or a victim.

III.  EDUCATIONAL HISTORY:

      Inmate Weir attended public school through the eighth
      grade.  He received his GED in 1982 at San Quentin.
      Recent TABE scores were unavailable.

IV.   FAMILY HISTORY:

      Inmate Weir states that his mother died in 1997 and
      father soon after, also in 1997.  He has many siblings.
      He is particularly close to one sister and calls

WEIR      C-02190        CTF-NORTH        12/24/99        gmj

WEIR, DUANE
CDC NUMBER:  C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

frequently.  He characterizes his family relationships
as close both historically and currently.

V.    PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION:

Inmate Weir states that he is a heterosexual male.
He denied any history of high-risk sexual behavior
either prior to or since incarceration.

VI.   MARITAL HISTORY:

Inmate Weir has been married for 27 years.  He has two
daughters who are now 27 and 26.  He also has five
grandchildren.  He states that he phones every week and
that he and his family are very close.

VII.  MILITARY HISTORY:

Inmate Weir denied any history of military service.

VIII. EMPLOYMENT AND INCOME HISTORY:

Prior to his incarceration, inmate Weir was employed as
an auto mechanic.  Since incarceration, he has
completed vocational auto mechanics in 1986.  He has
worked in textiles for the last ten years and has good
chronos.

IX.   SUBSTANCE ABUSE HISTORY:

Inmate Weir states that he started using alcohol
approximately in his early 20s.  He was under the
influence of his commitment offense.  He has attended
Alcoholics Anonymous for approximately 15 years.  He
has also completed a Life Skills program and one on one
therapy with Dr. Bakeman.  He also completed self-help
groups through CMC.

X.    PSYCHIATRIC AND MEDICAL HISTORY:

Inmate Weir has no prior diagnoses nor serious
illnesses.  He has a current growth removed from his
nose area and a biopsy is being performed this month
(results unknown).  He has had no medical or
psychiatric hospitalizations and has had no serious
accidents or head injuries.  He has no history of

WEIR      C-02190      CTF-NORTH      12/24/99      gmj

WEIR, DUANE
CDC NUMBER:  C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

suicidal ideation or suicide attempts.  He has had no
seizures or any other neurological condition.  He has
had no history of disabilities or significant
impairments.  He is on no medication at this time.

XI.  PLANS IF GRANTED RELEASE:

Should inmate Weir be given a parole date, he would
parole to Los Angeles County and live with his wife.
He will more than likely find employment as an auto
mechanic and believes he will do fine on parole.

CLINICAL ASSESSMENT

XII.  CURRENT MENTAL STATUS/TREATMENT NEEDS:

A.  Inmate Weir is a 56-year-old, Caucasian male.  He was
appropriately dressed and groomed.  He was cooperative,
calm and alert during the interview.  His speech was
clear and readily understandable.  His affect was
normal.  His flow of thought was normal with no
hallucinations nor delusions noted.  He was fully
oriented and his intellectual functioning was estimated
to be in the average range.  His attention and
concentration were adequate for purposes of this
examination.  There was no evidence of a mood or
thought disorder.  His insight and judgment appeared to
be intact.  He showed good insight into his commitment
offense.

B.  CURRENT DIAGNOSTIC IMPRESSIONS:

AXIS I:    Alcohol Dependence, in institutional
           remission.
AXIS II:   Personality Disorder, NOS.
AXIS III:  No Contributory Physical Disorder.
AXIS IV:   Incarceration.
AXIS V:    GAF = 75.

This inmate's ability to maintain his present gains in
the community after release is positive.

XIII. REVIEW OF LIFE CRIME:

Inmate Weir continues to assert that his brother shot
the victim, who died months later, and there is now

WEIR     C-02190       CTF-NORTH       12/24/99       gmj

WEIR, DUANE
CDC NUMBER:  C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

some question and controversy concerning the cause of
the victim's death.  Investigations have been held
recently.  The inmate does state, however, that he is
guilty of the robbery.  He takes responsibility for the
robbery and states that he is very sad that the victim
was shot.

XIV.  ASSESSMENT OF DANGEROUSNESS:

A.  This inmate has not received any CDC-115 violations
    since 1983.  Therefore, it is felt that he would
    pose a less than average risk for violence when
    compared to this Level II inmate population.

B.  If released to the community, his violence
    potential is estimated to be no higher than the
    average citizen in the community.

C.  Clearly, the most significant risk factor as a
    precursor to violence for this inmate would be a
    return to the use of alcohol.

XV.  CLINICIAN OBSERVATIONS, COMMENTS AND RECOMMENDATIONS:

A.  This inmate is responsible for his behavior.  He
    has the ability to abide by institutional standards
    and has been disciplinary-free for 17 years.

B.  This inmate has no mental health disorder which
    would necessitate treatment either during his
    incarceration period or after parole.

C.  Since this inmate admits having an alcohol abuse
    problem, he should attend Alcoholics Anonymous and
    have periodic testing as a mandatory part of
    parole.

M. Carswell PhD

M. CARSWELL, Ph.D.
Staff Psychologist
Correctional Training Facility, Soledad


WEIR      C-02190      CTF-NORTH      12/24/99      gmj

WEIR, DUANE
CDC NUMBER:   C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FIVE


STEVEN J. TERRINI, Ph.D.
Senior Supervising Psychologist
Correctional Training Facility, Soledad

MC/gmj

D:   12/17/99
T:   12/24/99


WEIR        C-02190        CTF-NORTH        12/24/99        gmj

1    from the Sheriff's office speaking in opposition.

2    The Panel makes the following findings: The Panel

3    finds that the prisoner has made progress.

4    However, the prisoner needs to certainly involve

5    himself in positive kinds of self-help programs,

6    the kinds that would enable him to face, discuss,

7    and understand and cope with stress in a non-

8    destructive manner.  At the top of the list

9    certainly would be substance abuse, anger

10   management, self-control, those kinds of programs.

11   Nevertheless, there are some things we want to

12   commend the prisoner for.  Disciplinary behavior

13   since 1983 certainly is commendable.  His work

14   reports, we certainly want to give him some

15   accolades for that.  However, those positive

16   aspects does not outweigh the fact of his

17   unsuitability.  Parole is going to be denied for

18   one year.  Also, another issue.  We really feel

19   that the Governor raised some valid points in his

20   denial letter, some issues that certainly need to

21   be resolved.  And we're going to ask that a new

22   psychological report especially address the issue

23   of alcoholism and the prisoner's need for further

24   self-help in those areas.  We also are going to

25   recommend that the prisoner remain disciplinary

26   free and that he participate in self-help programs.

27   **DUANE WEIR C-02190         DECISION PAGE 5       4/6/04**

BOARD OF PRISON TERMS                                                STATE OF CALIFORNIA
# BPT 1073 - NOTICE AND REQUEST FOR REASONABLE ACCOMMODATION

## PRE-INTERVIEW FILE REVIEW (STAFF ONLY)

Documents verifying/identifying disability: (Check all verifying documents and attach copies to 1073.)

☐ CDC 128C ☐ CDC 128C-1 ☐ CDC 128C-2 ☐ CDC 611 ☐ CDC 1845 ☐ CDC 1515 ☐ Current BPT 1073
☐ CDC 128B (TABE 4.0 or lower) Score/GPL _8.3_ ☐ Other documents _____ ☐ No verifying documents in file

☐ Accommodation is required for effective communication and/or access (enter type, i.e., sign language interpreter, staff assistance, assistive listening device, alternate accessible location, etc.):

## PRISONER/PAROLEE RIGHTS & SELF-IDENTIFICATION

The Americans with Disabilities Act (ADA) is a law to help people with disabilities. Disabilities are problems that make it harder for some people to see, hear, breathe, talk, walk, learn, think, work, or take care of themselves than it is for others. Nobody can be kept out of public places or activities because of a disability. If you have a disability, you have the right to ask for help to get ready for your BPT hearing, get to the hearing, talk, read forms and papers, and understand the hearing process. BPT will look at what you ask for to make sure that you have a disability, that is covered by the ADA, and that you have asked for the right kind of help. If you do not get help, or if you don't think you got the kind of help you need, ask for a BPT 1074 Grievance Form. You can also get help to fill it out.

☐ I **do not** have a disability. (Sign and date at the "X" below.)

☒ I **do** have a disability.

**My disability is:**

☐ Seeing    ☐ Talking    ☐ Reading ☐ Hearing    ☐ Walking
☐ Understanding/Learning    ☐ Mental Problems    ☒ Other _Alcohol- Not To be use in Any hearing_
_or decisions._

**I need help for my parole hearing:** (Check all boxes that apply to you)

☐ Reading    ☐ Understanding    ☐ Talking
☐ Hearing Device (type)_____    ☐ Wheelchair or _____
☐ Visual Aids/optical device (type)_____    ☐ Walking
☐ Sign language Interpreter (type)_____    ☐ Other _____
☐ Attorney    ☒ I do not need help for my parole hearing.

X _Alphonso R. Weir_         _C-02190_         X _12-7-04_
Prisoner/Parolee Signature         CDC #         Date Signed

## II. INITIAL SERVICE OF RIGHTS (STAFF ONLY)

I have informed prisoner/parolee of the above information, and any relevant charges, and have determined that he/she:    ☒ Appears to understand.    ☐ Appears to have difficulty understanding.
☐ Non—English Speaking (indicate language): _____

☐ EFFECTIVE COMMUNICATION METHOD USED: (Sign language interpreter, staff assistance, assistive device, alternate accessible location, etc.): _____
Comments: _____

_J. Studebaker CCI_         _(signature)_         _12-7-04_
Staff Name and Title (please print)         Staff Signature         Date

## IV. REVIEW INDICATING NO CHANGES

| TYPE OF HEARING | PRINT NAME AND WRITE INITIALS | TITLE | INSTITUTION/REGION | DATE |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

| NAME | CDC # | TYPE OF HEARING | DATE OF HEARING | LOCATION |
|---|---|---|---|---|
| _Weir_ | _C-02190_ | _Sub_ | _4/05_ | _CTF_ |

BPT 1073 (REV. 01/02)    Distribution: White-Central File, Yellow-BPT ADA/CH, Pink- Inmate, Goldenrod-Field File

*Belinda Hendrick*

# MULTI-PURPOSE FORM

TO: *Stugebroker*                 DATE: *April 6th, 2006*

      (Name)                        (Title)

```
RECEIVED
APR 19 2006
C.B.M. I
```

- ☐ MEDICAL CONCERN
- ☐ DENTAL CONCERN
- ☐ VISITING CONCERN
- ☐ REQUEST FOR INTERVIEW
- ☐ PACKAGE ROOM
- ☐ REQUEST FOR I.D. CARD
- ☐ REQUEST TO REVIEW CENTRAL FILE
- ☐ MAIL ROOM: Request for metered envelopes (No Funds)
- ☐ E.P.R.D.: You should be within six (6) months of release date to inquire

- ☐ TRUST ACCOUNT BALANCE  $ _____
- ☐ TRUST ACCOUNT WITHDRAWAL
- ☐ REQUEST FOR ROOM CHANGE
- ☐ REQUEST FOR UNIT CHANGE
- ☐ FAMILY HOUSING UNIT VISIT INTERVIEW
- ☐ REQUEST FOR CHAPLAIN INTERVIEW
- ☐ MEDICALLY CLEARED FOR CULINARY REQUEST

REASON FOR REQUEST (Be specific: Explain your problem): *I need information concerning AA - It has been long time without AA program - Need to know when it may start again. Need specific right on this issue.*

DATE: *4-19-06*        STAFF RESPONSE: *We are working on putting together a new and improved program. Please be patient. B. Hadick.*

INMATE NAME: *Wein*       INMATE NUMBER: *C-02190*    CELL: *N. 18. 57L*

ASSIGNMENT: _____    HOURS: _____    RDOs: _____

CTF 304 (Rev. 4/97)

David J. Spowart
Attorney at Law
71 Via Encina
Monterey CA  93940

March 17, 2006

Dear Mr. Weir;

Just a short note to tell you what happened after your hearing on Tuesday, March 13. As I was starting to leave the building both commissioners stopped me and tried to explain why they had not given you a date. Basically, they said they really wanted to give a date but believed that without any current AA it would be rejected upon review in Sacramento and /or by the Governor. The deputy commissioner especially claimed he wanted to vote for a date. Well, in my opinion, they should have voted for a date and let the review authorities make their own decisions. At least my objection certainly got their attention.

Enclosed is the letter from your wife postmarked the 11th of March. There was just no way I could have gotten it on time. It arrived in my mail on the 16th.

Dave Spowart

Documents verifying/identifying disability: (Check all verifying documents and attach copies to 1073.)

☐ CDC 128C ☐ CDC 128C-1 ☐ CDC 128C-2 ☐ CDC 611 ☐ CDC 1845 ☐ CDC 1515 ☐ Current BPT 1073

☐ CDC 128B (TABE 4.0 or lower) Score/GPL _813_ ☐ Other documents_____ ☒ No verifying documents in file

☐ Accommodation is required for effective communication and/or access (enter type, i.e., sign language interpreter, staff assistance, assistive listening device, alternate accessible location, etc.):

**II. PRISONER/PAROLEE RIGHTS & SELF-IDENTIFICATION**

The Americans with Disabilities Act (ADA) is a law to help people with disabilities. Disabilities are problems that make it harder for some people to see, hear, breathe, talk, walk, learn, think, work, or take care of themselves than it is for others. Nobody can be kept out of public places or activities because of a disability. If you have a disability, you have the right to ask for help to get ready for your BPT hearing, get to the hearing, talk, read forms and papers, and understand the hearing process. BPT will look at what you ask for to make sure that you have a disability, that is covered by the ADA, and that you have asked for the right kind of help. If you do not get help, or if you don't think you got the kind of help you need, ask for a BPT 1074 Grievance Form. You can also get help to fill it out.

☐ I **do not** have a disability. (Sign and date at the "X" below.)

☒ I **do** have a disability.

**My disability is:**

☐ Seeing ☐ Talking ☐ Reading ☐ Hearing ☐ Walking

☐ Understanding/Learning ☐ Mental Problems ☒ Other _Alcohol_

*Not to be used in any hearings or decisions.*

**I need help for my parole hearing:** (Check all boxes that apply to you)

☐ Reading ☐ Understanding ☐ Talking

☐ Hearing Device (type)_____ ☐ Wheelchair or _____

☐ Visual Aids/optical device (type)_____ ☐ Walking

☐ Sign language Interpreter (type)_____ ☐ Other _____

☐ Attorney ☐ I do not need help for my parole hearing.

X _Dana R. Weir_  C-02190  _X 2-24-03_
Prisoner/Parolee Signature   CDC #   Date Signed

**III. INITIAL SERVICE OF RIGHTS (STAFF ONLY)**

I have informed prisoner/parolee of the above information, and any relevant charges, and have determined that he/she: ☒ Appears to understand. ☐ Appears to have difficulty understanding.

☐ **Non—English Speaking** (indicate language): _____

☐ **EFFECTIVE COMMUNICATION METHOD USED:** (Sign language interpreter, staff assistance, assistive device, alternate accessible location, etc.): _____
Comments: _____

_J. Studebaker CCI_   _Studebaker_   _2-24-03_
Staff Name and Title (please print)   Staff Signature   Date

**IV. REVIEW INDICATING NO CHANGES**

| TYPE OF HEARING | PRINT NAME AND WRITE INITIALS | TITLE | INSTITUTION/REGION | DATE |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

NAME   CDC #   TYPE OF HEARING   DATE OF HEARING   LOCATION
_Weir, D_   _C02190_   _Sub_   _4/2/03_   _CTF_
BPT 1073 (REV. 01/02)   Distribution: White-Central File, Yellow-BPT ADACU, Pink- Inmate, Goldenrod-Field File
_4/6/04_

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or the prisoner has given indications that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress had built over a long period of time.

(5) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(6) Age. The prisoner's present age reduces the probability of recidivism.

(7) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(8) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

NOTE: Authority cited: Section 5076.2, Penal Code. Penal Code Reference: Section 3041, Penal Code.

### HISTORY

1. Amendment of subsection (c) filed 6–28–79; effective thirtieth day thereafter (Register 79, No. 26).

2. Amendment of subsection (d)(7) filed 5–1–80; effective thirtieth day thereafter (Register 80, No. 18).

### § 2282. Base Term.

(a) General. The panel shall set a base term for each life prisoner who is found suitable for parole. The base term shall be established solely on the gravity of the base offense, taking into account all of the circumstances of that crime. The base offense is the most serious of all life offenses for which the prisoner has been committed to prison.

The base term shall be established by utilizing the appropriate matrix of base terms provided in this section for the base offense of which the prisoner was convicted. The panel shall determine the category most closely related to the circumstances of the crime. The panel shall impose the middle base term reflected in the matrix unless the panel finds circumstances in aggravation or mitigation.

If the panel finds circumstances in aggravation or in mitigation as provided in § 2283 or 2284, the panel may impose the upper or lower base term provided in the matrix, stating the specific reason for imposing such a term. A base term other than the upper, middle or lower base term provided in the matrix may be imposed by the panel if justified by the particular facts of the individual case.

(b) Matrix of Base Terms for First Degree Murder.

**CIRCUMSTANCES**

| 2282(b)<br>FIRST DEGREE MURDER<br>Penal Code § 189 (in years and does not include past conviction credit as provided in § 2290) | A. Indirect<br>Victim died of causes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force; e.g., shock producing heart attack; a crime partner actually did the killing. | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g., victim initiated struggle or had goaded the prisoner. This does not include victims acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g., beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or actions calculated to induce terror in the victim. | D. Torture<br>Victim was subjected to the prolonged infliction of physical pain through the use of noncdeadly force prior to act resulting in death. |
|---|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred; e.g., crime partner, drug dealer, etc. | 8-10-12 | 10-12-14 | 11-13-15 | 13-15-17 |
| II. Prior Relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc.) which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense, see Category IV. | 10-12-14 | 12-14-16 | 13-15-17 | 15-17-19 |
| III. No Prior Relationship<br>Victim had little or no personal relationship with prisoner; or motivation for act resulting in death was related to the accomplishment of another crime; e.g., death of victim during robbery, rape, or other felony. | 11-13-15 | 13-15-17 | 14-16-18 | 16-18-20 |
| IV. Threat to Public Order or Murder for Hire<br>The act resulting in the victim's death constituted a threat to the public order include the murder of a police officer, prison guard, public official, fellow patient or prisoner, any killing within an institution, or any killing where the prisoner hired and/or paid another person to commit the offense. | 13-15-17 | 15-17-19 | 16-18-20 | 18-20-22 |

VICTIM

**SUGGESTED BASE TERM**



**LIFE PRISONER: PAROLE CONSIDERATION
PROPOSED DECISION (BPT §2041)**

I.  [  ]  PAROLE DENIED

If this proposed decision denying parole is approved, the Board will send you a copy of the approved decision, including the reasons for denial of parole, within 30 days of the hearing.

II.  [✗]  PAROLE GRANTED

A.  Base Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **156** Months

  SCR34989    01    MURDER 1ST
  Case No.    Count No.    Offense

B.  Firearm Enhancement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + **0** Months

C.  Other Crimes Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + **62** Months

  SCR34969    02    ROBBERY          12  mos.
  Case No.    Count No.    Offense

  SCR34969    04    GRAND THEFT      8  mos.
  Case No.    Count No.    Offense

  UNKNOWN     01    PRIOR PRISON TERM   36  mos.
  Case No.    Count No.    GRAND THEFT
            Offense

  PRIOR FELONY CONVICTION W/PROBATION   6

D.  Total Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = **218** Months

E.  Postconviction Credit From **3-1-79** To **4-7-02** – **88** Months
          (Date)          (Date)

F.  Total Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . = **130** Months

The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed pursuant to BPT §2041 and, if approved, a copy of the approved decision will be sent to you within 30 days. At that time appropriate pre-prison credits will be applied and a parole release date computed.

You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or postponement of your parole date.

III.  If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be scheduled for a new hearing, as appropriate.

**PANEL HEARING CASE**

| Name | | Date |
|---|---|---|
| | | 04 |
| Name N/A PER SB 777 | | Date |
| | | 17 |
| Name | | Date |
| | | 04 |

NAME
WEIR, DUANE

CDC NUMBER
C02190

INSTITUTION
CTF–SOLEDAD

HEARING DATE
APRIL 17, 2002

BPT 1005 (Rev. 8/1/81)

Distribution: White—C. File
Canary—BPT
Pink—Prisoner

Inmate WEIR, C-02190, has been patiently waiting to be on the Alcoholics Anonymous unlock for approximately six (6) months. During this time, he has continued to demonstrate a sincere desire to attend the meetings and a positive attitude regarding the lengthy waiting period. Due to the fact that we are limited in the number of inmates permitted to attend the meetings and the large number of White inmates on the waiting list, it takes approximately six to eight months for a White inmate to be placed on the unlock. This chrono is being issued at the request of this inmate's counselor. We are looking forward to placing Mr. Weir on the unlock within the month.

cc;  C-File
     A.S.P.S. File
     Counselor File  (Mr. French)
     Sponsor
     A. A. File
     Inmate

                                              M. GAINES
                                              Staff Sponsor/Correctional Officer

DATE 10 October 1985        "INFORMATIVE"        D.V.I.        GENERAL CHRONO

---

NAME and NUMBER        WEIR        C-02190        G-139        (W)        CDC-128-B (Rev. 4/74)

Inmate WEIR, C-02190, has been in regular attendance (after a lengthy waiting period on our waiting list) since October 23, 1985, here at Deuel Vocational Institution. He voluntarily participates during group discussions and always helps cleanup after meetings. Duane seems sincere in his attempts at solving his problems. He is to be commended for the above actions and is encouraged to continue his growth in the A. A. Program.

cc: C-file
    A.S.P.S. File
    Counselor File
    Sponsor
    A. A. File
    Inmate

                                              S. HERRERA
                                              Staff Sponsor/Correctional Officer

DATE  15 January 1986        "PROGRESS"        D.V.I.        GENERAL CHRONO

---

NAME and NUMBER  WIER        C-02190        G-139        CDC-128-B (Rev. 4/74)

INMATE W-ER, C-02190, has been in regular attendance here at the ALCOHOLICS ANONYMOUS meetings at DEUEL VOCATIONAL INSTITUTION since beeing placed on the unlock list on October 23, 1985. During this period he has demonstrated a sincere desire to solve his problems by participating during group discussions and helping with the cleanup after meetings as well as volunteering for special events. He is encouraged to continue his growth in the program.

CC:  C-FILE
     A.S.P.S. FILE
     COUNSELOR FILE
     SPONSOR
     A. FILE
     INMATE

                                              M. BOTTO
                                              STAFF SPONSOR/CORRECTIONAL OFFICE

DATE MAY 14, 1986        "PROGRESS"        D.V.I.        GENERAL CHRONO

ME and NUMBER WEIR, ROY    C-2190    X-218    CDC-128-B (Rev. 4/74)

nate WEIR, C-02190, has been attending the weekly A.A. meetings since 10/23/85.
IR participates in the groups discussion and has shown an interest in working
th some of the special D.V.I.-A.A. programs. WEIR appears to have a sincere
sire in solving some of his past problems.

```
:   C-FILE
    A.S.P.S. FILE
    COUNSELOR FILE
    SPONSOR                        /s/  [signature]
    A.A. FILE                      S. SEARCY
    INMATE                         STAFF SPONSOR
                                   CORRECTIONAL OFFICER
```

ATE   SEPTEMBER 3, 1986    "PROGRESS"    D.V.I.    GENERAL CHRONO

---

AME and NUMBER    DUANE, R. WEIR    C# 02190    1-69A    CDC-128-B (Rev. 4/74)

INMATE WEIR HAS BEEN ATTENDING THE ROADSIDERS ALCOHOLICS ANONYMOUS MEETING SINCE HIS ARRIVEL
ON 1-16-87. MR. WEIR HAS ALSO BEEN ATTENDING ALL BIG BOOK/ & TWELVE STEP STUDY GROUPS. INMATE
WEIR GETS ALONG WELL WITH OTHERS AND IS NO CUSTODY PROBLEM.

```
cc: C- FILE
    DORM- FILE
    INMATE               [signature]            [signature]
    A.A. SPONSOR    MR. Q. QUIGLEY/A.A. SPONSOR    ROBERT WADDELL/SECRETARY of A.A.
```

---

ATE   FEB. 9, 1987    GENERAL CHRONO

AME and NUMBER:  WEIR, DUANE    C-02190    2-50A    CDC-128-B (Rev. 4/74)

Mr. Weir has been an active member of the Roadsider's A.A. Fellowship, at
California Correctional Institution (C.C.I.) Tehachapi, Ca., since his arrival
on January 21, 1983. Mr. Weir is an active participant in the Big Book and 12x
12 study groups. He is also a member of the Steering Committee.

Mr. Weir, over a ten year period, has been an active member of A.A. groups
in several other institutions. Mr. Weir appears to be utilizing this self-help
group, as a means to better himself, so that he may return to society as a prod-
uctive and useful member of his community.

```
Orig: C-File       [signature]
  cc: Roadsider    Ron Kidd  (C-60037)        Mr. Q. Quigley
      File         Secretary, Roadsider's A.A.    Roadsider's Admin. Sponsor
      Inmate       Fellowship
```

ATE :  4-13-88    (INFORMATION CHRONO)    GENERAL CHRONO

CDC-128-B (Rev. 4/74)

On November, 1988, CTF-North Facilities Alcoholics Anonymous lost their sponsers due to transfers and could not continue their meetings. On March 23, 1989, CTF-North Facilities Alcoholics Anonymous received a new sponser and the meetings were resumed. Therefore, no chronos were issued for this period.

A. Pugnier
A.A. Sponser
CTF-North Facility

Orig: C-File
    cc: Inmate

DATE April 10, 1989  (INFORMATIVE CHRONO)

CTF-N.

GENERAL CHRONO

---

NAME and NUMBER    WEIR, C-02190              LB-330

CDC-128-B (Rev. 4/74)

Subject has attended the Alcoholics Anonymous meetings at CTF-North Facility on a regular basis for the quarter ending July 20, 1989.

A. Pugnier
A.A. Sponsor
CTF-North Facility

Orig: C-File
    cc: Inmate

CTF-N.
DATE July 27, 1989  (INFORMATIVE CHRONO/A.A. ATTENDANCE)      GENERAL CHRONO

---

NAME and NUMBER  WEIR, C-02190         LB-330

CDC-128-B (Rev. 4/74)

Through Alcoholics Anonymous, subject has sought self help by communicating with others who share a common problem.

Subject has regularly attended Alcoholics Anonymous throughout the quarter ending on October 20, 1989.

A. Pugnier
A.A. Sponsor
CTF-North Facility

Orig: C-File
    cc: Inmate

TE   October 24, 1989 (INFORMATIVE CHRONO/A.A. ATTENDANCE)   GENERAL CHRONO
TFN.

Through Alcoholics Anonymous, subject has sought self help by communicating with others who share a common problem.

Subject has regularly attended Alcoholics Anonymous throughout the quarter ending on January 20, 1990.

A. Pugnier
A.A. Sponsor
CTF-North Facility

Orig: C-File
cc: Inmate

DATE February 5, 1990 (INFORMATIVE CHRONO/A.A. ATTENDANCE) GENERAL CHRONO
CTF N.

---

NAME and NUMBER  WEIR, C-02190  ND-064

CDC-128-B (Rev. 4/74)

Through Alcoholics Anonymous, subject has sought self help by communicating with others who share a common problem.

Subject has regularly attended Alcoholics Anonymous throughout the quarter ending on April 19, 1990.

A. Pugnier
A.A. Sponsor
CTF-North Facility

Orig: C-File
cc: Inmate

DATE April 19, 1990 (INFORMATIVE CHRONO/A.A. ATTENDANCE) GENERAL CHRONO
CTF N.

---

NAME and NUMBER WEIR, C-02190  HOUSING-ND-064.

CDC-128-B (Rev. 4/74)

## LAUDATORY CHRONO / ALCOHOLICS ANONYMOUS

Subject has regularly attended Alcoholics Anonymous meeting at C.T.F. North facility throughout the quarter ending July 19, 1990. Alcoholics Anonymous encourages the expression of emotion and understanding concerning alcoholism and its related problems. Its members attempt to combat alcoholism, either actively, by voicing their thoughts and feelings, or passively, by listening to what others have to say. The group is structured and serious; that is, the primary objective of A.A. is sobriety.

Subject is to be commended for his participation in Alcoholics Anonymous. A.A. and N.A are, at this time, the cheif solutions to the the problem of substance abuse inside and outside of nstitutional settings.

Ramona Kilgore 4/

DATE 07-20-90
Alan Pugnier / A.A. Sponsor
C.T.F. North Facility

GENERAL CHRONO

Mr. Weir has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending September 1990 He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:  Central File
     CC:  Inmate

Allen J. Pugnier
Computer Coordinator
Sponsor, North Facility A.A. Group

DATE:   15 October, 1990        LAUDATORY              GENERAL CHRONO
F.N.

---

NAME and NUMBER                                                CDC-128-B (Rev. 4/74)
              WEIR, D R            C02190            ND064

Mr. WEIR is a current member of the Alcoholics Anonymous program here at the Correctional Training Facility--North.  Mr. WEIR has been a member of the group for the quarter ending December 1990 and has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:  Central File
     CC:  Inmate

Allen J. Pugnier
Computer Coordinator
Sponsor, North Facility A.A. Group

DATE
     19 December, 1990             LAUDATORY          GENERAL CHRONO

---

NAME and NUMBER      WEIR, D. R.        C-02190      ND-064   CDC-128-B (Rev. 4/74)

Mr. Weir has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending March 1991 He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:  Central File
     CC:  Inmate

Allen J. Pugnier
Computer Coordinator
Sponsor, North Facility A.A. Group

DATE:  15 May, 1991        LAUDATORY                GENERAL CHRONO

program at the Correctional Training Facility--North for the quarter ending December 1991. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL: CENTRAL FILE
    cc: Inmate

Larry Ronneberg
Sponsor, North Facility A.A. Group

DATE        DECEMBER 31, 1991        (LAUDATORY)        GENERAL CHRONO

F.N.

NAME and NUMBER        WEIR, C02190        RB307        CDC-128-B (Rev. 4/74)

---

MR. WEIR has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending March 1992 He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL: CENTRAL FILE
    cc: Inmate

Larry Ronneberg
Sponsor, North Facility A.A. Group

DATE        March 31, 1992        (LAUDATORY)        GENERAL CHRONO

F.N.

NAME and NUMBER        WIER    C-02190    RB-307        CDC-128-B (Rev. 4/74)

---

Inmate Wier, C-02190, RB-307, became an active member of Narcotics Anonymous here at North Facility on 01/01/92 through 03/31/92. Narcotics Anonymous is a self-help program, and I hope that he continues to participate in this program in the future.

Original: Central File
    CC: Inmate

P.T. Nielsen
N. Anonymous Sponser
CTF-North Facility

DATE 04/13/92    (INFORMATIONAL: SELF-HELP-N. ANONYMOUS)    CTF-N        GENERAL CHRONO

MR. WEIR has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending June 1991 He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:  CENTRAL FILE
    cc:  Inmate

Larry Ronneberg
Sponsor, North Facility A.A. Group

DATE:     May 30, 1991    (LAUDATORY)    GENERAL CHRONO

NAME and NUMBER   WEIR    C02190   ND064

CDC-128-B (Rev. 4/74)

Mr. WEIR has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending September 30, 1991 .
He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous enviornment.

Larry Rosenberg
Sponsor, North Facility
AA Group

ORIGINAL : CENTRAL FILE
    CC : INMATE

DATE   October 1, 1991   ( LAUDATORY )   GENERAL CHRONO
CTF :N.

NAME and NUMBER  WEIR, C02190    DO 007L   CDC-128-B (Rev. 4/74)

Mr. WEIR has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending June 1992 He has shown the ability to relate with the group and to improve himself through involvement with it.  His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:  Central File
    CC:  Inmate

Larry Ronneberg
Sponsor, North Facility A.A. Group

ATE

June 30. 1992    I.AUDATORY    GENERAL CHRONO

program at the Correctional Training Facility--North for the quarter ending December 1991. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL: CENTRAL FILE
   cc: Inmate

Larry Ronneberg
Sponsor, North Facility A.A. Group

DATE     DECEMBER 31, 1991     (LAUDATORY)     GENERAL CHRONO

FN'

NAME and NUMBER     WEIR, C02190     RB307     CDC-128-B (Rev. 4/74)

---

MR. WEIR has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending March 1992 He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL: CENTRAL FILE
   cc: Inmate

Larry Ronneberg
Sponsor, North Facility A.A. Group

DATE     March 31, 1992     (LAUDATORY)     GENERAL CHRONO

FN'

NAME and NUMBER     WIER     C-02190     RB-307     CDC-128-B (Rev. 4/74)

---

Inmate Wier, C-02190, RB-307, became an active member of Narcotics Anonymous here at North Facility on 01/01/92 through 03/31/92. Narcotics Anonymous is a self-help program, and I hope that he continues to participate in this program in the future.

Original: Central File
   CC: Inmate

P.T. Nielsen
N. Anonymous Sponser
CTF-North Facility

DATE 04/13/92     (INFORMATIONAL: SELF-HELP-N. ANONYMOUS)   CTF-N     GENERAL CHRONO

Mr. WEIR D.R. has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending September 1992 He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:  Central File
   CC:  Inmate

Larry Ronneberg
Sponsor, North Facility A.A. Group

DATE     September 30, 1992     LAUDATORY               GENERAL CHRONO

NAME and NUMBER    WEIR , C02190              DO07L           CDC-128-B (Rev. 4/74)

Mr. Weir   has been a member of the Alcoholics Anonymous program at the Correctional Training Facility--North for the quarter ending September 1993. He has shown the ability to relate with the group and to improve himself through involvement with it.   His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:  Central File
   CC:  Inmate ✓

Marty DoLove
Sponsor, North Facility A.A. Group

DATE     September 30, 1993     LAUDATORY               GENERAL CHRONO

NAME and NUMBER   WEIR , C02190              DO07L           CDC-128-B (Rev. 4/7..

Mr. WEIR  is a member of the Alcoholics Anonymous program at the Correctional Training Facility--North.   The AA Program was discontinued in December of 1992 due to Lock Downs, Fog Counts and to Mission change at CTF.   The AA Program was resumed in June of 1993.   Mr. WEIR  has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:  Central File
   CC:  Inmate

Marty DoLove
Sponsor, North Facility A.A. Group

DATE     June 30, 1993          LAUDATORY               GENERAL CHRONO

Mr. Weir has been a member of the Alcoholics Anonymous program at the Correctional Training Facility—North for the quarter ending December 1993. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous environment.

ORIGINAL:   Central File
    CC:   Inmate ✓
          Sponsor

*Madge Casacca*
Madge Casacca
Sponsor, North A.A. Group

ATE        December 30, 1993        LAUDATORY                GENERAL CHRONO

NAME and NUMBER   WEIR,        C02190                ND-07

CDC-128-B (Rev. 4/74)

MR. WEIR HAS BEEN A MEMBER OF THE ALCOHOLICS ANONYMOUS PROGRAM AT THE CORRECTIONAL TRAINING FACILITY—NORTH FOR THE QUARTER ENDING SEPTEMBER 1994. HE HAS SHOWN THE ABILITY TO RELATE WITH THE GROUP AND TO IMPROVE HIMSELF THROUGH INVOLVEMENT WITH IT. HIS PARTICIPATION IN THIS PROGRAM HAS DEMONSTRATED A WILLINGNESS TO COOPERATE IN THE SMOOTH ATMOSPHERE OF THE ALCOHOLICS ANONYMOUS ENVIRONMENT.

ORIGINAL:   CENTRAL FILE
    CC:   INMATE
          SPONSOR

*Madge Casacca*
MADGE CASACCA
SPONSOR, NORTH A.A. GROUP

SEPTEMBER 30,1994

ATE                        LAUDATORY                        GENERAL CHRONO

NAME and NUMBER   WEIR,        C02190                ND-07

CDC-128-B (Rev. 4/74)

MR. WEIR HAS BEEN A MEMBER OF THE ALCOHOLICS ANONYMOUS PROGRAM AT THE CORRECTIONAL TRAINING FACILITY—NORTH FOR THE QUARTER ENDING DECEMBER 1994. HE HAS SHOWN THE ABILITY TO RELATE WITH THE GROUP AND TO IMPROVE HIMSELF THROUGH INVOLVEMENT WITH IT. HIS PARTICIPATION IN THIS PROGRAM HAS DEMONSTRATED A WILLINGNESS TO COOPERATE IN THE SMOOTH ATMOSPHERE OF THE ALCOHOLICS ANONYMOUS ENVIRONMENT.

ORIGINAL:   CENTRAL FILE
    CC:   INMATE
          SPONSOR

*Madge Casacca*
MADGE CASACCA
SPONSOR, NORTH A.A. GROUP

DATE   DECEMBER 31,1994        LAUDATORY

GENERAL CHRONO

Mr. Weir has been a member of the Alcoholics Anonymous Program at the Correctional Training Facility--North for the Quarter ending March 1995. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous Environment.

Original: Central File
    CC: Inmate
        Sponsor

*Madge Casacca*
Madge Casacca
Sponser, North A.A. Group

TE   March 31, 1995          Laudatory                    GENERAL CHRONO

NAME and NUMBER   Weir        C02191        ND7                 CDC-128-B (Rev. 4/

Mr. Weir has been a member of the Alcoholics Anonymous Program at the Correctional Training Facility-North for the Quarter ending September 1996. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Alcoholics Anonymous Environment.

Original : Central File
    CC : Inmate
        Sponsor

*Madge Casacca*
Madge Casacca
Sponsor, North A.A.Group

DATE   November 18, 1996    Laudatory                    GENERAL CHRONO

NAME and NUMBER   WEIR        C-02191       ND-07      CDC-128-B  (Rev. 4/74)

MR. WEIR HAS BEEN A MEMBER OF THE ALCOHOLICS ANONYMOUS PROGRAM AT THE CORRECTIONAL TRAINING FACILITY-NORTH FOR THE QUARTER ENDING MARCH 1997. HE HAS SHOWN THE ABILITY TO RELATE WITH THE GROUP AND IMPROVE HIMSELF THROUGH INVOLVEMENT WITH IT. HIS PARTICIPATION IN THIS PROGRAM HAS DEMONSTRATED A WILLINGNESS TO COOPERATE IN THE SMOOTH ATMOSPHERE OF THE ALCOHOLICS ANONYMOUS ENVVIRONMENT.

ORIGINAL: CENTRAL FILE
    CC: INMATE
        SPONSOR

*Madge Casacca*
MADGE CASACCA
SPONSOR, NORTH-A.A. GROUP

                                             GENERAL CHRONO

DATE:

    JUNE 16,1997        LAUDATORY

MR. WEIR HAS BEEN A MEMBER OF THE ALCOHOLICS ANONYMOUS PROGRAM
AT THE CORRECTIONAL TRAINING FACILITY-NORTH FOR THE QUARTER
ENDING MARCH 1997. HE HAS SHOWN THE ABILITY TO RELATE WITH THE
GROUP AND TO IMPROVE HIMSELF THROUGH HIS INVOLVEMENT WITH IT.
HIS PARTICIPATION IN THIS PROGRAM HAS DEMONSTRATED A
WILLINGNESS TO COOPERATE IN THE SMOOTH ATMOSPHERE OF THE
ALCOHOLICS ANONYMOUS ENVIRONMENT.

ORIGINAL: CENTRAL FILE
    CC: INMATE
        SPONSOR

*Madge Casacca*
MADGE CASACCA
SPONSOR, NORTH-A.A. GROUP

DATE: JUNE 19-1997      LAUDATORY

GENERAL CHRONO

---

**NAME and NUMBER**    WEIR    C-02190    RA-306/L    CDC-128-B

Mr. Weir has been a member of the Alcoholics Anonymous Program at the Correctional
Training Facility-North for the Quarter ending September 1998.. He has shown the
ability to relate with the group and to improve himself through involvement with it. His
participation in this program has demonstrated a willingness to cooperate in the smooth
atmosphere of the Alcoholics Anonymous environment.

Original: Central file
    CC: Inmate
        Sponsor

*M. Casacca*
M. Casacca
Sponsor, North A.A.

**DATE** September 30, 1998      LAUDATORY      **GENERAL CHRONO**

---

**NAME and NUMBER**    WEIR    C-02190    RA-306    CDC-128-B

Mr. Weir has been a member of the Alcoholics Anonymous Program at the Correctional
Training Facility-North for the Quarter ending September 1998. He has shown the ability
to relate with the group and to improve himself through involvement with it. His
participation in this program has demonstrated a willingness to cooperate in the smooth
atmosphere of the Alcoholics Anonymous environment.

Original: Central file
    CC: Inmate
        Sponsor

*M. Casacca*
M. Casacca
Sponsor, North A.A.

**DATE** October 1, 1998      LAUDATORY

GENERAL CHRONO

Mr. WEIR is a current member of Alcoholics Anonymous, at the Correctional Training Facility-North, for the Qua ending September 1999. He has shown the ability to relate with the group and to improve himself through involve with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere o AA environment.


ORIGINAL:    Central File
    CC.:    Inmate
    Sponsor

Madge Casacca, Sponsor
Alcoholics Anonymous Program
CTF-North


DATE : September 27, 1999                    LAUDATORY                    GENERAL  CHRON

**M e m o r a n d u m**

9/29/86.

Date : 12 February 1987

To : CC 1 J. GARZA, CC1 DORMS 06/07, UNIT I

From    A.A. / N.A. SELF HELP GROUP
California Rehabilitation Center, Norco, Ca. 91760

Subject: MEETING ATTENDED BY INMATE D. WEIR, C-02190 AT C.R.C. NORCO

The Self Help Group files of A.A. AND N.A. here at C.R.C. indicate that Inmate Weir, C-02190 attended the below listed meetings while here at C.R.C.

A.A. = 10-14-86, 10-21-86, 10-28-86, 11-4-86, 11-11-86, 11-18-86, 11-25-86, 12-2-86, 12-9-86, and 12-16-86. Total of Ten (10) meetings.

N.A. = 10-27-86, 11-3-86, 11-10-86, 11-17-86, 11-24-86, 12-1-86, 12-8-86, and 12-29-86. TOTAL of Eight (8) meetings.

Respectfuly,

Dean L. Hancock, D-18907, 0772
A.A. SELF HELP GROUP CHAIRMAN

L. EASON, SC 1 ex. 4326
A.A./N.A. SPONSOR

dlh/LE

GA-47-2

(1)

EDMUND G. BROWN JR.
Attorney General

State of California
DEPARTMENT OF JUSTICE



300 SOUTH SPRING STREET, SUITE 1702
LOS ANGELES, CA 90013

Public:  (213) 897-2000
Telephone:  (213) 897-5689
Facsimile:  (213) 897-2263
E-Mail:  Jennifer.Dolan@doj.ca.gov
FedEx Tracking No.:  859996767770

March 22, 2007

The Honorable Judge Bob N. Krug
San Bernardino District - Central Court
Superior Court of California
351 North Arrowhead Avenue
San Bernardino, CA 92415-0240

RE:    In re: Duane R. Weir
        Superior Court of California, County of San Bernardino, Case No. SWHSS-9118

Dear Judge Krug:

This letter responds to the Court's January 22, 2007 request for an informal response to the petition for writ of habeas corpus filed by petitioner, Duane Weir.

Petitioner is lawfully in the custody of the California Department of Corrections and Rehabilitation (CDCR) based on a jury verdict finding petitioner guilty of first degree murder, robbery and grand theft with an enhancement for the use of a firearm. (Exh. 1, Judgment - Commitment.) On February 23, 1979, the trial court sentenced petitioner to an indeterminate life sentence for his role in the March 2, 1978 murder of Samuel Lowrey. (Exh. 1; Exh. 2, Probation Officer's Report.)[1] Mr. Lowrey was an        year old man, shot in the abdomen and chest in the middle of the night while in the yard of his home. (Exh. 2, p. 2.) He died a month later, on April 25, 1978, as a result of a subphrenic abscess from the gunshot wounds to his diaphragm, stomach and spleen. (*Ibid.*)

On March 13, 2006, the Board of Parole Hearings (Board) found petitioner unsuitable for early release on parole. (Exh. 4, Parole Consideration Hearing Transcript.) Petitioner's

---

[1] Petitioner's life term began on March 1, 1979 and his minimum eligible parole date was March 10, 1985. (Exh. 3, Life Prisoner Hearing Decision.)

The Honorable Judge Bob N. Krug
March 22, 2007
Page 2

dissatisfaction with this determination is the subject of his habeas petition before this Court. Petitioner claims that the parole consideration hearing violated his due process rights because the decision was arbitrary and capricious, unsupported by some evidence. (Petn., p. 1.) He further claims that the Board's consideration of his failure to participate in self-help in recent years, and his serious alcohol addiction prior to his incarceration were unlawful because such considerations are not specifically enumerated in the Penal Code and are found instead in the California Code of Regulations governing parole suitability. (Petn., pp. 13, 23.) These claims are without merit and the petition should be denied.

## I.    The Board's Decision To Deny Petitioner Parole Is Supported By Some Evidence And Thus, Petitioner Was Afforded The Process He Was Due.

When considering parole for an inmate sentenced to an indeterminate life term, the Board must first determine parole suitability. Suitability is based on considerations of "[a]ll relevant, reliable information available," including the circumstances of the inmate's social history, past and present mental state, past criminal history, the commitment offense, the inmate's attitude toward the crime, and any other information deemed relevant to suitability. (Cal. Code Regs., tit. 15, § 2402, subd. (b).) The Board evaluates an inmate's parole suitability subject to the requirement that, "[r]egardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." (See *In re Dannenberg* (2005) 34 Cal.4th 1061, 1079-1080, citing Cal. Code Regs., tit. 15, § 2402, subd. (a).)

Because of the deference afforded to the Board in parole matters, a court's review of a parole decision is limited. (*In re Dannenberg, supra,* 34 Cal.4th at p.1071; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 676-677, 679.) When reviewing the factual basis of a parole suitability decision for compliance with due process the court must uphold the Board's decision to deny parole if the decision is supported by some evidence in the record. (*Rosenkrantz*, at p. 658; see also *Dannenberg*, at p. 1084.) "Only a modicum of evidence is required." (*Rosenkrantz*, at p. 677.) "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether *any* evidence in the record could support the conclusion reached by the [Board]." (*Id.* at p. 665.)

A court may not vacate a parole decision simply because it disagrees with the parole authority's assessment. (*In re Rosenkrantz, supra,* 29 Cal.4th at p. 679.) "It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole." (*Id.* at p. 677.) Rather, to be overturned, the parole authority's decision must be "devoid of a factual basis." (*Id.* at p. 658.)

Here, there is more than the required modicum of evidence to support the Board's finding that petitioner, if released, would pose an unreasonable threat to public safety and is therefore,

The Honorable Judge Bob N. Krug
March 22, 2007
Page 3

not suitable for early release on parole at this time. The Board's finding was based upon several considerations, including: (1) the nature of the commitment offense; (2) petitioner's extensive criminal history; (3) petitioner's recent failure to attend self-help programming, and; (4) opposition to petitioner's parole expressed by the Sheriff's Department and the District Attorney's Office. (Exh. 4, p. 62-65.)

### A.    The Nature Of Petitioner's Commitment Offense Supports The Board's Decision To Deny Parole.

The California Supreme Court has held that the gravity of a commitment offense *alone* may justify denial of parole if the offense is "particularly egregious," involving more than the minimum necessary acts to sustain a conviction. (*In re Dannenberg, supra,* 34 Cal.4th at pp. 1094-1095; *In re Rosenkrantz, supra,* 29 Cal.4th at p. 683.) It is not necessary in this case, however, to determine if petitioner's crime was "particularly egregious" because the Board did not base its finding of unsuitability solely on the commitment offense.

The California Code of Regulations also provides that the nature of the commitment offense is a circumstance tending to show an inmate is unsuitable for release on parole. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1).) The Board considered the nature of petitioner's commitment offense and found that the murder was carried out in a cruel manner in that Mr. Lowrey, a vulnerable eighty-year old man, was shot in the commission of a robbery for monetary gain. (Exh. 4, pp. 61-62.) Mr. Lowrey was a neighbor of petitioner's brother and was living in his truck on his property after his home was destroyed in a fire. (Exh. 4, p. 11.) In addition, from his hospital bed, Mr. Lowrey identified petitioner and his brother as the men that shot him. (*Ibid.*)

The Board's finding that petitioner's commitment offense was carried out in a cruel manner and indicates unsuitability for parole is supported by some evidence in the record.

### B.    Petitioner's Prior Criminality Supports the Board's Decision To Deny Parole.

The Board also considered petitioner's significant prior criminal history in determining that petitioner is not yet suitable for early release on parole. Noting that petitioner has previously been on juvenile probation, adult probation, parole, and spent time in both county jail and state prison, the Board stated that petitioner has "failed to profit from society's previous attempts to correct his criminality." (Exh. 4, p. 62.) Petitioner has been arrested thirty-four times. (Exh. 4, p. 14.) Not all of these arrests have led to convictions, but according to the Probation Officer's Report at the time of sentencing, petitioner was convicted eleven times between May 1967 and February 1974. (Exh. 3, p. 6.) In addition, petitioner admits to prior probation and parole violations. (Petn., Exh. 8.)

Because the Board is required to consider "all relevant and reliable" information related to parole suitability, the Board's consideration of petitioner's extensive criminal history was

The Honorable Judge Bob N. Krug
March 22, 2007
Page 4

proper. (Cal. Code Regs., tit. 15, § 2402, subd. (b).) The fact that petitioner has had the opportunity to correct his criminal behavior in the past and failed to do so provides some evidence to support the Board's decision that he is unsuitable for parole.

### C.   Petitioner's Lack Of Participation In Self-Help Programming Since 1999 Supports The Board's Decision To Deny Parole.

The Board also considered petitioner's failure to participate in any self-help programming for approximately seven years, since 1999. (Exh. 4, pp. 62, 65-66.) In 2002, petitioner was granted a parole date by the Board which was overturned by the Governor because of his lack of participation in self-help programming. (Exh. 4, p. 66.) Petitioner was also made aware of the impact of his lack of participation in self-help programming during the 2005 parole consideration hearing. (*Ibid.*) Despite the knowledge that his failure to participate in self-help programming was preventing him from being granted parole, petitioner has not become involved in any programs, or reported any self-study and self-reflection. (*Ibid.*) Petitioner told the Board that there are "no self-help programs for an individual" and then later stated that the self-help programs offered conflicted with his work. (Exh. 4, p. 39:13-14, 21-27.) The Board found "that the inmate's lack of meaningful self-help programming does not demonstrate to the panel that [petitioner will] have the necessary tools to maintain [his] gains outside of a controlled setting." (Exh. 4, p. 65.)

Petitioner's failure to participate in any self-help, either as part of a program or through self-study, supports the Board's finding that petitioner is not yet suitable for early release on parole.

### D.   Opposition to Parole By The San Bernardino District Attorney's Office Supports The Board's Decision To Deny Parole.

The Board properly considered the San Bernardino County District Attorney's opposition to petitioner's parole to determine that petitioner is not yet suitable for parole. The Board is to consider "all relevant, reliable information" including the opinion of the agency that prosecuted the inmate. (Cal. Code Regs., tit. 15 § 2402, subd. (b).) Section 2030 of the California Code of Regulations details the role of the District Attorney's Office during a parole consideration hearing. "The role of the prosecutor is to comment on the facts of the case and present an opinion about the appropriate disposition." (Cal. Code Regs., tit. 15 § 2030, subd. (c)(2).)

In accordance with the regulations, Deputy District Attorney Harold Wilson spoke to the Board on behalf of the San Bernardino County District Attorney's Office. District Attorney Wilson pointed out that petitioner began his parole consideration hearing by minimizing his role in the murder itself, characterizing his situation as "taking the rap" for his brother. (Exh. 4, p. 51.) According to the District Attorney, this is evidence that petitioner still has not "earned" parole. (*Ibid.*) District Attorney Wilson also pointed out the facts that made Mr. Lowrey particularly vulnerable, including his age and the fact that petitioner was armed. (*Id.*, p. 52.) In

The Honorable Judge Bob N. Krug
March 22, 2007
Page 5

addition, the District Attorney discussed facts of the crime that make it particularly disturbing, such as, the fact that petitioner made the victim, already shot twice in the abdomen, remove his pants and get under his truck. (*Ibid.*) Finally, the District Attorney referred to petitioner's lack of self-help despite "a specific directive by prior Boards to attend self-help, AA, anger-management" and explained that what petitioner has done instead is "thumbed his nose at the Board." (*Id.* at p. 53.) This was a particular concern for the District Attorney because if petitioner could not comply with a directive in a controlled setting, it is unclear how he might respond if released. (*Ibid.*)

In accordance with the California Code of Regulations, the Board heard the prosecutor's opinion on the disposition, thus, the Board's consideration of those opinions is proper. Further, opposition to parole by the San Bernardino County District Attorney's Office supports the Board's decision that petitioner is not yet suitable for parole.[2]

## II.    Use Of The Circumstances Of The Commitment Offense To Support Parole Denial Is Not A Per Se Due Process Violation.

Petitioner contends that the Board's decision is improper because it is based on the unchanging circumstances of his commitment offense, (Petn., pp. 12-19), however, as discussed *supra* in Section I, the Board did not rely solely on the commitment offense to deny parole. (Exh. 4, pp. 90-94.) Moreover, even if the Board had relied solely on the circumstances of the commitment offense to deny parole, Petitioner's claim would still be without merit.

The Legislature has mandated that the commitment offense is the primary suitability consideration and that "[t]he panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses...is such that consideration of public safety requires a more lengthy period of incarceration." (Pen. Code, § 3041, subd. (b).) Indeed, the *only* parole suitability circumstances specifically identified by the Legislature are the timing or gravity of past or present offenses, the number of victims and other circumstances in mitigation or aggravation of the commitment offense. (Pen. Code, § 3041, subd. (a)-(b).) The applicable regulations that govern parole suitability likewise provide that a prisoner will be denied parole if he "will pose an unreasonable risk of danger to society if released from prison." (Cal. Code Regs., tit. 15, § 2402, subd. (a).) As past behavior is a reliable predictor of future behavior, the Board may therefore rely heavily, and even exclusively, upon the inmate's commitment offense and criminal history in determining parole suitability. (*Rosenkrantz, supra,* 29 Cal.4th at p. 683; *Dannenberg, supra,* 34 Cal.4th at p. 1071; *In re Seabock* (1983) 140 Cal.App.3d 29, 36-37.)

---

[2]The San Bernardino Sheriff's Department also responded to the 3042 Notice and opposed parole. The Board did consider this opposition, but did not detail the contents of the opposition on the record. (Exh. 4, p. 65.)

The Honorable Judge Bob N. Krug
March 22, 2007
Page 6

   *Dannenberg* established that as long as the decision to deny parole is based on "pertinent criteria" and supported by some evidence, "an inmate whose offense was so serious as to warrant, at the outset, a maximum term of life in prison, may be denied parole during whatever time the Board deems required for 'this individual' by 'consideration of the public safety.'" (*Dannenberg*, *supra*, 34 Cal.4th at p. 1084, quoting Pen. Code § 3041, subd. (b).) The only limitation to a denial of parole based on the commitment offense alone is that the parole authority "must point to circumstances beyond the minimum elements of the crime for which the inmate was committed." (*Id.* at p. 1071.)

## III.    The Board Did Not Violate Penal Code Section 5011 Because It Did Not Require That Petitioner Admit His Guilt In The Commitment Offense.

   Petitioner claims that the Board violated Section 5011 of the Penal Code in making its decision. (Petn., p. 13.) Section 5011(b) provides, "The Board of Prison Terms shall not require, when setting parole dates, an admission of guilt to any crime for which an inmate was committed." Petitioner alleges a violation, and yet never points to any part of the hearing transcript where the Board required that he admit guilt before it will grant a parole date. He cannot point to a particular part of the transcript during which he was required to admit guilt because the Board never made such a request. There was a brief exchange early in the hearing where the current panel discussed petitioner's prior hearings during which he denied involvement in the shooting and the Board read a declaration from petitioner's brother claiming responsibility for the murder and robbery. (Exh. 4, p. 8-13.) In fact, without being required to do so, petitioner's attorney, on petitioner's behalf, admitted petitioner's guilt. (Exh. 4, p. 13.)

   There was no violation of Section 5011. The Board gave several reasons for its finding that petitioner is not yet suitable for early release on parole. None of those reasons revolved around whether petitioner admitted guilt for the crime. The District Attorney did state that he believed the petitioner continued to minimize his role in the murder and robbery. (Exh. 4, p. 51.) In addition, the Board recommended that petitioner continue to seek self-help because he failed to demonstrate to the panel that he can maintain the gains he has made while incarcerated if released. (Exh. 4, p. 65.) The decision does not state anywhere that the need for additional self-help is to get petitioner to admit guilt or take responsibility for his crimes. As such, petitioner's claim that the Board violated Section 5011 is without merit.

## IV.    The Board Has The Authority Under The Penal Code To Create Regulations Regarding The Determination Of Parole Suitability; Section 3041 Does Not Provide The Complete List Of Considerations For Such A Determination.

   Petitioner further alleges that the Board cannot adopt its own rules and regulations to guide parole suitability determinations beyond the specific circumstances enumerated in Penal

The Honorable Judge Bob N. Krug
March 22, 2007
Page 7

Code section 3041. (Petn., p. 20.) However, Penal Code section 3040 provides in pertinent part, "The Board of Prison Terms shall have the power to allow prisoners imprisoned in the state prisons. . . to go upon parole outside the prison walls and enclosures." (Penal Code § 3040.) Further, Penal Code section 3052 empowers the Board to "establish and enforce rules and regulations under which prisoners committed to state prisons may be allowed to go upon parole outside the prison buildings and enclosures when eligible for parole." (Penal Code § 3052.) Thus, the Board is statutorily granted the authority to determine what circumstances to consider when determining parole suitability and section 3041(b)'s language enumerating specific considerations is not an exhaustive list of the relevant circumstances to consider in determining parole suitability.

V.    **The Board's Consideration Of Petitioner's History Of Alcohol Abuse And His Recent Failure To Participate In Substance Abuse Self-Help Is A Relevant Consideration For Parole Suitability And Does Not Violate Due Process.**

The Board is required to consider "all relevant, reliable information available to the panel" that relates to the prisoner's suitability for release. (Cal. Code Regs., tit. 15 § 2402, subd. (b).) Petitioner has a serious and dangerous history with alcohol as evidenced by three convictions for Driving While Intoxicated (DWI) and his claim that he was drunk on the night of the instant murder. (Exh. 2; p. 6; Exh. 4, p. 20.) It is reasonable for the Board to determine that petitioner's failure to continue attending some form of substance abuse program makes him a danger to the public. Even the psychological evaluation completed in January 2006 by Dr. MacComber recognizes the seriousness of petitioner's addiction and notes that "the most significant risk factor in this case would be the use of alcohol." (Exh. 4, p. 44.) Because petitioner is no longer willing to participate in the Alcoholics Anonymous and Narcotics Anonymous programs offered to him, nor is he undergoing any other substance abuse prevention program, the Board's decision that petitioner would pose an unreasonable risk to public safety is supported. Petitioner claims that he has too much to lose to ever drink again. (Exh. 4, p. 39.) But as pointed out by the Commissioner, petitioner already lost his wife to his drinking before this crime and had several DWI convictions, and yet continued to drink. (Exh. 4.) Further, the Probation Officer's analysis states, "Mr. Weir blames all of his problems on alcohol. He backs up this statement by saying that during the last seven years he has had about twelve drunk driving offenses. Although he uses this as an excuse for his behavior, he has steadfastly refused to do anything about it." (Exh. 2, p. 4.) Petitioner has already has at least three convictions for DWI and, after drinking with his brother committed the robbery and murder that resulted in his life sentence. (Exh. 2, p. 6; Exh. 4, p. 20.) His ability to maintain his sobriety as a member of society is vital to the public at large, and until he has shown his commitment to stay sober, the Board properly relied on this factor to deny parole.

Finally, petitioner is serving an indeterminate life sentence and he has no vested right to have his sentence fixed at less than the maximum. (*In re Schoengarth* (1967) 66 Cal.2d 295, 302.) While "no inmate may be imprisoned beyond a period that is constitutionally proportionate

The Honorable Judge Bob N. Krug
March 22, 2007
Page 8

to the commitment offense or offenses," "that limitation will rarely apply to those serious offenses and offenders currently subject by statute to life-maximum imprisonment." (*Dannenberg, supra,* 34 Cal.4th at p. 1071.)

Based upon the above considerations, respondent respectfully requests that the petition be denied.

Sincerely,

JENNIFER L. DOLAN
Deputy Attorney General

For    EDMUND G. BROWN JR.
Attorney General

60199963.wpd

COPY

1  DUANE ROY WEIR
   C-02190..CTF-N..N.D.59L
2  P.O. BOX 705
   Soledad.CA.93960-0705
3

4  Petitioner In Pro Per

5

6

7

8          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                FOR COUNTY OF SAN BERNARDINO

10

11  DUANE ROY WEIR,            )      CASE NO:   SWHSS - 9118
                               )
12          Petitioner         )      INFORMAL REPLY TO THE
                               )      ATTORNEY GENERAL'S
13                             )      INFORMAL RESPONSE
                               )
14  On Habeas Corpus           )

15

16          PETITION FOR WRIT OF HABEAS CORPUS

17

18                  PETITION

19      Petitioner, Duane Roy Weir, hereby petitiones this Court

20  for writ of Habeas Corpus, and as grounds therefore alleged as

21  follows:

22

23      Petitioner is currently confined and restained of his

24  liberty by **Ben Curry (Warden)** of Correctional Training Facilty.

25  Soledad. California, pursuant to the February 23.1979 judgment

26  and sentence of the San Bernardino Superior Court in Case No: CR-

27  34989 in which petitioner was found guilty of felony-murder,

28  robbery and grand theft.

( 1 )

I

Petitioner contends he is not an attorney nor has the skills preparing writ proceedings or citing proper cases or statutes that maybe required. This Court has obigation and duty to assure petitioner that all of his Constitutional Rights will be protected in every step in this writ proceedings.

II

Petitioner contends there has been critical <u>errors</u> as to his <u>sentence</u>. It must be noted the <u>commitment offense</u> was <u>March 2. 1978.</u> Petitioner was sentence under P.C. §1168 in which was a life sentence and it also must be noted that petitioner must served a minimum term of seven (7) years. (See P.C. §3046) and then petitioner willbecome eligible for parole. The minimum period of time would be <u>March 10.1985</u> under (P.C. §3046).

III

Petitioner would like to direct the Courts attention to the <u>Briggs Initiative</u> which was approved by the California voters on <u>November 7.1978</u> and it became effective <u>November 8.1978</u> which "First Degree Murder was 25-years to life" and Second - Degree Murder was 15-years to life.".

IV

It must be noted the Board had petitioner's sentence as 25-years to life which through an "Appeal" the Board <u>corrected</u> the <u>error</u>. As its "7 to life". Its noted this Hon.Court made the same error and hope this will correct it.

( 2 )

V

PETITIONER WAS ILLEGALLY AND UNCOSTITUTIONALLY
DENIED HIS SIXTH AND FOURTEENTH AMENDMENT TO
THE UNITED STATES CONSTITUTION WHEN THE BOARD OF
PAROLE HEARINGS FOUND PETITIONER UNSUITABLE FOR
PAROLE AT HIS SEVENTEENTH SUBSEQUENT BOARD HEARING
BASED ON IMMUTABLE FACTORS OF THE COMMITMENT OFFENSE
AND PRIOR CRIMINAL HISTORY, VIOLATING PEOPLE V. CALL-
AWAY (1974) 37 C.A. 3d 905; IN RE DELUNA (2005) 126
CAL. APP. 4TH 585, 598; CF. VAN HOUTEN, 116 CAL. APP.
4TH at 553.

Petitioner contends he was denied effective assistance of counsel by attornry David Spowarts failure to investigate and to assure petitioner all of his Constitutional Rights are protected, and the rules and regulations which govern the hearing are foll-owed in accordance with proper case citations and statutes that maybe required.

Petitioner contends not only the board attorney David Spowart incompetent but also the Board denying petitioner of his Sixth and Fourteenth Amendment of the United States Constitution by holding petitioner's Board Hearing under complete different set of regulations and statutes as follows:

On March 13.2006, the Board of Parole Hearing held petitioner s seventeenth (17) Subsequent Board Hearing to determine whether petitioner is suitable for parole. The Board held petitioner's hearing under the wrong criteria and attorney Spowart allow the Board to deny petitioner of his Due Proces rights under the Sixth and Fourteenth Amendment of the United States Constitution. The Board used the criteria for people who's commitment offense was after November 8.1978,

( 3 )

1    The Board used the following criteria knowingly or should

2  known it was illegal criteria in petitioner case to use the

3  following criteria:

4    "The commitment offense after November 8.1978, which
     are the 15 to life and the 25 to life sentence that
5     the following criteria is under as follows:

6    "Title 15, Division 2, Chapter 3, Article 11 of the
     California Code of Regulations:  Pursuant to **section**
7     2401 of Title 15 of these Regulations:  A parole date
     shall be denied if the prisoner is found unsuitable
8     under **section 2402(c).**  A parole date shall be set if
     the prisoner is found suitable for parole under **section**
9     **2402(d)."**

10

11    Petitioner contends the board attorney David Spowart and the

12  Board should have follow the proper criteria as follows:

13    " On March 1.1979, petitioner was received in prison
     pursuant to Penal Code §1168 for a violation of P.C.
14     §187, murder (San Bernardino County Case No. CR-34989
     count-1). Term 7 years to life.(See P.C. §3046). The
15     controlling minimum eligible parole date (MEPD) is:
     March 10.1985."

16

17    "P.C. §3041 provides that the BPH shall normally set
     a parole release date unless, pursuant to P.C. §3041-
18     (b), the Board determines that a parole date cannot be
     fixed at this hearing."

19

20    Petitioner contends he is entitle to have his Board Hearing

21  conducted under the statutes and regulations that were in effect

22  time of the commitment offense. The offense of <u>March 2.1978</u>, and

23  petitioner would be under the **"Community Release Board"** of July

24  11.1978. Petitioner's Board Hearing **must** conducted pursuant to

25  <u>California Administrative Code</u> (CAC), Division 2, Chapter 3,

26  **Article 5,** which sets forth parole consideration criteria and

27  guidelines for life prisoners who are under"Rehabilitation" (See

28  "Exhibit" 1 .").

( 4 )

1    Petitioner was found guilty of first degree felony-murder

2  (Pen. Code, §187), robbery (Pen. Code, 211) and grand theft (Pen.

3  Code, §487) and was **acquitted** of assault with a deadly weapon

4  (Pen. Code, §245(a). (See Exh."**2**" at p.539, line 13 through 18).

5    Firearm use allegation (Pen. Code, §12022.5) were found true

6  as to all counts but great bodily inury allegation were found

7  **not true** as to all counts (Pen. Code, §§12022.7, 1203.9). (See

8  Exh."**2**" at p.539, line 8 through 12). Under the current law

9  in 1978 there was no way to enhance a life sentence. (See Exh.-

10  "**3**" at p.554, line 26 and p.555, line 1.).

11

12    In respondents's informal response at page-1- lines 1, 2 and

13  3 petitioner agrees with the sentence but with one exception

14  there is **no firearm enhancement** as the court notes above.(See

15  Exh."**3**" at pp.555,556, striking firearm allegation.).

16  _  The respondent asserts that Mr.Loery died a month later, on

17  April 25.19798 **1/.** Petitioner contends paragraphs 7, 8 in the

18
_____

19  **1/.** On **March 2.1978**, the vitim was admitted into County Hospital

20  which admission diagnosis of having two gunshot wounds. His hos-
pital stay lasted **(14 days)** before he was discharged and trans-

21  ferred to **Board & Care Facilty**, on **March 16.1978**. (see Exh."**4**"
at pp. 351, 168-169, 188 and 195).

22    On **April 3.1978**, the victim was readmitted to County Hospi-
tal, with admission diagnosis of "**Gram-Negative Sepsis Secondary

23  to Urinary Tract Infection**". His second hospital stay lasted -
**(9 days)** before being discharged for a second time, only this

24  particular time, the victim was transferred to **Citrus Convales-
cent Hospital**, on **April 12.1978**. ((see Exh." **5** " at pp. 335-336,

25  443, 445-446).

26    On **April 23.1978**, the victim was readmitted to County Hosp-
ital, with admission diagnosis of "**Septic Shock Second to Urinary
Tract Infection**". And some **(2 days)** later, the victim was dis-

27  charged and transferred to **Highland Health Care Home**, on **April** -
**25.1978**, at 2:15 p.m.,(Six hours and Five minutes, after being

28  discharged from County Hospital) At 8:20 p.m., the vitim died as
a residence of the **Highland Health Care Home**.(see Exh." **6** " at pp.
347, 460-461) **[354]**,

( 5 )

1  respondent's informal response at page-1- are not accurate

2  as the court notes on page-5- in this petition at the bottom of

3  page-5- is Mr.Lowery's history and time of death.

4

5  Petitioner contends on page-2- in respondent's informal resp-

6  onse at top of page-2- paragraphs 6, 7 are completely false as

7  in the (**Petition at page-26- section (G)..**). The court will note

8  petitioner was only  citing what was present in the case of (**In**

9  **re Mark Smith**). No where petitioner ~~ever~~ *never* said alcohol would be

10  found in the Regulations. Petitioner denies that statement.

11

12  Petitioner contends on page-2- section (1) and page-3- secti-

13  on (A). The Court has obigation and duty to assure petitioner

14  that the "Respondent" and "Board" hold petitioner's Board Hear-

15  ing under the Community Release Board, Administrative Code (CAC)

16  Division 2, Chapter 3, Article 5, which sets forth parole con-

17  sideration criteria and guidelines for life prisoners where the

18  **main focus is more on the in-prison behavior and rehabilitation.**

19  (See Exh. " 1 ").

20  The court notes the "Repondent" is denying petitioner of his

21  Due Proces rights of the Sixth. Fourteenth Amendment of the UN

22  United States Constitution by not following the criteria that is

23  set forth above. The repondent is using California Code of Regu-

24  lations against petitioner knowingly its illegal as petitioner

25  has a right to have his Board Hearing held under the criteria

26  that was in effect at the time of commiment offense. Petitioner

27  contends page-2-section(1) and page-3-section(A) is all base on

28  the crime as California Code of Regulations sets forth for that

1    criteria which petitioner is not under that criteria as its

2    set forth on page-6- in this petition.

3

4    On page-3- in respondent's response at paragraphs 13, 14 where

5    respondent states that Mr.Lowery from his hospital bed, Mr.Lowery

6    identified petitioner and his brother as the men that shot him.

7

8    The respondent fails to bring forth that **petitioner** was the

9    **only** person in front of Mr.Lowery in his hospital bed. The court

10    will note petitioner's **"Preliminary Hearing" was** help in the San

11    Bernardino County Hospital on **April 11.1978** (See Exh." 7 ") page-

12    96 which the hearing was conducted by the following:

13         Q. (by Mr.Call:) Mr.Lowery, do you know Tony Weir, your
           next door neighbor?
14         A. (No audible response).
           Q. You're shaking your head yes; is that right?
15         A. Yes.
           Q. Did Tony Weir shoot you, Mr.Lowery?
16         A. I have reason to believe he did.
           Q. Did you see him?
17         A. Yes.
           Q. Did you see him with a gun?
18         A. Yes.
              (See Exh." 8 " page-104, line 16 through 24)

19

20    It is further noted Mr.Lowery testified as there were two

21    other people as follows:

22         Q. (Mr.Call:) was anybody else with him?
           A. Yes.
23         Q. How many?
           A. Two other people.
24         Q. Did you see them?
           A. Yes.
25         Q. Could you identify them?
           A. It was dark. I couldn't see very well.
26            (See Exh." 9 " page-105,line 24,25 and 26, and page-106,
              line 1 through 4).

27    //

28    //

( 7 )

1      Mr.Lowery continue to testify as follows:

2          Q. (By Mr.Call:) Did you tell the sheriff that you didn't
              know who shot you?
3          A. I told him I felt I knew who shot me.
           Q. Did you tell the sheriff who?
4          A. I told him my next door neighbor.
           Q. Next door neighbor; is that what you told him?
5          A. (No audible response.)
           Q. When did you tell him that, Sam?
6          A. (No audible response.)
           Q. While you were in the hospital?

7
           THE WITNESS:  I told him, yes, while I was in the
8          hospital.
              (See Exh." 10" page-109, line 1 through 12) (See also
9          in "Petition"at page-3-4.).

10

11      Petitioner denies what is set forth in the respondent's

12   response at page-3-section(b) prior record. First of all there

13   is no arrest record of petitioner ever being arrested May of

14   1967. The court must look at **community Release Board, Administr-**

15   **ative Code (CAC), Division 2, Chapter 3, Article 5,** which sets

16   forth parole consideration criteria as follows:

17                Circumstances Tending to Show Unsuitability

18      1. **Previous Record of Violence.** Petitioner did not
           assault the victim himself. Note Exh." 2 " 539, line
19         13 through 18. Petitioner acquitted of assault with
           deadly weapon. The great bodily injury charge and
20         special allegation P.C.1203.9 personally inficting
           great bodily injury petitioner was acqitted of these
21         special allegations. (See Exh." 2 " p.539, line 8 -
           through 12). (See also Exh."8" in Petition).(See-
22         **Exh. " 1"** of the Community Release Board at section-
           2281(c)(1).(See Exh."7" in Petition as petitioner
23         has no record of any violence.

24      The respondent continues to use the California Code of Re-

25   gulations in petitioner's case which denies petitioner of his

26   Due Process right of the Sixth, Fourteenth Amendment of the

27   United States Constitution.

28   //

1   Petitioner contends the Board is barred from considering"

2   criminal misconducted" which is not "reliably document", see

3   People v. Callaway, (1974) 37 C.A. 3d 905; In re DeLuna (2005)

4   126 Cal. App. 4th, 585, 598; CF. Van Houten 116 Cal. App. 4th,

5   at 353 (inmates's arrest record did not constiute "some evidence"

6   of a threat to public safety because the alleged acts did not

7   involve serious injury or attempted serious injury to a victim).

8   The following charges repondent claims should not even be

9   considered in any Board Hearing.

10

11  Petitioner contends page-4-section(c) and page-6- section III

12  where the respondent is trying to evade the real claim in the

13  Petition at page-13 through page-22- Petitioner realleges the

14  same claim where respondent is evading the following:

15      "The Board is prohibited by law from requiring an admiss-
        ion of guilt to the crime in its parole determination,
16      not to mention requiring therapy in order to explore it.
        California Penal Code Section§5011 (A)(B) states:

17
        "Admission of guilt: Prohibited against requirement
18      treatment, custody or setting dates;"

19  Repondent is evading what is set forth in claim two of the

20  "Petition" page-13 to page 22. Petitioner denies what is set

21  forth on page-6- section III and section IV at page-6- The court

22  notes petitioner's claim two page-13 to page 22 are completely

23  different then what repondent is trying to make out of it.

24

25  On page=4- section(d). ~~Petioner~~ Petitioner denies all allegations set

26  forth and on page-5- the repondent asserts that the Board ask

27  petitioner to participate in "IMPACK and Anger-Management which

28  the court will note at page-16-in Petition and "Exh."19" that

( 9 )

1      Petitioner already was seeking out the two programs that

2  Board suggested petitioner look into. The Impack and the Anger-

3  Mangement which both programs were **discontinued.**

4

5      Petitioner contends respondent **admits** petitioner's attorney

6  David **Spowart** was incompetent in denying petitioner of his Due

7  Process rights of the Sixth, Fourteenth Amendment of United

8  States Constitution. Respondent further **admits** that petitioner's

9  attorney failed to protect petitioner's rights under the Ameri-

10  can Disabilities Act (ADA). The attorney David Spowart allow

11  the Board to discriminated against petitioner in violation of

12  **Turner v. Hickman**, 342 F. Supp. 2d 887 (E.D. Cal. 2004). The

13  court has an obigation and duty to assure petitioner this court

14  will protect petitioner's Due Process rights in every step in

15  this writ proceedings and that is the "Petition at page-23- to

16  31 on this alcohol claim. Repondent has **admited** that all of

17  petitioner's facts in the "Petition" from page-23 to 31 are true

18  as respondent made no attempt to **deny** any of petitioners claims

19  in the Petition and this court must accept all of petitioner's

20  claims as **true.** The respondent requested from the court 30-days

21  for **records.** If the respondent had requested the records that is

22  records about programs that petitioner had been participating in

23  the respondent would have seen that petitioner had been attend-

24  ing Alcoholics Anonymous. The court will note in"Petition "that

25  is **Exh." 26"** the Multi=Purpose Form dated April 6.2006, little

26  over month from petitioner's Board Hearing which was March 13.

27  2006. Note at this time there was no AA-program which Belinda

28  made it clear on her response of April 19.2006.

1   Petitioner would like to direct the courts attention on the

2   following documents as follows:

3       1. The Alcoholics Anonymous..CDCR-128-B dated 2-3-07
           for the 3rd quarter of 2006. Exh."11"

4

5       2. The Alcoholics Anonymous..CDCR-128-B dated 2-3-07
           for the 4th quarter of 2006.Exh."11"

6

7       3. The Alcoholics Anonymous..CDCR-128-B dated 4-10-07.
           1st quarter of 2007. Exh."12"

8

9       4. The Narcotics Anonymous..CDCR-128-B dated 4-10-07.
           1st quarter of 2007. Exh."13"

10  Petitioner contends all that the respondent has asserted on

11  7 is moot issue. And respondent using California Code of Regula-

12  tions is of cases after November 8.1978. 25 to life and 15 to

13  life setences.

14

15                          Conclusion

16  _  Petitioner contends the evidence in the record does not supp-

17  ort the decision by the Board to deny petitioner parole,violating

18  his right to Due Process guaranteed by the Fifth, Sixth and the

19  Fourteenth Amenment to the United Staes Constitution. The writ

20  should be granted and the Board ordered to fix petitioner's term

21  accordingly to his individual culpability and apply any excess

22  time earned by good conduct credits to the time he would do on

23  parole McQuillon v. Duncan, 342 F.3d 1012, 1016 (9th,Cir.2003)

24

25  Therefore, petitioner contends the Board's decision denying

26  parole was based on an arbitrary and irrational standard of re-

27  view, in violation of P.C.§3041, Article I, §7 of the California

28  Constitution and the Fourteenth Amendment to the United States
    Constitution.

( 11)

## RELIEF SOUGHT

**Petitioner** contends the Board for number of years denied petitioner of his Due Process rights by holding his Board Hearings under the wrong criteria by using California Code of Regulations which focus completely on the crime. The criteria petitioner is entitle to be heard under is the Community Release Board. Administrative Code (CAC), Division 2, Chapter 3, Article-5, which mainly focuses on the in-prison behavior and rehabilitation.(See Exh."1").This has denied petitioner of his Sixth,and Fourteenth Amendment of the United States Constitution.

Petitioner contends the respondent has agrre that petitioner was denied effective assistance of counsel by **his** failure to protect petitioner's Due Process rights of the Sixth, Fourteenth Amendment of the United States Constitution. The respondent did not **deny** this factor or even mention it in his response.(See Exh."14". **No** where in the **response** eight-pages did the responde-nt ever **deny any of petitioner's claims** which this court must accept **all** of petitioner's claims as **true** facts.

Petitioner contends the evidence in the record does not supp= ort the decision by the Board to deny petitioner parole, violat-ing his right to Due Process guaranteed by the Fifth, Sixth, and fourteenth Amendment to the United States Constitution.

The writ should be granted and the Board ordered to fix petitioner's term and apply any excess time earned by good conduct credits to the time he would do on parole. **McQuillon v. Duncan,**

1    342 F. 3d 1012, 1016 (9th, Cir. 2003).

2

3    For the foregoing reasons, it is respectfully requested that

4    the writ be granted and Petitioner be appointed counsel to pro-

5    tect his rights. And any other relief this Court deems approriate.

6

7    Date: May 9th.2007.                              Respectfully

8

9

10

11   —

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE BY MAIL

I, DUANE R.WEWR, DO HEREBY DECLARAE THAT I AM A CITIZEN OF THE UNITED STATES. AND OVER 18 YEARS OF AGE. MY ADDRESS IS CORR_ ECTIONAL TRAINING FACYLTY. SOLEDAD. CALIFORNIA.

ON THE DATE SET FORTH BELOW. I DEPOSITED IN THE MAIL AT CORRECTIONAL TRAINING FACILTY. P.O. BOX 705. SOLEDAD. CALIFORNIA. TRUE COPY OF THE PETITION_ INFORMAL REPLY AND THE FOLLOWING SENT COPY TO AS FOLOWS:

(1). Bill Lockyer
Attorney General of California
455 Golden Gate Ave. Suite-11000
San Franciso. Ca. 94102-7004

I, Duane R.Weir, declare under penalty of perjury and under the laws of the Skate of California that the above is true and correct.

Executed:   May 9th.2007   At Soledad.CA.

Respectfully

_(signature)_

351

SAN BERNARDINO, CALIFORNIA; MONDAY, JANUARY 8, 1979

1:40 P.M.

--oOo--

THE COURT:  The record will reflect the jurors are present in their places, the defendant is present with counsel.

H A R R Y   W A Y N E   S C O T T,         resumes the witness stand, having been previously duly sworn, was examined and testified further as follows:

THE COURT:  I interrupted a question.  I think you better rephrase it.

MR. STEINMAN:  All right.  I am going to inquire one time further into another area.

CROSS-EXAMINATION (Resumed)

BY MR. STEINMAN:

Q   Doctor, if I might show you one other record of the San Bernardino County Medical Center which was not included in those records which appears to bear an admission date of 3-2-78 and a discharge date of 3-16-78.

A   Yes, sir.

Q   I notice here that his admission diagnosis was, "Gunshot wound to abdomen and chest"; is that correct?

A   Yes, sir.

Q   And the second is, "A history of CA of the penis, with

SAN BERNARDINO, CALIFORNIA; MONDAY, JANUARY 8, 1979

1:40 P.M.

--oOo--

THE COURT:  The record will reflect the jurors are present in their places, the defendant is present with counsel.

H A R R Y   W A Y N E   S C O T T,        resumes the witness stand, having been previously duly sworn, was examined and testified further as follows:

THE COURT:  I interrupted a question.  I think you better rephrase it.

MR. STEINMAN:  All right.  I am going to inquire one time further into another area.

CROSS-EXAMINATION (Resumed)

BY MR. STEINMAN:

Q   Doctor, if I might show you one other record of the San Bernardino County Medical Center which was not included in those records which appears to bear an admission date of 3-2-78 and a discharge date of 3-16-78.

A   Yes, sir.

Q   I notice here that his admission diagnosis was, "Gunshot wound to abdomen and chest"; is that correct?

A   Yes, sir.

Q   And the second is, "A history of CA of the penis, with

"Ex 'Z'"        "351"

1  A   That's correct.

2  Q   Where are you employed?

3  A   At the San Bernardino County Medical Center.

4  Q   And what is your function there?

5  A   I'm an associate of Doctor Denkos, who is Chairman of

6      the Department of Surgery, and then I am the Director

7      of Thoracic Surgery.

8  Q   Could you indicate in layman's terms what thoracic

9      surgery is?

10 A   This has to do with surgery of the contents of the chest,

11     for example, like the lungs or the esophagus going

12     through the chest, but it's the chest contents, the

13     chest wall.

14 Q   How long have you worked at the County Medical Center?

15 A   Full-time for a little over 15 years, but I was a

16     voluntary staff member for another eight or nine years

17     prior to that.

18 Q   Is that when you were in private practice?

19 A   Yes.

20 Q   Directing your attention, Doctor, to the early morning

21     hours of March the 2nd of last year, 1978, were you on

22     duty?

23 A   Yes, I was on call.

24 Q   On call.  And were you called that morning?

25 A   Yes.

26 Q   Did you arrive at the hospital?

"Ex. 4"        "168"