# EXHIBIT E, PART 3

1    A    Right.

2    Q    Approximately what time?  Do you recall?

3    A    I can't be certain.  I notice from the records that the

4         operation started shortly after seven o'clock and I was

5         there sometime prior to that, perhaps a half an hour,

6         45 minutes.

7    Q    And you did perform a surgery, or were a member of the

8         team that performed a surgery on somebody that morning?

9    A    Yes.

10   Q    And who was that on?

11   A    Mr. Lowery, Samuel Lowery.

12   Q    About how old was Mr. Lowery?

13   A    Approximately 80, 81, somewhere through there.

14   Q    Did he look that age to you?

15   A    He was in pretty good physical condition, I thought, for

16        an 80-year-old.

17   Q    Right, but how about his face?

18   A    Well, he had -- he had wrinkles and he was gray-haired.

19   Q    Okay.  You indicated that he looked in pretty good

20        physical condition for his age, better than most people

21        that you come in contact with that are that age?

22   A    I would say so, the ones that we usually run in contact

23        with at our institution.

24   Q    Doctor, could you describe Mr. Lowery's injuries to the

25        jury, please?

26   A    He had two bullet wounds, the lower one of which was on

"Ex. 4"    "169"

1    10 percent.

2  Q    It's usually controlled, is it not, by the utilization

3       of some sort of antibiotics post surgery?

4  A    That is correct.

5  Q    And if there is to be some sort of infection attenuated

6       with this surgery, it usually manifests itself during the

7       patient's initial hospital stay; is that correct?

8  A    That is correct.

9  Q    Did you follow Mr. Lowery through his course in the

10       hospital post surgery or did some other physician assume

11       that responsibility?

12  A    Some other physicians did, although I was aware of his

13       presence and problems.

14  Q    Did you have occasion to look in on him to check him

15       post surgery?

16  A    Right.

17  Q    He was ultimately released from intensive care and back

18       on a regular patient ward; is that correct?

19  A    Right.

20  Q    And he was ultimately discharged from the hospital; is

21       that correct?

22  A    That is correct.  I believe it was about two weeks later,

23       something like that.

24  Q    Was there any indication during his hospital stay of any

25       infection attenuated with that operation?

26  A    We didn't feel so.

1  A  Yes.

2  Q  It was brought up that Mr. Lowery in a couple of weeks

3      was discharged from the hospital; true?

4  A  Yes.

5  Q  Was he discharged home or to a convalescent hospital?

6  A  I should have reviewed that.  I don't recall.  I think

7      it was --

8  Q  Do you know that he never went home again?

9  A  I believe that's true.  I didn't know whether he went to

10     board and care or what sort of a place he went after

11     that.

12  Q  Another thing I will ask you if you know, Doctor, is,

13     the last time he was released from the hospital was the

14     same day he died.

15  A  That is correct, a little later on that day.

16  Q  Now, I'm not sure what counsel was trying to get at, but

17     it's obvious that you people do everything you can to

18     save life; is there any question in your mind about that?

19  A  That's our --

20  Q  Was Sam Lowery ever intentionally taken off some kind of

21     life support system or anything like that so he would die,

22     to your knowledge?

23  A  Not that I was aware of.

24  Q  I had to ask the question, Doctor.  I mean nothing by it.

25        Doctor, when you were in Sam Lowery -- By "in him,"

26     I mean performing surgery on him and examining him --

"Ex: 5"    "195"

Convalescent Hospital; is that correct?

A   Yes, sir.

Q   And contained in those records are the records of the San Bernardino County Medical Center; is that correct?

A   Yes, sir.

Q   Doctor, when you prepared your protocol, had you had an opportunity to review the medical records from San Bernardino County Medical Center?

A   No, sir, I had not.

Q   As a matter of fact, the first time you were aware of some of the summaries and the reports from that hospital was this morning; is that correct?

A   Yes, sir, it is.

        MR. STEINMAN:  All right.  If I might approach the witness, your Honor.

        THE COURT:  Yes.

Q   (BY MR. STEINMAN:)  Putting aside the Citrus Care Convalescent Hospital, let us look at some of the records that are contained in the San Bernardino County Medical Center's reports as given to the Highland Health Care. I direct your attention, Doctor, to a San Bernardino County Medical Center report which indicates a date of admission of April the 3rd, 1978, and a release of April the 12th, 1978.  Do you have that before you now?

A   Yes, sir.

Q   The admission diagnosis by the physicians there was a

"Ex. "5"    "335

1    gram-negative sepsis secondary to urinary tract

2    infection; is that correct?

3    A    Yes, sir.

4    Q    All right.  Gram-negative, Gram was a Danish physician;

5    is that correct?

6    A    I have just learned something, sir.  I didn't know he

7    was a Dane.

8    Q    And that's just merely a way of staining certain types

9    of sepsis; is that correct?

10   A    It's a way of staining certain bacteria, yes, sir.

11   Q    And when it says, "negative," it means that it either

12   takes the color or does not take the color of the stain;

13   is that correct?

14   A    Yeah.  Actually, it either loses or doesn't lose the

15   color, but essentially, you wind up with a pink staining

16   bacillus or bacterium instead of a blue staining

17   bacterium, which is gram-positive.

18       THE COURT:  Just a moment.  Will you read that
back?

19

20       (The requested portion of the record was read by
         the Reporter.)

21

22   Q    (BY MR. STEINMAN:)  The reason I am exploring "gram" with

23   you, a gram is also a unit of measurement?

24   A    Yes, but this refers to the name of the individual who

25   devised this particular technique of staining bacteria.

26   Q    What is the word "sepsis," what does that mean?

1    important to you and to any pathologist who would have

2    reviewed or prepared an autopsy protocol on this

3    individual to have had the medical records from San

4    Bernardino County Medical Center where this individual

5    was being treated?

6    A    I think it would be highly desirable.

7    Q    What is it, Doctor, that leads you to that conclusion of

8    the urinary tract infection? Where did you find that

9    information?

10   A    Well, first of all, the conclusion was arrived at on my

11        part by balancing certain findings in the autopsy report

12        and in the medical records. Actually, I began to very

13        seriously consider the urinary tract infection when I

14        read on a hospital admission that the individual came to

15        the hospital -- It was one of the April admissions, I

16        believe April the 12th or thereabouts, of this year --

17        when he came to the hospital and had a very high white

18        count, a fever and over a quart of pussy urine.

19            MR. STEINMAN:  May I approach the witness, your

20   Honor?

21            THE COURT:  Yes.

22   Q    (BY MR. STEINMAN:)  Doctor, I have just indicated to you

23        a San Bernardino County Medical Center admission and

24        discharge summary, with the date of admission as April

25        the 3rd, '78, and the date of discharge as April the 12th,

26        1978.  Is that the report that you were referring to?

*Ex. "5" "443"*

1    THE CLERK:  And which one is that, your Honor?

2    THE COURT:  "A" for identification, the medical

3  records of the Highland Health Care Center, or Highland Health

4  Care Home, to which are attached the San Bernardino County

5  Medical Center records that have been referred to, the

6  admission record of April the 3rd and discharge record of

7  April the 12th, 1978.

8    MR. STEINMAN:  I am handing those to the Clerk to

9  have them marked.

10    May I proceed now, your Honor?

11    THE COURT:  You may proceed, sir.

12    MR. STEINMAN:  Thank you.

13  Q   (BY MR. STEINMAN:)  Turning now to that summary, what

14      were the findings that were of note or significance to

15      you?

16  A   The patient came to the hospital with a blood count that

17      was 38.8 thousand, with the upper limit of a -- or the

18      normal range of an adult being five to ten thousand.

19      So this was almost -- This represented a definite serious

20      infection, but a good response of the individual to that

21      infection.

22      He also showed evidence of severe retention of

23      material that the kidneys are supposed to get rid of,

24      namely, Creatinine and Ureanitrogen.  They were markedly

25      elevated.  They were in a uremic level.

26      Then, in the emergency room, they catheterized the

1    individual and they removed about twelve hundred cc's --

2    and there are approximately one thousand cc's to a quart

3    -- so this was at least a quart plus a fifth of a quart

4    that they removed from this man's bladder, and they said

5    it was grossly purulent urine, which means it was a pussy

6    looking urine.  And that staining of the urine revealed

7    -- That's a laboratory test -- that there were sheets of

8    pus cells and bacteria which were identified as gram-

9    negative rods, but at least there were bacteria present.

10   Q   Doctor, you used a word, "Uremic."  What does that mean?

11   A   It means a serious degree of kidney failure.

12   Q   All right.  Doctor, the admission diagnosis at that

13   particular time was, "gram-negative sepsis, secondary to

14   urinary tract infection"; is that correct?

15   A   Yes, sir, that was the number one diagnosis.

16   Q   All right.  They did also note down at number four a

17   "History of a gunshot wound to the chest and abdomen"?

18   A   That is correct.

19   Q   So it was pretty obvious, then, that they were aware of

20   his gunshot wound?

21   A   Yes, yes.

22          There were also statements made in the complaints

23   of the patient that were also, I think, helpful in this.

24   Q   All right.  What were those statements of his complaints

25   that --

26   A   Well, he was noted to have a temperature of a hundred and

"Ex. 5"        "446"
                446

1 gastrostomy tube was placed and was in the area where, at

2 least as I look over my shoulder, I see what apparently is

3 Doctor Michal's drawing of where a gunshot wound was

4 present.

5 Q Okay. I notice also that they had a final diagnosis of

6 gram-negative sepsis, secondary to obstructive uropathy,

7 resolved; is that correct?

8 A Yes.

9 Q What does uropathy mean?

10 A Uropathy means disease of the urinary tract.

11 Q And number four finding is, "Dilated left ureter on IVP,

12 etiology?", which means what?

13 A Well, the word "etiology" refers to the cause of anything,

14 and etiology, question mark, would simply mean they

15 didn't know why it was there. The left ureter is the tube

16 that passes between the kidney itself and the bladder on

17 the left side.

18 Q Okay. He was discharged and given some medication; is

19 that correct?

20 A Yes, sir.

21 Q Turning now to his admission on the 23rd of April of 1978

22 at the San Bernardino County Medical Center, I notice the

23 finding once again, the admission diagnosis, of "Septic

24 shock, secondary to urinary tract infection."

25 A No, sir.

26 Q "Probably secondary."

Ex. "6" "347"

have been present in that abscess. But one can make
smears of that abscess material just as they did on that
pussy urine on the admission of the 12th -- I mean on
the 3rd of April, I beg your pardon, where they said they
did do a gram stain on it and they found -- or they did
find gram-negative rods. So the fact that the ogranisms
are dead doesn't mean you can't find organisms there.
You can't grow them if they are dead, but you can
certainly find if they are present or not. Or maybe I
should put it this way, that if you do find them, you
know they are there. If you don't find them, you don't
know whether they are there or not because that doesn't
mean that they aren't there just because you don't see
them, but certainly if they are there and you find them,
then there isn't any question; they are there.

Q  All right. And if they would have stained it and they
   would have come out gram-negative, would that have given
   some support to the urinary tract as being the source of
   that abscess?

A  It certainly could, yes.

Q  Doctor, once again turning to those medical records and
   the admission of 4-23-78, they once again indicated at
   number three a gunshot wound to the chest; is that
   correct?

A  Yes, sir, they stated that this was a status post-
   operative gunshot wound to chest.

"Ex. "6""          "460"
                    460

1   Q   So once again on the 23rd the physicians at the County

2       Hospital were aware of his postoperative gunshot; is

3       that correct?

4   A   Yes, sir.  And in the final diagnosis also, they still

5       said there was a "Gram-negative sepsis, probably urinary

6       tract in etiology," and also, again, "Status post gunshot

7       wound to the chest."

8   Q   And the "Complications," what did they indicate?  Right

9       below that.

10  A   "Sepsis, critical condition."

11          MR. STEINMAN:  Thank you, Doctor

12          Nothing further.

13          MR. ASHWORTH:  Thank you, your Honor.

14

15                  CROSS-EXAMINATION

16  BY MR. ASHWORTH:

17  Q   You know Doctor Scott, Doctor Modglin, don't you?

18  A   Yes.

19  Q   You have known him for many years, have you not?

20  A   Yes, sir.

21  Q   What do you think of him in terms of a pathologist?

22  A   He's an excellent pathologist.

23  Q   You are not saying, are you, that there was not a

24      subphrenic abscess located in Mr. Lowery by Doctor Scott,

25      are you?

26  A   I am not saying that at all.

1  Q  I recognize your drawing is not to scale.

2  One last question -- Maybe there's two.

3  At the time that you did your postmortem exam-

4  ination, was the body embalmed?

5  A  Yes, sir.

6  Q  I can assume from the embalming process, then, you were not

7  able to take a sample of the urine that was present in the

8  body at the time of death, then?

9  A  As far as culturing it for bacteria, it would not have

10  been useful, yes, sir.

11  Q  The embalming fluid would have destroyed that; is that

12  correct?

13  A  Yes, sir.

14  Q  I assume also that you were not able to culture the pus

15  that was in the abscess for the same reason; is that

16  correct?

17  A  That's correct, sir.

18  Q  Finally, Doctor, returning now to the medical records,

19  on his last admission to the San Bernardino County Medical

20  Center, which was the 23rd of April, 1978, his discharge

21  being the 25th, the notation is, "probably secondary to

22  urinary tract infection"; is that correct?

23  A  Yes, sir.

24  Q  And I notice here that the final culture results were not

25  back yet?

26  A  Yes, sir.

104

1    after request, is giving Mr. Lowery some water?

2            THE NURSE:  Suck with the straw.  Do you want

3    to try real hard?

4            THE WITNESS:  Oh, I don't know.

5            THE NURSE:  Do you want to try again with the

6    water?

7            You want to try a drink of water?

8            THE WITNESS:  I don't --

9            THE NURSE:  Did you get some?

10           Here, try another swallow.  A little bit.  Here

11    you go.  A little bit more.

12           Okay, now you got some.

13           THE WITNESS:  You call this water?

14           THE NURSE:  Yes, this was water.  You got some.

15           THE WITNESS:  I call it (unintelligible) water.

16  Q   (By Mr. Call:)  Mr. Lowery, do you know Tony Wier, your

17      next door neighbor?

18  A   (No audible response.)

19  Q   You're shaking your head yes; is that right?

20  A   Yes.

21  Q   Did Tony Wier shoot you, Mr. Lowery?

22  A   I have reason to believe he did.

23  Q   Did you see him?

24  A   Yes.

25  Q   Did you see him with a gun?

26  A   Yes.

105

1  Q  What kind of a gun?

2  A  (No audible response.)

3  Q  Was it a handgun or a rifle?

4  A  Oh, God, I can't think straight when I'm (unintelligible)

5     -- when I'm thirsty.  I need water.

6           THE NURSE:  Yes, okay.

7           Here, we'll try again.  Open your mouth now.

8     You got some?  Did you get some?

9           Okay.  Did you get enough for a minute?

10          THE WITNESS:  A minute.

11          THE CLERK:  Can you talk again now?

12          THE WITNESS:  I don't know.

13          THE NURSE:  You try.

14          He'll try.

15 Q  (By Mr. Call:)  Who shot you, Sam?

16 A  I believe it was (unintelligible).

17 Q  Tony?

18 A  (No audible response.)

19 Q  Was he with somebody else?

20 A  (No audible response.)

21          MR. ASHWORTH:  May the record reflect he's

22    nodding in the affirmative?

23          THE WITNESS:  Huh?

24 Q  (By Mr. Call:)  Was anybody else with him?

25 A  Yes.

26 Q  How many?

Ex "9"

109

1    Q    (By Mr. Call:)  Did you tell the sheriff that you don't

2    know who shot you?

3    A    I told him I felt I knew who shot me.

4    Q    Did you tell the sheriff who?

5    A    I told him my next door neighbor.

6    Q    Next door neighbor; is that what you told him?

7    A    (No audible response.)

8    Q    When did you tell him that, Sam?

9    A    (No audible response.)

10   Q    While you were in the hospital?

11          THE COURT:  Double question again, Mr. Call.

12          THE WITNESS:  I told him, yes, while I was in

13   the hospital.

14   Q    (By Mr. Call:)  Did you shoot a gun at the people that

15   shot you?

16   A    (No audible response.)

17   Q    Is that a yes, Sam?

18   A    Yes, sir.

19   Q    Which gun did you shoot at them?

20   A    This gun here.

21   Q    What caliber was that, Sam?

22   A    .38 caliber.

23   Q    Did you hit any of them?

24   A    I seen them knocked down.

25   Q    Did you see anybody knocked down?

26   A    (No audible response.)

Ex "10"

Exh. "11")

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR-128 B (8-87)

NAME and NUMBER    Weir,    C02190,    DO059L

Inmate Weir, C02190, has been an active member of Alcoholics Anonymous at CTF-North Facility during the 3rd quarter of 2006.  In his enthusiastic participation, the support he has contributed to the program and he has achieved tremendous personal success in his efforts towards recovery and self-improvement.  He should be commended for his sincerity and commitment in dealing with this ongoing challenge.

ORIG:   C-File
cc:      AA File
         Inmate

DATE  2/3/2007

David Rodriguez, Sponsor
Alcoholics Anonymous
CTF-NORTH FACILITY

CTF-N      INFORMATIVE CHRONO

---

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR-128 B (8-87)

NAME and NUMBER    Weir,    C02190,    DO059L

Inmate Weir, C02190, has been an active member of Alcoholics Anonymous at CTF-North Facility during the 4th quarter of 2006.  In his enthusiastic participation, the support he has contributed to the program and he has achieved tremendous personal success in his efforts towards recovery and self-improvement.  He should be commended for his sincerity and commitment in dealing with this ongoing challenge.

ORIG:   C-File
cc:      AA File
         Inmate

DATE  2/3/2007

David Rodriguez, Sponsor
Alcoholics Anonymous
CTF-NORTH FACILITY

CTF-N      INFORMATIVE CHRONO

Exh. "11"

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
                                                                                                         CDCR-128 B (8-87)

NAME and NUMBER    Weir,    C02190,    DO059L

Inmate Weir, C02190, has been an active member of Alcoholics Anonymous at CTF-North Facility during the 1st quarter of 2007.  In his enthusiastic participation, the support he has contributed to the program and he has achieved tremendous personal success in his efforts towards recovery and self-improvement.  He should be commended for his sincerity and commitment in dealing with this ongoing challenge.

ORIG:    C-File
cc:      AA File
         Inmate

David Rodriguez, Sponsor
Alcoholics Anonymous
CTF-NORTH FACILITY

**DATE  4/10/2007**

CTF-N    INFORMATIVE CHRONO

Exp "12"

Exh. "13"

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC-128 B (8-87)

NAME and NUMBER    Weir,    C02190,    DO059L

Inmate Weir, C02190, has been an active member of Narcotics Anonymous at CTF-North Facility during the 1st quarter of 2007. In his enthusiastic participation, he has contributed a lot of support towards the program, and achieved tremendous personal success in his efforts towards recovery and self-improvement. He should be commended for his sincerity and commitment in dealing with this ongoing challenge.

ORIG:    C-File
cc:      NA File
         Inmate

David Rodriguez, Sponsor
Narcotics Anonymous
CTF-NORTH FACILITY

**DATE**  4/10/2007

CTF-N    **INFORMATIVE CHRONO**

Exh. "13'

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

San Bernardino Superior Court
351 N Arrowhead Ave
San Bernardino, CA 92415
-----------------------------------------------------------------------
-----------------------------------------------------------------------

CASE NO: SWHSS9118

I M P O R T A N T   C O R R E S P O N D E N C E

From the above entitled court, enclosed you will find:

-----------------------------------------------------------------------
-----------------------------------------------------------------------

CERTIFICATE OF SERVICE BY MAIL

I hereby declare that I am over the age of 18 years, a resident of San
Bernardino County, State of California, and not a party to nor
interested in the above-entitled case. I am a Deputy Court Executive
Officer of the said County and on the date shown below I served the
above named document by enclosing it in an envelope addressed to the
interested party, for collection and mailing this date, following
ordinary business practice.

Executed on 05/30/07 at San Bernardino, CA. By ESPERANZA MORTSOLF

-----------------------------------------------------------------------

M A I L I N G   C O V E R   S H E E T

Notice 'ADDRES' has been printed for the following Attorneys/Firms
or Parties for Case Number SWHSS9118 on  5/30/07:


DUANE ROY WEIR
PO BOX 705/ND 59L
SOLEDAD,CA 93960-0705

COUNTY OF SAN BERNARDINO SUPERIOR COURT
STATE OF CALIFORNIA
MINUTE ORDER

CASE NO:        SWHSS9118              DATE:  05/25/07

CASE TITLE:    IN THE MATTER OF DUANE ROY WEIR

------------------------------------------------------------------
DEPT: S12 05/25/07 TIME:  8:30
Hearing Re: PETITION FOR WRIT OF HABEAS CORPUS.
------------------------------------------------------------------

COMPLAINT TYPE: WHC

---

JUDGE BRIAN S MCCARVILLE presiding.

Clerk: ESPERANZA MORTSOLF

-

APPEARANCES:

No appearance.

-

PROCEEDINGS:

THE COURT HAS READ AND CONSIDERED THE PETITION FOR WRIT OF HABEAS
CORPUS AND RULES AS FOLLOWS:

PETITION FOR WRIT OF HABEAS CORPUS of WEIR Denied

PLEASE SEE WRITTEN RULING FOR ANY FINDINGS

Correspondence coversheet generated to mail COPY OF ORDER DENYING
WRIT to counsel of record.

Notice given by Courtroom Clerk.

1    **SUPERIOR COURT**
     **COUNTY OF SAN BERNARDINO**
2    Department No. S-12
     351 North Arrowhead Avenue
3    San Bernardino, California 92415-0240

**F I L E D**
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

4

5                               MAY 2 5 2007

6

7                    BY _Jspreeryo C. Mutrell_
                                      DEPUTY

8        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9             FOR THE COUNTY OF SAN BERNARDINO

10                  SAN BERNARDINO DISTRICT

11

12   In re the Petition of              )   Case No. SWHSS-9118

13                               )   ORDER DENYING PETITION
        DUANE ROY WEIR,         )   FOR WRIT OF HABEAS CORPUS

14                               )

15   For Writ of Habeas Corpus.      )
                                    )

16

17        Petitioner filed this Petition for Habeas Corpus concerning his latest denial of a

18 finding of unsuitability for parole on March 16, 2006 by the Board of Parole Hearings.

19 He filed his Petition in the Superior Court in the County of Monterey but because he

20 was convicted in the County of San Bernardino, the Petition was transferred to this

21 court on December 29, 2006. The Petition was actually received and filed on January

22 8, 2007.

23        The court has read and considered the Petition; the Informal Response filed on

24 March 26, 2007; and the Informal Reply filed on May 14, 2007.

25        The Petitioner has had fourteen (14) hearings since his being received by the

26 Department of Corrections. In April of 2002, he was found suitable but this finding was

27 reversed by the Governor on September 13, 2002. Thereafter, he appeared before the

28 Board two times and he was found unsuitable for parole. The last time was on March

1  13, 2006 and it is on the basis of the finding at this hearing that the present Petition

2  was filed.

3       The Petitioner contends that his due process rights are being denied by the

4  continual denial of parole on the unchanging facts of the committed crime and his prior

5  criminal history. This court denied on December 16, 2005 the Petitioner's Petition for

6  Habeas Corpus requesting that the finding of unsuitability on August 6, 2004 be set

7  aside. This court set forth the facts of the committed crime in its order of December 16,

8  2005 and it is not necessary to repeat them here.

9       Basically, the Board reviewed the same factors in the latest hearing that were

10  considered in the August of 2004 proceedings.

11      Just as the facts of the Petitioner's committed crime have not changed, the law

12  concerning the trial courts authority considering the findings of the Board has not been

13  altered.

14      In re Rosenkrantz 29 Cal. 4th 616 and In re John E. Dannenberg 34 Cal. 4th

15  1061 still contain the last and most definitive word on the area of law controlling judicial

16  review of Board of Parole Hearing decisions denying a finding of suitability for parole

17  and the Governor's reversal of the Board's decisions which do find suitability.

18  Although these holdings in the High Court with ruling on the Governor's actions, the

19  rules concerning review also apply judicial review of a Board of Parole Hearings

20  decisions. This is evident by the court referring continually to the rules which govern

21  the Board as being the same rules that control judicial review of the Governor's

22  decision.

23      In re John E. Dannenberg 34 Cal.4th 1061 held that nothing in Penal Code §

24  3041 stated or suggested that the Board had to evaluate the case under standards of

25  term uniformity before exercising its authority to deny a parole on grounds that the

26  particular offenders criminality presented a continuing public danger. The court held

27  that the Board exercising its traditional broad discretion could protect public safety in

28  each individual case by considering the dangerous implications of a life prisoner's

1    crime individually.

2        Penal Code Section 3041(b) provides for parole review of inmates such as

3    petitioner and further provides that such inmates shall be given a release date unless

4    the Board determines that the gravity of the current convicted offense is such that

5    consideration of the public safety requires a more lengthy period of incarceration.

6    California Code of Regulations, Title 15, Section 2402(a)(b)(c)(d) sets forth the rules by

7    which the Board is to make its determination. As stated by the court, parole applicants

8    have an expectation of being granted parole unless the Board finds in the exercise of

9    its discretion that the applicant is unsuitable. The operative words are "in the exercise

10   of its discretion." Judicial review of this discretion is limited only to a determination of

11   whether there is "some evidence" in the record to support the decision. As held by the

12   Court, this standard of "some evidence" is extremely deferential.

13       The reviewing court is prohibited from conducting an independent assessment

14   of the merits or considering whether substantial evidence supports the findings of the

15   Board and its underlying decision. The Board is required to consider the petitioner's

16   background, his institutional participation, post-parole plans, as well as the

17   psychological evaluations. The high Court held, however, that the nature of the

18   inmate's offense, alone, can constitute a sufficient basis for denying parole. This does

19   not permit the paroling authority to automatically exclude parole for individuals who

20   have been convicted of a particular type of offense.

21       A review of the record supports a finding that there was "some evidence" which

22   led the Board to its finding of unsuitability of the petitioner for parole, for as the Court

23   described such evidence, it need be only a "modicum" of evidence.

24       The Board did consider the positive factors which favored parole and made its

25   finding that these did not outweigh the factors surrounding the circumstances of the

26   crime. While the decision did not reflect the weighing process of the Board, the

27   Rosenkrantz Court, at page 677, clearly states that the Board need not explain its

28   decision or the precise manner in which the specific facts were relevant to parole

1  suitability. This consideration and balancing lie within the discretion of the Board.

2      It is plain and the Board stated in its decision that the primary basis for the

3  finding of the Petitioner being unsuitable for parole and that he would impose an

4  unreasonable risk or threat to society was the circumstances of the crime. The Board

5  thoroughly discussed the circumstances of the crime and its reasons and there is no

6  need for this court to reiterate those reasons stated, except to say that there is more

7  than "some evidence" to support the Board's finding.

8      The Board did make some specific suggestions to the Petitioner as to items that

9  should be of concern for his next hearing. Most of the suggestions were that the

10 Petitioner and his wife have specific plans for the Petitioner and his living

11 circumstances once he is found suitable for parole.

12

13     The Petition for Writ of Habeas Corpus is denied.

14

15 Dated this ___25___ day of May, 2007.

16

17

18

19 BRIAN S. McCARVILLE
   Judge of the Superior Court

20

21

22

23

24

25

26

27

28

-4-

COMMUNITY RELEASE BOARD
REGISTER 78, No.31

In 1978 the CRB repealed Article 5 of Chapter 3 of Division 2 of Title §15 of the Cal. Administrative Code (15 CAC 2280-2297) and substituted a newly revised Article 5 (15 CAC 2280-2292). Cal. Notice Register 78, No. 31 (July 31.1978).

PAROLE CONSIDERTATION CRITERIA AND GUIDELINES AS FOLLOWS:

(CAC 2281(c): Circumstances Tending to Show Unsuitability.

(1) Previous record of Violence.  the prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(2) Childhood abuse. The prisoner was raised in a home in which he or his siblings suffered unusual physical abuse.

(3) Sadistic sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(4) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

(5) Bizarre Conduct After Crime.  The prisoner abused, defiled or mutilated the corpse.

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

(Continue)
(1)

COMMUNITY RELEASE BOARD
REGISTER 78. No.31

PAROLE CONSIDERATION CRITERIA AND GUIDELINES AS FOLLOWS:

(CAC §2281(d)   Circumstances Tending to Show Suitability.

(1)  **No Juvenile Record. The** prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potenial of personal harm to victims.

(2)  **Stable Social History.** The prisoner has experienced reasonably stable relationships with others.

(3)  **Signs of Remorse.**  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or the prisoner has given indications that he understands the nature and magnitude of the offense.

(4)  **Motivation for Crime.** The prisoner committed his crime as the result of significant stress in his life, especially if the stress had built over a long period of time.

(5)  **Lack of Criminal History.** The prisoner lacks any significant history of violent crime.

(6)  **Age.** The prisoner's present age reduces the probability of recidivism.

(7)  **Understanding and Plans for Future.** The prisoner has made realistic plans for release.

(8)  **Institutional Behavior.**  institutional indicate an enhanced ability to function within the law upon release.

(2)

conf 9-18

ORIGINAL

DUANE ROY WEIR
C-02190..C.T.F.N. N.D.59L
P.O. BOX 705
SOLEDAD. CALIFORNIA. 93960-0705

Friday..August 17th.2007

RECEIVED
AUG 2 1 2007
CLERK SUPREME COURT

Supreme Court of California

Frederick K.Ohlrich
Court Administrator And
Clerk of the Supreme Court

    Re: S154667 (E043443) - In Re Duane Roy Weir on Habeas Corpus

Dear Hon.Clerk H.Miner:

   Pursuant to the Hon.Court Order on August 2.2007. Petitioner notes
limited to the additional issues presented in the answer, if any. There
is additional issue Petitioner wanting to present but its devastating
Petitioner is being denied access to the Board decision of July 20.1993
by counselor Creamer and also by Claaification & Parole Representative-
and the Board of Parole Hearings.

   Petitioner realize there is time limit as the Hon.Court asserted in
the Order on August 2.2007. On July 29.2007 Petitioner requested the
Board decision through Multi-Purpose Form address to counselor Creamer
counselor would not respond to on the Form. Counselor provided documents
of an investigation that was requested by Board and others documents which
had nothing to do with what Petitioner requested. Petitioner filed Appeal
August 8th.2007, Requesting Board decision of July 20.1993. Counselor has
completely evaded what Petitioner requested. The date of Counselor Creamer
response was August 13th.2007. Petitioner has presented all docuemts of
evidence to the Appeal Petitioner had contacted which Claaification & Par-
ole Reprsentative on August 4th.2007, requesting Board decision of July 20.
1993. No response. Petitioner is being denied access to the HonCourt and

(Continue-1-)

it must be noted in Petitioner's **Petition** for Habeas Corpus at page-A-8 <u>list</u> all the **subsequent board hearings.** Note line 18 through 21 of page-8. It reveals the July 20.1993 Board hearing without a Board decision.

As to Petitioner's CDC - 602 - Appeal of August 8th.2007. All concerning Board decision of July 20.1993. Petitioner will not get the document in time to present it in the additional issue in the Supreme Court because the Appeals Office should process Petitioner's Appeal around August 20.2007. It will be some time before Appeal Office returns Appeal. The other critical factor is on the next level of the appeal the counselor has 15 **working days** to make the respose which that would be September 10.2007 , and thats if counselor first had the appeal before Appeals Office. As one notes "Exhibit"B" I had contacted Classification & Parole Representative for the Board decision on <u>August 4th. 2007</u> which would have been time to present it to the Supreme Court thats if they provided me a copy of it.

<u>It must also be noted in the appeal -CDC - 602 - Petitioner has did</u> everything for the past **fourteen (14) years** to get the Board decision of July-20.1993. Without **question** the Hon. Court will **question** why there is no Board decision when the Board hearing was completed and the investigation by them.

The question must be ask why won't they provide copy of Board decision of July 20.1993. Petitioner has to have <u>all Board decisions</u> that is the very first Board hearing of February 23.1984. And the last Sixteen (16) subsequent Board hearings. Decisions of all hearings needed for Supreme Court. Petitioner just needs the one of July 20.1993. Without all these Board decisions Petitioner cannot present his case to the Hon. Supreme Court. Note the Motion presented to Superior Court.

It must be noted the California Attorney General- Edmund G.Brown Jr. has been provided with copies of everything this Hon. Court has been provided with and Superior Court also.

I, <u>Duane Roy Weir,</u> declare under penalty of perjury and under the laws of California that the above is true and correct.

Respectfully

xx _Duane R. Weir_

e/c Duane R.Weir

1  DUANE ROY WEIR
   C-02190..C.T.F.N. N.D.59L
2  P.O. BOX 705
   Soledad.CA.93960-0705

3                                              *COPY*

4  Petitioner In Pro Per

5

6

7              SUPERIOR COURT OF CALIFORNIA

8                   COUNTY OF MONTEREY

9

10  DUANE ROY WEIR,          )   CASE NO: _____
                             )
11              Petitioner   )   MOTION FOR EMERGENCY ORDER TO
                             )   COMPEL CLASSIFICATION & PAROLE
12     vs.                   )   REPRESENTATIVE OR BOARD OF PAROLE
                             )   HEARINGS FOR BOARD DECISION OF
13  BEN CURRY (Warden)       )   JULY 20.1993.
                             )
14  _____ )

15

16      TO: THE HONORABLE JONATHAN R. PRICE, JUDGE, SUPERIOR COURT

17  OF CALIFORNIA, COUNTY OF MONTEREY.

18

19      Comes Now Duane Roy Weir (hereafter Petitioner) with his

20  Motion for Emergency Order to Compel Classification & Parole

21  Representative or Board of Parole Hearings for Board Decision of

22  July 20.1993 for the following:

23

24      Petitioner would like to direct the Hon. Court attention

25  to Supreme Court Order of August 2.2007 (See Exhibit"C". As the

26  Hon.Court notes time limit is extremely critical factor in any

27  response to the Courts. Here Petitioner has requested specific

28  //

                        (Continue-1-)

1 **document** that being the Board Decision of July 20.1993 (See-

2 "Exhibit"A". Petitioner fill-out the Multi-Purpose From on

3 July 29.2007. Requesting copy of the Board decision of July 20.

4 1993 which counselor Creamer made no response as to whether there

5 was a decision or not.

6

7    On August 8.2007. Petitioner filed appeal (See attached to -

8 "Exhibit"A" the CDC - 602 - Appeal. Here Petitioner once again

9 firmly makes it clear of requesting Board decision of July 20.

10 1993. Petitioner makes it clear this document is needed for the

11 **Court** which Petitioner is being denied his due process rights

12 and access to the Courts by counselor refusing to provide copy

13 of document requested.

14

15    Its evident counselor Creamer is very well **aware** of the vital

16 document Petitioner is requesting because at Section (C) on

17 appeal counselor Creamer reveals the following:

18               "Counselor Creamer: **Why is Inmate Weir requesting**

19                **document from fourteen (14) years ago".**

20    The Hon. Court notes counselor Creamer is asserting she has

21 provided me with documents. As the Hon. Court notes at **Section(D)**

22 **of Fromal Level.** Note the attached "page" Petitioner has set

23 forth **all documents** counselor Creamer provided. Petitioner has

24 number the pages which are mark in green page-1-through 7. The

25 Hon. Court will note there is no Board decision of July 20.1993.

26

27    Petitioner would like to dircte the Hon. Courts attention-

28 //

(Continue-2-)

1  as to "Exhibit"A" is attached CDC - 602 - Appeal and attached

2  to Appeal is <u>additional page</u> which Petitioner asserts th **Cal.**

3  **Code of Regs., §2084 "Access TO Records".** Counselor Creamer

4  completely ignored the above citation. The Hon. Court note the

5  following:

6              "By Petitioner" I request an investigation
             into counselor Creamer denying me <u>"access</u>
7           <u>to the Court"</u> and <u>documents requested for</u>
            <u>the Court."</u> (See Section (B) of Action-
8           Requested -CDC- 602 -Appeal.

9  **As the Hon. Court notes on page-2- line 18-19, counselor**

10 **Creamer is requestioning why Petitioner is requesting document**

11 **from fourteen (14) years ago.** Counselor Creamer <u>refusing</u> to note

12 Petitioner has made it very clear the <u>document</u> is needed for the

13 <u>Supreme Court Order of August 2.2007</u> and document needed for the

14 <u>Federal Court.</u> **(See attached)(Exhibit"C").**

15

16 **Petitioner** would like to direct the Hon. Courts attention to

17 the following:

18              "See attached "Exhibit"A" Multi-Purpose Form
             and attached to it is the CDC-602-Appeal-
19           with the additional page. Next would be the
             Section (D)-Formal Level additional page.
20

21 **T**he Hon. Court notes that is the four (4) pages of the CDC-602-

22 Appeal. Petitioner would like to direct the Hon. Courts attention

23 to "page of appeal. The <u>documents</u> counselor Creamer asserted

24 that was provided to Petitioner are noted on this page. As the

25 Hon. Court notes the <u>next seven (7) pages are number and mark</u>

26 <u>in green.</u> The first two-pages are the BPT- 1001A (Rev. 10/89)-

27   The thrid (3) page is "Request Fro Investigation" of July 20.

28 1993.

1    As the Hon. Court notes the thrid (3) document-Request For-

2  Investigation" which hearing did take place. It is further noted

3  with the fourth (4) document of BPT 1001 (Rev. 1/91) Life -

4  Prisoner Decision Face Sheet. There is document evidence that

5  there was no psych counsel that existed. The extremely critical

6  factor here as follows;

7          "By Board Commissioner: Same Panel to
              sit for final decision.:
8

9  . The  Hon. Court note the last three (3) pages of the seven (7)

10  note 5, 6 and 7 are documents Petitioner wrote to Dr.Kitt.

11

12    Petitioner would like to direct the Hon. Courts attention to

13  "Exhibit"B" the Memorandum dated August 4th.2007 to Classifica-

14  tion & Parole Representative requesting copy of the July 20.1993

15  Board decision. Petitioner has never received response from any-

16  one as to this request. In violation of Cal. Code of Regs., §

17  2084 (A) and (C).

18

19    As the Hon. Court notes the CDC - 602 - Appeal was filed on

20  August 8.2007. Npte counselor Creamer response was on August 13.

21  2007. Petitioner made the Informal Level-Response om August -

22  14,2007. The Hon. Court must note counselor Creamer has 15 work-

23  ing days to make the response. Note that would be September 10.

24  2007. Petitioner has till August 31.2007 for his reply in the

25  California Supreme Court.

26    Petitioner contends he is being denied access to the Courts

27  and denied his Sixth, Fourteenth amendment to the United States

28  //

          (Continue-4-)

1  Constitution by being denied documents for Supreme Court and

2  Federal Court.

3

4  Petitioner has been denied **Board decision of July 20.1993 for**

5  **fourteen (14) years.**  Denying Petitioner of his due process rights

6  guarantee under the Fourteenth amendment of the United States

7  Constitution.

8

9                          CONCLUSION

10  Wherefore, for the foregoing reasons, it is respectfully

11  requested that the Hon. Court issue an immediately Order to

12  compel the Classicification & Parole Representative or Board

13  of Parole Hearings to provide Petitioner copy of the July 20.1993

14  Board decision.

15

16              DECLARATION OF SERVICE BY MAIL

17  I, Duane Roy Weir, do hereby declare that I'am a citizen of the

18  United States. And over 18 years of age. My address is Correct-

19  ional Traing Facilty.Soledad.CA.93960-0705

20  On the date set forth below. I deposited in the mail at Correc-

21  tional Traing Facilty. P.O. BOX 705.Soledad.CA. True copy of tthe

22  Motion to the following:

              (1). Edmund G.Brown Jr.
23                Attorney General of California
                  300 South Spring St. Suite-1702
24                Los Angeles.CA.90013

25  I, Duane Roy Weir, declare under the penalty of perjury and

26  under the laws of California that the above is true and correct.

27  Executed: August 18.2007.                    Respectfully

28

                          (-5-)

```
            DUANE ROY WEIR
        C-02190..C.T.F.N.D.59L
            P.O. BOX 705
       SOLEDAD. CALIFORNIA 93960-0705

            August 18.2007
```

Superior Court
Hon. Jonathan R.Price
240 Church Street. Suite"318"
Salinas.California 93901

```
        RECEIVED
        AUG 2 1 2007
      CLERK SUPREME COURT
```

Re: DUANE ROY WEIR..CASE NO: HC 5745

Dear Hon.Price:

I respectfully would appreciate few minutes of the Hon. Courts time for the following:

I'm in receipt of the Hon. Courts Order of July 26.2007. I received it on Monday. July 30.2007. I note on the second page it reveals the <u>informal response</u> shall be filed within 15 days. I believe the 15 days would be <u>August 13.2007.</u> I'm wondering now because I have not received to this day. August 18.2007 any kind of document which would be the <u>informal response.</u>

I note that it says I have 15 days to file a <u>reply.</u> I respectfully would appreciate if the Hon. Court would inform me as what to do.

I respectfully appreciate the Hon. Courts time and help in this matter.

c/c   Edmund G.Brown Jr
      Attorney General of California
      300 South Spring St. Suite-1702
      Los Angeles.CA.90013

      Duane Roy Weir                          Respectfully

                                              DUANE ROY WEIR.

# MULTI-PURPOSE FORM

TO: __Counselor Creamer_____ DATE: __July 29."07__
      (Name)                          (Title)

"EXHIBIT"A"

- ☐ MEDICAL CONCERN
- ☐ DENTAL CONCERN
- ☐ VISITING CONCERN
- ☐ REQUEST FOR INTERVIEW
- ☐ PACKAGE ROOM
- ☐ REQUEST FOR I.D. CARD
- ☐ REQUEST TO REVIEW CENTRAL FILE
- ☐ MAIL ROOM: Request for metered envelopes (No Funds)
- ☐ E.P.R.D.: You should be within six (6) months of release date to inquire

- ☐ TRUST ACCOUNT BALANCE $ _____
- ☐ TRUST ACCOUNT WITHDRAWAL
- ☐ REQUEST FOR ROOM CHANGE
- ☐ REQUEST FOR UNIT CHANGE
- ☐ FAMILY HOUSING UNIT VISIT INTERVIEW
- ☐ REQUEST FOR CHAPLAIN INTERVIEW
- ☐ MEDICALLY CLEARED FOR CULINARY REQUEST

REASON FOR REQUEST (Be specific: Explain your problem): __I respectfully would appreciate it__
__if you can provide me with a copy of the July 20.1993 –Board decision.I will__
__pay for it. Thank you. Note There was a "Board" hearing.__

DATE: _____ STAFF RESPONSE: _____

INMATE NAME: _Weir_____ INMATE NUMBER: _C-02190_ CELL: _N.D.596_
ASSIGNMENT: _Textiles_____ HOURS: _6:30 Am TB 4._ RDOs: ~~Thurs~~ Fri-Sat-Su

CTF 304 (Rev. 4/97)

"EXHIBIT"A"

*See attached ~ Appeal 602-
with additional page- and
last page of the Forms I faxed.
Next the seven (7) pages.*

STATE OF CALIFORNIA                                                                 DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1. | CTF-North | 1. | |
| 2. | | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Weir, Duane R | C-02190 | Textiles-X-Shift | N.D.59L |

A. Describe Problem: On July 29.2007. Appellant confronted counselor Creamer and presented Multi-Purpose Form revealing the following:

    "I respectfully would appreciate it if you can provide me with a copy of the July 20.1993-Board decision. I will pay for it."

Counselor Creamer completely ignored my request. Counselor refuse to provide information on Multi-Purpose From. All was (attached) to the form was documents I didn't request. This tells me nothing.            (Continue)(PAGE-1)

If you need more space, attach one additional sheet.

B. Action Requested:    I request an investigation into counselor Creamer denying me "Access to the Court" and docuements requested for the court. Request documents as mention above and for violating Cal. Code of Regs., §2084 under Article 8- of Information Practices Act and also In re Olson (1974) 37 Cal. App. 3d 782(= 112 Cal. Rptr.579).

Inmate/Parolee Signature: _Duane R. Weir_                        Date Submitted: August 8"07

C. INFORMAL LEVEL (Date Received: 8-13-2007  )

Staff Response: I went to BPH in Record + made copies of what I could locate for 1993. I hand carried the copies to Inmate Weir. Why is Inmate Weir requesting documents from fourteen years ago. BPH in Records has Inmate Weir's C-file. I spoke with CCII J. Studebaker. She has made several copies of documents from 1993 throughout the years. Inmate Weir has documents of everything he has requested while at CTF

Staff Signature: _McKinn-Todd_                        Date Returned to Inmate: 8-13-2007

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

    It's evident counselor Creamer continues to evade the specific document requested. The "Board Decision of July 20.1993". Note the (attached) Multi-Purpose From dated July 29.2006(Exhibit"A")." It's very clear what I requested. Note the six(6) documents attached. I didn't request them. There of an --
                                                        (See attached page)

Signature: _____                        Date Submitted: Aug.14.2007

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

c/c Duane R.Weir
    Keith Wattley & Prison Law Office

(Appeal of August 8.2007)

(Section"A" of Problem)

(Page-1-)

On numerous times now I have confronted counselor Creamer about the court document needed. Its evident counselor Creamer has failed to consult with proper authority for <u>answers</u> to procedures of the Board or CDC that has <u>control</u> of <u>all</u> C-Files. The Board has <u>no authority</u> as to what is presented in C-File. It must also be noted C&PR has <u>no authority</u> over C-File.

Counselor Creamer has failed to accept the following:

Cal. Code of Regs,.§2084: <u>Access to Records:</u>

(a) General. Any person has the right to inquire whether the board maintains a record containing information about that person. Inquires <u>shall be submitted</u> to the executive officer. <u>All board employees shall cooperate to assist persons making inquiries.</u> (See attached)(<u>Exhibit"B"</u>)

(c) If the person requesting review is a prisoner or parolee and the <u>infomation in the board file is not also in the central file, copies of the personal information. the identify of sources and the accountings of disclosure shall be sent to the C&PR or parole agent, who shall give copies to the prisoner or parolee,</u>".

I once againg request that I be provided with copy of theboard decision of July 20.1993. If there is no decision. Please provide it in writing that there is no decision or whatever information there is about the 1993 board decision.

3/

(APPEAL OF AUGUST 8TH.2007)
(Section"D"-Formal Level)

investigation of 1993. As one notes the first two documents are the
BPT 1001A (Rev. 10/89) both documents refer to the request for postponement
which was denied.

Note document three (3) BPT 1001 (Rev. 1/91) revealing the "Decision"
is postponed until Prisoner completes psych-counsel. Note same panel to sit
for "Final Decision".

The fourth (4) document is the request for investigation..

The fifth (5) document is letter to Dr.Kitt dated July 12th.1993 which
is a two-page document.

The sixth (6) document to Dr.Kitt.

Counselor Creamer right out refuse to provide me with copy of the
July 20.1993 Board decision. This is the only document I'm requesting.

It is further noted counselor Creamer is aware of what I'm requesting
because  in counselor Creamer response she states the following:

    "Counselor Creamer: Why is Inmate Weir requesting
     document from fourteen (14) years ago".

Counselor Creamer is very well aware of what I'm requesting but right
refuse provide me with a copy or state it that there is no decision. Counselor
fails to realize that I may request any document for court proceedings and as
I said I will pay for it. Its not the counselor duty or authority to question
why I need the documents for court.

Take note of "Exhibit"B" the "Memorandum" dated August 4.2007. address
to C&PR requesting copy of July 20.1993 Board decision. No response from C&PR.

See attached "Exhibit"C" from the California Supreme Court dated
August.2.2007. As its noted the AG has until August 22.2007 to
make respnse. I have ten (10) days and document requested of the
July 20.1993 Board decision is needed for this Court proceedings.

c/c DRW                                          Respectfully

                                                 _Duane R. Weir_
                                                 DUANE ROY WEIR C-02190

4/

BOARD OF PRISON TERMS
LIFE PRISONER HEARING – EXTRAORDINARY ACTION AND DECISION

STATE OF CALIFORNIA
BPT 1001A (Rev. 10/89)

| ACTION TYPE (select one) | ☐ Waiver of Appearance | ☒ Request for Postponement | ☐ Waiver of Parole Consideration Hearing- Stipulation of Unsuitability |
|---|---|---|---|
| HEARING TYPE (select one) | ☐ Parole Consideration | ☐ Progress | ☐ Rescission | Hearing Date  7-20-93 |

## WAIVER OF RIGHT TO ATTEND HEARING

I understand that I am scheduled for the Board of Prison Terms hearing indicated above.

☐ I do not wish to attend my Board hearing and do not wish to be represented at the hearing. The hearing will be held in my absence.

☐ I do not personally wish to attend my hearing but I do wish to be represented by counsel at the hearing.

    ☐ I will employ counsel to represent me at the hearing.

    ☐ I cannot afford counsel and wish counsel appointed to represent me.

## POSTPONEMENT

I understand that I am scheduled for the Board of Prison Terms hearing indicated above.

☒ I hereby request that the hearing indicated above be Postponed to _Oct. 1995_
The reasons for my request for a postponement are stated below.

## WAIVER OF HEARING AND STIPULATION TO UNSUITABILITY

I understand that I am scheduled for the Board of Prison Terms hearing indicated above.

☐ I waive my right to a parole consideration hearing and I waive the right to have an attorney represent me at a hearing in my absence. I find that I am unsuitable for parole based on my reasons given on this form and therefore request that you find me unsuitable:

    ☐ One-year Denial     ☐ Two-year Denial     ☐ Three-year Denial

PRISONER'S REASON(S) FOR REQUEST:
(For Example: Psychiatric Evaluation Not-Supportive, Programming Inadequate, Cat H Incomplete, etc.)

_See attached letter dated 7-12-93._

| | |
|---|---|
| Signature of Prisoner  _Duane R Weir_ | Date  7-13-93 |
| Signature of Attorney (if applicable) | Date |
| Signature and Title of Witness (CDC)  _E.W. Carnegie_  CC-I | Date  7-13-93 |

NAME  WEIR, DUANE     CDC NUMBER C-02190  INSTITUTION   CTF   CALENDAR 7/93 DATE

BOARD OF PRISON TERMS
LIFE PRISONER HEARING – EXTRAORDINARY ACTION AND DECISION

STATE OF CALIFORNIA
BPT 1001A (Rev. 10/89)

[✓] I certify to the best of my knowledge and information, the foregoing reasons as stated by the prisoner are accurate, and that the prisoner was capable of making a knowledgeable decision regarding his/her hearing.

The following information is submitted for the Board's consideration in making their decision:

Inmate Weir received his copy of his psych report on June 15 He has filed this request for postponement July 13, 1993 for a hearing scheduled for 7-20-93

CDPR Signature _[signature]_                                        Date  7-13-93

*FOR BOARD OF PRISON TERMS USE ONLY*

## DECISION / ORDER

### WAIVER OF RIGHT TO ATTEND HEARING

1.  [ ] Request is denied.
    [ ] Request is granted. Hearing will be conducted in absence of prisoner.

### POSTPONEMENT

2.  [✓] Request is denied.
    [ ] Request is granted. Grant based on a finding of good cause. Place on _____ calendar.

### WAIVER OF HEARING AND STIPULATION TO UNSUITABILITY

3.  [ ] Request is denied.
    [ ] Request is granted. The Board agrees to enter into the stipulation, on a finding of good cause, offered by the prisoner on the waiver of his/her Life Parole Consideration Hearing and orders a:
    [ ] One-year denial    [ ] Two-year denial*    [ ] Three-year denial**

\* The Board must find it unreasonable to expect that the prisoner would be eligible for parole during the second, or second and third year, and the Board must state the reasons for its finding.

\*\* In addition to the above (*), the prisoner must have been convicted of more than one offense which involves the taking of a life.

(The basis of the finding of good cause for postponement or multiple-year denial must be stated below.)

    [ ] Good cause based on the reasons given by the prisoner.

Other comments (if applicable):

_____

_____

_____

Signature of BPT Commissioners

1. _[signature]_                                        Date  7/19/93

2. _[signature]_                                        Date

BPT Action Taken At:  [✓] BPT Headquarters    [✓] Institution

NAME  WEIR, DUANE    CDC NUMBER  C-02190  INSTITUTION  CTF    CALENDAR  7-93  DATE

# REQUEST FOR INVESTIGATION

TO:  Executive Officer, Board of Prison Terms        Date: 7-20-93

Name  Weir, Duane

Number  C-02190        Institution:  CTF

Board of Prison Terms Action: Sub parole.

Panel Members: Koenig, Giaquinto, O'Connell

Areas To Be Covered: (List Numerically)

(1) Based on documents submitted at 7/6/93 hearing from trial testimony of Dr. Modglin, plus newspaper articles regarding forensic pathologist Dr. Harry Scott, the panel wants the San Bernadino District attorney to comment on the autopsy procedures. It is noted that CP'm Weir was acquitted due to no murder occurring from gunshot wounds to victims.
Is it possible that due to faulty autopsy, no actual murder occurred. Dr. Michels

General Comments:
testimony in transcript disputes Dr. Scott's testimony.
Was Dr. Scott investigated by San Bern DA or S.O.? Was he allowed to continue doing forensic autopsies for the Co.
Was Dr. Scott found faulty by SBSO D.A.? as alleged in articles. Roy (Koenig)
3) Panel wants the testimony in Brown's trial re the cause of death. B. Wilken

MEMBER/REPRESENTATIVE

WHITE — BPT Executive Officer
CANARY — C File

BPT 1083 (Rev. 8/91)        Use Additional Sheets If Necessary

BOARD OF PRISON TERMS                                                    STATE OF CALIFORNIA

# LIFE PRISONER DECISION FACE SHEET

## PERIOD OF CONFINEMENT

### (RECORDS OFFICER USE ONLY)

|                                    | YR   | MO   | DAY |
|------------------------------------|------|------|-----|
| Adjusted Period of Confinement .....................................................  |      |      |     |
| Date Life Term Begins ................................................................  | + 79 | 03   | 01  |
| At Large Time ...........................................................................  | +    |      |     |
| PAROLE DATE .........................................................................  | =    |      |     |

## MISCELLANEOUS

Decision is postponed until Prisoner completes parole counsel and
certain questions by the panel is answered by the San Bono District Attorney
office. Officer panel requests the Prisoner be sent as soon as
possible to Appropriate Facility and returned immediately to CTF
for a continuation of this subsequent hearing.
    Same panel (to sit for) final decision

PENAL CODE SECTION 3042 NOTICES    ☒ SENT    (Date) _7-20-93_

COMMITTMENT OFFENSE

| P187 | | MURDER 1ST |
|------|--|------------|
| (Code Section) | | (Title) |
| SCR34989 | | CT.1 |
| (Case Number) | | (Count Number) |

| Date Received by CDC | Date Life Term Begins | Controlling MEPD |
|----------------------|----------------------|------------------|
| 3-1-79 | | 3-25-85 |

| Type of Hearing | If Subsequent Hearing, Date of Last Hearing |
|-----------------|----------------------------------------------|
| ☐ INITIAL   ☒ SUBSEQUENT (Hearing No.) _SEVEN_ | 6-2-92 |

Department Representative

| Counsel for Prisoner | Address |
|----------------------|---------|
| DAVID SPOWART | |
| District Attorney Representative | County |
| | SAN BERNARDINO |

## PAROLE HEARING CALENDAR

This form and the panel's statement at the conclusion of the hearing constitute a _proposed_ decision and order of the Board of Prison Terms. The decision becomes effective when issued following the decision review process.

By:

| Presiding (Name) | | Date |
|------------------|--|------|
| Concurring (Name) | | Date |
| Concurring (Name) | | Date |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|------|------------|-------------|----------|--------------|
| WEIR | C02190 | CTF-SOLEDAD | JULY '93 | 7-20-93 |

BPT 1001 (REV. 1/91)                                          PERMANENT ADDENDA

Duane R. Weir
C-02190-C.T.F.N.D.7L.
P.O. Box 705
Soledad.Ca.93960-0705

Monday- July12th,1993.

Mr.John W. Gillis
Board Of Prison Terms
545 Downtown Plaza
Suite 200
Sacramento.Ca. 95814

Dear Mr.Gillis:

Pursuant to the eighth Subsequent Hearing of July 20th, 1993.,at ten a.m.,

I am requesting a postponement for three months for the following:

On 3/8/93. I went to see Psychologist, Ronald H. Kitt, Ph.D. in
C.T.F., for the Evaluation Report for this coming Board Hearing
of July 20th,1993.

Upon entering Dr.Kitt office, I immediately handed Dr.Kitt a
typed letter indicating that I decline the interview, and as I
explain in detail the reason for declining the interview.  It
was very evident that Dr.Kitt was affended by the letter."See -
attached letter of 3/7/93."

The Evaluation Report by Dr.Kitt, at line-9 and 10., Dr.Kitt has
stated that I agree to proceed with the interview, but he has
failed to mention one thing,and that is that he inform me that I
had "No" choice on the Board Evaluation Report because he said
that he was the only one doing the Evaluation Reports for the BPT,
and thats the only reason that I agree to proceed with it.

On June 17th,1993. I went to see Dr.Bakeman, this was due to the
Evaluation Report of Dr.Kitt. I don't believe its fair to Dr.Bake-
man that Dr.Kitt put him in a situation.  It appears that Dr.Kitt
thinks that I am lying about seeing Dr.Bakeman. I do have inmate
"Passes" that reveal who I'm to report to on the "Pass", and that
is Dr.Bakeman.

On 6/20/93. I filed an Appeal- Log.No.93-01910.  This appeal was
filed concerning Dr.Kitt informing me that I would not receive a
release date, and he further stated that he was the only one doing
the Evaluation Reports for the BPT, in which I fine out that its
false. I know individuals that just went to see Dr.Bakeman for their
Board Evaluation Report.

On or about July 1, 1993. Thursday.  Chief-Medical Staff, Dr.Friedman
call me in for the interview on the Appeal of June 20th,1993.  At this
time Dr.Friedman ask me why I was being denied to be interview by
Dr.Bakeman.  I inform Dr.Friedman that Dr.Kitt inform me that I had
"No" choice on the Evaluation Report because he was the only one that
was doing the Evaluation Reports.

"Continued"                                            (1)

Dr. Friedman inform me that he would get back with me, within a week. As of this date, I have heard nothing from Dr. Friedman. Dr. Friedman did state that he was going to talk with Dr. Bakeman.

I fine it extremely difficult to believe as to why I'm being denied to be interview by Dr. Bakeman. This man has more insight on me then any other Psychiatric or Psychologist in the 15-years, and nine months that I have been incarceration.

The BPT has always made it very firmly that a Psychiatric or Psychologist cannot evaluate an individual in "15-minutes or a Half-Hour", or One-Hour.

Here Dr. Kitt informs me that I have a "Half-Hour" for the interview, and that I wasted "15-minutes" of it by wanting to ask questions, and he continue to tell me that it would not make any difference if he wrote a good report or a bad one, that I still would not get a parole release date.

The BPT has inform me that they want a Evaluation Report, its evident by Dr. Kitt report that there is no evaluation of me. Besides Dr. Kitt has no insight on me. Dr. Kitt allows an individual a "Half-Hour" for the interview, and thats it. I can provide other individuals that will reveal that its also happening to them, when their interview by Dr. Kitt.

As I firmly stated in the Appeal of 6/20/93., that I will submit to a CDC-Code of Regulation "3293", Polygraph Examination on what I have presented in this letter or the Appeal of 6/20/93.

In my medical file, there is a CDC-128-C, this is Dr. Bakeman "Lifeskills - Group", in which I participated in for ten-weeks, and have seen Dr. Bakeman at other times. The BPT has always inform me that I should see the Psychiatric or Psychologist when ever I cam, and discuss the crime and other factors. I have done this on my own, not for the BPT., besides that. Dr. Bakeman shows an interest in one and will work with one to get one to face and accept ones responsibilties for their actions.

What I have stated is the reason that Dr. Bakeman should be the one to do the evaluation on me, and this is the reason that I have requested the three-months postponement, so Dr. Bakeman can do the evaluation report on me.

Respectfully

Duane R. Weir-C-02190.
C.T.F.N.D.7L..Textiles-
Z-Shift.

c/c David J. Spoward, JR.,Attorney.
     Duane R. Weir

Duane R. Weir
C-02190-C.T.F.N.D.71
P.O. Box 705
Soledad, Ca. 93960-070
Monday, March 7, 199

Ronald Kitt, Ph.D.
Staff Psychologist
Correctional Training Facility, Soledad.

Dear Dr. Kitt:

With all respect to you, I personally have nothing against you, but I decline this interview, and request to see Dr. Bakeman due to the fact that this highly Professional Psychologist has more insight on me then any other professional Psychologist or Psychiatric in the system of the Department of Corrections.

I feel it would be very unfair to deny me the opportunity to be evaluated by Dr. Bakeman because its highly unfair to be evaluated by an individual that will see an individual once a year, or shows no interest in the individual or keeps in contact with the individual to see what progress that individual ha made.

I have notice in some interviews that I've had was not based on me, but it wa based on "paper work" of others in which all was look at was the negative aspects.

I cannot understand why it is that since I came to Soledad that its extremely difficult to see a psychiatric or a psychologist when the BPT request one to do this. I also don't understand why it is that since I've came to Soledad when one is being very open and truthful about his commitment offense and the accepting responsibilities for his action in the commitment offense that no one takes it seriously, or they don't have the time to listen to one. Another factor is that the C-File fails to present the commitment offense as to what participation the individual was involved in the commitment offense, and there is also the probation report that is not adequate to the commitment offense. So how can one be evaluated without the proper information on the commitment offense. You see no one looks at these vital factors. As for myself, Dr. Bakema has the insight on me, and he is highly respected by inmates because he brings out the problems one may have and helps one to deal with them.

So Dr. Kitt, I really respect your profession, and as I said that I have nothic against you, but I still request that I be interview by Dr. Bakeman.

Very Truly Yours

Duane R. Weir-C-02190
Textiles-C.T.F.N.D.7L.
3/8/93.

c/c Atty.

c/c D.R.W.

c/c CT.

M E M O R A N D U M

"EXHIBIT"B"

Date: **August 4.2007**

TO: John Monday (CPR)
Executive Officer (A)

Sandra D.Maciel, Manager (CPR)
Hearing Support Unit

From: Inmate: Weir,Duane R
C-02190..CTF-North (N.D.59L)

Subject:     BOARD HEARING DECISION OF July 20.1993

Dear Monday or Maciel:

I respectfully would appreciate few minutes of yours vital time for
the following:

(1). Request copy of the Board "Decision" of July 20.1993.

(2). Request copy of the Board "Decision" of July 20.1993 be placed
in C-File.

(3). Request copy of the Board "Decision: of July 20.1993 be placed
in the attorney pack of documents for Board.

(4). I will pay for all copies made and as mention above.

//

//                           "EXHIBIT"B"

//

c/c Duane R.Weir                              Respectfully
     Keith Wattley & Prison Law Office        *Duane R. Weir*



MARY JAMESON
AUTOMATIC APPEALS SUPERVISOR

JORGE NAVARRETE
SUPERVISING DEPUTY CLERK

SAN FRANCISCO

NATALIE ROBINSON
SUPERVISING DEPUTY CLERK

LOS ANGELES

SAN FRANCISCO 94102
EARL WARREN BUILDING
350 McALLISTER STREET
(415) 865-7000

☐  LOS ANGELES 90013
RONALD REAGAN BUILDING
300 SOUTH SPRING STREET
(213) 830-7570

## Supreme Court of California

FREDERICK K. OHLRICH
COURT ADMINISTRATOR AND
CLERK OF THE SUPREME COURT

August 2, 2007

Duane Roy Weir    C-02190
CTF – North  (N.D. 59L)
P. O. Box 705
Soledad, CA 93960-0705

Re: S154667 (E043443) – In re Soderstrom on Habeas Corpus

Dear Mr. Weir:

The court has granted permission to file the untimely petition for review and the petition was filed today.

An answer to the petition may be served and filed on or before August 22, 2007, twenty (20) days after the petition is filed.  The answer may present additional issues desired for review if the petition for review is granted.

A reply to the answer may be filed within 10 days after filing of the answer, limited to the additional issues presented in the answer, if any.

Very truly yours,

FREDERICK K. OHLRICH
Court Administrator and
Clerk of the Supreme Court

By:  H. Miner, Deputy Clerk

cc: Fourth District/Div. Two
    AG-San Diego

"EXHIBIT"C"

MARY JAMESON
AUTOMATIC APPEALS SUPERVISOR

JORGE NAVARRETE
SUPERVISING DEPUTY CLERK

SAN FRANCISCO
—
NATALIE ROBINSON
SUPERVISING DEPUTY CLERK

LOS ANGELES



*Supreme Court of California*

FREDERICK K. OHLRICH
COURT ADMINISTRATOR AND
CLERK OF THE SUPREME COURT

August 2, 2007

☒ SAN FRANCISCO 94102
EARL WARREN BUILDING
350 McALLISTER STREET
(415) 865-7000

☐ LOS ANGELES 90013
RONALD REAGAN BUILDING
300 SOUTH SPRING STREET
(213) 830-7570



FILED
AUG 15 2007

COURT OF APPEAL FOURTH DISTRICT

Duane Roy Weir    C-02190
CTF – North (N.D. 59L)
P. O. Box 705
Soledad, CA 93960-0705

　　　　Re: S154667 (E043443) – In re Soderstrom on Habeas Corpus

Dear Mr. Weir:

　　　　The court has granted permission to file the untimely petition for review and the petition was filed today.

　　　　An answer to the petition may be served and filed on or before August 22, 2007, twenty (20) days after the petition is filed.  The answer may present additional issues desired for review if the petition for review is granted.

　　　　A reply to the answer may be filed within 10 days after filing of the answer, limited to the additional issues presented in the answer, if any.

　　　　　　　　Very truly yours,

　　　　　　　　FREDERICK K. OHLRICH
　　　　　　　　Court Administrator and
　　　　　　　　Clerk of the Supreme Court

　　　　　　　　By:  H. Miner, Deputy Clerk

cc: Fourth District/Div. Two
　　　AG-San Diego

IN THE SUPREME COURT

STATE OF CALIFORNIA

In the matter of:

DUANE ROY WEIR,

Petition for review

on habeas corpus.

_____/

CASE No._____

S154667

(Fourth App.Dist.No. E043443)
*E04-3443*

(Super.Ct.No. SWHSS-9118 &
CR 34989

SUPREME COURT
FILED

AUG 2 - 2007

Frederick K. Ohlrich Clerk

DEPUTY

PETITION FOR REVIEW

RECEIVED

JUL 2 4 2007

CLERK SUPREME COURT

DUANE ROY WEIR, C-02190

CTF-North (N.D.59L)

P.O. BOX 705

Soledad. California 93960-0705

Petitioner in Pro Per

IN THE SUPREME COURT
STATE OF CALIFORNIA


In the matter of:

    DUANE ROY WEIR,

Petition for review
on habeas corpus.

_____/


   TO THE HONORABLE CHIEF JUSTICE OF THE CALIFORNIA SUPREME COURT
AND THE ASSOCIATE JUSTICES OF THE COURT.

   Comes Now Duane Roy Weir (hereafter Petitioner) respectfully
requesting review following the decision of Court of Appeal, Fourth
Appellate. District. Division Two. Habeas Corpus filed June 29.2007.
Denied July 13.2007. (See attached) Exhibit"34" No Opinion. Citing
the wrong Case Number. Petitioner's Case No. CR-34989.

I

QUESTION FOR REVIEW

   It must be noted the commitment offense was March 2.1978. In which
Petitioner's Board hearings would be conducted pursuant to the California
Administrative Code (CAC). Title 15 §§2281(c)(1 through 6) and §2281(d)-
(1 through 8) which sets forth consideration criteria and guidelines for
prisoners implementing P.C.§3041.

   Petitioner was sentence as an aider and abettor under the Felony-
Murder Rule. (See attached) Exhibit"2" at page-3-line 10-11, and see

(Continue-1-)

"Exhibit"1" Board transcript at page-61. line 15 through 21 revealing victim (Mr.Lowery) was shot by petitioner's brother (Tony or Tyrone A. Weir). (See also page-3-line 9 through 24; page-4- line 1-4 and line 6-through 20). In writ). The victim's testiment; Appellate Ct. Opinion and Attorney General's opinion and also the prosecutor statement out of an investigation. See also **all** document evidence in support of said pages.

Petitioner has the **term of  seven (7) years to life** as an aider and abettor under the Felony-Murder Rule.Note **March 2.1978.** The commitment-offense. Petitioner now has **sevred 29-years** and thats no good-time or work-time credits. Petitioner has served **22-years** over his **Minimum** (MEPD) eligible parole date of **March 10.1985.**

Petitioner has now had **sixteen (16)** subsequent parole Board hearings and **all** hearings of being denied based on the commitment offense and prior record. Petitioner has no **violent or violence** of any kind. No history. (See page-7-8, 9 and 10 in writ on Board hearing dates).(See also Exhibit"33" Superior Ct.decision at page-2- line 3 through 13. The - Superior Court had completely **ignored  all issues** presented in habeas-corpus and current new citations out of the Federal Court. It must be noted the Court of Appeal-Fourth Appellate.District.Division Two did nothing but rubber-stamp Petitioner habeas corpus.which the Federal Court will question it. Petitioner has an extremely excellent record in the CDC&R with one 115 in all 29-years.(See attached) four (4) pages of the **Suitability For Parole** and -attached to it documents in support of it.

Respectfully

_Glenn G. Weir_

c/c Duane r.Weir
      Attorney General

( **2** )

COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

FILED

JUL 1 3 2007

COURT OF APPEAL FOURTH DISTRICT

## ORDER

In re DUANE R. WEIR

on Habeas Corpus.

E043443

(Super.Ct.No. SWHSS9118 &
CR39489)

The County of San Bernardino

---

THE COURT

The petition for writ of habeas corpus is DENIED.

MILLER
Acting P.J.

cc:    See attached list



## DECLARATION OF SERVICE BY MAIL

I, Duane Roy Weir, do hereby declare that I am a citizen of the
United States. And over 18 years of age. My address is Correctional
Training Facilty. Soledad. California. 93960-0705

On the date set forth below. I deposited in the mail at Correctional
training Facilty. P.O. BOX 705. Soledad. California. True copies of
the Petition for writ of Habeas Corpus and the following sent copy
to as follows:

      (1). Edmund G.Brown Jr.
         Attorney General of the State of California
         300 South Spring Street. Suite-1702
         Los Angeles. CA.90013

     (2). California Supreme Court.

As to any **time limit**. The Appeallte Court Decision. I received it
on July 16.2007. The   Officer in the Dorm "**Log it in the book**" if
needed will provide copy or **statement from Coorectional Officer.**

I. Duane Roy Weir. declare under penalty of perjury and under the laws
of the State of California that the above is true and correct.

Executed: __July 22.2007.__

                                      Respectfully

DECLARATION OF SERVICE BY MAIL

I, DUANE ROY WEIR, do hereby declare that I an a citizen of the United States. And over 18 years of age. My address is Correctional Training Facility. Soledad. California. 93960-0705

On the date set forth below. I deposited in the mail at Correctional Training Facilty. P.O. BOX 705. Soledad. California. True copies of the Petition for Review and the following sent copy to as follows:

(1). Edmund G.Brown Jr.
     Attorney General of State of California
     300 South Spring Street
     Los Angeles.CA.90013    (Note Attorney General has been provided
                              with a copy).

(2)  Court of Appeal
     Fourth Appeallate District. Division Two
     3389 Twelfth street
     Riverside. California 92501

I, Duane Roy WEir, declare under penalty of perjury and under the laws of the State of California that the above is true and correct.

Executed:  July 28.2007                    Respectfully

                                           _Duane R. Weir_
                                           DUANE ROY WEIR

<u>DECLARATION</u>

I, <u>Correctional Officer</u> _____, do hereby declare that inmate, Duane Roy Weir-C-02190- was mailing out going legal mail to the following:

(1) Legal out-going mail:

California Supreme Court
350 McAllister Street
San Francico.CA. 94102

I, <u>Correctional Officer</u> _____ can verify that inmate Duane Roy Weir legal mail address to the above was mail out on July 22. 2007.

All legal mail is "Log-In" and all legal mail is "Log-Out" and inmate has to sign for it.

I, <u>Correctional Officer</u> _____, do declare under the penalty of perjury that the above is true and correct.

Date:   July 27.2007                    _____
                                         Correctional Officer

## DECLARATION

I, Correctional SGT. _L. Goodlett_ , do hereby declare that
the legal mail received by inmate Duane Roy Weir was as follows:

(1). Legal letter from the:

      Fourth District Court of Appeal, Division Two
      3389 12th. Street
      Riverside. California   92501

All in coming legal mail is "<u>Log in Legal Book</u>" and on
July 16th.2007. I was witness that the legal mail from the
Court of Appeal was <u>Log-in-Legal Book</u> on July 16th.2007, and
I, SGT. _L. Goodlett_  Also sign the front of the legal letter
on July 16th.2007.

I, SGT. _L. Goodlett_ declare under the penalty of perjury
that the above is true and correct.

    <u>Date:</u> July 27.2007                    SGT.

ORIGINAL

IN THE SUPREME COURT

STATE OF CALIFORNIA

# S154667

In the matter of:

DUANE ROY WEIR,

Petition for review
on habeas corpus.

_____/

CASE No._____

$E043443$

(Fourth App.Dist.No. ~~E04343~~)

(Super.Ct.No. SWHSS-9118 &
 CR 34989

FILED WITH PERMISSION

SUPREME COURT
FILED

AUG 2 - 2007

Frederick K. Ohlrich Clerk

DEPUTY

PETITION FOR REVIEW

RECEIVED

JUL 2 4 2007

CLERK SUPREME COURT

DUANE ROY WEIR, C-02190

CTF-North (N.D.59L)

P.O. BOX 705

Soledad. California 93960-0705

Petitioner in Pro Per

S154667

IN THE SUPREME COURT
STATE OF CALIFORNIA

In the matter of:

   DUANE ROY WEIR,

Petition for review
on habeas corpus.

_____/

   TO THE HONORABLE CHIEF JUSTICE OF THE CALIFORNIA SUPREME COURT
AND THE ASSOCIATE JUSTICES OF THE COURT.


   Comes Now Duane Roy Weir (hereafter Petitioner) respectfully
requesting review following the decision of Court of Appeal, Fourth
Appellate. District. Division Two. Habeas Corpus filed June 29.2007.
Denied July 13.2007. (See attached) Exhibit"34" No Opinion. Citing
the wrong Case Number. Petitioner's Case No. CR-34989.

I

QUESTION FOR REVIEW

   It must be noted the commitment offense was March 2.1978. In which
Petitioner's Board hearings would be conducted pursuant to the California
Administrative Code (CAC). Title 15 §§2281(c)(1 through 6) and §2281(d)-
(1 through 8) which sets forth consideration criteria and guidelines for
prisoners implementing P.C.§3041.

   Petitioner was sentence as an aider and abettor under the Felony-
Murder Rule. (See attached) Exhibit"2" at page-3-line 10-11, and see

(Continue-1-)

"Exhibit"1" Board transcript at page-61. line 15 through 21 revealing victim (Mr.Lowery) was shot by petitioner's brother (Tony or Tyrone A. Weir). (See also page-3-line 9 through 24; page-4- line 1-4 and line 6- through 20). In writ). The victim's testimont; Appellate Ct. Opinion and Attorney General's opinion and also the prosecutor statement out of an investigation. See also all document evidence in support of said pages.

Petitioner has the term of  seven (7) years to life.as an aider and abettor under the Felony-Murder Rule.Note March 2.1978. The commitment-offense. Petitioner now has sevred 29-years and thats no good-time or work-time credits. Petitioner has served 22-years over his Minimum (MEPD) eligible parole date of March 10.1985.

Petitioner has now had sixteen (16) subsequent parole Board hearings and all hearings of being denied based on the commitment offense and prior record. Petitioner has no violent or violence of any kind. No his-tory. (See page-7-8, 9 and 10 in writ on Board hearing dates).(See also Exhibit"33" Superior Ct.decision at page-2- line 3 through 13. The - Superior Court had completely ignored   all issues  presented in habeas-corpus and current new citations out of the Federal Court. It must be noted the Court of Appeal-Fourth Appellate.District.Division Two did no-thing but rubber-stamp Petitioner habeas corpus.which the Federal Court will question it. Petitioner has an extremely excellent record in the CDC&R with one 115 in all 29-years.(See attached) four (4) pages of the Suitability For Parole and -attached to it documents in support of it.

Respectfully

*[signature]*

c/c Duane r.Weir
    Attorney General

( 2 )

COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

**F I L E D**

**JUL 1 3 2007**

COURT OF APPEAL FOURTH DISTRICT

**ORDER**

In re DUANE R. WEIR

on Habeas Corpus.

E043443

(Super.Ct.No. SWHSS9118 &
CR39489)

The County of San Bernardino

THE COURT

The petition for writ of habeas corpus is DENIED.

**MILLER**

Acting P.J.

cc:    See attached list

*COPY*

<u>DECLARATION OF SERVICE BY MAIL</u>

<u>I, Duane Roy Weir</u>, do hereby declare that I am a citizen of the United States. And over 18 years of age. My address is Correctional Training Facilty. Soledad. California. 93960-0705

On the date set forth below. I deposited in the mail at Correctional training Facilty. P.O. BOX 705. Soledad. California. True copies of the Petition for writ of Habeas Corpus and the following sent copy to as follows:

> (1). Edmund G.Brown Jr..
>      Attorney General of the State of California
>      300 South Spring Street. Suite-1702
>      Los Angeles. CA.90013

> (2). California Supreme Court.

As to any <u>time limit</u>.  The Appeallte Court Decision. I received it on July 16.2007. The   Officer in the Dorm "<u>Log it in the book</u>" if needed will provide copy or <u>statement from Coorectional Officer.</u>

I. Duane Roy Weir. declare under penalty of perjury and under the laws of the State of California that the above is true and correct.

Executed:  <u>July 22.2007.</u>                    Respectfully

C/c *[signature]*
*[signature]*

## DECLARATION OF SERVICE BY MAIL

I, <u>DUANE ROY WEIR</u>, do hereby declare that I an a citizen of the United States. And over 18 years of age. My address is Correctional Training Facilty. Soledad. California. 93960-0705

On the date set forth below. I deposited in the mail at Correctional Training Facilty. P.O. BOX 705. Soledad. California. True copies of the Petition for Review and the following sent copy to as follows:

(1). Edmund G.Brown Jr.
     Attorney General of State of California
     300 South Spring Street
     Los Angeles.CA.90013    (Note Attorney General has been provided
                             with a copy).

(2)  Court of Appeal
     Fourth Appeallate District. Division Two
     3389 Twelfth street
     Riverside. California 92501

I, Duane Roy WEir, declare under penalty of perjury and under the laws of the State of California that the above is true and correct.

Executed:  July 28.2007                    Respectfully


                                           _Duane R. Weir_
                                           DUANE ROY WEIR

<u>DECLARATION</u>

I, <u>Correctional Officer _____</u>, do hereby declare
that inmate, Duane Roy Weir-C-02190- was mailing out going legal -
mail to the following:

(1) Legal out-going mail:

    California Supreme Court
    350 McAllister Street
    San Francico.CA. 94102

I, <u>Correctional Officer _____</u> can verify that inmate
Duane Roy Weir legal mail address to the above was mail out on July 22.
2007.

All legal mail is "Log-In" and all legal mail is "Log-Out" and
inmate has to sign for it.

I, <u>Correctional Officer _____</u>, do declare
under the penalty of perjury that the above is true and correct.

Date:    July 27.2007            _____
                                 Correctional Officer

## DECLARATION

I, Correctional SGT. _L. Goodlett_ , do hereby declare that the legal mail received by inmate Duane Roy Weir was as follows:

(1). Legal letter from the:

      Fourth District Court of Appeal, Division Two
      3389 12th. Street
      Riverside. California  92501

All in coming legal mail is "Log in Legal Book" and on July 16th.2007. I was witness that the legal mail from the Court of Appeal was Log-in-Legal Book on July 16th.2007, and I, SGT. _L. Goodlett_ Also sign the front of the legal letter on July 16th.2007.


I, SGT. _L. Goodlett_ declare under the penalty of perjury that the above is true and correct.

Date: July 27.2007                          SGT.

Court of Appeal, Fourth Appellate District, Div. 2 - No. E043443
**S154667**

# IN THE SUPREME COURT OF CALIFORNIA

SUPREME COURT
FILED

SEP 2 1 2007

In re DUANE ROY WEIR on Habeas Corpus

Frederick K. Ohlrich Clerk

_____

The time for granting or denying review in the above-entitled matter is hereby extended to and including October 31, 2007, or the date upon which review is either granted or denied.

_George_

*Chief Justice*

Court of Appeal, Fourth Appellate District, Div. 2 - No. E043443
**S154667**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

RECEIVED
OCT 17 2007
COURT OF APPEAL FOURTH DISTRICT

In re DUANE ROY WEIR on Habeas Corpus

The petition for review is denied.

SUPREME COURT
**FILED**

OCT 1 0 2007

Frederick K. Ohlrich Clerk

_____
Deputy

~~GEORGE~~
_____
Chief Justice



DUANE ROY WEIR

C-02190..C.T.F.N. N.D.59L

P.O. BOX 705

SOLEDAD. CALIFORNIA 93960-0705


Fourth District Court of Appeal
      Division Two
3389 12th,Street
Riverside.CA.92501


Re: DUANE ROY WEIR...E043443 on Habeas Corpus

Re: DUANE ROY WEIR..S154667..Petition For Review


Dear Hon.Clerk:

   Please note this is a copy of the Petition For Review in the
California Supreme Court. The Petition this Hon.Court just rule on July 13.
2007-"E043443-This Petition is part of that one filed July 29.2007. As all
documents in this Petition refer to it in E043443.


c/c Duane R.Weir

Respectfully

*[signature]*



IN THE SUPREME COURT
STATE OF CALIFORNIA

In the matter of:

    DUANE ROY WEIR,

Petition for review

on habeas corpus.

_____/

Case No _____

(Fourth App. Dist.Div. Two.E04343)
(Super.Ct.No. SWHSS-9118 & CR-34989)

PETITION FOR REVIEW

DUANE ROY WEIR

CTF-North  (N.D.59L)

P.O. BOX 705

Soledad.California

      93960-0705

Petitioner In Pro Per.

IN THE SUPREME COURT
STATE OF CALIFORNIA

In the matter of:

   DUANE ROY WEIR,

Petition for review
on habeas corpus.

_____/

TO THE HONORABLE CHIEF JUSTICE OF THE CALIFORNIA SUPREME COURT
AND THE ASSOCIATE JUSTICES OF THE COURT.

   Comes Now Duane Roy Weir (hereafter Petitioner) respectfully
requesting review following the decision of Court of Appeal, Fourth
Appellate. District. Division Two. Habeas Corpus filed June 29.2007.
Denied July 13.2007. (See attached) Exhibit"34" No Opinion. Citing
the wrong Case number. Petitioner's Case No. CR-34989.

I

QUESTION FOR REVIEW

   It must be noted the commitment offense was March 2.1978. In which
Petitioner's Board hearings would be conducted pursuant to the California
Administrative Code (CAC). Title 15 §§2281 (c)(1 through 6) and §2281(d)-
(1 through 8) which sets forth consideration criteria and guidelines for
prisoners implementing P.C. §3041.

   Petitioner was sentence as an aider and abettor under the Felony-
Murder Rule. (See attached) Exhibit"2" at page-3-line 10-11, and see

(Continue-1-)

"Exhibit"1) Board transcript at page-61. line 15 through 21 revealing victim (Mr.Lowery) was shot by Petitioner's bother (Tony or Tyrone A. Weir). (See also page-3- line 9 through 24; page-4- 1-4 and line 6- through 20). In writ. The victim's testimony; Appeallte Ct. Opinion- and Attorney General's Opinion and also the proscutor statement out of an investigation. See also All document evidence in support of said pages.

Petitioner has the term of seven (7) years to life as an aider and abettor under the Felony-Murder Rule. Note March 2.1978 the commitment offense. Petitioner now has served 29 years and thats no-good-time or work-time credits. Petitioner has served 22-years over his Minimum (MEPD) eligible parole date of March 10.1985.

Petitioner has now had sixteen (16) subsequent parole Board hearings and all hearings of being denied based on the commitment offense and prior record. Petitioner has no violent or violence of any kind. No his- tory. (See page-7, 8 and 9 and 10 in writ on Board hearinmg dates). (See als Exhibit"33" Superior Ct. decision at page-2- line 3 through 13. The Superior Court had completely ignored all issues presented in habeas corpus and current new citations out of the Federal Court. It must be noted the Court of Appeal-Fourth Appellate. District.Division Two did n0- hting but rubber-stamp Petitioner's habeas corpus which the Federal Court will question it. Petitioner has an extremely excellent record in the CDC&R with one 115 in all 29-years. (See attached) four (4) pages of the Suitability For Parole and attached to it documents in support of it.

c/c Duane R.Weir
    Court of Appeal.

                                    Respectfully

                                    *Duane R.Weir*
                                    DUANE ROY WEIR-C-02190.

Stats. 1977, Chapter 165
Amended Senate Bill 42

Petitioner's Commitment Offense March 2.1978
Term Seven (7) To Life

## SUITABILITY FOR PAROLE

C.R.B. §§2281 and 2292 provides the guidelines of suitability
for parole. The question to be addressed is whether or not the
prisoner would pose an <u>unreasonable</u> risk of danger to society
if released from prison. Circumstances tending to show unsuit-
ability are set forth in Cal. Administrative Code. Title 15 §
2281 (c)(1 through 6) and §2281(d) (1 through 8). They are guide-
lines; the importance attached to any single circumstance or
combination thereof is left to the Panel's judgement. These-
include:

(1). <u>Commitment Offense.</u> Mr.Weir did not assault the
victim himself. Note the sentence transcript on
page-539- the special verdict on Count-3-§245-
(a) assault with a deadly weapon. The finding not
true and second special verdict was (§1203.9 and
§12022.7). Finding were not true. (Seep.539)(Attached).

(2). <u>Previous Record of Violence.</u> None.

(3). <u>Unstable Social History.</u> Mr.Weir's early childhood
must be characterized as unstable due to poor family
cohesion and parental control because of alcohol abuse.
However his own family is intact and supportive. His
wife had divorced him because of his alcohol problem
but only to impress on him the necessity to stop drink-
ing. They remarried in 1979. His relations with others
at this time both within the institution and outside
are very stable. (see attached) psychological ebaluation.

(4). <u>Sadistic Sexual Offenses.</u> None.

(5). <u>Psychological Factors.</u> The prisoner has no history of
severs mental problems related to the offense. He did
have an alcohol problem until the age of 34.He is now 64
years and is no longer a problem.(see attached) psychol-
ogical evaluation report.

(Continue-1-)

(6). **Institutional Behavior.** Mr.Weir has program in a
very positive manner while incarcerated. He has
had only one 115 during the 29 years. He has
received excellent work reports, attended AA and
N.A. on a regular basis receiving laudatory chronos
for the extent of his participation. He fully vol-
unteers his spare time to the CTF-North library.

Cirumstances tending to show suitability for parole are set out
in Cal. Administrative Code. Tilt 15 §2281 (d) (1 through 8):

(1). No Juvenile Record. Auot theft (Dyer Act). No record
of assaulting others as a juvenile or commiting crimes
with a potential of personal harm to others.

(2). Stable Social History (see page-1- and see Jan.13.2006.
psychological evaluation report of Jan. 13.2006(attached).

(3). **Signs of Remorse.** The prisoner has clearly indicated
that he understands the nature and magnitude of the
offense. Note page-3-and-4-of psychological evaluation
report of Jan.13.2006 (attached).

(4). Motivation for Crime. Mr.Weir was under the influence of
alcohol the entire day prior to the crime (see Preliminary
Examination before Judge Krum dated April 10 and 11 at
page-19 through 25). Mr.Weir was also under stress of a
threatened divorce by his wife because of his drinking
problem which had existed for a long period of time.

(5). Lack of Criminal History. The prisoner lacks any signifi-
cant history of violent crime.

(6). Age. Mr.Weir was 34-turn-35 years of age at the time of
the crime. He is now 64 years of age, certainly not a
young man but one who has mature so that his present age
reduces the probability of recidivism.

(7). Understading and Plans for the Future. Mr.Weir plans to
reside with his wife, Pearl Ann Weir, in BaldwinPark. Cal-
fornia. He expects to work as an auto mechanic and will
continue A.A. participation. His plans for release are re-
alistic and he has **Maretable skill** that can be put to use
upon release.

(8). Institutional Behavior. Mr.Weir has had one CDC 115 since
his incarceration of 29-years. That was 1983 and since then
he has been disciplinary free and has a classification score
zero.

(Continue-2-)

He has been regularly attending Alcoholics Anonymous
and Narcotics Anonymous meetings. He received above
average work reports in Textiles of 17-years of ass-
igment. His institutional activities indicate an
enhanced ability to function within the law upon release.

### SUMMARY

Mr.Weir will make his Seventeenth subsequent board appearance
before the Board of Parole Hearing (BPH). His life prior to the
crime involved some entanglements with the law and is clearly do-
cumented. The important factor here is **the lack of a violent
criminal history.** He has progammed in an outstanding manner while
incerceration, having received only one serious violation during
the 29 years. His time spent in developing a vocation in Auto- Mec-
hanics; understanding and overcoming his personal problemwith alcohol;
and upgrading himself academically. His reports are above average ref-
ecting an ability to cooperate and function in an organized manner
with others.

Mr.Weir has a very supportive wife who has remained faithful and
loyal over the years. He pans on attending his wife's church in
West Covin. This church has numerous substance abuse programs. He
plans on participating in these programs in his effort to remain
clean and sober in the future. He spoke at length about his eleven
grandchildren that he keeps in close contact with, through communi-
cation by phone and letters. His family appears to be very supportive
and commited to him and his future sucess. All of these factors
contribute towards a successful adjustment in the future in the
community is excellent. (see M.Macomber, PH.D. Staff Psychologist
dated January 13.2006. report for the Board.(See attached)


### CONCLUSION

   The appropriate matrix of base terms for First Degree Murder
are as follows:

Stats. 1977, Chapter 165
Amended Senate Bill 42
From July 1.1977 to July 30.1978

Community Release Board: In 1977, the "terms of imprisonment"
established under Amended SB-42 were 92-156 months (or 7 yrs-
8 mos to 13 years).        (Continue)

Source:
Cal. Admin. Code.Title 15, Div.2. Reg. 77. No.28 (July 9.1977).

(Continue-3-)

"No prior relationship and victim died of cause related to the act of the prisoner but was not directly assaulted by prisoner with deadly force" The term 13-years. The only factor applicable in aggravation was the age of the victim. A factor in mitigation is that the prisoner did not personally harm the victim. It is recommended that the term of 13 years be set.

Under the ISL law, which emphasized rehabilitation or the DSL law which emphasizes punishment a factor to be considered is the culpability of the prisoner and then a comparison of terms aet for like crimes. The intent of the law is clearly to make punishment fit the crime and avoid wide disparity in terms set for like crimes. On this basis it is strongly urged that the Panel consider that Mr.Weir has served an appropate amount of time and set his date for immed- iate release.

//

//

//

//

//

//

(Page-4-)

INMATE COPY

## PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
### UPDATE CLINICAL EVALUATION
### JANUARY 2006

### CORRECTIONAL TRAINING FACILITY
### JANUARY 13, 2006

| | |
|---|---|
| NAME: | WEIR, DUANE |
| CDC#: | C-02190 |
| DOB: | 7/10/43 |
| OFFENSE: | PC 187, Murder, First Degree |
| SENTENCE: | 7 years to life |
| DATE OF OFFENSE: | 3/2/78 |
| MEPD: | 3/10/85 |
| EVALUATION DATE: | 1/13/06 |

## I. IDENTIFYING INFORMATION

Mr. Duane Weir is a second term, 62 year old, Caucasian, male from Los Angeles County. He is a Christian. He has remained married to the same woman that he was married to prior to his incarceration. The marriage is still intact and is supportive. He has 28 years in custody.

## II. SOURCES OF INFORMATION

This report is based upon a single 90 minute interview, plus review of the Central file and medical file.

The previous psychological evaluation dated 12-24-99 by M. Carswell PHD. Psychologist at CTF Soledad is still current and valid. The psychosocial assessment done at that time was reviewed with Mr. Weir. It remains current and valid. Therefore, this information will not be repeated in this report.

A current psychological evaluation was requested to focus on the issue of Mr. Weir's alcoholism and whether this is a current problem in his life. The need for forward participation and self-help or therapy was to also be addressed.

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

## III.   CLINICAL EVALUATION AND MENTAL STATUS

Mr. Weir appears to be his chronological age of 62. Hygiene and grooming was good. He was alert and well oriented. His thinking was rational chronological, and coherent. His speech was normal, fluent and goal oriented. Eye contact was good. Affect was appropriate. There is no evidence of anxiety or depression. Intellectually he is functioning in the average ranges. His judgment was in tact. His memory is in tact and his self awareness and insight was very good.

Mr. Weir is a second termer. He does have a history of criminal involvement. He is a product of a criminally oriented family in which the parents encouraged the children to steal from stores in order to support the family. He began drinking alcohol as a teenager with his parent's approval. His parents were both alcoholics and were frequently in bars. He began delinquent behavior as a young teenager and continued then a life of crime until the commended offense. Mr. Weir did maintain stable employment prior to the commended offense. He was working as a journeyman mechanic and he specialized in the repair of transmissions. He has continued to work steadily throughout his years of incarceration. He is now a lead man in the PIA textiles program. He has well developed work ethics.

In an effort to address the issues raised by the board of prison terms panel, he was carefully interrogated about his thoughts and feelings about drinking alcohol at this point in his life. He stated that he thoroughly understands the severe harm that alcohol causes. He has developed deep feelings of revulsion against use of alcohol in his own life and in the life of others. He stated that at this point in his life that any indulgence in alcohol will make him physically sick. Alcohol has created irresponsible and irrational behavior in his past. Any use of alcohol would break his wife's heart. It is remarkable that the woman he was married to at the time of the commended offense has stuck with him throughout these 28 years of his incarceration. She is heavily involved in her church activities in West Covina. He spoke at length about how any use of alcohol in his life deeply hurt his wife, his other family members that have stuck with and his grand children. He spoke of how alcohol has caused 28 years of grief and loss to his family members as well as himself. He knew that inmate manufactured alcohol is readily available at this institution. Those who desire to use alcohol can access it easily. He has remained clean and sober throughout the 28 years since the commended offense occurred. This is evidence how his self control, and new found values to remain clean and sober, and his ability to say no to alcohol. He also spoke about his Christian beliefs. He spoke about his allegiance to Christ who is his Savior and Lord. He knows that the use of intoxicating alcohol is forbidden in the Christian Life. His values in this area appear to be thoroughly thought out, deep and

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

genuine. His commitment to remain clean and sober in the future and when he is released on parole appear to be sincere. He does continue to attend alcoholics anonymous as regularly as he can. Since he is housed in a dormitory at North Facility, and because North Facility is frequently locked down due to inmate riots, this program is often canceled. However attends as often as he can. He states that he believes in AA and he enjoys participating in it.

In considering the current diagnostic impression he has been consistently diagnosed in the past as having alcohol dependence in institution remission as well as an anti-social personality disorder. In view on his strongly held values to remain clean and sober and his abstinence from alcohol for 28 years, alcohol dependence cannot be a current diagnosis. Alcohol dependence was a problem for him up until the age of 34. At this point in time it is no longer a problem and it does not warrant a diagnostic label. Therefore, his label will be deleted or noted only as a historical factor. Regarding the presence of anti-social personality disorder, Mr. Weir does have strong feelings of empathy towards other, concern towards others, and there is no evidence of anti-social or criminal thinking or values in his life at this point. He looks back on his out of control childhood and early years with feelings of sorrow, remorse and unhappiness. This man has changed considerably over his years of incarceration. There is no evidence of a personality disorder at this time.

Current diagnostic impression

AXIS I:     No mental disorder.
AXIS II:    No personality disorder
AXIS III    No physical disorder
AXIS IV    Life term incarceration
AXIS V     GAF 90

IV.   REVIEW OF LIFE CRIME

Mr. Weir stated that the victim in the commitment offense was shot during the time that Mr. Weir was walking towards the victim's house from his brother's house. He arrived after the shooting. However, he accepts full responsibility for his involvement in this robbery which led to the death of the victim. He indicated that if he had not become involved in the robbery that the victim would have not been attacked and hurt. In the past he has minimized his involvement in the commended offense. However, at this point I do not see evidence that he is minimizing his involvement. He looks back at his life at that time with unhappiness, recognizing that his values and thinking were irresponsible and

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

antisocial. He stated that he feels terrible about the elderly victim's death due to health problems as a result of the gun shot wound. His feelings of remorse appear to be sincere and genuine.

Mr. Weir's brother, the person that actually shot the victim, continued to lead a life of crime. After doing four years in participation in robbery he was never held responsible for the victim's death. He continued to engage in criminal behavior in Texas and is still in custody as a habitual offender.

## V.   ASSESSMENT OF DANGEROUSNESS

A.   In considering a potential for dangerous behavior in the institution, Mr. Weir continues to remain disciplinary free. He has not had any serious disciplinary since 1983. He is holding a responsible position in PIA textiles. His thinking is pro-social and responsible. His potential for violence in the institutional environment is essentially nil.

B.   In considering potential for dangerous behavior when released to the community on parole, the Level of Service Inventory-Revised was administered. This is an actuarial measure that assesses criminal history which in his case is serious, substance abuse history which is in his case as serious and his progress in vocational goals, family life, and other factors. His score places him at the 5.1 cumulative frequencies in comparison to other prison inmates. This means if 100 men were released on parole, he would do better than 94 of them. The only negative factor is in his life are the historical ones that all occurred before he was 34 years of age. Based upon his current attitude and maturity, his potential for violence in the community is no greater than the average citizen and in fact be lower than the average citizen based upon his growth and maturity.

C.   The most significant risk factor in this significant case would be the use of alcohol. As outlined above in this report, his strong values against use of alcohol and his determination to remain clean and sober no longer makes this a significant risk factor.

## VI.   CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS

There are no mental or emotional problems in this case that would interfere with regular parole planning. He does have excellent vocational skills that will enable him to secure

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FIVE

employment easily in the community. He has a strong work ethic. He has a very supportive wife who has remained faithful and loyal over the years. He plans on attending his wife's church in West Covina. This church has numerous substance abuse programs. He plans on participating in these programs in his effort to remain clean and sober in the future. He spoke at length about his eleven grandchildren that he keeps in close contact with, through communication by phone and letters. His family appears to be very supportive and committed to him and his future success. All of these factors contribute towards a successful adjustment on parole. The prognosis for successful adjustment in the future in the community is excellent.


M. Macomber, PH. D.
Staff Psychologist
Correctional Training Facility, Soledad


B. Zika, PH. D.
Senior Psychologist
Correctional Training Facility, Soledad


MM/lc

D:    1/13/06
T:    1/13/06

1   and II and guilty of Count IV, which is consistent in and of

2   itself; those verdicts right there are consistent.

3          THE COURT:  All specific intent crimes.

4          MR. STEINMAN:  All specific intent crimes.

5          Where the inconsistency occurs now is with the

6   finding on Count III and the special verdicts. ~~There were two~~

7   ~~special verdicts in question with regard to Counts I, II~~

8   ~~and IV.~~  One special verdict was, was armed and did use a

9   firearm, and the other was, personally inflicted great bodily

10  injury.  ~~The finding of not true as to personally inflicted~~

11  ~~great bodily injury is consistent with a theory that this~~

12  ~~defendant was an aider and abetter~~, and in and of itself,

13  those are now consistent.  However, the jury finds that during

14  the perpetration of the armed robbery and the grand theft,

15  and therefore the murder, he was armed and personally did use

16  a firearm, however, ~~find him not guilty of assault with a~~

17  ~~deadly weapon~~, and as the pleadings and instructions went,

18  a firearm, to wit:  ~~a rifle or a pistol~~.  Now, how in the

19  world can that be consistent when you have three specific

20  intent crimes, a finding of true as to the use, did use

21  personally a firearm, to wit:  a rifle and a pistol, with a

22  not guilty of a general intent crime of assault with a deadly

23  weapon, to wit:  a pistol and a firearm, in one continuous

24  event, when, in fact, the testimony is, and the only

25  testimony about his participation, this defendant's

26  participation with a firearm, comes from the mouth of Rick