# EXHIBIT G, PART 1



Date Filed:
SAN DIEGO DOCKETING
AUG 0 7 2007
No. 00210770009 1
BY AURORA TAMAYO

IN THE SUPREME COURT

STATE OF CALIFORNIA

In the matter of:

   DUANE ROY WEIR,

Petition for review
on habeas corpus.

_____ /

CASE No. **S154667**

(Fourth App.Dist.No. E043443)

(Super.Ct.No. SWHSS-9118 &
CR 34989

SUPREME COURT
**FILED**

AUG 2 - 2007

Frederick K. Ohlrich Clerk

DEPUTY

PETITION FOR REVIEW

DUANE ROY WEIR, C-02190

CTF-North (N.D.59L)

P.O. BOX 705

Soledad, California 93960-0705

Petitioner in Pro Per

RECEIVED

JUL 2 4 2007

CLERK SUPREME COURT

IN THE SUPREME COURT
STATE OF CALIFORNIA

In the matter of:

    DUANE ROY WEIR,

Petition for review
on habeas corpus.

_____/

    TO THE HONORABLE CHIEF JUSTICE OF THE CALIFORNIA SUPREME COURT
AND THE ASSOCIATE JUSTICES OF THE COURT.

    Comes Now Duane Roy Weir (hereafter Petitioner) respectfully

requesting review following the decision of Court of Appeal, Fourth

Appellate. District. Division Two. Habeas Corpus filed June 29.2007.

Denied July 13.2007. (See attached) Exhibit"34" No Opinion. Citing

the wrong Case Number. Petitioner's Case No. CR-34989.

I

## QUESTION FOR REVIEW

    It must be noted the commitment offense was March 2.1978. In which

Petitioner's Board hearings would be conducted pursuant to the California

Administrative Code (CAC). Title 15 §§2281(c)(1 through 6) and §2281(d)-

(1 through 8) which sets forth consideration criteria and guidelines for

prisoners implementing P.C.§3041.

    Petitioner was sentence as an aider and abettor under the Felony-

Murder Rule. (See attached) Exhibit"2" at page-3-line 10-11, and see

(Continue-1-)

"Exhibit"1" Board transcript at page-61. line 15 through 21 revealing victim (Mr.Lowery) was shot by petitioner's brother (Tony or Tyrone A. Weir). (See also page-3-line 9 through 24; page-4- line 1-4 and line 6- through 20). In writ). The victim's testimont; Appellate Ct. Opinion and Attorney General's opinion and also the prosecutor statement out of an investigation. See also all document evidence in support of said pages.

Petitioner has the term of seven (7) years to life,as an aider and abettor under the Felony-Murder Rule.Note March 2.1978. The commitment- offense. Petitioner now has sevred 29-years and thats no good-time or work-time credits. Petitioner has served 22-years over his Minimum (MEPD) eligible parole date of March 10.1985.

Petitioner has now had sixteen (16) subsequent parole Board hearings and all hearings of being denied based on the commitment offense and prior record. Petitioner has no violent or violence of any kind. No his- tory. (See page-7-8, 9 and 10 in writ on Board hearing dates).(See also Exhibit"33" Superior Ct.decision at page-2- line 3 through 13. The - Superior Court had completely ignored   all issues  presented in habeas- corpus and current new citations out of the Federal Court. It must be noted the Court of Appeal-Fourth Appellate.District.Division Two did no- thing but rubber-stamp Petitioner habeas corpus.which the Federal Court will question it. Petitioner has an extremely excellent record in the CDC&R with one 115 in all 29-years.(See attached) four (4) pages of the Suitability For Parole and -attached to it documents in support of it.

Respectfully

*[signature]*

c/c Duane r.Weir
    Attorney General

( 2 )

MC-275

Name  **DUANE ROY WEIR**

Address  **C-02190..c.t.f.n. n.d.59L**
**P.O. BOX 705**

**Soledad. California 93960-0705**

CDC or ID Number  **C-02190**

RECEIVED
JUL 24 2007
CLERK SUPREME COURT

SUPREME COURT
**FILED**
JUL 24 2007
Frederick K. Ohlrich Clerk
DEPUTY

## CALIFORNIA SUPREME COURT
(Court)

**DUANE ROY WEIR**

Petitioner

vs.

**BEN CURRY (Warden)**

Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. **S154668**

*(To be supplied by the Clerk of the Court)*

### INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev July 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

S154667

This petition concerns:

[ ] A conviction     [X] Parole

[ ] A sentence     [ ] Credits

[ ] Jail or prison conditions     [ ] Prison discipline

[ ] Other *(specify):*

1. Your name: **DUANE ROY WEIR**

2. Where are you incarcerated? **Correctional Training Facilty.Soledad.CA. 93960**

3. Why are you in custody? [XX] . Criminal Conviction    [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   **Sentence under the Felony-Murder Rule as an aider and abettor to P.C. 187; 211 P.C. and 487 P.C.. All counts are run currently.**

   b. Penal or other code sections: **245(a); 12022.7; 1203.9. All not guilty verdicts.**

   c. Name and location of sentencing or committing court: **Superior Court.Dept. 10.**
   **351 N.Arrowhead Ave. San Bernardino.CA. 92415**

   d. Case number: **CR-34989.**

   e. Date convicted or committed: **January 16.1979**

   f. Date sentenced: **February 23.1979**

   g. Length of sentence: **7-yrs to life for 187; 3-yrs for 211 and 2-yrs for 487. All counts are run currently.**

   h. When do you expect to be released? _____

   i. Were you represented by counsel in the trial court? [XX] Yes.   [ ] No. If yes, state the attorney's name and address:
   **Mr.Paul R.Stienman. First American Building. 323 W,Court St.**
   **San Bernardino.CA. 92401**

4. What was the LAST plea you entered? *(check one)*

   [XX] Not guilty   [ ] Guilty   [ ] Nolo Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [XX] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

(A-2)

6. GROUNDS FOR RELIEF
   **Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Claim-One at page-11, line 13-28; page-12, line 1-22. See also Claim-

Two, at page-21, line 3 through 28; page-22, line 1 through 14, and Claim-

Three at page-29, line 18-22; page-30, line 1 through 28 and page 31, line-

1-8). Court grant whatever relife deems appropriate.

a. Supporting facts:
   Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at *what* time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

(1): Page-7 to 10 the "Introduction" of Board Hearings.

(2): Page-11 to 12. Table of Authorities.

(3): Page-13-14. Index to Exhibits.

(4): Claim-One. Page-1 through 12.

(5): Claim-Two. Page-13 through 22.

(6): Claim-Three. Page-23 through 31.

(7): Declaration of Service by Mail.

b. Supporting cases, rules, or other authority (optional):
   *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

Robert M.Rosenkrantz v. John Marshall (Warden)-Case No. CV 05-3836-

GAF (AJW). United States District Court-Cental Distcrict of Calif-

ornia (June 26.2006) Order released.

---

MC-275 [Rev. July 1, 2005]           **PETITION FOR WRIT OF HABEAS CORPUS**           Page three of six

(A-3)

7. Ground 2 or Ground _____ *(if applicable):*

N. A.

_____

_____

_____

a. Supporting facts:

N. A.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority:

N. A.

_____

_____

_____

_____

_____

(A-4)

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes.  ☐ No.  If yes, give the following information:

   a.  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
      **N.A.**

   b.  Result _____  c.  Date of decision: _____

   d.  Case number or citation of opinion, if known: _____

   e.  Issues raised: (1) _____

             (2) _____

             (3) _____

   f.  Were you represented by counsel on appeal?  ☐ Yes.  ☐ No. If yes, state the attorney's name and address, if known:
      **N.A.**

9. Did you seek review in the California Supreme Court?  ☐ Yes  ☐ No.  If yes, give the following information:

   a.  Result  **N.A.**_____  b.  Date of decision: _____

   c.  Case number or citation of opinion, if known: _____

   d.  Issues raised: (1) _____

             (2) _____

             (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:
      **N.A.**

_____

_____

11. Administrative Review:

   a.  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

      **N.A.**

_____

_____

_____

_____

_____

_____

_____

   b.  Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No.  **N.A.**
      *Attach documents that show you have exhausted your administrative remedies.*

(A-5)

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  ☒ Yes. If yes, continue with number 13.  ☐  No. If no, skip to number 15.

13. a. (1) Name of court: Super.Ct.351 N.Arrowhead Ave. San Bernardino.CA.92515

    (2) Nature of proceeding (for example, "habeas corpus petition"): Habeas Corpus-SWHSS-9118.

    (3) Issues raised: (a) Board of Parole Hearing.(See attached) Habeas Corpus

        (b) _____

    (4) Result (Attach order or explain why unavailable): See attached "Exh."33)

    (5) Date of decision: May 30.2007. "Note first filed-Aug.16"o6 in Monterey.CA.

   b. (1) Name of court: Court of Appeal-Fourth Dist, Div.Two.

    (2) Nature of proceeding: Habeas Corpus. (Same as mention above)

    (3) Issues raised: (a) (Same as mention above).

        (b) _____

    (4) Result (Attach order or explain why unavailable): "No Opinion"

    (5) Date of decision: Filed June 29.2007.. Denied July 13.2007.

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

    N.A.

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

    N.A.

16. Are you presently represented by counsel?  ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?  ☒ Yes.  ☐ No. If yes, explain:
    On Board Report. Monterey.County Superior Court.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

    I believe this to be proper court before filing in Federal court.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: July 22.2007

▶ _Duane L. Weis_
(SIGNATURE OF PETITIONER)

MC-275 [Rev. July 1, 2005]    PETITION FOR WRIT OF HABEAS CORPUS    Page six of six

(6A)

MARY JAMESON
AUTOMATIC APPEALS SUPERVISOR

JORGE NAVARRETE
SUPERVISING DEPUTY CLERK

SAN FRANCISCO

—

NATALIE ROBINSON
SUPERVISING DEPUTY CLERK

LOS ANGELES



☒ SAN FRANCISCO 94102
EARL WARREN BUILDING
350 McALLISTER STREET
(415) 865-7000
—
☐   LOS ANGELES 90013
RONALD REAGAN BUILDING
300 SOUTH SPRING STREET
(213) 830-7570

## Supreme Court of California

FREDERICK K. OHLRICH
COURT ADMINISTRATOR AND
CLERK OF THE SUPREME COURT

July 24, 2007

Duane Roy Weir  C-02190
CTF – North  (N.D. 59L)
P O. Box 705
Soledad, CA 93960-0705

**Re:  S154667 (E043443)  – In re Weir (Duane Roy) on Habeas Corpus**

Dear . Mr. Weir:

We acknowledge receipt of your untimely petition for review, received today, a copy of which is enclosed. The record discloses that the Court of Appeal filed its order on July 13, 2007, denying your petition. Under court rules, the last day a timely petition for review could have been filed was  July 23, 2007. For good cause, the court may permit the filing of an untimely petition. A copy of the petition must also be served on opposing counsel and the Court of Appeal.

You must now submit an original only of an "Application for Relief from Default" which explains the reason for failing to file a timely petition. The application must also contain the following signed declaration:  "I declare under penalty of perjury that the above is true and correct." Failure to receive this application by August 13, 2007, with your petition will result in your petition for review being returned to you unfiled. After August 13, 2007, this court loses jurisdiction to consider or grant any relief of any nature in this case.

Very truly yours,

FREDERICK K. OHLRICH
Court Administrator and
Clerk of the Supreme Court

By: H. Miner, Deputy Clerk

HM/hm
Enclosures

IN THE SUPREME COURT

STATE OF CALIFORNIA

# S154667

In the matter of:

   DUANE ROY WEIR,

Petition for review
on habeas corpus.

_____ /

CASE No.___ _____

(Fourth App.Dist.No. ~~E04343~~)  *E043443*

(Super.Ct.No. SWHSS-9118 &
 CR 34989

PETITION FOR REVIEW

RECEIVED

JUL 2 4 2007

CLERK SUPREME COURT

DUANE ROY WEIR, C-02190

CTF-North (N.D.59L)

P.O. BOX 705

Soledad. California 93960-0705

Petitioner in Pro Per

IN THE SUPREME COURT
STATE OF CALIFORNIA

In the matter of:

   DUANE ROY WEIR,

Petition for review
on habeas corpus.

_____/

TO THE HONORABLE CHIEF JUSTICE OF THE CALIFORNIA SUPREME COURT
AND THE ASSOCIATE JUSTICES OF THE COURT.

Comes Now Duane Roy Weir (hereafter Petitioner) respectfully
requesting review following the decision of Court of Appeal, Fourth
Appellate. District. Division Two. Habeas Corpus filed June 29.2007.
Denied July 13.2007. (See attached) Exhibit"34" No Opinion. Citing
the wrong Case Number. Petitioner's Case No. CR-34989.

I

**QUESTION FOR REVIEW**

It must be noted the commitment offense was March 2.1978. In which
Petitioner's Board hearings would be conducted pursuant to the California
Administrative Code (CAC). Title 15 §§2281(c)(1 through 6) and §2281(d)-
(1 through 8) which sets forth consideration criteria and guidelines for
prisoners implementing P.C.§3041.

Petitioner was sentence as an aider and abettor under the Felony-
Murder Rule. (See attached) Exhibit"2" at page-3-line 10-11, and see

(Continue-1-)

"Exhibit"1" Board transcript at page-61. line 15 through 21 revealing victim (Mr.Lowery) was shot by petitioner's brother (Tony or Tyrone A. Weir). (See also page-3-line 9 through 24; page-4- line 1-4 and line 6- through 20). In writ). The victim's testimont; Appellate Ct. Opinion and Attorney General's opinion and also the prosecutor statement out of an investigation. See also all document evidence in support of said pages.

  Petitioner has the term of  seven (7) years to life as an aider and abettor under the Felony-Murder Rule.Note March 2.1978. The commitment-offense. Petitioner now has sevred 29-years and thats no good-time or work-time credits. Petitioner has served 22-years over his Minimum (MEPD) eligible parole date of March 10.1985.

  Petitioner has now had sixteen (16) subsequent parole Board hearings and all hearings of being denied based on the commitment offense and prior record. Petitioner has no violent or violence of any kind. No his-tory. (See page-7-8, 9 and 10 in writ on Board hearing dates).(See also Exhibit"33" Superior Ct.decision at page-2- line 3 through 13. The - Superior Court had completely ignored  all issues  presented in habeas-corpus and current new citations out of the Federal Court. It must be noted the Court of Appeal-Fourth Appellate.District.Division Two did no-thing but rubber-stamp Petitioner habeas corpus.which the Federal Court will question it. Petitioner has an extremely excellent record in the CDC&R with one 115 in all 29-years.(See attached) four (4) pages of the Suitability For Parole and -attached to it documents in support of it.

                                    Respectfully

                                    _Duane G. Weir_____

c/c Duane r.Weir
      Attorney General

( 2 )

COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO



**JUL 1 3 2007**

COURT OF APPEAL FOURTH DISTRICT

## <u>ORDER</u>

In re DUANE R. WEIR                           E043443

    on Habeas Corpus.                          (Super.Ct.No. SWHSS9118 &
                                          CR39489)

                                        The County of San Bernardino

---

THE COURT

    The petition for writ of habeas corpus is DENIED.



                                    **MILLER**
                                                Acting P.J.

cc:    See attached list



## DECLARATION OF SERVICE BY MAIL

I, Duane Roy Weir, do hereby declare that I am a citizen of the
United States. And over 18 years of age. My address is Correctional
Training Facilty. Soledad. California. 93960-0705

On the date set forth below. I deposited in the mail at Correctional
training Facilty. P.O. BOX 705. Soledad. California. True copies of
the Petition for writ of Habeas Corpus and the following sent copy
to as follows:

      (1). Edmund G.Brown Jr.

           Attorney General of the State of California

           300 South Spring Street. Suite-1702

           Los Angeles. CA.90013

      (2). California Supreme Court.

As to any time limit.  The Appeallte Court Decision. I received it
on July 16.2007. The   Officer in the Dorm "Log it in the book" if
needed will provide copy or statement from Coorectional Officer.

I. Duane Roy Weir. declare under penalty of perjury and under the laws
of the State of California that the above is true and correct.

Executed:  July 22.2007.                    Respectfully

Stats. 1977, Chapter 165
Amended Senate Bill 42
From July 1.1977 to July 30.1978

Petitioner's Commitment Offense March 2.1978
Term Seven (7) to Life

SUITABILITY FOR PAROLE

C.R.B. §§2281 and 2292 provides the guidelines of suitability
for parole. The question to be addressed is whether or not the
prisoner would pose an unreasonable risk of danger to society
if released from prison. Circumstances tending to show unsuit-
ability are set forth in Cal. Administrative Code, title 15 §
2281(c)(1 through 6) and §2281(d0(1 through 8). They are guide-
lines; the importance attached to any single circumstance or
combination thereof is left to the Panel's judgement. These-
include:

(1). **Commitment Offense.** Mr.Weir did not assault the
victim himself. Note the sentence transcript on
page-539- the special verdict on Count-3- §245-
(a) assault with a deadly weapon. The finding not
true and second special verdict was (§1203.9 and
§12022.7) personally inflicted great bodily in-
jury). Finding were not true. (see p.539).

(2). **Previous Record of Violence.** None.

(3). **Unstable Social History.** Mr.Weir's early childhood
must be characterized as unstable due to poor family
cohesion and parental control because of alcohol abuse.
However his own family is intact and supportive. His
wife had divorced him because of his alcohol problem
but only to impress on him the necessity to stpp drink-
ing. They remarried in 1979. His relations with others
at this time both within the institution and outside
are very stable.

(4). **Sadistic Sexual Offenses.** None.

(5). **Psychological Factors.** The prisoner has no history of
severs mental problems related to the offense. He did
**have an** alcohol problem until the age of 34. He is now 64
and his alcohol problem has been in abstinence for 29
years and is no longer a problem.

(continue-1-)

(6). **Institutional behavior.** Mr.Weir has program in a
very positive manner while incarcerated. he has
had only one CDC 115 during the 29 years. He has
received excellent work reports, attended AA and
N.A on a regular basis receiving laudatory chronos
for the extent of his participation. He fully vol-
unteers his spare time to the CTF-North library.

Circumstances tending to show suitability for parole are set out
in Cal. Administrative Code. Title 15 §2281(d)(1 through 8):

(1). <u>No Juvenile Record.</u> Auto theft (Dyer Act). No record
of assaulting others as a juvenile or committing crimes
with a potential of personal harm to others.

(2). <u>Stable Social History. (see page-1- and see Jan.13.2006
psychological evaluation report of March 13.2006.</u>

(3). <u>Signs of remorse.</u> The prisoner has clearly indicated
that he understands the nature and magnitude of the
offense. Note page-3-and -4- of psychological evaluation
report of March 13.2006.

(4). <u>Motivation for Crime.</u> Mr.Weir was under the influence of
alcohol the entire day prior to the crime (see Preliminary
Examination before Judge Krum dated April 10 and 11 at
page-19 through 25). Mr.Weir was also under stress of a
threatened divorce by his wife because of his drinking
problem which had existed for a long period of time.

(5). <u>Lack of Criminal History.</u>  The prisoner lacks any signifi-
cant history of violent crime.

(6). <u>Age.</u> Mr.Weir was 34- turn 35 years of age at the time of
the crime. He is now 64 years of age, certainly not a
young man but one who has matured so that his present age
reduces the probability of recidivism.

(7). <u>Understanding and Plans for the Future.</u> Mr.Weir plans to
reside with his wife, Pearl Ann Weir, in Baldwin Park, Cal-
ifornina. He expects to work as an auto mechanic and will
continue A.A. participation. His plans for release are re-
alistic and he has marketable skill that can be put to use
upon release.

(8). <u>Institutional Behavior.</u> Mr.Weir has had one CDC 115 since
his incarceration of 29-years. That was 1983 and since then
he has been disciplinary free and has a classification score
zero.

(Continue-2-)

He has been regularly attending Alcoholics Anonymous
and Narcotics Anonymous meetings. He received above
average work reports in Textiles of 17-years of ass-
ignment. His institutional activities indicate an
enhanced ability to function within the law upon re-
lease.


## SUMMARY

Mr. Weir will make his **seventeenth** subsequent board appearance
before the **Board of Parole Hearing (BPH)**. His life prior to the
crime involved some entanglements with the law and is clearly do-
cumented. **The important factor here is the lack of a violent
criminal history.** He has programmed in an outstanding manner while
incarceration, having received only one serious violation during
the 29 years. His time spent in developing a vocation in Auto Mec-
hanics, understanding and overcoming his personally problem, Alcohol
Anonymous, and upgrading himself academically. His reports are above
average reflecting an ability to cooperate and function in an organ-
ized manner with others.

Mr. Weir has a very supportive wife who has remained faithful and
yoyal over the years. He plans on attending his wife's church in
West Covin. This church has numerous substance abuse programs. He
plans on participating in these programs in his effort to remain
clear and sober in the future. He spoke at length about his eleven
grandchildren that he keeps in close contact with, through communi-
cation by phone and letters. His family appears to be very supportive
and committed to him and his future success. All of these factors
contribute towards a successful adjustment on parole. The prognosis
for successful adjustment in the future in the community is excellent.
(see M. Macomber, PH.D. Staff Psychologist dated January 13, 2006. re-
port for the Board.

## CONCLUSION

The appropriate matrix of base terms for First Degree Murder
are as follows:

Stats. 1977, Chapter 165
Amended Senate Bill 42
~~From July 1, 1977 to July 30, 1978~~

Community Release Board: In 1977, the "terms of imprisonment"
established under Amended SB-42 were 92-156 months (or 7 yrs-
8 mos to 13 years). (Continue)

Source:
Cal. Admin. Code. Title 15, Div.2. Reg. 77, No. 28 (July 9, 1977).

(Continue-3-)

(No Prior Relationship and victim died of cause related to the act of the prisoner but was not directly assaulted by prisoner with deadly force) The term 13 years, the only factor applicable in aggravation was the age of the victim. A factor in mitigation is that the prisoner did not personally harm the victim. It is recommended that the term of 13 years be set.

Under the ISL law, which emphasized rehabilitation or the DSL law which emphasizes punishment a factor to be considered is the culpability of the prisoner and then a comparison of terms set for like crimes. The intent of the law is clearly to make punishment fit the crime and avoid wide disparity in terms set for like crimes. On this basis it is strongly urged that the Panel consider that Mr. Weir has served an appropriate amount of time and set his date for immediate release.

//

//

//

//

//

//

(4)

INMATE COPY

## PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
### UPDATE CLINICAL EVALUATION
### JANUARY 2006

### CORRECTIONAL TRAINING FACILITY
### JANUARY 13, 2006

NAME:                   WEIR, DUANE
CDC#:                   C-02190
DOB:                    7/10/43
OFFENSE:                PC 187, Murder, First Degree
SENTENCE:               7 years to life
DATE OF OFFENSE:        3/2/78
MEPD:                   3/10/85
EVALUATION DATE:        1/13/06

## I.   IDENTIFYING INFORMATION

Mr. Duane Weir is a second term, 62 year old, Caucasian, male from Los Angeles
County. He is a Christian. He has remained married to the same woman that he was
married to prior to his incarceration. The marriage is still intact and is supportive. He
has 28 years in custody.

## II.  SOURCES OF INFORMATION

This report is based upon a single 90 minute interview, plus review of the Central file and
medical file.

The previous psychological evaluation dated 12-24-99 by M. Carswell PHD. Psychologist
at CTF Soledad is still current and valid. The psychosocial assessment done at that time
was reviewed with Mr. Weir. It remains current and valid. Therefore, this information
will not be repeated in this report.

A current psychological evaluation was requested to focus on the issue of Mr. Weir's
alcoholism and whether this is a current problem in his life. The need for forward
participation and self-help or therapy was to also be addressed.

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

III.  CLINICAL EVALUATION AND MENTAL STATUS

Mr. Weir appears to be his chronological age of 62. Hygiene and grooming was good. He was alert and well oriented. His thinking was rational chronological, and coherent. His speech was normal, fluent and goal oriented. Eye contact was good. Affect was appropriate. There is no evidence of anxiety or depression. Intellectually he is functioning in the average ranges. His judgment was in tact. His memory is in tact and his self awareness and insight was very good.

Mr. Weir is a second termer. He does have a history of criminal involvement. He is a product of a criminally oriented family in which the parents encouraged the children to steal from stores in order to support the family. He began drinking alcohol as a teenager with his parent's approval. His parents were both alcoholics and were frequently in bars. He began delinquent behavior as a young teenager and continued then a life of crime until the commended offense. Mr. Weir did maintain stable employment prior to the commended offense. He was working as a journeyman mechanic and he specialized in the repair of transmissions. He has continued to work steadily throughout his years of incarceration. He is now a lead man in the PIA textiles program. He has well developed work ethics.

In an effort to address the issues raised by the board of prison terms panel, he was carefully interrogated about his thoughts and feelings about drinking alcohol at this point in his life. He stated that he thoroughly understands the severe harm that alcohol causes. He has developed deep feelings of revulsion against use of alcohol in his own life and in the life of others. He stated that at this point in his life that any indulgence in alcohol will make him physically sick. Alcohol has created irresponsible and irrational behavior in his past. Any use of alcohol would break his wife's heart. It is remarkable that the woman he was married to at the time of the commended offense has stuck with him throughout these 28 years of his incarceration. She is heavily involved in her church activities in West Covina. He spoke at length about how any use of alcohol in his life deeply hurt his wife, his other family members that have stuck with and his grand children. He spoke of how alcohol has caused 28 years of grief and loss to his family members as well as himself. He knew that inmate manufactured alcohol is readily available at this institution. Those who desire to use alcohol can access it easily. He has remained clean and sober throughout the 28 years since the commended offense occurred. This is evidence how his self control, and new found values to remain clean and sober, and his ability to say no to alcohol. He also spoke about his Christian beliefs. He spoke about his allegiance to Christ who is his Savior and Lord. He knows that the use of intoxicating alcohol is forbidden in the Christian Life. His values in this area appear to be thoroughly thought out, deep and

Weir, Duane   C-02190                CTF-Soledad                1/13/06        lc

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

genuine. His commitment to remain clean and sober in the future and when he is released on parole appear to be sincere. He does continue to attend alcoholics anonymous as regularly as he can. Since he is housed in a dormitory at North Facility, and because North Facility is frequently locked down due to inmate riots, this program is often canceled. However attends as often as he can. He states that he believes in AA and he enjoys participating in it.

In considering the current diagnostic impression he has been consistently diagnosed in the past as having alcohol dependence in institution remission as well as an anti-social personality disorder. In view on his strongly held values to remain clean and sober and his abstinence from alcohol for 28 years, alcohol dependence cannot be a current diagnosis. Alcohol dependence was a problem for him until the age of 34. At this point in time it is no longer a problem and it does not warrant a diagnostic label. Therefore, his label will be deleted or noted only as a historical factor. Regarding the presence of anti-social personality disorder, Mr. Weir does have strong feelings on empathy towards other, concern towards others, and there is no evidences of anti-social or criminal thinking or values and is remorseful. He looks back on his out of control childhood and early years with feelings of sorrow, remorse and unhappiness. This man has changed considerably over his years of incarceration. There is no evidence of a personality disorder at this time.

Current diagnostic impression

AXIS I:     No mental disorder.
AXIS II:    No personality disorder
AXIS III:   No physical disorder
AXIS IV:    Life term incarceration
AXIS V      GAF 90

IV.   REVIEW OF LIFE CRIME

Mr. Weir stated that the victim in the commitment offense was shot during the time that Mr. Weir was walking towards the victim's house from his brother's house. He arrived after the shooting. However, he accepts full responsibility for his involvement in this robbery which led to the death of the victim. He indicated that if he had not become involved in the robbery that the victim would have not been attacked and hurt. In the past he has minimized his involvement in the commended offense. However, at this point I do not see evidence that he is minimizing his involvement. He looks back at his life at that time with unhappiness, recognizing that his values and thinking were irresponsible and

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

antisocial. He stated that he feels terrible about the elderly victim's death due to health problems as a result of the gun shot wound. His feelings of remorse appear to be sincere and genuine.

Mr. Weir's brother, the person that actually shot the victim, continued to lead a life of crime. After doing four years in participation in robbery he was never held responsible for the victim's death. He continued to engage in criminal behavior in Texas and is still in custody as a habitual offender.

## V. ASSESSMENT OF DANGEROUSNESS

A. In considering a potential for dangerous behavior in the institution, Mr. Weir continues to remain disciplinary free. He has not had any serious disciplinary since 1983. He is holding a responsible position in PIA textiles. His thinking is pro-social and responsible. His potential for violence in the institutional environment is essentially nil.

B. In considering potential for dangerous behavior when released to the community on parole, the Level of Service Inventory-Revised was administered. This is an actuarial measure that assesses criminal history which in his case is serious, substance abuse history which is in his case as serious and his progress in vocational goals, family life, and other factors. His score places him at the 5.1 cumulative frequencies in comparison to other prison inmates. This means if 100 men were released on parole, he would do better than 94 of them. The only negative factor is in his life are the historical ones that all occurred before he was 34 years of age. Based upon his current attitude and maturity, his potential for violence in the community is no greater than the average citizen and in fact be lower than the average citizen based upon his growth and maturity.

C. The most significant risk factor in this significant case would be the use of alcohol. As outlined above in this report, his strong values against use of alcohol and his determination to remain clean and sober no longer makes this a significant risk factor.

## VI. CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS

There are no mental or emotional problems in this case that would interfere with regular parole planning. He does have excellent vocational skills that will enable him to secure

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FIVE

employment easily in the community. He has a strong work ethic. He has a very
supportive wife who has remained faithful and loyal over the years. He plans on attending
his wife's church in West Covina. This church has numerous substance abuse programs.
He plans on participating in these programs in his effort to remain clean and sober in the
future. He spoke at length about his eleven grandchildren that he keeps in close contact
With, through communication by phone and letters. His family appears to be very
supportive and committed to him and his future success. All of these factors contribute
towards a successful adjustment on parole. The prognosis for successful adjustment in the
future in the community is excellent.


M. Macomber, PH. D.
Staff Psychologist
Correctional Training Facility, Soledad


B. Zika, PH. D.
Senior Psychologist
Correctional Training Facility, Soledad


MM/lc

D:    1/13/06
T:    1/13/06

539

1    and II and guilty of Count IV, which is consistent in and of

2    itself; those verdicts right there are consistent.

3            THE COURT:  All specific intent crimes.

4            MR. STEINMAN:  All specific intent crimes.

5            Where the inconsistency occurs now is with the

6    finding on Count III and the special verdicts. ~~There were two~~

7    ~~special verdicts in question with regard to Counts I, II~~

8    ~~and IV.~~  One special verdict was, was armed and did use a

9    firearm, and the other was, personally inflicted great bodily

10   injury. ~~The finding of not true as to personally inflicted~~

11   ~~great bodily injury is consistent with a theory that the~~

12   ~~defendant was an aider and abettor,~~ and in and of itself,

13   those are now consistent. However, the jury finds that during

14   the perpetration of the armed robbery and the grand theft,

15   and therefore the murder, he was armed and personally did use

16   a firearm, however, ~~find him not guilty of assault with~~

17   ~~deadly weapon, and as the pleadings and instructions went,~~

18   a firearm, to wit: ~~a rifle or a pistol.~~  Now, how in the

19   world can that be consistent when you have three specific

20   intent crimes, a finding of true as to the use, did use

21   personally a firearm, to wit:  a rifle and a pistol, with a

22   not guilty of a general intent crime of assault with a deadly

23   weapon, to wit:  a pistol and a firearm, in one continuous

24   event, when, in fact, the testimony is, and the only

25   testimony about his participation, this defendant's

26   participation with a firearm, comes from the mouth of Rick

*Exh. "2"*

MC-275

Name DUANE ROY WEIR

Address C-02190..C.T.F.N. N.D.95L

P.O. BOX 705

Soledad.CA.93960-0705

CDC or ID Number  C-02190

## CALIFORNIA SUPREME COURT
(Court)

DUANE ROY WEIR
Petitioner
vs.
BEN CURRY (Warden)
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. _____

*(To be supplied by the Clerk of the Court)*

### INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 at seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

(A-1)

This petition concerns:

☐ A conviction   ☒ Parole

☐ A sentence   ☐ Credits

☐ Jail or prison conditions   ☐ Prison discipline

☐ Other (specify): _____

1. Your name: DUANE ROY WEIR

2. Where are you incarcerated? Correctional Training Facilty.Soledad.CA. 93960

3. Why are you in custody? ☒ Criminal Conviction   ☐ Civil Commitment

   Answer subdivisions a. through i. to the best of your ability.

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Sentence under the Felony-Murder Rule as an aider and abettor to

   P.C. 187; 211 P.C. and 487 P.C.. All counts are run currently.

   b. Penal or other code sections: 245(a); 12022.7; 1203.9. All not guilty verdicts.

   c. Name and location of sentencing or committing court: Superior Court.Dept. 10.

   351 N.Arrowhead Ave. San Bernardino.CA. 92415

   d. Case number: CR-34989.

   e. Date convicted or committed: January 16.1979

   f. Date sentenced: February 23.1979

   g. Length of sentence: 7-yrs to life for 187; 3-yrs for 211 and 2-yrs for 487. All
   counts are run currently.

   h. When do you expect to be released? _____

   i. Were you represented by counsel in the trial court? ☒ Yes.   ☐ No. If yes, state the attorney's name and address:

   Mr.Paul R.Stienman. First American Building. 323 W,Court St.
   San Bernardino.CA. 92401

4. What was the LAST plea you entered? (check one)

   ☒ Not guilty   ☐ Guilty   ☐ Nolo Contendere   ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury   ☐ Judge-without-a-jury   ☐ Submitted-on-transcript   ☐ Awaiting-trial

(A-2)

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Claim-One at page-11, line 13-28; page-12, line 1-22. See also Claim-

Two, at page-21, line 3 through 28; page-22, line 1 through 14, and Claim-

Three at page-29, line 18-22; page-30, line 1 through 28 and page 31, line-

1-8). Court grant whatever relife deems appropriate.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

(1): Page-7 to 10 the "Introduction" of Board Hearings.

(2): Page-11 to 13. Table of Authorities.

(3): Page-14-15. Index to Exhibits.

(4): Claim-One. Page-1 through 12.

(5): Claim-Two. Page-13 through 22.

(6): Claim-Three. Page-23 through 31.

(7): Declaration of Service by Mail.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

Robert M.Rosenkrantz v. John Marshall (Warden)-Case No. CV 05-3836-

GAF (AJW). United States District Court-Cental Distcrict of Calif-

ornia (June 26.2006) Order released.

(A-3)

7. Ground 2 or Ground _____ *(if applicable):*

N.A.

a. Supporting facts:

N.A

b. Supporting cases, rules, or other authority:

N.A.

(A-4)

8. Did you appeal from the conviction, sentence, or commitment?   ☐ Yes.   ☐ No.   If yes, give the following information:

  a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

    N.A.
_____

  b. Result _____   c. Date of decision: _____

  d. Case number or citation of opinion, if known: _____

  e. Issues raised:  (1) _____

     (2) _____

     (3) _____

  f. Were you represented by counsel on appeal?   ☐ Yes.   ☐ No. If yes, state the attorney's name and address, if known:

    N.A.

9. Did you seek review in the California Supreme Court?   ☐ Yes   ☐ No.   If yes, give the following information:

  a. Result  N.A. _____   b. Date of decision: _____

  c. Case number or citation of opinion, if known: _____

  d. Issues raised:  (1) _____

     (2) _____

     (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

  N.A.
_____
_____

11. Administrative Review:

  a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].)  Explain what administrative review you sought or explain why you did not seek such review:

  N.A.
_____
_____
_____
_____
_____
_____
_____
_____

  b. Did you seek the highest level of administrative review available?   ☐ Yes.   ☐ No.   N.A.

  *Attach documents that show you have exhausted your administrative remedies.*

(A-5)

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction,    **MC-275**
    commitment, or issue in any court?    ☒ Yes. If yes, continue with number 13.    ☐ No. If no, skip to number 15.

13. a. (1) Name of court: Superior Ct.351 N.Arrowhead Ave,San Bernardino.CA.92415

      (2) Nature of proceeding (for example, "habeas corpus petition"): Habeas Corpus

      (3) Issues raised: (a) On Board Denying Parole.

          (b) _____

      (4) Result (Attach order or explain why unavailable): Denied (See Exhibit"33)

      (5) Date of decision: May 30.2007 (Filed August 16.2007)

    b. (1) Name of court: Court of Appeal.Fourth App.Dist.Div.Two.

      (2) Nature of proceeding: Habeas Corpus.

      (3) Issues raised: (a) (Same as above).

          (b) _____

      (4) Result (Attach order or explain why unavailable): Denied. July 13.2007 (Filed June 29.2007)

      (5) Date of decision: No Decision. Just denied.

    c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
    N.A,

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949)
    34 Cal.2d 300, 304.)
    N.A,

16. Are you presently represented by counsel?    ☐ Yes.    ☒ No. If yes, state the attorney's name and address, if known:
    N.A.

17. Do you have any petition, appeal, or other matter pending in any court?    ☒ Yes.    ☐ No. If yes, explain:
    Habeas Corpus filed on Board Report. Super,Ct.Monterey.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
    I believe this to be the proper court before filing into the Federal
    Court.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California
that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief,
and as to those matters, I believe them to be true.

Date: July 22 - 2007                          _____
                                                    (SIGNATURE OF PETITIONER)

MC-275 (Rev. January 1, 2007)          **PETITION FOR WRIT OF HABEAS CORPUS**                    Page 6 of 6

(6)

## INTRODUCTION

In the instant Case No. CR-34989 of March 2.1978. Petitioner was convicted in 1979 of 187 P.C. and 211 P.C. under the Felony-Murder Rule as an aider and abettor and was sentence to the term of seven (7) years to life in which the term Petitioner has now served is twenty-eight (28) years.

## PAROLE BOARD HEARING

On February 23.1984. Petitioner appear before board for his "Initial" board hearing with the results of a Two (2) year denial based on commitment offense and prior record.

## MINIMUM ELIGIBLE PAROLE DATE

On March 10.1985 Petioner's minimum eligible parole date.

## SUBSEQUENT PAROLE BOARD HEARINGS

On March 5.1986. Petitioner appear before board with the results of a one (1) denial based primary on commitment offense and prior record.

On March 12.1987. Petitioner appear before board with the results of a one (1) year denial based primary on commitment offense and prior record.

On May 11.1988. Petitioner appear before board with the results of a one (1) year denial based primary on commitment offense and prior record.

//

(Continue to page- 7 -)

## SUBSEQUENT PAROLE BOARD HEARINGS

On May 26.1989. Petitioner appear before board with the results of a one (1) year denial based primary on commitment offense and prior record.

On June 29.1990. Petitioner appear before board with the results of a one (1) year denial based on commitment offense and prior record.

On April 12.1991. Petitioner appear before board with the results of a one (1) year denial based on commitment offense and prior record.

On June 2.1992. Petitioner appear before board with the results of a one (1) year denial based primary on commitment offense and prior record.

on July 20.1993. Petitioner appear before board and during hearing "questions" were ask concerning Petitioner's conviction and Board requested an investigation which ended up with no final decision of the 1993 hearing.

On May 24.1994. Petitioner appear before board with the results of a one (1) year denial based primary on commitment offense and prior record.

On October 16,1995. Petitioner appear before board with the results of a two (2) year denial based primary on commitment offense and prior record.

(Continue to page- 8 -)

<u>SUBSEQUENT PAROLE BOARD HEARINGS</u>

1

2  On September 24,1997, Petitioner appear before board with

3  the results of a one (1) year denial based primary on commit-

4  ment offense and prior record.

5

6  On December 16,1998, Petitioner appear before board with

7  the results of a one (1) year denial based primary on commit-

8  ment offense and prior record.

9

10  On February 5,2001, Petitioner appear before board with the

11  results of a one (1) year denial based on commitment offense

12  and prior record.

13  <u>FOUND SUITABLE FOR PAROLE</u>

14  On April 17,2002, Petitioner appear before board and board

15  found Petitioner "suitable" for parole and fixed term at 218-

16  months. The term reduced by 88-months credits which total

17  term now as 130-months which Petitioner has already served

18  twenty-four (24) years. Fourteen (14) years over term that

19  was set.

20  <u>GOVERNOR REVERSED BOARD'S DECISION</u>

21  On September 13,2002, Former Governor Gray Davis reversed

22  Board's decision granting parole.

23

24  On April 6,2004, Petitioner appear before board with the

25  results of a one (1) year denial based primary on commitment

26  offense and prior record.

27  //

28  //

(Continue to page-9-)

## SUBSEQUENT BOARD HEARINGS

On March 13, 2006, Petitioner appear before the Board with the result of a one (1) year denial based primary on the commitment offense and prior record.  (Petitioner's 17 Subsequent Board Hearing).

//

//

//

//

//

//

//

//

//

//

//

(A-10)

TABLE OF AUTHORITIES

CASE:                                                                    Page:

In re Powell, 45 Cal. 3d 894.                                              1.

In re Johnson (1995) 35 Cal. App. 4th 160, 169.                           1.

In re rosenkrantz, 80 Cal. App. 4th 409, 428.                             1.

Penal Code section §3041, subd. (B).                                      5.

Cal. Code regs., Tit. 15 §2402, subd. (c)(20.                             9.

In re Rosenkrantz, supra, 29 Cal. 4th at p.653.                           8.

Penal Code section §3041 (B).                                             8.

Penal Code section (A).                                                   8.

In re Ramirez, 94 Cal. App. 4th 570.                                      8.

Penal code section §3041, subd. (A).                                      9.

In re Dannenberg, 34 Cal. 4th at 1094, supra.                             9.

(Id., at 1088).                                                           9.

(Id., at 1080).                                                           9.

Biggs v. Terhune, 34 F. 3d at 916, 917, supra.                            9.

Biggs v. Terhune (9th cir. 2003) 334 F.3d 910, 916-917).                  10.

In re Scott II, 133 Cal. App. 4th 573, 133 Cal. Rptr.3d at
920, supra.                                                               10.

Irons v. Warden of California State Prison-Solano (E.D. Cal.-
2005) 358 F. Supp. 2d 936, 947, fn.2.).                                   10.

Irons.                                                                    10.

Irons, 358 F.3d at 947.                                                   10.

Footnote 2 of Irons, 358 F.3d, at 947.

McQuillon v. Duncan, 342 F.3d 1012, 1016 (9th Cir.2003).                  11.

Dannenberg.                                                               11.

Biggs v. Terhune, 334 F.3d, 910, supra.                                   12.

//

(Continue--4-11--)

TABLE OF AUTHORITIES

CASE:                                                                    Page:

In re Rosenkrantz, (2000) 90 Cal. App. 4th, 427-428.          1 & 2

Penal Code section §3041, Article I, § 7 of the California
Constitution and the Fourteenth Amendment to the United-
States Constitution.                                             12.

Penal code section §5011 (A)(B).                                 19.

Penal Code section §3041.                                        20.

Penal code section §3041.                                        20.

Penal Code section (B).                                          20.

Government Code §11342.1                                         20.

Government code §11342.2.                                        20.

Penal Code section §3041.                                        20.

Penal Code section §3041(B).                                     21.

Penal Code section(B).                                           21.

In re Rodrigues (1975) 14 Cal. 3d 639; 122 Cal. Rptr.552-,
651-552, 537 P.2d 384.                                           21.

McQuillon v. Duncan, 342 F.3d 1012, 1016 (9th Cir.2003).        22.

Penal Code section §3041.                                        23.

Fourteenth Amendment to United States Constitution.             23.

Turner v. Hickman, 342 F. Supp. 2d 887. (E.D. Cal. 2004),       23.
Six, Fourteenth Amendment of the United states Constitution.    23.

In re Mark Smith. 109 Cal. App. 4th 489, 505.                   26.

Cal. Code Regs., tit. 15 §2402, subd.(c)(6).                    26.

In re Mark Smith, 109 Cal. App. 4th 489, 505.                   27.

In re Mark Smith, 109 Cal. App. 4th 489, 505.                   28.

In re Ernest Smith (2003) 114 Cal. App. 4th, 343, 372.          28.

//

//

(Continue--A-/2--)

TABLE OF AUTHORITIES

CASE:                                                              Page#

Biggs v. Terhune, 334 F.3d, at 917, supra.                        28.

Mickens-Thomas v. Vaugh, 355 F. 3d, at 304, supra.               28.

In re Mark Smith, 109 Cal. App. 4th, 489, 5085(2003).            28.

Fifth and Fourteenth Amendment to the United states
Constitution.                                                     29.

McQuillon v. Duncan, F.3d 1016, 1016 (9th Cir.2003).            30.

In re Rodrigues (1975) 14 Cal. 3d 639, 122 Cal. Rptr. 551-
552; 537 P.2d 384.                                                30.

Biggs v. Terhune, 334 F.3d 910, supra.                            31.

Robert W. Rosenkrantz v. John Marshall (Warden) - Case No -
CV 05-3836 GAF (AJW), United States District Court Central
District of California - (June 26 - 2008) Order reversed. A-3 (6)

//

//

//

//

//

//

//

## INDEX TO EXHIBITS

EXHIBIT'23'.    *Board Commissioner* Welch issue on alcoholism at page 68, line 21 through 24.

Exhibit'24'.    American Disability Act. BPT-1073-Form filed for the 2005 Board hearing.

Exhibit'25'.    Multi-Purpose Form on AA program.

Exhibit'26'.    Attorney Scowarts letter dated March 13.2006, Board not giving parole date.

Exhibit'27'.    American Disability Act-BPT-1073-Form filed Feb.24.'03, for the 2004 Board hearing.

Exhibit'28'.    Board's Matrix for *Fixing* terms.

Exhibit'29'.    Board fixed Petitioner's term at 218-months (18 years and two moths).

Exhibit'30'.    AA chrono's.

|| Exhibit "31" *Attorney General's Response.*

|| Exhibit "32" *Petitioner's Informal Response.*

|| Exhibit "33" *Superior Court Decision.*

|| Exhibit "34" *Appellate Court Decision.*

||

||

||

(Continue--A-15-)

<u>INDEX TO EXHIBITS</u>                                    Page:

Exhibit '1'. Board Transcript of page 1 through 69.                  Page:

Exhibit '2'. Sentence Transcript of page 1 through 13.

Exhibit '3'. Preliminary Transcript of page 104, line 19-26.

Exhibit '4'. Appellate Court opinion of page 1 through 6.

Exhibit '5'. California Attorney General's Resonse brief at page 10.

Exhibit '6'. Mr.Art Harrison (District Attorny) Response to Board's
             inquiry of three pages.

Exhibit '7'. Classification Program Review of April 17.2001.

Exhibit '8'. Attorney Spowart Memorandum of prior record of three pages.

Exhibit '9'. BPT-1000(a)(Rev. 12/98). Recommendations.

Exhibit '10'. Narcotics Anonymous chrono's.

Exhibit '11'. Therapy.

Exhibit '12'. We Care Program for juveniles.

Exhibit '13'. Library volunter worker.

Exhibit '14'. Certificate Nomination.

Exhibit '15'. Employability Program letter dated Aug.18.2005.

CDC-128-16) Laudtory chrono for participation in program –
             (Employability Program) dated Aug.18.2005.

Exhibit '17'. Laudtory work chrono's from P.I.A.-Textiles.

Exhibit '18'. Laudtroy work chrono's from living units-Halls.

Exhibit '19'. Classification Annual/Post Board of March 16.2006.

Exhibit '20'. Psychologist Evaluation Report of January 13.2006, by
             Dr.M.Macomber,Ph.D. Psychologist page 1 through 5.

Exhibit '21'. Dr.Bruce M.Bakeman, Ph.D. One-on-One-individual therapy.
             Psychologist.

'22'. Psychologist Evaluation Report of December 17.1999, of
      five (5) pages.

(Continue--A-14)

1   IT WAS A VIOLATION OF PETITIONER'S RIGHT TO DUE
    PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH
2   AMENDMENT TO THE UNITED STATES CONSTITUTION FOR
    THE BOARD OF PAROLE HEARING TO FIND PETITIONER
3   UNSUITABLE FOR PAROLE AT HIS FIFTEENTH SUBSEQU-
    ENT PAROLE HEARING BASED ON IMMUTABLE FACTORS
4   OF THE COMMITMENT OFFENSE AND PRIOR CRIMINAL
    HISTORY, RENDERING THE DECISION ARBITRARY AND AN
5   ABUSE OF DISCRETION.

6     On March 13.2006, the Board of Parole hearing held Petition-

7   er's seventeen (17) Subsequent parole hearing to determine wheth-

8   er Petitioner is suitable for parole.

9     The Board concluded that Petitioner was not yet suitable for

10  parole and would pose an unreasonable risk of danger to society

11  or threat to public safety if released from prison. This conclu-

12  sion hinged on their finding that the commitment offense which

13  occurred on March 2.1978. The victim in this case was        Lo-

14  wery who was shot twice in the commission of robbery A/ and he

15  was shot by the inmate's bother (Tony or Tyrony Weir), and the

16  offense was carried out in a crule manner and was trivial.(See-

17  Ex."1 ") Board Transcript at page-61,line 6 through 26, and page-

18  62,line 1 through 4).

19

20    Petitioner contends that there was no evidence presented by

21  Board, nor in the record suggesting Petitioner's actions were

22  carried out in cruel manner. The Board is required under due

23  process to form a factual basis for its findings and not simply

24  state conclusion. In re Powell, 45 Cal.3d 894; In re Johnson, (-

25  1995) 35 Cal. App. 4th, 160, 169; In re Rosnkrantz, 80 Cal. App.

26  4th, 409, 928).

27  _____

28    A/:    In Board Transcript at p.61,line 19..The charge is
             robbery. Not burglary (See Ex." 1"

                         (Continue--1 --)

1    The board states that its conclusions are drawn from the state-
2    ment of facts wherein Petitioner and his brother had been drink-
3    ing quite heavily and that they ended up robbing and shooting
4    the victim in the stomach and chest, where he later died from
5    his wounds, that Petitioner was found guilty and his brother was
6    acquitted for the crime. (See Exhibit" 1" at page-61.line 15-
7    through 21).Board transcript.
8      Not only are those statements surrounding the circumstances of
9    the offense unsupported by the facts of this case, given the -
10   nature of the offense, those findings in itself could not possi-
11   bly be sufficient for a finding of unsuitability since it would
12   necessarily exclude Petitioner outright  from ever having a poss-
13   ibility of parole and this was not the sentence of the court,nor
14   the statutory mandate which governs it (S.C. §190, and P.C.3041).
15     The Board's decision to find Petitioner unsuitable for parole
16   was based primarily on circumstances it stated surrounds the
17   offense itself. In doing so rejected or ignored the evidence and
18   Petitioner's own assertion that he was not the actual shooter in
19   the case and that his conviction or culpability for murder stem-
20   med from the fact that he was an aider and abettor in the robbe-
21   ry, (i.e. Felony-Murder Rule).
22     There is well document and reliable information that the Board
23   is aware of which contradicts their findings and supports -
24   Petitioner's --(See top of page-3-). Error happen.
25   //
26
27   //
28   //

(Continue-2-)

1  own asseration. At the time set for sentencing the trial court

2  concluded the evidence showed Petitioner was at least an <u>aider and</u>

3.  <u>abettor.</u> (See Ex." 2" Sentence Transcript at p.3,line 7 through 11,and

4  the trial court also went on striking  firearm use allegation on all

5  counts in the interest of justice. (See Ex." 2" Sentence Transcript

6  at p.6,line 17 through 21)). (See also Board Transcript at p.55,line

7  25-27; p.56,line 1-2 -Ex." 1 ").

8

9  Petitioner contends when the facts were presented to the Board, the

10  Board conpletely ignored <u>individual culpability</u>, but based its decis-

11  ion largely on what was done not by Petitioner personally but <u>by what</u>

12  <u>Petitioner's brother</u> (Tyrone or Tony Weir) <u>did the actual shooting</u>

13  <u>of the victim.</u> Despite further evidence to the contrary by the victim'

14  s <u>own testimony.</u> The victim identified Petitioner's brother (Tony or

15  Tyrone Weir) as the one who shot him. On cross-examination by Petiti-

16  ioner's lawyer the victim states the following:

17      Q. (By Mr.Call):  Mr.Lowery, do you know Tony Weir, your
           next door neighbor?
18      A. (No Audible Response)
19      Q. You're shaking your head yes, is that right?
        A. Yes.
20      Q. Did Tony Weir shoot you, Mr.Lowery?
21      A. I have reason to believe he did.
        Q. Did you see him?
22      A. Yes.
        Q. Did you see him with a gun?
23      A. Yes.
24  (See Ex."3 " Preliminary Transcript at p.104,line 16 through 24 ).

25

26  It is further noted in the Appellate Courts opinion:

27      "Thus, the defendant's <u>liability</u> for murder was based on his
        involvement of the attempted robbery of the victim."
28  (See Ex." 4 " Appellate Courts Opinion at p-5).

(Continue-- 3---)

1    The California Attorney General's Response Brief states:

2        "Appellant's liabilty for murder was based on his invovement
         in the attempted robbery of the victim, (i.e., Felony-Murder
3        Rule)).

4    (See Ex."5" California Attorney General's Response Brief at p.10).

5

6    The Board of Parole Hearing (BPH) has been aware for some time that

7    Petitioner was not the shooter in this case by its own inquiry regard-

8    ing the conviction of Petitioner. Mr.Art Harrison, San Bernardino

9    County District Attorney responding to the Board's inquiry made the

10   following statement:

11       "One thing I would point out to the Board is that
         the opinion of the trial prosecutor is that the
12       actual shooter in this matter was not Duane Weir,
         but his brother." (Ex."6").
13

14   It should be noted the trial prosecutor was involved in both of the

15   two separate trials of Petitioner and brother (Tony or Tyrone Weir).

16

17   The Board was also advised that the trial prosecutor who now is a

18   Supesior Court Judge, Judge Ashworth has offer to assist in the resol-

19   ution of any further questions the Board or its investigators may have.

20   (See Ex."6" Board of Prison Terms Inquiry at p.3.)).

21

22   With regard to the extent the Board relies on the circumstances sur-

23   rounding the commitment offense to justify its own finding that

24   Petitioner's actions were carried out in an cruel manner.

25   It can only be seen as remarkable that not only has the Board failed

26   to present any factual evidence in support of its own findings, it

27   gives no weight, not even some of the overwhelming well document

28   evidence of Petitioner's true culpability in this matter.

(Continue-- 4 --)

1    Petitioner contends that there was no evidence presented by the

2  board, nor in the record suggesting Petitioner continues to pose a

3  significant risk of danger to public safety based on Petitioner's past

4  criminal history B/.

5    In California parole must be granted unless certain criteria are

6  met. (P.C.§3041, Sub,(B) [The Board shall set a release date unless it

7  determines that the gravity of the current offense or offenses or the

8  timing and gravity of current or past convited offense or offenses are

9  such that consideration of the public safety requires a more lengthy

10 period of incarceration]. The mandate of P.C.§3041 (B) is clear and

11 the Board is required to base their decision on the gravity of convic-

12 ted offenses.

13  In regards to Petitioner's past criminal history the following

14 statements at Board hearing are as follows:

15    "Presiding Commissioner St.Julien:  Do you have any
        additional documents?
16

17    "Attorney Spowart:  Yes I do, I have a couple of
        memorandum here. Memorandum of support and a memorandum
        based - it has to do with prior criminal record.
18

19    "Presiding Commissioner St.Julien: I notice - I guess
        there was so going around and around about this in
        prior hearings, is that correct?
20

21    "Attorney Spowart: Yes, and I'm trying to clear it up.

22    "Presiding Commissioner St.Julien: Okay. So this is dated
        today. This memo that you handed me-

23    "Attorney Spowart: Yes, for the hearing today.

24    "Presiding Commissioner St.Julien: Regarding the criminal
        history. So let me just take a look at this.
25

26                        (Continue)

27  B/.    (See Ex."20" at p.4- section (V)-A,B and C.).

28

                      (Continue-- 5 --)

1    "Attorney Spowart: I looked at the last hearing and they use a lot of prior record --

2    "Presiding Commissioner St.Julien: Yes, that's part of our --

3

4    "Attorney Spowart: Cases that (indiscernible) not supposed to.  There's no disposition, it was dismissed.

5    "Presiding Commissioner St.Julien:  Thank you. Do you have any disagreement - so the disgreement would be

6    perhaps arrests with no disposition that are used as opposed to if you spent time - because you had some

7    county jail, probation and stuff like that. So those are, at least to me those are clear things that happened.

8

9    "Inmate Weir: true.

10    "Attorney Spowart: It has to do with the showing of prior violence and he didn't have any violence.

11    "Presiding Commissioner St.Julien:  So just by looking at this list where we have burglary, parole violation $^{C/}$

12    which was mischief. It's basically property crimes, is that what you were doing?

13

14    "Inmate Weir: Yes, ma'am.

15    "Presiding Commissioner St.Julien: So then also in terms of your previous record and at this point in time generally

16    I'd look at what you were- what you actually may have served time for- and I have a list and you can tell me if I'm

17    right or wrong. I guess it was in Juvenile Hall - I guess that's different than a ranch or anything like that. Did

18    you have time in a juvenile- I think it was a Federal Juven- ile--

19    "Inmate Weir: Yes, it's like a juvenile place. Like a

20    military school.

21    "Presiding Commissioner St.Julien: So maybe the equivalent today of a rach or something like that.

22    "Inmate Weir: Something like that, yes.

23    "Presiding Commissioner St.Julien: And then juvenile proba- tion, state prison, adult probation, parole and county jail. Is that --

24

25    "Inmate Weir: The probation I had was for grand theft. I violated the probation for driving tickets, which I wasn't

26    supposed- that's when I was in state prison, which violated the probation.

27    (Continue)

28    $^{C/.}$  (see Ex. "8" prior record at p.3). No parole violation or buglary.

(Continue--6 --)

1    "Presiding Commissioner St.Julien: .So we can see
     that list. And I think the Governor- did the
2    Governor's letter point out like thirty-four arr-
     ests or--

3    "Inmate Weir: That's what we're --

4
     "Presiding Commissioner St.Julien: So that's why
5    you want to --

6    "Attorney Spowart: That's why I submitted that.

7    "Presiding Commissioner St.Julien: why you wanted
     to bring in (indiscernible --

8    "Inmate Weir: (Indiscernible) -

9    "Presiding Commissioner St.Julien: An accuarte
10   accounting of charges that were actually followed
     through.

11   "Inmate Weir: The non-dispositions. There was no
     dispositions.
12
     "Attorney Spowart: Plus a lack of violence in any
13   of them.

14   (See Ex."1 " Board Transcript at p.3,line 16-27; p.5,line 7-21;
     p,line 1-18; p,13,line 4-27; p.14,line 1-19; (See also Ex."7 "
15   the Classification-Program Review dated April 17.2001, for the
     prior criminal history).
16

17      As the Court notes on page-5-line 15 through 24. Here the

18   attorney Spowart submitted an accuarte prior record revealing

19   Petitioner's criminal history (See Ex."8 ") Attorney Spowart's

20   Memorandum dated March 13.2006.  As the Court notes there are

21   18-charges-page,1 and 2.Some of the charges are the same which

22   there was never (Disposition) on any of these charges. And the

23   Court notes on page-7-line 1-3. Here the Governor went outside

24   the record and used these charges against Petitioner in taking

25   away Petitioner's parole date. (See Ex."8 " ) Attorney Spowart's

26   Memorandum at page-3- for accuarte prior record which there is

27   no violence as the attorney stated on page-7,line 13. It must

28   noted a "previous record of viloence" (meaning an attempt to

                        (Continue--7 --)

1   to inflict serious injury or other "assaultive behavior") is

2   a circumstance tending to establish unsuitability for parole -

3   (Cal. Code Regs., tit. 15§2402, subd. (c)(2); In re Rosenkrantz,

4   supra, 29 Cal. 4th at p.653). There is nothing in the governing

5   statutes or regulations to support the Board's reliance on Petit-

6   ioner's non-violent criminal record. Here, the evidence shows

7   that Petitioner has never been convicted of a violent offense -

8   (either as a juvenile or as an adult). (See Ex."8" prior record.

9   The Court notes "Ex."1" Board Transcript at p.6.line 16-17,

10  where Commissioner St.Julien states all property crimes. Note -

11  Ex."8" at p-3- there was no burglary or parole violation as its

12  stated on line 15 of Ex."1".). In order for the Board to deny

13  parole based on the gravity of Petitioner's past convicted offe-

14  nes. P.C.§3041(B). the Legislature has already considered that

15  fact when it allowed for adjustment of the term based on past

16  offenses P.C.§3041(A). The Board is required to demonstrate the

17  gravity of those offenses by makinf specific findings relating

18  to there severity. The finding must be particular egregious to

19  justify the denial of a parole date and weight not against ordin-

20  ary norms, but against other instances of the same crime or crim-

21  es. The Board must also consider the legthy of time Petitioner

22  has served in relation to the term prescibed for the offense

23  under consideration. In re Ramirez, 94 Cal. App. 4th 549, 570.

24  There is no indication that the Board gave consideration to the

25  gravity of Petitioner's past offenses or the lengthy of time he

26  has served (28 years). Petitioner's past offenses did not in-

27  clude any acts of violence suggesting he pose a danger to soci-

28  ety.

(Continue-- 8--)

1  The Court will note on Petitioner's past prior record there
2  was a charge of "Dyer Act" which is taking an stolen vehicle
3  across the State line. That was some (49 years) when Petitioner
4  was a juvenile, and note some (46 years) ago as a juvenile there
5  was a charge of GTA, otherwords grand theft auto. Petitioner's
6  first adult charge was for grand theft auto(See Ex." 8 ")at pas-
7  prior record (GTA-7-15-66).

8  Petitioner contends for the Board to find Petitioner unsuit-
9  able for parole. It must be noted that the California Supreme
10  Court "cautioned", sole reliance on the commitment offense might,
11  in particular cases, violate section P.C.§3041, subdivision (a)'s
12  provision that a parole date 'shall be set' under 'unform term'
13  principles, and might also contravene the inmates's constitution-
14  ally protected expection of parole" In re Dannenberg, 34 Cal.4th
15  at 1094, supra). Petitioner can only be denied parole if the
16  "violence or viciousness" of the commitment offense is "more
17  than minimally necessary to convit him of the offense" (Id., at
18  1095).

19  Taking the offense into consideration, the "abiding concern"
20  is, is the prisoner "still dangerous" (Id., at 1088). Parole may
21  be denied only if the prisoner is "presently" too dangerous to
22  grant a fixed parole release date." (Id., at 1080). there is
23  zero evidence in the record that Petitioner is "presently too
24  dangerous to grant a fixed parole release date."
25

26  The controlling case is Biggs v. Terhune, 34 F. 3d, at 916-
27  917, supra [ when a prisoner demonstrates "exemplary behavior and
28  //

(Continue-- 9 --)

1  evidence of rehabilitation, ... a continuned reliance in the
2  future on an unchanged factor, the circumstance of the offense
3  and conduct prior to imprisonment ... could result in a due
4  proces violation"])., that due process violation has arrived (-
5  See Biggs v. Terhune, ( 9 Cir. 2003) 334 F. 3d 910, 916-917).
6      Petitioner contends after sixteen (16) Subsequent Board
7  hearings resulting in denials on the commitment offense and con-
8  duct prior to imprisonment in light of Petitioner's "exemplary
9  behavior and evidence of rehabilitation."
10     Petitioner contends a recently California Appellate Court
11  opined in In re Scott II, 133 Cal. App. 4th 573, 133 Cal. Rptr.
12  3d, at 920, supra:

13       "The commitment offense can negate suitability only
14       if circumstances of the crime reliably establish by
         evidence in the record rationally indicate that the
15       offender will present an unreasonable public safety
         risk if released from prison, Yet, the predictive
16       value of the commitment offense may be very question-
         able after a long period of time (Irons v. Warden of
17       California State Prison-Solano. (E.D. Cal. 2005) 358
         F. Supp.2d 936, 947, fn.2.) Thus, denial of release
18       solely on the basis of the gravity of the commitment
         offense warrants especially close scrutiny."

19  As the District Court opined in Irons, the same can just as
20  easily be said in case at bench, as opined in Irons, 358 F.2d,
21  at 947:

22       "[C]ontinueous reliance on unchanged circumstances
23       transforms an offense for which California law
         provides eligibility for parole into a de facto life
24       imprisonment without the possibility of parole. The
         Courts asks, rhetorically what is it about the circum-
25       stances of Petitioner's crime or motivation which are
         going to change? The answer is nothing. The circumst-
26       ances of the crime [] will always be what they were,
         and Petitioner's motive for committing[it] will always
27       be trivial. Petitioner's has no hope for ever obtaining
         parole except perhaps that a panel in the future will
28       arbitrary hold that the circumstances were not that

serious or the motive was more than trivial. Given
that no one seriously contends lack of seriousness
or lack of triviality at the present time, the pot-
ential for parole in this case is remote to the point
of non-existence. Petitioner's liberty interest should
not be determine by such arbitrary, remote possibility."

Footnote 2 of Irons, 358 F. Supp.2d, at 947, is squarely on

point and worth noting in closing:

"To a point, it is true, the circumstances of the crime
and motivation for it may indicate a prisoner's  in-
stability, cruely, impulsiveness, violent tendencies
and the life. However, after [twenty=eight] years in
the caldron of prison life, not exactly an ideal thera-
peutic environment to say the least, and after repeated
demonstartions that despite the recognized hardships of
prison, this petitioner does not posses those attributes,
the predictive ability of the circumstances of the crime
is near zero."

Petitioner contends the evidence in the record does not sup-

port the decision by the Board to deny Petitioner parole, viola-

ting his right to Due Process guaranteed by the Fifth and Four-

teenth Amendment to the United States Constitution. The writ

sholud be granted and the Board ordered to fix Petitioner's term

accordingly to his individual culpability and apply any excess

time earned by good conduct credits to the time he would do on

parole (McQuillon v. Duncan, 342 F.3d 1012, 1016 (9th Cir.2003).

CONCLUSION

The Board and Governor of California, through counsel, the

Attorney General's Office, are doing everything they can to up-

hold what is virtually a "no parole" policy for indeterminately

sentenced prisoners in Californi ,and their motion to dismiss

on Dannenberg, a case that does not apply. Petitioner has clear-

ly demonstrated that he does have a liberty interest in parole

(Continue--11--)

1  protected by the Due Process Cluase of the Fourteenth Amend-

2  ment and that right to Due Proces pursuant to Biggs v. Terhune

3  334 F.3d 910, surpa, have been violated.

4

5  Petitioner contends in order for the Board to overcome this

6  statutorily created presumption the Board is required by law,

7  P.C.§3041(B) and indeed Due Process, to consider the factual

8  circumstances surrounding Petitioner's offense, which are re-

9  liably document when making its decision, and further. to act-

10  ually read the documents and make a reasoned decision based on

11  all the appropriate fators, In re Rosenkrantz, (2000) 80 Cal.

12  App. 4th 409, 427-428. There is no indication that the Board has

13  done so here.

14  Therefore, Petitioner contends the Board's decision denying

15  parole was based on an arbitrary and irrational standard of

16  review, in violation of P.C.§3041, Article I, § 7 of the Calif-

17  ornia Constitution and the Fourteenth Amendment to the United

18  Staes Constitution.

19

20  Wherefore, for the foregoing reasons it is respectfully re-

21  quested that the writ be granted, and any other relief this

22  Court deems appropiate.

23

24  Date: _Aug 14th_ 2006.                    Respectfully

25

26                                           DUANE  Roy Weir-C-01290

27

28

(Continue-- 12 --)

CLAIM TWO

2  PETITIONER WAS ILLEGALLY AND UNCONSTITUTIONALLY
   DENIED PAROLE WHEN THE BOARD OF PAROLE HEARING
3  FOUND PETITIONER NEEDS SELF-HELP AND THERAPY TO
   EXPLORE HIS FULL CULPABILITY IN THE CRIME. VIOL-
4  ATING P.C.§3041, P.C.§5011 AND THE 14TH, AMEND-
   MENT TO THE UNITED STATES CONSTITUTION.
5

6    In the Board's decision denying parole, the Board made the

7  following findings:

8        "Presiding Commissioner St.Julien:  We make the
          following findings:  That the inmate's lack of
9         meaningful self-help programming does not demon-
          strate to the panel that you'll have the necess-
10        ary tools to maintain your gains outside a con-
          trolled setting." (See Ex."1" Board Transcript
11        at p.65,line 9 through 13).

12   It is further noted the Board of March 13.2006, relied

13  exclusively upon previous Board of April.6.2004, recommendations

14  and was the reason the 2004 Board hearing denied parole as to

15  the following:

16        "the extent to which the prisoner has explored the
          commitment offense and come to terms with the un-
17        derlying causes." (See Ex."9" BPT-1000(a)(Rev.-
          12/98).
18

19   Petitioner contends there is overwhelming well document

20  evidence the Board has completely failed to consider or even

21  mention the programs of self-help and therapy programs Petition-

22  er has participated in as follows:

23   (1). Fifteen (15) years of Alcoholics Anonymous.(See Ex."1"
          Board Transcript at p.35,line19) (See Ex.'30' AA chrono's)
24

25   (2). Alcoholics Anonymous Big Book/ Twelve Step Study Group-
          (See Ex."1" Board Transcript at p.36,line 26-27 and p.-
26        37,line 1-2).

27   (3). Five (5) years of Narcotics Anonymous. (See Ex."10" no
          history of any kind of drugs.
28   //

                    (Continue--13 -)

## THERAPY

(4). One-on-One with Dr.Bruce M.Bakeman, Ph.D. Clinical Psychologist. "Topcs:  The commitment offense explored, as well as factors which led upto it. (See Ex."11 ").

(5). Life Skills Group with Dr.Bruce M.Bakeman, Ph.D. Clinical Psychologist. "Topics:

   A. Substance Abused.  B.Overcoming Anger and Aggression.
   C. Stress Management. D.Forming Life Goals.
   E. Building Self-Esteem.
   F. Improving Problem Solving Skills.
   G. Re-Entry-Making a successful return to society.(See-Ex."11").

(6). Reality and Decision Making Group. "Topics:

   A. Attitude.
   B. Values and Feelings Claraification.
   C. Goals Orientation.
   D. Problem Solving Techniques.
   E. Impulisive Behavior and various consepte of Williams Glasser, Ph.D. and Eric Bernie,M.D. (See Ex."11").

(7). Beginning Stress Management & Relaxtion Training. (See-Ex."11 ").

(8). Communication Skills Training.(See Ex."11 ").

(9). Self-Esteem and Assertiveness Training.(See Ex."11.").

(10). Yoke-Followship Groups. (See Ex." 11").

(11). We Care Program for juveniles. (See Ex."12").

(12). Education Program.  Completed GED. (See Ex."1").Board Transcript at p.4-5).

(13). Vocational Auot mechanics completed.(See Ex."1"). Board Transcript at p.35,line 5-8).

(14). North facility Library volunter worker.(See Ex."13").

(15). Sixteen (16) years in job assignmemt..P.I.A. Textiles with postive work reports. (See Ex."1" Board Transcript at p.35,line 1-20.

(16). Inmate Employability Program. Certificate nomination Form. (See Ex." 14").

(17). Certicificate of Proficiency Machine Operator. (See-Ex."1 ").board Transcript at p.38,line 11-14).

(Continue-- 14 --)

1   (18). Inmate Employability Program. (See Ex."15" dated Aug.18.
2        2005. Former P.I.A. Worker Verification Card to be used
         at the Employment Office" and (See Ex."16").CDC-128-B-
3        Laudatory Chrono revealing one has to participate in
         this program in order to get full benefits of the pro-
4        gram. (See Ex." 1").Board Transcript at p.66,line 19-20)

5   Petitioner contends Commissioner Mejia is mis-leading the

6   reader to believe Petitioner has done nothing but review the

7   three (3) hour video. the Exhibits explain the true facts about

8   the video.

9

10                      LAUDATORY CHRONO'S

11   (19). CDC-128-B- Laudatory Chrono-Work. Oct.12.2005

12   (20). CDC-128-B- Laudatory Chrono-Work. June 12.2002.

13   (21). CDC-128-B- Laudatory Chrono-Work. Sept.20.1997.

14   (22). CDC-128-B- Laudatory Chrono-Work. Oct.15.1997.

15   (23). CDC-128-B- Laudatory Chrono-Work. February.15.1995.

16   (24). CDC-128-B- Laudatory Chrono-Work. April.14.1994.

17   (25). CDC-128-B- Laudatory Chrono-Work. January 23.1991.

18   (26). CDC-128-B- Laudatory Chrono-Work. May.5.1990.

19        (See Ex."17").

20

21                       HALL PORTER

22   (27). CDC-128-B- Laudatory Chrono-Work. May 4.1989.

23   (28). CDC-128-B- Laudatory Chrono-Work. May 5.1989.

24   (29). CDC-128-B- Laudatory Chrono-Work. November 9.1989.
          (See Ex."18 ").
25

26

27   Petitioner contends the Board's reference to Petitioner not

28   having participated in self-help and therapy programs refer to

                       (Continue--15 --)

1    subdivision (d)(9) of section §2402, which <u>lists as a</u>
2    <u>factor demonstrating suitability for parole,</u> the fact Petitioner
3    has <u>participated in institutional activities that indicate an</u>
4    <u>enhance ability to function within the law upon released.</u> the
5    arbitrariness of this concern is demonstrated by the Board's
6    recommendation that Petitioner participate in the IMPACT and
7    also in Anger-Manegement. (See Ex."1" Board Transcript at p.66,
8    line 18, and p.67,line 9-10).
9
10    Petitioner contends the board has placed Petitioner in an
11    impossible situation knowingly Petitioner will never achieve or
12    participate in the IMPACT or the Anger-Management programs be-
13    neither of the two programs exist.(See Ex."19" the Classifica-
14    tion Annual/Post Board of March 16.2006, noting the IMPACT and
15    Anger-Management programs has been discontinued.
16
17    Petitioner contends there is no suggestion or evidence in
18    the record or in the report of January 13.2006; by Psychologist,
19    Macomber Ph.D.stating Petitioner had a problem controlling his
20    temper. Dr.Macomber concluded Petitioner had no mental disorder,
21    no personality disorder or no physical disorder that would
22    necessatate treatment. (See Ex."20"BPH- Psychologist Evaluation
23    Report of January 13.2006,at p.3,4-5 where Dr.Macomber states
24    the following:
25        "By Dr.Macomber: there are no mental or
26        emotional problems in this case that
         would interfere with regular parole
27        planning. the prognosis for successful
         adjustment in the future in the commun-
28 //     ity is excellent."(See Ex."20") at p.4-
         5.

(Continue--16 --)

1    On the contrary, all the evidence presented to the board

2  and in the record, shows that not only doesn't need therapy, but

3  also that he is neither unpredictable nor a threat to others.

4

5    In a report prepared by Dr.Bruce M.Bakeman, Ph.D., Staff

6  Psychologist states:

7        "this inmate has completed a course of
8        individual therapy. During the course
         of this therapy, his understanding of
9        his commitment offense was explored,
         as well as the factors which lead up
10       to it. As a result of this therapy and
         his increasing self-understanding, his
11       violence and recidivism potential should
         be less than for the average inmate." (See
12       Ex. "23" Psychologist Chrono.).

13    In a report prepared for Board of Prison Terms by Staff

14  Psychohologist., M.Carswell, Ph.D. states as follows:

15       "By Dr.Carswell: Under Clinical Assessment"
16       Mr.Weir showed- Good insight into his commit-
         ment offense." (See Ex. "22") at p.three (3).

17

18    Dr.Carswell further states under "Clinical Observations"

19  Comments and Recommendations as follows:

20       "This inmate has no mental health disorder
21       which would necessitate threatment either
         during his incarceration or after parole.(
22       See Ex."22" at p.4).

23    Dr.Carswell further states, release to community as

24  follows:

25       "If released to the community, his violence
         potential is estimated to be no higher than
26       the average citizen in the community." (See
         Ex. "22" at p.four-4-).
27

28  //

(Continue-- 17--)

1    In a report of 2006 prepared for Board of Parole Hearing by

2  Staff Psychologist, Dr.M.Macomber, Ph.D. states as follows:

3               CLINICAL EVALUATION AND MENTAL STATUS
       "Dr.Macomber states:  Regarding the presence of anti-
4   social personality disorder, Mr.Weir does have strong
    feelings of e,pathy towards others, concerns towards
5   others, and there is no evidence of anti-social or
    criminal thinking or values in his life at this point.
6   This man has changed considerable over his years incar-
    ceration. There is no evidence of a personality disorder
7   at this time." (See Ex."20." at page-3-).

8

9    Dr.Macomber further evaluation under the following:

10              CURRENT DIAGNOSTIC IMPRESSION

11           AXIS I:   NO MENTAL DISORDER.
12           AXIS II:  NO PERSONALITY DISORDER.
             AXIS III.NO PHYSICAL DISORDER.
13           AXIS IV:  LIFE TERM INCARCERATION.
             AXIS V:   GAF  90

14

15    Dr.Macomber evaluation of Petitioner's dangerousness in

16  the community as follows:

17              ASSESSMENT OF DANGEROUSNESS

18    Dr.Macomber states:  In considering a potential for
    dangerous behavior when released to the community on
19  parole, the Level of Services-inventory-Revised was
    administered. This is an actuarial measure that ass-
20  esses criminal history which in his case is serious,
    substance abused history which is in his case as
21  serious and his progress in vocational goals, family-
    life, and other factors. His score places him at the
22  5.1 cumulative frequencies in comparison to other pri-
    son inmates. This means if 100 men were released on
23  parole, he would do better than 94 of them. Based upon
    his current attitude and maturity, his potential for
24  violence in the community is no greater than the aver-
    age citizen and in fact be lower than the average cit-
25  izen based upon his growth and maturity. The prognosis
    for successful adjustment in the future in the community
26  is excellent." (See Ex."20." at page-4-5).

27  //

28  //

               (Continue--18--)

1    Petitioner contends the evidence shows that Petitioner

2  has already received therapy regarding the commitment offense

3  and also self-help. Petitioner doesn't need therapy, and most

4  importantly can not get therapy no longer which the Board was

5  already aware of before making its decision. (See Ex." 7 " the

6  Classification Program Review dated April 17.2001).

7

8    The evidence and reports further shows that Petitioner is

9  neither unpredictable, nor a threat to others and has never dis-

10 played assaultive behavior in his past or present which would

11 indicate otherwise.(See Ex." 7 " Classification Program Review

12 dated April 17.2001, noting no violent crimes or violence).

13

14    The Board is further prohibited by law from requiring an

15 admission of guilt to the crime in its parole determination, not

16 to mention requiring therapy in order to explore it. California

17 Penal Code Section §5011(A); (B) states:

18       "Admission of guilt: Prohibited against
19       requirment for treatment, custody or
         setting dates;

20       (A) The Department of Corrections shall
21       not require, as condition for any form
         of treatment or custody that the Depart-
22       ment offers, an admission of guilt to
         any crime for which an inmate was commi-
23       tted to the custody of the Department.

24       (B) The Board of Prison Terms shall not
         require, when setting parole dates, an
25       admission of guilt to any crime an in-
         mate was committed."

26

27    Petitioner contends to the extent the Board relied on

28 therapy for Petitioner to explore his full culpability in its

(Continue--19---)

findings to deny parole, it not only violated P.C.§5011,
but also the statutory mandate govern their decision making
process under Cal. P.C.§3041. This statute outlines for the
Board under what set of circumstances it can rely on when making
a decision not to set parole dates, which states under Penal
Code §3041 (B):

> "The Panel or Board shall set a release date
> unless it determines that the gravity of the
> current convicted offense of offenes, or the
> timing and gravity of current or past offense
> or offenes, is such that consideration of the
> public safety requires a more lengthy period
> of incercareation for this individual, and
> that a parole date, therefore, cannot be fixed
> at this meeting."

The statute is clear that when the Board makes its determina-
tion it is required to do so based solely on the gravity and
timing of current or past convicted offense leaving silent any
post-conviction criteria or requirement to consider, such as in
this case the need for therapy. The Board cannot adopt rules, re-
gulations or standards to make its parole determination which
are beyond the authority confered upon it by P.C.§3041, and they
must accord with standards prescribed by other provisions of law
P.C.§5011 (See Gov. Code §11342.1). The Board gives itself much
broader discretion than does P.C.§3041 (B). However, when an
Administrative Rule, Regulation or Standard conflicts with a
statute, the statute controls.   (Government Code§113442.2). There-
fore, the Board must obey Penal Code §3041 without regard to any
post-conviction requirement or provision the Board may have
adopted, or conferred upon itself in its decision making process.
//

(Continue-- 28 -)

1   in the crime and would be a good candidate for parole.

2

3                          RELIEF SOUGHT

4      Since Petitioner's suitability for parole is presumed as a

5   matter of law (P.C.§3041) the Board conducted hearing to deter-

6   mine only if there is nonetheless a preponderance of evidence

7   adduced at the hearing demonstrating a current dangerousness to

8   society sufficient to overcome the presumption, and that a parole

9   date therefore cannot be set at that time. (P.C.§3041(B). But

10  absent the minimal process due at a hearing, a test for unsuit-

11  ability is not even available, and the presumption prevails.

12     What has happened here is that the Board has failed to demon-

13  strate by any evidence that Petitioner poses a current danger to

14  society thereby denying him his statutory right to parole.

15

16     The appropriate relief is order Petitioner's immediate

17  release pursuant to (In re Rodrigues (1975) 14 Cal. 3d 639; 122

18  Cal. Rptr, 552, 651-652, 537 P.2d 384). Petitioner's term

19  should have been fixed years ago, as Petitioner is under the

20  "OLD" Rehabilitation Law of (1978) which Petitioner term is

21  seven(7) years to life (See Ex."1" Board Transcript at page-56,

22  line 2 through 5, and page-59,line 8-9, and note page 68,line 13

23  through 19 where attorney Spowart states as follows:

24              "By Attorney Spowart: . Commissioner, before you
                go off I'd like to make a statement, just a short
25              one. My client's been down twenty-eight years. He
                was not the shooter and after the hearing today, I
26              don't feel he got a fair hearing. The punishment
                is rapidly escalating to where it's cruel and un-
27              usual, for the record.)(See Ex."1" at p.68,line 13
                19.).
28  //

                         (Continue-- 21 -)

1    Petitioner contends the evidence in the record does not
2    support the decision by the Board to deny Petitioner parole, vio-
3    lating his right to Due Process guaranteed by the Fifth and
4    Fourteenth amendment to the United states Constitution.
5
6    The writ should be granted and the Board ordered to fix
7    Petitioner's term and apply any excess time earned by good con-
8    duct credits to the time he would do on parole (McQuillon v.
9    Duncan, 342 F. 3d 1012, 1016 (9th Cir. 2003).
10
11    For the foregoing reasons, it is respectfully requested that
12    the writ be granted and Petitioner be appointed counsel to
13    protect his rights. And any other relieft this Court deems
14    appropriate.
15
16
17    Date. Aug 14th - 2006.                    Respectfully
18
19                                              DUANE ROY WEIR-C-02190
20
21
22
23
24
25
26
27
28

1          CLAIM THREE

2    PETITIONER WAS ILLEGALLY AND UNCONSTITUTIONALLY
     DENIED PAROLE WHEN THE BOARD OF PAROLE HEARING
3    USED PETITIONER'S PAST IMMUTABLE HISTORY OF
     ALCOHOL ABUSED WHEN THERE IS NO EVIDENCE HE IS
4    USING OR PRESENTLY ADDICTED TO ALCOHOL.VIOLAT-
     ING P.C.§3041,AND THE FOURTEENTH AMENDMENT TO
5    THE UNITED STATES CONSTITUTION,AND TURNER V.
     HICKMAN,342 F. SUPP. 2D 887 (E.D. CAL. 2004).

6

7    On March 13.2006, the Board of Parole Hearing held Petitioner's

8    fifteenth (1.) Subsequent Board hearing to determine whether Petition-

9    er is suitable for parole. At this Board hearing the main focus was

10   on the previous Board's recommendation of 2004 as follows:

11              "Presiding Commissioner Welch:  We're going to ask
                that a new psychological report especially address
12              the issue of alcoholism and prisoner's need for
                further self-help in those areas." (See Ex." 2 "
13              Board Transcript at page-68,line 21 through 24 ) and
                (See Ex."2" the BPT-1000(a)(Rev. 12/98)the recomm-
14              endations).

15   In the Board hearing of March 13.2006, Presiding Commissioner

16   St.Julien states as follows:

17              "Presiding Commissioner St.Julien: One of the things
                the psychologist in last report was asked to explore
18              was your, you know, the history of drinking and where
                you are at this point in time." (See Ex."1 " Board -
19              Transcript at page-20,line 22 through 26) D./.

20   Petitioner contends he was denied effective assistance of counsel,

21   by attorney David J.Spowart failure to ensure all of Petitioner's

22   procedural due process rights were protect under the Six, Fourteenth

23   amendment of the United States Constitution and Federal.

24

25   Petitioner contends attorney David J.Spowart failed to protect

26   Petitioner's rights under the American Disabilities Act (ADA) --

27   D/. Petitioner contends that Commissioner St.Julien is referring to
     Board hearing of 2004 in which Commissioner Welch reveals the follow-
28   ing above lines 11 through 13).

                          (Continue--23 -)

1    and to ensure the Board would comply with (Turner v. Hickman, 342

2    F. Supp. 2d 887 (E.D. Cal. 2004). The Board knowingly and intentionally

3    discriminated against Petitioner as follows:

4

5    In the instant case, prior to the Board hearing of March 13.2006,

6    Petitioner filed with the Board the BPT-1073-Form on December 7.2004,

7    under the American Disabilities Act (ADA) and Petitioner had made the

8    following statement"

9        "By Petitioner: Alcohol not to be used in any
         hearing or decision." (See Ex."24" the BPT-1073-
10       Form of American Disabilities Act).

11   Petitioner contends the Board discriminated against Petitioner in

12   that Commissioner Mejia states:

13       "Deputy Commissioner Mejia:  It looks like you have some
         self-help - some - at least fifteen (15) years of AA.
14

15       "Deputy Commissioner Mejia:  What happened? You stopped
         in"99.

16
         Deputy Commissioner Mejia: So  you're telling me that they
17       don't have an actual meeting,

18       "Inmate Weir: No, sometimes they don't. I'm not saying all
         the time, the majority- because you know this lock-down has
19       a lot of problems going on right now and it's hard to keep
         any program."E /.

20
         "Deputy Commissioner Mejia:  It's been six years, you
21       haven't done any AA, NA.

22       "Deputy Commissioner Mejia:  How do you plan not to drink.

23       "Deputy Commissioner Mejia: I'm concerned about the AA,NA.

24       "Deputy Commissioner Mejia:  You haven't drank. I'm not
         saying that I will even think of denying it based on just
25       that one, but it's a concern for me during this post-con-
         viction here." (See Ex."1 " Board Transcript at p35,line-
26       17-19);p.35.line 21-22);p.36.line 15-17);p.36.line 18-22);
         p.37.line 12-13);p.37.line20-21);p.38.line 15);p.41.line-
27       10 and lines 14 through 18)."

28   E /.(See Ex."25" Multi-Purpose Form- Revealing no AA program.

                        (Continue--24--)

1   Petitioner contends there is further document evidence the Board
2   knowingly and intentionally denied Petitioner parole date based upon
3   Petitioner not having participate in Alcoholics Anonymous or Narcotics
4   Anonymous program in that the Board Panel reveal to Petitioner's Board
5   attorney-David J.Spowart the following:

6           "By Attorney Spowart:  What happened after your
            hearing on Tuesday, March 13.2006. As I was
7           starting to leave the building both commissioners
            stopped me and tried to explain why they had not
8           given you a date. They said they really wanted to
            give a date but believe without any current AA it
9           would be rejected upon review in Sacramento and/
            or by Governor." (See Ex."20" attorney Spowart's
10          letter dated March 17.2006 to Petitioner)."

11  Petitioner contends he was put in an impossible situation when
12  trying to explain to the Board no AA program exist (See Ex." 1 " Board
13  Transcript at p.36.line 18 through 22)(See also Ex."25" the April 6.
14  2006 Multi-Purpose Form) in which Petitioner question as to the AA -
15  program which there had been no AA for some time and thats prior to
16  the Board hearing of March 13.2006, and after Board hearing. The Board
17  has continue to discriminate against Petitioner knowingly in that the
18  BPT-1073-Form had been filed with the Board on December 7.2004, which
19  this document filed would be for the April-2005 Board hearing but there
20  was long delay which ended up being March 13.2006 Board hearing.F /.
21
22  Petitioner contends the Board has in fact foreclosed any possibility
23  of rehabilitation for Petitioner no matter how successful Petitioner
24  has been in not abusing alcohol or how often he has participated in
25  alcohol abuse prevention programs. The Board obviously has presumed
26  that having abused alcohol prior to the commitment offense. Petitioner
27  will alway abuse alcohol regardless how successful Petitioner has been
28  F /.(See Ex."27" BPT-1073-Form file Feb.24.2003, for the 2004 Hearing)

(Continue--25--)

1   in abstinence from alcohol. Petitioner has been alcohol free for

2   28-years. The presumption by the Board preclude any possibility of

3   rehabilitation and doom any prospect of parole for Petitioner.

4

5       In the instant case, the Board specifically requested their own

6   forensic expert, Dr.M.Macomber, Ph.D. Staff Psychologist to make and

7   evaluation of Petitioner's alcoholism and need for self-help and the

8   need for therapy. (See Ex."20" Psychologist Evaluation Report of March-

9   13.2006 at page-1-).

10

11      In a report prepared for the Board of Parole hearing by Dr.Macomber,

12  Ph.D. Staff Psychologist states as follows:

13          "In view of Mr.Weir's strongly held values to remain
            clean and sober and his abstinence fro alcohol for
14          28 years G/, alcohol dependence cannot be a current
            diagnosis. Alcohol was a problem for him up until
15          the age of 34. At this point in time it is no longer
            a problem and it does not warrant a diagnostic label.
16          Therefore, his label will be deleted or noted only as
            a historical factor." (See Ex."20" at page-3-of the
17          Psychologist Evaluation Report of March 13.2006).

18

19  Dr.Macomber evaluation for "Alcohol Risk" factor:

20          "Mr.Weir's strong values against use of alcohol and
            determination to remain clean and sober no longer
21          makes this a significant risk factor." (see Ex."20"
            at page-4- of Psychologist Evaluation Report of
22          March 13.2006).

23                              (Continue

24  G/. In re Mark Smith, 109 Cal. App. 4th 489, 505. The Court stated
    the following: "There is no evience in the record to show that Smith
25  is presently addicted to drugs.(Cal. Code Regs., tit. 15,§2402,subd.
    (c)(6)[serious misconduct while in prison is a circumstance tending to
26  show unsuitability]). To the contrary, the record establishes that he
    has participated in Alcoholics Anonymous and Narcotics Anonymous in
27  prison, and the only drugs he takes at this time are those prescribed
    for his various medical condition. While there is evidence that he used
28  drugs and abused alcohol at the time of the murder, a prisoner's prior
    addiction is not appropriate consideration in determining parole suit-
    ability).(Continue to next page at bottom of page).

(Continue-26.--)

Dr. Macomber further evaluation for "Dangerous Behavior":

> "In considering potential for dangerous behavior when released to the community on parole, the Level of Service Inveentory-Revised was administered. This is an actuarial measure that assesses criminal history which in his case is serious and his progress in vocational goals, family life, and other factots. His score places him at the 5.1 cumulative frequencies in comparison to other prison inmates. This means if 100 men were released on parole, he would do better than 94 of them." (See Ex. "20" at page-4-of Psychologist Evaluation Report of March 13. 2006).

Dr. Macomber evaluation for "Potential for Violence":

> "Based upon Mr. Weir's attitude and maturity, his potential for violence in the community is no greater than the average citizen and in fact be lower than the average citizen based upon his growth and maturity." (See Ex. "20" at page4- of Psychologist Evaluation Report of March 13. 2006).

Dr. Macomber further evaluation for need of "Self-Help and Therapy":

> "There are no mental or motional problems in this case that would interfere with regurl parole planning. The prognosis for successful adjustment in the community is excellent." (See Ex. "20" at page-5- of Psychologist Evaluation Report of March 13. 2006).

Petitioner contends the Board completely ignored their own expert, Dr. M. Macomber, Ph.D. Staff Psychologist "Evaluation Report" they specifically requested it done and denied Petitioner parole datesso the record on Petitioner's "alcoholism" would be for once and all Clear and free from alcohol abuse. Dr. Macomber further made it clear that Petitioner has no mental or motional problems that would require self-help. Dr. Macomber also made it clear Petitioner no longer has alcohol problem.

(Continue )

In the instant case of Mark Smith, 109 Cal. App. 4th 489, 505, it must be noted Petitioner's case is no difference as Petitioner has been alcohol free for (28-years). The Board's decision was arbitrary and capricious in Petitioner's case.

(Continue--27 -)

1    Petitioner contends his history of alcohol abuse is just that,

2    history, and there is zero evidence that he is presently using alcohol.

3    Several lower courts have addressed this, and two of the published

4    opinions, this Court let stand. In re Mark Smith, (2003) 109 Cal.App.

5    4th 489, 505, the Court held that " a prisoner's prior addiction is

6    not an appropriate consideration in determining parole suitability"

7    and in In re Ernest Smith, (2003) 114 Cal. App. 4th 343, 372, the

8    appellate court held that Smith's past desire for drugs was not some

9    evidence that "he currently poses an unreasonable risk of danger with-

10   out further treatment" and to use his prior history of substance abuse,

11   an "immutable factor" to deny parole was "arbitrary and capricious."

12   It can be no less so in Petitioner's case, as the record here

13   reveals Petitioner has maintained sobriety for "28-years" (See Ex. "20"

14   Psychologist Evaluation Report of January 13.2006, at page-3-and page-

15   4-at section(c).

16   If Petitioner's past history of alcohol abuse can establish unsuit-

17   ability, then the Board "could deny parole for the rest of [Petitione-

18   er's] life based on the immutable factor" (Id., Biggs. v. Terhune,334

19   F. 3d, at 917, supra; Mickens-Thomas v. Vaugh, 355 F. 3d, at 304, supra;

20   In re Mark Smith, 109 Cal. App. 4th 489, 505 (2003)[unless there is

21   evidence in the record that a prisoner "presently" uses drugs or

22   alcohol, "a prisoner's prior addiction is not an appropriate consider-

23   ation in determining parole suitability"]).

24

25   CONCLUSION

26   Petitioner was convicted for First Degree Murder under the Felony-

27   Murder Rule as an Aider and Abettor (See Ex. " 2 " at p.3-line 7-11) in

28   Id.

(Continue-- 28 --)

1  the crime and has been imprisoned for his role in that for twenty-
2  eight (28) years. Petitioner has been eligible for parole since March
3  10.1985 and has had seventeen(17) parole consideration hearings H /re-
4  sulting in denials. . However, our laws recognize that even those con-
5  victed of murder can pay their debt to society and be returned to so-
6  ciety as productive, law-abiding members of the community.
7
8  The Legislature has decreed that unless the Board finds that the
9  release of a person convicted of murder poses a threat to public safe-
10  ty, such a person should be paroled.
11
12  In this case, there was no evidence to support the Board's finding
13  that Petitioner poses an unreasonable risk of danger to society or a
14  threat to public safety. On the contrary, the overwhelming evidence
15  demonstrates Petitioner has paid his debt for his role in the crime
16  and would be a good candidate for parole.
17
18                         RELIEF SOUGHT
19  Petitioner contends the evidence in the record does not support
20  the decision by the Board to deny Petitioner parole, violating his
21  right to due process guaranteed by the Fifth and Fourteenth amendment
22  to the United States constitution. the writ should be granted and the
23                         (Continue)
24  H /.In the instant case. Petitioner has a term of seven (7) years to
    life sentence of March 2.1978: The Court will noted (Exhibit "??") the
25  Board's "Matrix" revealing the terms one would be under.As the Court
    noted Petitioner was sentence as an Aider and Abettor. In (Ex..??)
26  Petitioner's term is in section(A)(3)-term, ??,13 and 15). As the Court
    will note Petitioner was found suitable April 17.2002(See Ex ??)the
27  Board fixed Petitioner's term at 218-months which 88-months had to be
    taken off for credits which term now is "130-months" thats ten years
28  and ten-months. the term for Petitioner. (Continue to next page).

(Continue--29--)

1  Board ordered to fix Petitioner's term to his individual culpabil-

2  ity under the guidelines of the "Matrix" that is established by CCR-

3  Title 15 (See Ex."28 ") and apply any excess time earned by good con-

4  duct credits to the time he would do on parole (McQuillon v. Duncan

5  F. 3d 1012, 1016 (9th Cir. 2003)) I/.

6

7  As the Court noted when Petitioner's term was fixed by the Board

8  (See Ex."29 ") the total term was (218-months) which is (18-years and

9  2-months) this is with no credits to reduce the term . It is noted

10  Board apply (88-months) credits to reduce the term to (130-months)

11  which the total term now is (10-years and 10-months). Petitioner by

12  rights should be "discharged" completely as the Court will note that

13  Petitioner has served (24-years) with no credits . Petitioner has

14  exceed the complete term, and now Petitioner has (28-years) with no

15  credits to reduce the term. The Court notes the (Ex."28 ") Title 15-

16  the highest term is (22-years) note (D)(4). Petitioner was sentence

17  as an Aider(See Ex." 2 ") with the term of seven (7) years to life of

18  March 2.1978, and as attorney Spowart reveal as follows:

19              "By Attorney Spowart:  Commissioner, before you go
                off I'd like to make a statement, just a short one.
20              My client's been down twenty-eight years. He was not
                the shooter and after the hearing today, I don't feel
21              he got a fair hearing. The punishment is rapidly
                escalating to where it's cruel and unusual, for the
22              record." (See Ex." 1 " Board Transcript at page-68,line
                13 through 19).
23

24  Petitioner has served more than twenty-eight (28-years) and served

25  (21) years beyond the minimum seven (7) year term prescribed by law.

26

27  I/.Petitioner contends his term should be fixed under (In re Rodrigues
   (1975.) 14 Cal. 3d 639, 122 Cal. Rptr, 551-652; 537 P. 2d 384. As the
28  attorney Spowart reveal Petitioner is under the old Rehabiliatation
   law of 1978 (See Ex." 1 " Board Transcript at p.59,line 8-9 and 13-19)

              (Continue- 30-)