# EXHIBIT G, PART 2

1      Petitioner has clearly demonstrated that he does have a liberty
2   interest in parole protected by the Due Process Clause of the Fourteen-
3   th Amendment and that right to due process pursuant to Biggs v. Terhune
4   334 F. 3d 910, supra, have been violated.

5

6      Wherefore, for the foregoing reason it is respectfully requested
7   that the writ be granted and any other relife this Court deems appro-
8   priate and just.

9

10   Date: Aug 14th 2006 .                            Respectfully

11

12   //                                               DUANE ROY WEIR-C-02190

13

14   //

15

16   //

17

18   //

19

20   //

21

22   //

23

24   //

25

26   //

27

28   //

( 31 )

61

1        CALIFORNIA BOARD OF PAROLE HEARINGS

2                  D E C I S I O N

3        DEPUTY COMMISSIONER MEJIA: We're back on

4   record for our decisions.  All the participants

5   are back for Mr. Duane Weir.

6        PRESIDING COMMISSIONER ST. JULIEN: Mr.

7   Weir, we are going to deny parole today.  We're

8   going to give you a year.  I'll read the

9   decision and then give some suggestions.  We've

10  reviewed all information received from the

11  public and relied upon the following

12  circumstances in concluding that the inmate is

13  not yet suitable for parole and would pose an

14  unreasonable risk of danger if released from

15  prison.  As it regards the commitment offense,

16  which occurred on March 2, 1978.  The victim in

17  this case was Samuel Lowery, who was aged eighty

18  at the time.  He was shot twice in the

19  commission of a burglary and he was shot by the

20  inmate's brother and Mr. Lowery was in the yard

21  of his residence in Fontana, California.  And

22  Mr. Lowery did not die immediately.  It was

23  about two months later.  His death was

24  subphrenic abscess due to gunshot wounds to the

25  diaphragm, stomach and spleen.  Again, this

26  offense was carried out in a cruel manner in

27  DUANE WEIR C-02190   DECISION PAGE 1 3/13/06

Ex. 1.

62

1    that Mr. Lowery was shot in the commission of a
2    robbery, so it would have been for monetary
3    gain, which indeed would be a trivial reason in
4    relation to the offense of murder - the victim
5    subsequently loosing his life. In terms of a
6    previous record, the inmate has failed to profit
7    from society's previous attempts to correct his
8    criminality. Such attempts include juvenile
9    probation, adult probation, parole, county jail,
10   state prison and state prison. In terms of
11   institutional behavior, Mr. Weir has not yet
12   sufficiently participated in beneficial self-
13   help and therapy programs and we'll elaborate on
14   that shortly. The psychological report, dated
15   January 13, 2006, by Dr. MacComber is favorable
16   in that the doctor says that you would pose a
17   low risk of future violence if released from
18   prison. In terms of parole plans, you do have
19   letters of support from your wife and two
20   daughters and next year it would be - you should
21   really have your wife write out a detailed
22   letter - where you would live, you know the
23   address, if you have - kind of describe the
24   house, where you would be living and that type
25   of thing. You should probably put together a
26   sketch of how you would be able to support
27   DUANE WEIR C-02190 DECISION PAGE 2 3/13/06

63

1    yourself.  You know, you have 'x' amount of

2    dollars from Social Security.  You'd look for a

3    part-time job or whatever - you're on

4    disability.  But give us something to look at.

5    Something really detailed in terms of your

6    parole plans because parole plans are very

7    important.  So I would really encourage you to

8    make those documents as detailed as possible.  I

9    would also suggest that perhaps your wife can

10   get a pamphlet or whatever from the church

11   listing what kind of 12 Step programs they offer

12   there.  So, you know, like you said they're

13   probably all the time so try to get a listing of

14   those so you can really show the Board, "Okay,

15   this is what I'm going to be doing.  I know I

16   need to go to these programs and I'm going to go

17   on Wednesday and Sunday," or whatever.  But make

18   it something that again, nobody will have a

19   question for you.  You need to answer our

20   questions in advance if possible.  And I would

21   also like to suggest that you think about some

22   kind of a transitional living type situation,

23   because if you haven't lived with your wife in

24   almost thirty years and she hasn't lived with

25   you, you might need a slow transition for both

26   of you.  Another Board might suggest that, so

27   DUANE WEIR  C-02190   DECISION PAGE 3  3/13/06

64

1    you don't want for somebody to suggest it and

2    then, okay, there's another reason for a denial.

3    So if I were you I would just as an option

4    number two — because I heard Board's suggest it.

5.   You need to look at a transitional housing.  So

6    before somebody can ask you, again, present it

7    to them and I think in that area — you know,

8    there's all kinds of homes and maybe even the

9    church, you know, your wife can identify one

10   easily.  Some people will have the concern,

11   again, and I would also have the concern — you

12   know, if this doesn't go smoothly then where are

13   you going to go, okay?  IF you both need some

14   cooling out time or whatever you need to build

15   one in.  So I would suggest that you do that.

16   You do have a marketable skill.  I think in the

17   Governor's letter they listed a lack of a job

18   offer.  You might also want to detail in

19   writing.  "I'm a trained mechanic, I've been

20   doing PIA for all thing time. I'm sixty-two.  I

21   would only seek part-time employment."  List it

22   out so that we can read it in advance or when

23   your counselor talks to you to go over these

24   things, so that it's in the report.  So that

25   we're not having a question mark.  Before he

26   didn't have a job offer.  Does he have one now?

27   DUANE WEIR C-02190 DECISION PAGE 4 3/13/06

65

1   What's he going to do?  You're giving us a

2   reason to have all these questions.  We also

3   note that in response to 3042 Notices,

4   opposition to a finding of parole suitability

5   have been expressed by the San Bernardino DA,

6   and I think we have a police department, I don't

7   remember what police department it was, but we

8   do - it was the County of San Bernardino

9   Sheriff.  We make the following findings: that

10  the inmate's lack of meaningful self-help

11  programming does not demonstrated to the panel

12  that you'll have the necessary tools to maintain

13  your gains outside of a controlled setting.  So

14  you need to demonstrate to us - because you have

15  a remarkable disciplinary record, one 115,

16  that's remarkable.  You have a lot of things

17  going for you, but it's the things that you're

18  lacking that scream out at us.  And when we give

19  a date everything has to be perfect, okay?

20  Commissioner, do you have any commendations?

21       DEPUTY COMMISSIONER MEJIA: You have a

22  satisfactory work report and you have a

23  laudatory chrono for being involved - for having

24  been a supportive employee for the PIA, about

25  seven hundred thousand production level - you

26  were a part of the team to do that.  You

27  DUANE WEIR C-02190  DECISION PAGE 5 3/13/06

66

1  completed your GED in prison. You have a

2  vocation, which I'm sure you can use in the

3  streets, auto mechanics, because you were an

4  auto mechanic before. You have no 115s - to be

5  honest with you sir, when you said that - you'd

6  gotten a date in 2002 and I'm sure you read the

7  Governor's concern about your self-help, if I

8  were you I would have proven him wrong. I would

9  have continued on and did something to prove I

10 can sustain my self-help. That's one of the

11 concerns of the Governor, that's one of the

12 recommendations of the last panel. You have to

13 do something about that, and I'm looking at your

14 file. Since 1999 you don't have anything

15 meaningful to show about your self-help. You've

16 been busy working, but you can still do it by,

17 like I said, reading books, making a list of it,

18 signing up for IMPACT or any other program that

19 will count towards self-help. But you can not

20 just come again and show me you have three-hour

21 video participation.

22      INMATE WEIR: You know I've asked the

23 psychologists what do I need. Is there any

24 programs I need and they tell me no, so what am

25 I supposed to --

26      DEPUTY COMMISSIONER MEJIA: Unless you're

27 DUANE WEIR C-02190  DECISION PAGE 6 3/13/06

67

1   CCCMS they won't give you any programming.   Just

2   like I said you can go to the library and get

3   some books and read it, check it out and make a

4   list of what you read about self-help. There's a

5   lot of books there about self-help and --

6           PRESIDING COMMISSIONER ST. JULIEN:

7   (Indiscernible) something - sorry - from the

8   outside.

9           DEPUTY COMMISSIONER MEJIA: IMPACT.   Those

10  groups about victim awareness, anger-management,

11  all these things - I know you did it but you

12  should do it almost every year to show that

13  you're consistent.  Just like she said, you're

14  doing okay in everything else.  No disciplinary,

15  you've got a marketable skill, you're at the age

16  where the risk for violence is know to be really

17  diminishing.  You've got everything else other

18  then to prove to us that you can maintain out

19  there and you've haven't maintained.  1990 was -

20  that's a long time to be out of self-help.  I

21  want somebody to be in self-help the last minute

22  they're in prison because I know they will cope

23  on the outside.  But just like I said you've got

24  a lot of things going for you.  You already got

25  a date and that really gave me some hope that

26  you'll get a date, but start looking at

27  DUANE WEIR C-02190   DECISION PAGE 7 3/13/06

68

1  everything else, you don't do much for the last
2  six years, or even three years after you got the
3  date.  Do not be discouraged.  You've got to
4  prove yourself.  Doing time is not going to get
5  you out of here.  You've got to prove that you
6  are worthy to be out there by making – cross
7  your 'ts' and dot the periods.  You can't do
8  that.  You can't give them any – she already
9  said that – you can not give them any angle not
10  too, because we can get over the crime because
11  it's been a long time, but not what happens
12  after that, okay?  Good luck to you sir.
13        ATTORNEY SPOWART: Commissioner, before
14  you go off I'd like to make a statement, just a
15  short one.  My client's been down twenty-eight
16  years.  He was not the shooter and after the
17  hearing today, I don't feel he got a fair
18  hearing.  The punishment is rapidly escalating
19  to where it's cruel and unusual, for the record.
20        PRESIDING COMMISSIONER ST. JULIEN: Thank
21  you sir.
22              --oOo--
23  PAROLE DENIED ONE YEAR.         JUL 1 1 2006
24  THIS DECISION WILL BE FINAL ON: _____
25  YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT
26  DATE, THE DECISION IS MODIFIED.
27  DUANE WEIR C-02190 DECISION PAGE 8   3/13/06

69

## CERTIFICATE AND
## DECLARATION OF TRANSCRIBER

I, Rheanna Bernard, a duly designated transcriber, PETERS SHORTHAND REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 - 68, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING OF DUANE WEIR, CDC #C-02190, ON MARCH 13, 2006, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape to the best of my ability.

I hereby certify that I am a disinterested party in the above-mentioned matter and have no interest in the outcome of the hearing.

Dated April 8, 2006, at Sacramento, California.

RHEANNA C. BERNARD
TRANSCRIBER
PETERS SHORTHAND REPORTING

O R I G I N A L

1    SUPERIOR COURT OF THE STATE OF CALIFORNIA

2    FOR THE COUNTY OF SAN BERNARDINO

3

4    THE PEOPLE OF THE STATE OF )
     CALIFORNIA,                )
5                               )
                Plaintiff,      )
6                               )
7         vs.                   )    NO. SCR-34989
                                )
     DUANE ROY WEIR,            )
8                               )
                Defendant.      )
9    _____)

10

11       PROCEEDINGS AT TIME OF PRONOUNCEMENT OF JUDGMENT

12        The above-entitled cause coming on regularly for

13   hearing in Department 10 of the above-entitled Court on

14   Friday, February 23, 1979, at the hour of 8:45 A.M., before

15   HON. J. STEVE WILLIAMS, JUDGE, the People of the State of

16   California being represented by James M. Cramer, District

17   Attorney, by Stephen Ashworth, Deputy District Attorney; the

18   Probation Office being represented by Thomas Alderson,

19   Probation Officer; and the defendant being present in court

20   and represented by his counsel, Paul R. Steinman, Esq.,

21   Attorney at Law, the following proceedings were taken and

22   had:

23        THE COURT:  People versus Duane Roy Weir.

24        MR. STEINMAN:  Yes, your Honor.  We are ready to

25   continue with the proceedings that were adjourned on

26   February the 20th, to wit:  Motion for New Trial or Striking

Ex "2"

ISOLDE M. STODELLE, CSR (C2583)

2

1  and/or Striking Specific and Special Jury Verdict Findings

2  and Pronouncement of Judgment.

3          THE COURT:  I take it from what you have just said

4  that you have thought of a few other things that you wish to

5  point out to the Court.

6      MR. STEINMAN:  The only thing I wish to point out

7  to the Court is that I feel that the verdict in the next

8  court somewhat bore my argument out with regard to the

9  distinct materiality of those medical records, in that that

10 particular jury, when presented with that evidence, returned

11 a not guilty verdict on that particular count.

12          Other than that, your Honor, I would submit it.

13      MR. ASHWORTH:  I would only indicate this to the

14 Court.  I don't think the Court should consider the other

15 verdict.  I don't think it has any place in a motion for new

16 trial, especially according to the Code under 1181, sub-

17 section (8), where the motion for new trial on newly discovered

18 evidence has to be based on -- it cannot be based on hearsay;

19 it has to be based on affidavits filed by the witnesses that

20 allegedly are to offer the newly discovered evidence.  That

21 hasn't been done.  And, actually, it's nothing more than one

22 jury sees the facts one way and another jury sees them another

23 way, and that could happen in any case that's ever taken to

24 trial.  I don't think it has any bearing on this.  I ask the

25 Court not to consider it.

26          THE COURT:  The motion for new trial as to Counts I,

3

1  II and IV is denied. I find that there was certainly
2  sufficient basis from the evidence in light of the
3  instructions on the law for the verdict as to each of those
4  counts, and I do consider the evidence that was adduced
5  during the course of this trial in this Department relating
6  to this defendant and the instructions and the law that were
7  furnished to the jury that deliberated in this case. It's
8  clear to me that there was no miscarriage of justice and that
9  it was clearly established by the evidence that, at the very
10 least, the defendant was a principal, an aider and abettor,
11 in the murder and the robbery and the grand theft.
12         I consider the medical evidence alluded to as,
13 strictly speaking, newly discovered evidence, but the essence
14 of the reason for my feeling that the differences in the
15 medical testimony wouldn't make a difference is that it is
16 clear that the infliction of the gunshot wound was one of the
17 causes of the death of the decedent. It certainly hastened
18 his death, was a contributing proximate cause of the death of
19 the decedent. It's obvious that there may well have been a
20 number of things that contributed to his death, considering
21 his age and his medical history, but I can't believe any
22 rational jury would believe or any duly qualified physician
23 would suggest that that gunshot wound had no part in hastening
24 the death of the decedent.
25         Having been convicted of the offense of Murder in
26 the First Degree, the defendant is not eligible for probation.

4

1    but even if by some stretch of the imagination there was some

2    way to find something in the new determinate sentence law

3    that may have been overlooked, I would not in light of the

4    evidence in this case and the circumstances described

5    consider that an extension of probation would be appropriate

6    nor would it be realistic.

7        With reference to the -- and I think I have said

8    that I am satisfied that the evidence was sufficient and the

9    prosecution met the burden of proof for the charges for which

10    the defendant stands convicted.

11        Now, looking at the probation officer's report,

12    particularly on page 5 --

13        MR. STEINMAN: I believe, your Honor, that on

14    page 5, the word "Count II," where it says, "Assault with

15    a deadly weapon," in talking with the probation officer, he

16    indicated that's a typographical error. It should read, "

17    Robbery, in violation of Section 211 of the Penal Code."

18    Further, on that page where it says "Count III," that is a

19    typographical error and it should be "Count IV." Other than

20    that, I believe the numerical terms set forth in there meet

21    the determinate sentencing law for the counts and the charges

22    as amended.

23        It further presents some interesting --

24        THE COURT: There are a number of interesting

25    technical procedural questions that are presented in this

26    case, whether there's a 654 consideration. We are aware,

5

1    first of all, that a life sentence cannot be enhanced.  It's
2    a life sentence.

3         MR. STEINMAN:  That's correct.

4         THE COURT:  With reference to the special allega-
5    tion, I harken to the power of the Court that was discussed
6    at an earlier time in one of the cases that I had the first
7    year or two I was on the Bench, People v. Dorsey, 28 Cal.
8    App. 3d 15.  The principles that were enunciated in that case
9    are still applicable.

10        I am aware that the jury who tried the defendant's
11   brother found the defendant's brother not guilty of the charge
12   of murder.  I cannot believe that any jury that heard the
13   evidence that I heard in this trial would have found the
14   defendant's brother not guilty, but I didn't hear the evidence
15   in the other trial and I didn't hear the arguments and I don't
16   know how the jury may have been affected.  I have heard
17   speculation as to why they found the way they did, but I have
18   heard speculation about a lot of other things in this and
19   other cases.

20        First of all, as I pointed out, there's no way to
21   enhance a life sentence.  Further, I do take into considera-
22   tion the fact that the defendant's brother has been acquitted
23   on the murder charge and I am satisfied that the imposition
24   of a life sentence in and of itself would meet the ends of
25   justice.  With reference to the findings relating to the use
26   of a firearm allegation that was found true with reference to

1    Counts I, II and IV, I order that they be stricken.

2    It is the judgment of the Court that the defendant,

3    Duane Roy Weir, be sentenced to the State Prison for the

4    term prescribed by law for the offense of Murder in the First

5    Degree, in violation of Section 187 of the Penal Code.

6    Before I proceed further, the Clerk has called to

7    my attention that I got through my incantations out of order.

8    Having ruled on the motion for new trial, with

9    reference to Counts I, II and IV, this is the time set for

10   pronouncement of judgment.

11   Do you waive formal arraignment for pronouncement

12   of judgment?

13   MR. STEINMAN: Yes, I do, your Honor.

14   Without waiving and still preserving those grounds

15   that I made that motion for, we have no other legal cause why

16   judgment ought not now be pronounced on the remaining counts.

17   THE COURT: I adopt the statements that I made with

18   reference to striking the allegations relating to the use of

19   the firearm which were found to be true with reference to

20   Counts I, II and IV. And I confirm the order made striking

21   those in the interests of justice.

22   It is the judgment of the Court that the defendant,

23   Duane Roy Weir, be sentenced to the State Prison for the term

24   prescribed by law for the offense of Murder in the First

25   Degree, in violation of Penal Code Section 187.

26   The defendant shall be given credit for time served

1  Have you computed that?

2  MR. STEINMAN:  I believe, your Honor, there were

3  to be an additional three days to be added to the 348.

4  THE PROBATION OFFICER:  Two days.

5  MR. STEINMAN:  This is the 23rd.  That was computed

6  as of the 20th, so it would be three additional days.

7  THE PROBATION OFFICER:  That's right.

8  THE COURT:  The defendant shall be given credit for

9  time served, a matter of 351 days.

10  With reference to Count II, it is the judgment of

11  the Court that the defendant, Duane Roy Weir, be sentenced to

12  the State Prison for a term of three years, which is the

13  middle term provided by the determinate sentence law, for his

14  violation of Section 211 of the Penal Code.  Execution of that

15  sentence is stayed pending any appeal, and during service of

16  the sentence with reference to Count I.  Upon completion of

17  service of that sentence, the stay shall become permanent,

18  this in accordance with People v. Niles.  I recognize what a

19  delight that could prove to be for scholars as well.

20  Further, it is the judgment of the Court that the

21  defendant, Duane Roy Weir, be sentenced to the State Prison

22  for a term of two years, which is the middle term for his

23  violation of Penal Code Section 487, the offense of Grand

24  Theft, for which he stands convicted, just as he was convicted

25  of the other two counts by virtue of verdicts returned by the

26  jury in this case.  The sentence with reference to Count IV

8

1    is stayed pending any appeal and during the period of time

2    the defendant is serving the sentence imposed with reference

3    to Count I.  Upon completion of the service of that sentence,

4    the stay shall become permanent.

5        Again, I have alluded to People v. Niles,

6    227 Cal.App.2d 749.

7        Further, I will state that it is my intention in

8    imposing the sentences as I did, in the manner that I did,

9    that this is not intended to preclude the defendant from

10   parole consideration at some future time.  The defendant may

11   be eligible for the period of parole after he has served a

12   period of time.  I believe that period is seven years, but

13   there may be some modification of the rules that govern that

14   determination and I do not intend to make any change in what

15   are the established guidelines with reference to an inmate's

16   eligibility for parole following his conviction of murder in

17   the first degree.  If the defendant is placed on parole, he

18   may be under parole supervision for a period of three to four

19   years, depending on his performance while on parole.

20       The defendant is remanded to the custody of the

21   Sheriff of the County of San Bernardino, to be by him

22   delivered to the Reception Guidance Center of the California

23   Institution for Men at Chino, California.

24       MR. STEINMAN:  Your Honor, does the Court at this

25   time make any particular finding with regard to Penal Code

26   Section 654 as to Counts II and IV?  It would appear that

10

1  tells me that somewhere within yourself you have the capacity

2  to do something more with your life than you have up to this

3  point. Now, you are going to do a period of time, and you

4  may do what many alcoholics do and take the approach that the

5  world is passing you by, that there are all kinds of

6  injustices that have befallen you, and you can dwell on the

7  past, which none of us can change. I don't know what your

8  plans are with your life in the future, but it occurs to me

9  that if you have the ability to express yourself and have the

10  energy to write the length that you do, perhaps you might be

11  well advised to try to prepare yourself to do something more

12  when you are released. You will be entitled to good time and

13  work time. There will come a day.

14        I don't know why the jury didn't find your brother

15  guilty on the offense in Count I, and I said what I meant and

16  I meant what I said, and I feel that he was just as guilty as

17  you were and I don't understand how it was that he wasn't

18  convicted and I don't know what evidence was presented to

19  that jury and I don't know what arguments were made and I

20  don't know how that jury reacted. If I had any doubt in my

21  mind, honestly, as to whether or not your guilt had been

22  established, I would have granted the motion for new trial.

23  I gave it a lot of thought, but I didn't have that doubt, and

24  I tell you that frankly.

25        That you have a problem with alcohol, I suppose any-

26  body would understand, but you have gone through a considerable

11

1   period of time where you haven't had anything to drink

2   because it's not accessible. I have to assume you must feel

3   differently than you felt before. It's very likely that you

4   may appeal this case. I won't be surprised if you do, and a

5   transcript will be prepared. You will be looking through the

6   transcripts for a lot of things, but there's one thing I want

7   to add to what you might be looking for, and that is, read

8   the testimony about your drinking and your pattern of behavior

9   and look at yourself as you were described by people who were

10  close to you and then ask yourself what you are going to do

11  with your life when the time comes that you are on the streets.

12  It isn't going to be anybody else's decision but yours.

13          At this time, Mr. Weir, it is my duty to advise you

14  of your right to appeal to the appellate courts from the

15  judgment of this Court in imposing sentence as I have done

16  today. Upon any such appeal, the appellate court may review

17  the order of this Court in denying your motion for new trial

18  in reference to the three charges that you were convicted of.

19          If you want to file an appeal, there's a 60-day time

20  limit within which you must act by filing a written notice of

21  appeal, and this 60 days starts to run from today.

22          Your notice of appeal must be filed in this Court

23  and not in the Court of Appeal. Your notice of appeal must

24  clearly specify that you are appealing, just what it is that

25  you are appealing from, whether you are appealing from the

26  whole judgment or just part of it, and also whether you are

12

1   appealing from the denial of the motion for new trial.

2          Your notice of appeal must be signed by you or

3   your attorney.

4          If you appeal, you have the right at no cost to

5   you to a transcript and record of the trial court proceedings

6   as provided under the California Rules of Court.

7          If you appeal and you don't have the money to hire

8   a lawyer, the appellate court will appoint a lawyer to

9   represent you on appeal.  It is your obligation to keep the

10  appellate court advised of your current mailing address.

11  They then will be in touch with you to see whether you have

12  a right to a free lawyer after you have filed the notice of

13  appeal.

14         My experience and understanding is that if an

15  attorney is requested and if one is appointed, it is not the

16  practice to appoint the attorney who represented the

17  defendant during the course of the trial, so that it's not

18  likely that Mr. Steinman would be appointed to represent you,

19  whether you wanted it or didn't want it.

20         Do you understand your rights to appeal as I have

21  explained them to you?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you understand that unless your

24  present lawyer is going to file a notice of appeal for you,

25  it is your duty to file your own notice of appeal and it must

26  be done within 60 days from today?

13

1       THE DEFENDANT:  Yes.

2       THE COURT:  Do you have any questions you want to

3  ask about your appellate rights?

4       THE DEFENDANT:  No.

5       THE COURT:  The Reporter is ordered to prepare a

6  transcript of these proceedings and have it certified and

7  filed with the Clerk of this Court.

8       The defendant is remanded to the custody of the

9  Sheriff.

10       MR. STEINMAN:  Thank you, your Honor.

11       (Proceedings concluded.)

12                    ---oOo---

13

14

15

16

17

18

19

20

21

22

23

24

25

26

104

1    after request, is giving Mr. Lowery some water?

2         THE NURSE:  Suck with the straw.  Do you want

3    to try real hard?

4         THE WITNESS:  Oh, I don't know.

5         THE NURSE:  Do you want to try again with the

6    water?

7         You want to try a drink of water?

8         THE WITNESS:  I don't __

9         THE NURSE:  Did you get some?

10        Here, try another swallow.  A little bit.  Here

11   you go.  A little bit more.

12        Okay, now you got some.

13        THE WITNESS:  You call this water?

14        THE NURSE:  Yes, this was water.  You got some.

15        THE WITNESS:  I call it (unintelligible) water.

16   Q    (By Mr. Call:)  Mr. Lowery, do you know Tony Wier, your

17   next door neighbor?

18   A    (No audible response.)

19   Q    You're shaking your head yes; is that right?

20   A    Yes.

21   Q    Did Tony Wier shoot you, Mr. Lowery?

22   A    I have reason to believe he did.

23   Q    Did you see him?

24   A    Yes.

25   Q    Did you see him with a gun?

26   A    Yes.

*Ex "3"*

NOT TO BE ISSUED IN OFFICIAL REPORTS

COURT OF APPEAL, FOURTH DISTRICT

SECOND DIVISION

STATE OF CALIFORNIA

COURT OF APPEAL - FOURTH DIST.

F I L E D

JAN 3 0 1980

ROBERT L. FORD, Clerk

Deputy Clerk

PEOPLE OF THE STATE OF CALIFORNIA,

    Plaintiff and Respondent,

  v.

DUANE ROY WEIR,

    Defendant and Appellant.

4 Crim. 10552
(Sup.Ct.CR-34989)

O P I N I O N

    APPEAL from the Superior Court of San Bernardino County. J. Steve Williams, Judge. Affirmed.

    Allen R. Crown, under appointment by the Court of Appeal, for Defendant and Appellant.

    George Deukmejian, Attorney General, and Jesus Rodriguez, Deputy Attorney General, for Plaintiff and Respondent.

    Defendant was convicted of murder, robbery and grand theft. A use allegation was found to be true. He was found not guilty of assault with a deadly weapon.

    Defendant and his brother wanted some guns. The brother said he knew an old man who had some. They went to the home of 90 year old Samuel Lowery and, armed with a .22, told him to give them his money or his life. The old man would have none of this nonsense and he opened up on them with his .38. Unfortunately, his marksmanship was not of the same caliber as his enthusiasm. He missed but they did not. He was shot twice

-1-

Ex "4"

in the abdomen and the defendant and his brother took the old man's .38. The defendant then placed a gun to the victim's head and ordered him to crawl under a truck and to remove his pants. Defendant and his brother showed a witness a .38 and other weapons -- a shotgun and two rifles -- and said they took them from Lowery.

Lowery then drove his truck to a public telephone and called the police. When they arrived, they found him in his truck. He was taken to a hospital and underwent surgery. He had two gunshot wounds in his abdomen and his spleen was removed. He was discharged two weeks later. He was readmitted to the hospital and died.

Defendant was arrested and found in possession of Lowery's guns. Defendant denied any knowledge or ownership of the guns and denied any part in the shooting.

An autopsy surgeon testified that the cause of the death was a subphrenic abscess which was caused by a gunshot wound which perforated the victim's stomach. The abscess produced poisonous substances which spread through the victim's body leading to his death. The pathologist also testified that the gunshot wound which perforated the stomach could have caused the urinary infection which was found in the old man's body at his death.

The defense was two-fold. The first was diminished capacity based on intoxication. The second defense was that the gunshot wounds were not the cause of death. The defendant's pathologist testified that in his opinion the subphrenic abscess

-2-

found inside the victim's body did not cause his death but that the victim died of blood poisoning caused by a severe infection of the urinary tract. This pathologist did agree with the prosecution's pathologist that it was possible that the gunshot wound which perforated the victim's stomach could have affected the urinary infection thus worsening or hastening the victim's death regardless of the presence of the abscess. No one argues that the gunshot wound in the abdomen unduly prolonged this 90 year old man's life.

On appeal, defendant contends:

(1) That the court erred in denying his motion for new trial grounded on newly discovered evidence. This evidence consisted of additional medical reports of the victim which were claimed to have been lost in the San Bernardino County Medical Center but which were subsequently located.

In granting a motion for new trial on this ground, the evidence must be (a) newly discovered, (b) it must be evidence which could not with reasonable diligence have been produced at trial, (c) it must not be cumulative and (d) it must be such that it would render a different result probable on retrial. (People v. McDaniel, 16 Cal. 3d 156.) Obviously, such motions are addressed to the sound discretion of the trial court.

The argument was made that these records would bolster the pathologist's opinion that the subphrenic abscess did not cause Lowery's death. However, it was shown in the hearing that the prosecution's pathologist's opinion would be the same in spite of

-3-

the additional medical records. In addition, defense counsel
agreed that his pathologist would not change his initial testi-
mony that the gunshot wounds undoubtedly hastened the death of the
old gentleman. Rather obviously, these wounds hastened his death.
They were a contributing cause of his death. Thus, the trial
court's finding that the newly discovered evidence would not
render a different result on retrial is supported by substantial
evidence and is not an abuse of discretion.

(2) That there is a fatal inconsistency in the verdicts,
i.e., that the not guilty on the assault with the deadly weapon
was fatally inconsistent on the guilty verdict of murder and
robbery.

Seemingly inconsistent verdicts are not necessarily
fatal. Penal Code § 954 provides that an acquittal of one or
more counts shall not be deemed an acquittal of any other count.
These acquittals may indicate that the jury has given the defendant
the benefit of some compassion which was not called for. (See
cases collected in Witkin, Calif.Crim.Proc., paragraphs 548, 549;
People v. Hamilton, 80 Cal.App. 3d 124, 130.) A verdict of conviction
on one count which appears inconsistent with a verdict of acquittal
on another count affords no basis for a reversal where the evidence
is sufficient to support the conclusion that the defendant is
guilty of the offense of which he stands convicted. (In re Johnston,
3 Cal. 2d 32.) Even trial counsel agreed that the not guilty
verdict on the assault with a deadly weapon was not inconsistent
with the verdicts on the other counts. Counsel did argue that

-4-

the assault with a deadly weapon verdict was inconsistent
with the use allegation, a matter made moot by the court's
striking of the use allegation. It would appear that the assault
with a deadly weapon allegation was put in view of the de-
fendant's denial of having anything to do with the robbery or
murder but the admission to a witness that he placed a gun to the
old man's head, ordered him to crawl under a truck and remove his
pants. Thus, the defendant's liability for murder was based on his
involvement of the attempted robbery of the victim. The assault
with a deadly weapon  would come into play if the jury disbelieved
that but believed that he did threated the old man after the old
man shot at him. Thus, there is no inconsistency in the verdicts.

(3)  That photographs of Mr. Lowery's trousers were
improperly admitted into evidence.

The first contention is that there was no foundation
for the photographs. There was a foundation. An officer testified
that he took the photographs and that they depicted the clothing
worn by the victim at the time of the acts. He took them from the
hospital to the police station where he photographed them. There
was ample foundation.

Next, the defendant contends they were inflammatory.
There is hardly anything inflammatory about a pair of trousers
showing a bullet hole and some bloodstains.

(4)  That the instruction on flight was improper. It
was not.

After the shooting, the defendant and his brother
left (fled). They certainly did not stand around and face the

-5-

responsibility for their acts.

There was no error in giving this instruction.

(5)  Good time/work time.

When the Supreme Court decides _Sage_, if that decision
is favorable to the position of the defendant, the matter will
undoubtedly be taken care of uniformly on a statewide basis.
Lacking that, the defendant will have recourse by writ to the
trial court.  We do not disturb the judgment at this time.

Judgment affirmed.


                                        /s/  Gardner
                                                      P.J.

We concur:


/s/  Tamura
            J.


/s/  McDaniel
             J.                    NOT TO BE PUBLISHED IN OFFICIAL REPORTS

on the assault with a deadly weapon charge (Count III) was consistent with the jury's verdict on Counts I, II, and IV.[5/] (RT 540.)

Moreover, the essential elements of assault with a deadly weapon (Count III) are not required to be proven to establish and sustain the murder and robbery convictions in the instant case. (People v. Hamilton, supra, 80 Cal.App.3d 124.) Here, appellant's liability for murder was based on his involvement in the attempted robbery of the victim, i.e., felony murder rule. The assault with a deadly weapon played no part in the murder since the evidence reasonably shows the alleged assault with a deadly weapon occurred after the attempted robbery and shooting of the victim. (RT 133-134, 368-377.) Thus, the verdicts are not inconsistent.

* * * * *

---

5.  Defense counsel below did argue the verdicts were inconsistent. However, his argument was that the special findings, i.e., gun use allegations, were inconsistent with the not guilty verdict on the assault with a deadly weapon charge. (RT 539-541.) Of course, this specific argument is now moot since the court struck the gun use allegations. (RT 555, 558.)

10.

*Ex "5"*

# ATTACHMENT ___1___

Date:          February 15, 1994

To:            Dennis Smith
               Board of Prison Terms

From:          Art Harrison
               San Bernardino Co.
               District Attorney's Office
               (909) 387-8814

Subject:       BPT Inquiry regarding the conviction of Inmate Duane Weir
               C-02190.


     This is intended as a summary response to the query of the Board of Prison Terms into the circumstances of the underlying conviction of Life Inmate Duane Weir.


     1.) The Board has solicited comments by the District Attorney on the autopsy procedures used in this case," noting that c/p Tyrone Weir was acquitted of the same murder-due to forensic findings of same victim that the cause of death was not from gunshot wounds". While it is true that Tyrone was acquitted of the murder count, it is also true that he was convicted of the robbery which was concommitant to the felony murder charge. Both juries heard in essence the same evidence. Dr. Scott testified for the prosecution, and each defense team called Dr. Rene Modglin to counter with an opposing opinion as to the cause of death. Both were highly credentialed, highly experienced, and well respected in their field. Dr. Modglin testified that he held Dr. Scott and his work in high regard.

     One jury found sufficient evidence "beyond a reasonable doubt", and the other did not. It's just that simple, its a subjective determination by the jury which is/should be based on an objective weighing of the evidence. The trial judge in Duane's matter denied his motion for new trial which was based on a claim of newly discovered evidence pertaining to these cause of death issues. Additionally, the appeal waged on behalf of Duane Weir in the appelate court aggressively asserted that an injustice had been committed in the denial of a new trial based on new evidence, i.e. medical records which were not available at the trial of Duane Weir, but which surfaced (having been in the possession of the treating physician) and were used in the trial of Tyrone Weir. The response by the Appellate Court found at page 3 of the opinion (attachment one) was as follows:

          "The arguement was made that these records would bolster the pathologist's opinion that the subphrenic abcess did

*Ex. "6"*

not cause Lowery's death.  However, it was shown in the
hearing    that    the    prosecution's    pathologist's
opinion    would be the same in spite of the additional
medical records.    In addition, defense counsel agreed
that his pathologist would not change his initial
testimony that the gunshot wounds undoubtedly hastened
the death of the old gentleman.  Rather obviously, these
wounds hastened his death.    Thus, the trial court's
finding that the newly discovered evidence would not
render a different result on retrial is supported by
substantial    evidence    and    is    not    an    abuse    of
discretretion."


    2.)  Dr. Scott along with his partner Dr. Irving Root had for
many years held a contract to perform autopsies for the County of
San Bernardino.    Pursuant to that contract, each pathologist
performed numerous post mortem examinations each day.  Subsequent
to this case it was revealed that Dr. Scott had lapsed into the
practise of using a "canned" autopsy format with which he would in
essence fill in the blanks to make the protocol case specific.  In
the Renova case it became apparent that some of the work claimed
to have been done by Dr. Scott via the autopsy protocol had not in
fact been done.  The points of dicrepancy in that case involved the
finding of intact organs, which were claimed to have been resected
in the earlier autopsy.  The organs involved were not germaine to
the determination of cause of death, but were customarily resected
during a post mortem examination.   It is significant to note that
the findings as to cause of death did not vary between the two
autopsies. Both autopsy surgeons determined the shotgun wound to
the head caused the death and that the stab wounds sustained were
of a fatal nature and would have caused death but for the
intervening shotgun wound.
    The board is aware the above circumstance generated a
significant amount of media attention.  The result was that an
agreement was apparently reached wherein Dr. Scott would no longer
conduct autopsies.   Within a short while the partnership was
dissolved and Dr. Root as an individual held the contract with the
Coroner's Office.   The prevailing belief seems to have been that
Dr. Scott's errors were of negligent or careless ommission as
opposed to any willful scheme to deceive or defraud.


    3.)   I have consulted with the trial prosecutor who was
~~involved in both the trial of Duane and Tyrone Weir, that being~~
Steve Ashworth, now a Superior Court Judge in the Victorville Court
in our county.  He confirms my conclusion that the differing end
results of the two trials was not predicated upon any new
information or evidence of which Duane Weir was deprived or of any
injustice created by Dr. Scott's failure to comply with
professional standards.  Instead, he cites the differing

perspective that jurors sometimes have as to evidence and the differing beliefs and biases which are inate to varying backgrounds.

Judge Ashworth has offered to make himself available by telephonic conference to assist in the resolution of any further questions the Board or its investigators may have. I can provide the necessary phone numbers upon request.

The point we need to emphasize here is that the victim in this matter was in his eighties. He had for a lengthy time (approximately ten years) lived an active, independent lifestyle wherein he was mobile and agile. He was shot down during the robbery incident on 3/2/78. Mr. Lowery died on 4/25/78 without ever having gotten up again after having been shot. His release from the hospital was simply to a convalescent setting. All who have looked at this case are in agreement that the wounds sustained in the shooting incident at least accelerated the death of Lowery, thereby being a proximate cause of his death.

One thing I would point out to the Board is that the opinion of the trial prosecutor is that the actual shooter in this matter was not Duane Weir, but was his brother Tyrone. This is so inspite of the finding of personal use of a firearm by the jury. The penalty precribed for that particular enhancement was striken by the trial court at the time of sentencing.

If Inmate Duane Weir is to be found suitable for the granting of a parole date, it is our posture that it should not be predicated upon the issues put forth in the current inquiry.


If I can be of any further assistance in this matter please don't hesitate to contact me.

*Art Harrison*

A. Harrison, DDA

NUMBER: C- 02190    NAME: W   R    HOUSING: ND 79L    CDC-128-G (Rev. 1/74)

Summary:    PROGRAM    INMATE REQUEST FOR PROGRAM REVIEW.
            REVIEW:

Custody:  MED A                    Release:  MEPD 3/10/85          Level:  II
GPL:      8.3                      Reclass:  1-02                  CS:     0
Work Group: A1                     Privilege Group:  A            RPS:    N/A

WEIR appeared before Unit V U.C.C. today for a Program Review. Purpose of Review: Inmate Weir, C02190 submitted a CDC 602 2-22-01 requesting to appear before U.C.C. for the following reasons: 1) Whether he was a threat to staff or inmates; 2) The Board of Prison Terms requirement for Participation in Self Help/Therapy. He also states that he does not have a history of violence except for his offense.. COMMITTEE ACTIONS: Committee notes that after a review of Inmate Weir's central file (Disciplinary Section) there is no documentation (CDC 115) reflecting any kind of aggressive or problematic behavior. The central file reflects Inmate Weir has participated in Narcotics Anonymous, Alcoholic Anonymous, Roadsider AA Fellowship (4-13-88), Reality and Decision Making Group (9-10-87), Completed Individual Therapy (8-1-94), and actively and successfully participated in the self-help group YOKEFELLOWS (1987), completed Cat X (1988) actively participated in CTF "We Care" Program, actively and successfully participated in "Life Skills" (1-25-91). It should also be noted that per memorandum dated 8-13-99 authored by S. Terrini, Ph.D. that states in part that there is no psychotherapy available in CDC that deals with Lifers commitment offense. It appears he has a viable claim in that he has not received any disciplinary action for violence against staff/inmate. He has actively participated in self-help/therapy in the past. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ COMMENTS: WEIR participated in today's U.C.C. and acknowledged his understanding of the Committee's actions. He stated that he agreed with the Committee's actions. WEIR was advised of his right to appeal Committee actions. 72 hour written notification provided per CCR 3375(f)(1), 128-B-1 on file.

CHAIRPERSON: A. SHINAULT, FC          Recorder: L.J. HUNTER, CCI
Panel:      A. SHINAULT, FC: S. DIXON, CCI: L.J. HUNTER, CCI /ljh

Dist.: C-File.
       Inmate

DATE ▓▓▓▓▓          Classification: PROGRAM REVIEW          Inst: CTF-North

Ex "7"

DAVID J. SPOWART
Attorney at Law
71 Via Encina
Monterey, CA 93940
Phone (831) 649 8127

To:        Board of Parole Hearings Panel
Date:      March 13, 2006
Subject:   Criminal History Duane Weir, C-02190


Background

On April 6, 2004, the Board of Parole Hearings denied Duane Weir a parole date..
based partly on Mr. Weir's criminal history. The lengthy list of criminal activity
referred to in the hearing transcrip is a distortion of the prisoner's record. The
Board is barred from considering "other criminal misconduct" which is not
"reliably documented", see People v. Callaway (1974) 37 C.A. 3d 905; In re-
DeLuna (2005) 126 Cal. App. 4th 585, 598; Cf. Van Houten, 116 Cal. App. 4th at
353 (inmate's arrest record did not constitute "some evidence" of a threat to public
safety because the alleged acts did not involve serious injury or attempted serious
injury to a victim). The following charges should not have been considered in the
Board hearing:

1. 5-6-57. Dyer Act. (Board transcript at pg. 17, line 9 through 14).

2. 7-19-61. Burglary (Board transcript at pg. 18, line22-25).

3. 7-21--61. Parole violation (Board transcript at pg. 22) This is the same charge
   as #2 above.

4. 11-22-62. Citizen arrest-Malicious Mischief (Board transcript at page 19, line
   1-2)

5. 11-23-62. Malicious Mischief (Board transcript at pg. 19, line 3,4 and 5. The
   11-22-62 at #4 above is the same charge.

6. 7-12-64. D. C. (Board transcript at pg. 9, line 10-11.

7. 1-5-65. LL. (Board transcript at pg. 19 line 13-14).

8. 6-20-65 Dram Shop (Board transcript at pg. 19, line 115-18)

*See attached*
*three pages*

*Ex "8" 1*

9.  6-21-65.  Violation of Dram Shop (Board transcript at pg. 19, line 20-21. The 6-20-65 charge at #8 above is the same charge).

10.  7-13-65.  Citrus Jr.  (Board transcript at pg. 20 line 1-4).

11.  12-1-51.  Violation of probation (Board transcript at pg. 20, line 11-12).

12.  1-30-66.  Burglary  (Board transcript at pg. 20, line 6-7).

13.  11-9-68.  Burglary  (Board Transcript at pg. 20, line 26-27).

14.  3-10-70.  Accessory to felony (Board transcript at pg. 21, line 5-9).

15.  6-10-70.  Prisoner witness (Board transcript at pg. 21, line 5-9).

16.  Assault to police officer  (Board Transcript at pg. 21, line 24-25).

17.  3-2-78.  DWI  (Board transcript at pg. 21, line 27 and pg. 22, line 1-4).

18  1966.  Grand theft  (Board transcript at pg. 17, line 7 through 14)

Mr. Weir's actual record is  correctly reflected by the attached copy of Prior Record.

Submitted by

David J. Spowart, Attorney at Law

c/c  Duane R. Weir

WLIK, IVAN ROY

PRIOR RECORD:                                          February 20, 1979

                                        According to the Federal Bureau of
Investigation, the Bureau of Identification and the San Bernardino Sheriff's Office,
the defendant has the following prior record:

| DATE | AGENCY | CHARGE | DISPOSITION |
|---|---|---|---|
| 5-6-67 | PD Muskogee, OK | Dyer Act | 11-28-56 2 yrs. prob.<br>6-10-56  3 yrs.<br>custody of Att.<br>General National<br>Training School<br>10-1-58 Term 3 yrs. |
| 3-1-60 | PD Beverly Hills | GTA | 5-16-60 CYA |
| 1-5-65 | SO Hefferson, WY | | 12-20-60 Paroled<br>7-23-64 discharged |
| 7-15-65 | SO San Bernardino | Grand Theft | P/G Disorderly Conduct<br>3 days jail |
| 5-1-66 | PD Long Beach | | 6-30-66 State Prison<br>7-1-68 Paroled<br>7-26-72 Discharged |
| 8-28-69 | SO Riverside | Evade Arrest;<br>Reckless Driving | 5-2-66 P/G to Reckless<br>Fine $275 |
| 55-11-70 | SO Riverside | Drive w/License<br>Susp. or Revoked | 8-28-69 Serve 180 dys. |
| 9-27-73 | PD Long Beach | Drive w/License<br>Revoked or Susp.;<br>Escape | 9-4-70 State Prison<br>susp., 3 yrs. prob.<br>60 dys. cust. |
| 11-8-73 | SO Riverside | Carry Conc. Weapon<br>Loaded Firearm w/in<br>City Limits | Fine $150 |
| 12-4-73 | SO San Bernardino | Driving While<br>Intoxicated | P/G fine $182, 24 mos.<br>prob. |
| 2-20-74 | PD Pomona | Driving While<br>Intoxicated | P/G fine $240, 3 yrs.<br>Summary Probation |
| | | DWI; Drive w/License<br>Susp. or Revoked | FTA forfeit bond<br>3-10-78 P/G to DWI,<br>Serve 9 dys. |

3

BOARD OF PRISON TERMS                                   STATE OF CALIFORNIA
## SETTING A LIFE PRISONER TERM - PAROLE DENIED

11. NOTE TO CDC STAFF:  RECOMMENDATIONS AND REQUESTS

☒ 3.  the panel's belief that the prisoner's current mental health is an important issue. In the new full evaluation, the panel requests that the clinician specifically address the following:

☑ a.  the prisoner's violence potential in the free community;

☑ b.  the significance of alcohol/drugs as it relates to the commitment offense and an estimate of the prisoner's ability to refrain from use/abuse of same when released;

☐ c.  the prisoner's psycho-sexual problems;

☒ d.  the extent to which the prisoner has explored the commitment offense and come to terms with the underlying causes;

☐ e.  the need for further therapy programs while incarcerated.

☒ f.  other: _Please review Governor reversal ltr date 9-13-03 regarding the need for participation in Alcoholics Anonymous_

☐ 4.  the panel's belief that the prisoner has deteriorated psychologically and there appears to be a need for treatment. The panel bases this conclusion upon

_4-6-04_

☐ B.  (Other requests to CDC staff): _____

Weir, Duane                    C-02190

BFT 1000(e) (Rev. 12/98)           11                    Ex "9"

NAME and NUMBER        Weir.         C-02190        Badge Call No. _        m 64U        CDC-128-B (Rev. 4/74)

Inmate        Weir                                has been attending
narcotics anonymous for the past six (6) months.
He has actively participated in the program and
he has good attendance habits.

Central file
CC 1
Instructor file
✓Inmate copy
DATE
    January—June 1989

                                            GENERAL CHRONO

NAME and NUMBER        WEIR.D        C-02190        LB-330        CDC-128-B (Rev. 4/7

    INMATE.D.WEIR,C-02190,LB-330,HAS PARTICIPATED IN NARCOTICS ANONYMOUS
PROGRAM FOR APPROXIMATELY EIGHT (8) MONTHS. I/M WEIR'S, ACTIVE PARTICIPATION
HAS BEEN MINIMAL; HOWEVER,ATTENDS THE MEETING REGULARLY. I EXPECT FUTURE
ACTIVE PARTICIPATION.

CC:ALL CONCERNED
C-FILE
CC-I
CC-II                              R.E. LARUE
✓INMATE COPY              NARCOTICS ANONYMOUS/SPONSOR

DATED: 2/17/89

DATE
                                            GENERAL CHRONO

NAME and NUMBER        Weir, D.        C-02190        NUM N.D. 64U        CDC-128-B (Rev. 4/74

Inmate        Weir                                has been attending
narcotics anonymous for the past six (6) months.
He has actively participated in the program and
he has good attendance habits.

Central file
CC 1
Instructor file
✓Inmate copy
DATE
    July—December 1989

                    Ex "10"

                                            GENERAL CHRONO

WEI:                C-02190                    64u

Inmate ___WEIR___ has attended narcotics anonymous for the last three (3) months. He has been actively participating and he has had a good attendance record.

Central File
CC-I
Instructor File
Inmate Copy

_L.R. Gaines_

Lee GAINES
N.A. Sponsor
CTF-NORTH Facility

DATE        March 31/1990

GENERAL CHRONO

NAME and NUMBER        WEIR                C-02190            ND-64U   CDC-128-B (Rev. 4/74)

Inmate___WEIR___ has attended narcotics anonymous for the last six (6) months. He has been actively participating and has had a good attendance record.

Original; C-File
cc; inmate

_L.R. Gaines_

Lee Gaines N.A. Sponsor
C.T.F. North Facility

DATE  JAN/4/1991

GENERAL CHRONO

NAME and NUMBER        WEIR, D.            C-02190        ND-64-L    CDC-128-B (Rev. 4/74)

Mr. Weir has been a member of the Narcotics Anonymous program at the Correctional Training Facility—North for the quarter ending March 1991 He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Narcotics Anonymous environment.

ORIGINAL:  Central File
    CC:   Inmate

_Mona Kilgore_
Mona Kilgore
Sponsor, North Facility N.A. Group

DATE:  May 30, 1991            LAUDATORY        Ex"10   GENERAL CHRONO

nmate WIER, CO2190, has part_ ^pat_  in the CTF-North Facility N_   _ics Anonymous rogram, on the Unit—I Yard, f_  the fourth Quarter of 1992, May, ^pril and June. He as shown considerable interest in the program and a willingness to participate with 1e group as a whole. I hope he continues to participate as he contributes positively.

riginal:  Central File
    CC:  Sponser
         Inmate

P.T. Nielsen, CC-I
Sponser, Narcotics Anonymous
CTF-North Facility

)ATE:  07/27/92 ( INFORMATIVE: PARTICIPATION IN NARC. ANONYMOUS)          GENERAL CHRONO

AME and NUMBER     WEIR, D.                    C-02190    ND 07L

CDC-128-B (Rev. 4/74)

Mr. Weir is a member of the Narcotics Anonymous program at the Correctional Training Facility--North. The NA Program was discontinued in December 1992 due Lock Downs, Fog Counts and to Mission Change at CTF. The NA Program was resumed in June of 1993. Mr. Weir has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Narcotics Anonymous environment.

Mary CB. Johnson
Sponsor, North Facility N.A. Group

ORIGINAL:  Central File
      CC:  Inmate

'ATE   June 16, 1993              LAUDATORY

GENERAL CHRONO

AME and NUMBER    WEIR, C02190              DO07L

CDC-128-B (Rev. 4/74)

Mr. WEIR has been a member of the Narcotics Anonymous program at the Correctional Training Facility--North for the quarter ending December 1993. He has shown the ability to relate with the group and to improve himself through involvement with it. His participation in this program has demonstrated a willingness to cooperate in the smooth atmosphere of the Narcotics Anonymous environment.

ORIGINAL:  Central File
      CC:  Inmate

Mary Johnson-Mulhern
Sponsor, North N.A. Group

ATE      December 30, 1993      LAUDATORY    Ex "10"    GENERAL CHRONO

NAME AND NUMBER:    WEIR           C-02190      ND 7        TF-NORTH        CDC-128-C

This inmate has completed a course of individual therapy. During the course of this therapy, his understanding of his commitment offense was explored, as well as the factors which led up to it. Programs completed and other evidenc of his efforts to change were discussed, and he detailed his future plans and goals. As a result of this therapy and his increasing self-understanding, hi violence and recidivism potentials should be less than for the average inmate

Orig: C-file:
Copy: Unit PA/CC
      Inmate
      Medical file
      Chrono file

*Bruce Bakeman Ph.D.*
BRUCE M. BAKEMAN, Ph.D.
Clinical Psychologist
CTF - Soledad

DATE:  8/1/94   WEIR           C-02190              ch   MEDICAL-PSYCHIATRIC-DENTAL

NAME and NUMBER:   WEIR    C-02190      NLP 196       CTF-CENTRAL CDC-128-C

Inmate Weir was cooperative and successful participant in the Lifeskills Group, which met one hour per week for ten weeks. The purpose was to encourage better and more effective living. Topics discussed included substance abuse, overcoming anger and aggression, stress management, forming life goals, building self-esteem, improving problem-solving skills, and re-entry, making a successful return to society.

Orig: C-file
cc: Unit PA/CC
    Inmate
    Psych file
    Chrono File

*Bruce Bakeman Ph.D.*
BRUCE M. BAKEMAN, Ph.D.
Staff Psychologist
CTF, Soledad

DATE: 01/25/91   WEIR    C-02190       gj   MEDICAL-PSYCHIATRIC-DENTAL

NAME and NUMBER WEIR, DUANE
         C-02190                                                    CDC-1

Mr. Weir requested verification of his completion of the following therapy groups while at CMC-East:

Beginning Stress Management & Relaxation Training
Communication Skills Training
Self-Esteem and Assertiveness Training
Reality and Decision Making Skills

This chrono reflects that he did complete all four groups with regular attendance while at CMC-East.

*Gary A. Elem*                        *Ex "11"*
Gary A. Elem, Ph.D.
Staff Psychologist
Group Treatment Coordinator
THERAPY GROUP COMPLETION              MEDICAL-PSYCHIATRIC-DENTAL

DATE 3-28-88

NAME and NUMBER    WEIR,    ANE    C-02190

CDC-128

Mr. Weir has now begun participation in an eight-week Reality and Decision-Making Group led by Doctoral Trainee, Joe Reed.

Original – C-File
cc – Psych
        AWC
        Inmate

*[signature]*
JOE REED
CSPP DOCTORAL TRAINEE

*[signature]*
GARY ELEM, Ph.D.
STAFF PSYCHOLOGIST

T:  08-10-87/peg

DATE  06-25-87   BEGUN GROUP        CMC-EAST        MEDICAL—PSYCHIATRIC—DENT.

NAME and NUMBER    WEIR, Duane        C 02190        Room

CDC-128-C

Inmate has successfully completed an eight-week Reality and Decision Making Group. Course work focused upon the following topical areas:  attitude, problem solving techniques; values and feelings clarification; goal orientation, impulsive behavior; and various concepts of William Glasser, Ph.d., Eric Bernie, M.D., etc.  The inmate actively participated in class discussions and exercises.  He demonstrated a good working knowledge of the latter topical areas.

ORIG:  Central File
  cc:  Psych File
       AWC File
       Inmate

*[signature]*
JOE REED
CSPP Doctoral Trainee

*[signature]*
GARY ELEM, Ph.d.
Staff Psychologist

DATE    8/27/87    END GROUP        CMC-EAST        MEDICAL—PSYCHIATRIC—DEN.AJ

AME and NUMBER    WEIR, Duane Roy        C-02190        6104

CDC-128-C

Subject has requested that his name be placed on the group therapy waiting list for the following groups, as the Board of Prison Terms has recommended that he complete these before his next Board hearing:

Stress Management and Relaxation Training
Self Esteem and Assertiveness Group.

cc:  Psych, AWC, Inmate

*[signature]*
Gary A. Elem, Ph.D.
Staff Psychologist

*Ex "11"*

8-10-87        GROUP THERAPY W/L        CMC-E am    XXXXXXXX—PSYCHIATRIC—DENTAXXX

## YOKEFELLOWS

Plaza View Chapel, California men's Colony.
NAME: Duane Weir     NUMBER: C-02190     RCON: 6104.

J have been assigned to Yokefellow Group # 60 , effective 9/28/87.

You're group meets: MONDAY at 7:00 p.m.  Hosp. Corr., B-106 .
　　　　　　　　　　　　　DAY　　　TIME　　　　PLACE OF MEETING

Moderator: Karl Loresch　　　　　　　　Sponsor: Chuck Deale

THANK YOU:　　　THIS IS YOU TEMPORARY ACTIVITY CARD
　　　　　　　　　(Expires 30 days from effective date).

Bruce Gordon
Bruce Gordon
Yokefellow Coordinator

Dr. Stanley L.H. McGuire,
Protestant Chaplain

---

NAME and NUMBER　WEIR, D.　C-02190/06-87

Interviewed this 43-year-old white native of Edgeston, Wisconsin, married
with two daughters, with an 8th grade education, a mechanic by trade, this
evening in the Men's Clinic, per inmate request.

A "lifer" (187 P.C.), having been told by the Board (this third) that he
"had" to get into some kind of Group", and expressing an interest in
counseling, inmate is referred to this writer's Wednesday 1930 hours psycho-
therapeutic Group.

A.M. Charlens, Ph.D.
Staff Psychologist.

Orig: Central file
CC:　CCI/Psych file
　　　writer/chrono file

DATE 10/20/86   WEIR, C-02190   CRC/Norco AMC/wd

MEDICAL-PSYCHIATRIC-CHRONO

---

## YOKEFELLOWS

Plaza View Chapel, California men's Colony.
NAME: Duane Weir     NUMBER: C-02190     RCON: 6104.

You have been assigned to Yokefellow Group # 30 , effective 10/27/87.

Yor're group meets: Tuesday at 6:30 p.m.  Hosp. Corr., Rm B-108 .
　　　　　　　　　　　　DAY　　　TIME　　　PLACE OF MEETING (or B-106

Moderator: Brian Thomas　　　　　　　Sponsor: Keith Brummel

THANK YOU:　　　THIS IS YOU TEMPORARY ACTIVITY CARD
　　　　　　　　　(Expires 30 days from effective date)

Bruce Gordon
Bruce Gordon
Yokefellow Coordinator

Dr. Stanley L.H. McGuire
Protestant Chaplain

NAME and NUMBER     DUANE W. R     C-02190     LB-330     C1  lor+h             CDC-128-B (Rev. 4/74)

LAUDATORY CHRONO

Since October 1, 1988, Mr. Weir has donated 6-18 hours per week of his own time to work in the North Facility Library as a volunteer.  During this time he has assisted the Chief Legal Clerk in cataloguing a large portion of the law collection.  A process which is both tedious and lengthy.  Mr. Weir's generosity is much appretiated and merits recognition.

cc: Records
    CCI
    Library
    Inmate

M. LeDonne
M. LeDonne, Sen. Librarian
CTF-North Library

Ex "12"

DATE  February 14, 1989

GENERAL CHRONO



INMATE ACTIVITY CARD

No. C-02190     Name  WEIR, DUANE R.

IS AUTHORIZED TO PARTICIPATE IN
THERAPY            QUA
(Name of A
During the hours of    6:00 pm
on the following days or dates:

L. S. Smith
Department Head
LCDC-133    EXPIRES  NOV 15 1987

Ex "12"

AME and NUMBER WEIR, D        C-02190        LB-330      CDC-128-B (Rev. 4/74)

The above mentioned inmate is an active member of the "We Care" program at CTF-North. The "We Care" program is designed to introduce juvenile offenders to the realities of prison life as a deterrent to continued criminal behavior. Members of the "We Care" program, shares what they perceive to be the causative factors that brought them into conflict with their peers, parents, teachers, and finally the criminal justice system, with youths who are starting to experience varying levels of anti-social behavior.

Inmate, WEIR, is a member of the "We Care" program, as of January 27, 1989.

cc:  Inmate C-File
     CC-I
     Inmate
     "We Care" file

        V. JORN
        "We Care" Sponsor
        CTF-North & South

DATE   2/14/89                                      GENERAL CHRONO

NAME and NUMBER  WEIR, D.        C-02190        ND/64-U      CDC-128-B (Rev. 4/74)

Inmate Weir has been an active member of the CTF-North "We Care" program since September, 1988. The "We Care" program has been designed to be a deterrent for criminal behavior in juveniles. Inmate Weir shares with these juveniles what he percieves to be the causative factors that brought these juveniles into conflict with their parents, teachers, peers, and finally the criminal justice system. Inmate Weir is a very conscientious and concerned individual when it comes to these youths. His participation in the "We Care" program has not only given insight to these youths, but has also given Weir positive insight that he will need to participate in the world once released back into society. Inmate Weir has been an asset to the "We Care" program and on behalf of the group and myself, I thank him and encourage continued positive behavior.

ORIG: C-File
  cc: Inmate
      CC-I
      Sponsor
      "We Care" File

        V. JORN
        "We Care" Sponsor
        CTF-North/South Facilities

DATE  June 12, 1990                                 GENERAL CHRONO

Ex "13"



Prison Industry Authority
Inmate Employability Program

## Certificate Nomination Form

Date: July 31, 2002

### Identifying Information

Inmate Name (first, last): Duane Weir     CDC# C-02190

Job Title: Journeyman

D.O.T. Code: 787682058

Specialty (if applicable):

Number of hours (to date) in this job: 14,842.13

Institution: C.T.F.

Enterprise: P.I.A.

Supervisor Name: S. Franklin

### Criteria Checklist*

All of the following criteria must be met before an inmate is nominated to receive a skills certificate:

- ☒ Must have a minimum of 1,500 hours on the same equipment/job.
- ☒ Demonstrates a comprehensive knowledge of machinery/equipment, including set-up, operation, and/or maintenance & repair.
- ☒ Understands the safety requirements of the job and regularly incorporates safety procedures.
- ☒ Consistently meets or exceeds production standards.
- ☒ Understands and achieves quality standards.
- ☒ Consistently demonstrates a good attitude and work habits.

\* For a more detailed explanation of the above criteria, please refer to the attached guidelines which show which jobs are certifiable (by specific enterprise) and present examples of how these criteria are met.

### Supervisor Certification

I hereby certify that the above referenced inmate worker has met all of the minimum requirements (shown above) necessary to be nominated to receive a PIA Skills Certification in his/her job area.

Supervisor's Signature     8/02/02 /(date)
S. Franklin

Superintendent's Signature     8/2/0_ /(date)
E. Robinson

Note: Send a copy of this form to the Inmate Employability Program (IEP) Coordinator in PIA Central Office at 560 E. Natoma Street, Folsom, CA 95630. Keep a copy in your inmate/factory file. Questions? Contact IEP Coordinator at (916) 358-2656.

## COPY

Ex "14"

 california **prison industry authority**

State of California · Department of Corrections

DATE: August 18, 2005

TO: California State Board of Prison Terms

FROM: Prison Industry Authority, CTF-Soledad

SUBJECT: <u>FORMER P.I.A. WORKER VERIFICATION CARD</u>

We would like to inform the Panel that upon receiving an established parole date and being ready to parole, Inmate WEIR will receive a Former P.I.A. Worker Card (yellow in color) indicating the following:

PAROLEE'S NAME: WEIR

TO: PAROLE AGENT

Be advised that this Inmate has a work history with the Prison Industry Authority (P.I.A.) where he learned specific job skills and developed valuable work habits in a business-like production setting.

Please ensure that this parolee is given <u>PRIORITY</u> in any job placement efforts by referring him to one of the following programs which may be available in your jurisdiction:

* Offender Employment Continuum

* Employment Development Dept. (EDD)

### WORK EXPERIENCE EVALUATION FORM

This parolee should have a copy of his most recent P.I.A. Work Experience Evaluation which was given to him upon release. If you need to validate this work information or need an additional copy of this form, please contact the P.I.A. Inmate Employment Program Coordinator at: 1-877-276-7290

CHARLIE D. WALKER
Superintendent I / I.E.P. Coordinator
Prison Industry Authority
CTF-Soledad

*Ex "15"*

Correctional Training Facility  ·  P.O. Box 700  ·  Soledad, CA 93960-0700

NAME and NUMBER    WEIR   C-02190

CDC-128-B (Rev. 4/74)

Inmate WEIR has voluntarily participated in three (3) hours of Video Instruction / Discussion of issues related to successfully re-engaging into society. These instructions review the importance of having a strong support group, developing the ability to follow directions, the importance of substance abuse programs, identifying and controlling antisocial behavior, and changing the way we interact with others in society. With these attributes, Inmate WEIR's chance for a successful re-entry into his community is greater. He is commended for his diligence and participation in our Inmate Employability Program.

_CWalker_
CHARLIE D. WALKER
Superintendent II / I.E.P. Coordinator
Prison Industry Authority
CTF-Soledad

DATE   AUGUST 18, 2005

LAUDATORY CHRONO

GENERAL CHRONO

_See attached_
_two documents_

Ex "16"

/.

NAME and NUMBER    DUANE W.    C-02190    LB-330    CT.  o--h    CDC-128-B (Rev. 4/74

LAUDATORY CHRONO

Since October 1, 1988, Mr. Weir has donated 6-18 hours per week of his own time to work in the North Facility Library as a volunteer. During this time he has assisted the Chief Legal Clerk in cataloguing a large portion of the law collection. A process which is both tedious and lengthy. Mr. Weir's generosity is much appretiated and merits recognition.

cc: Records
    CCI
    Library
    Inmate

M. LeDonne, Sen. Librarian
CTF-North Library

Ex 16

NAME and NUMBER    WEIR, _.    C-02190    ND-64L    POS#4073    CDC-128-B (Rev. 4/74)

## LAUDATORY CHRONO/REQUEST FOR RETENTION

Inmate WEIR, D.  C-02190 has been assigned to North Textile Factory since 12-1-89. Since that time, inmate WEIR has become a skilled leadman (Position #4073-P). Inmate WEIR has shown excellent work habits and has been dedicated to a quality attitude. His work has helped keep the Z-shift's production floor running smoothly. Inmate WEIR is always willing to help where ever he is needed and aways shows respects towards his supervisors. Inmate WEIR is an asset to the North Textile Factory program.

cc: C-file
    CCI
    Supervisor
    Inmate

DATE 8-10-91

S.H.MARTIN  SUPERVISOR
NORTH FABRIC PRODUCTS
CTF-SOLEDAD

(LAUDATORY CHRONO)

GENERAL CHRONO

NAME and NUMBER    WEIR, D.    C-02190    POS# 4071-P    ND-07L    CDC-128-B (Rev. 4/74)

I/M WEIR,D. ,C-02190 POSITION # 4071-P,HAS BEEN ASSIGNED TO THE NORTH TEXTILE ROGRAM SINCE 12-01-89. DURING THIS ASSIGNMENT PERIOD SUBJECT HAS RECEIVED NUMEROUS 90-DAY 101 ORK SUPERVISOR REPORTS WHICH REFLECT ABOVE AVERAGE TO EXCEPTIONAL GRADING.I/M WEIR HAS MAINTAINE POSITIVE ATTITUDE AND A HIGH STANDARD OF WORK ETHICS.SUBJECT HAS PROGRESSED THROUGH ALL PHASES F OPERATIONS WITHIN THE SCOPE OF THIS GARMENT FACTORY.CONSEQUENTLY I/M WEIR WAS ASSIGNED AS A AA" LEADMAN/TRAINER ON 12-01-92.I/M WEIR CARRIES AN ABUNDANCE OF RESPONSIBILITY AND ALWAYS ONDUCTS HIMSELF IN A PROFESSIONAL MANNER WITH SUPERVISORS AND PEERS.I/M WEIR IS CONSIDERED A TOP EVEL EMPLOYEE AND ALWAYS STRIVES FOR QUALITY AND QUANTITY IN PRODUCTION.SUBJECT IS TO BE OMMENDED FOR HIS EFFORT AND POSITIVE INFLUENCES IN HIS ROLE AS A "AA" LEADMAN/TRAINER.

RIG: C-FILE
CC: UNIT COUNSELOR
   FACTORY FILE
   INMATE ✓

(128-B LAUDATORY CHRONO)

G. SOLTANI, SUPERINTENDENT-I
CTF-NORTH FABRIC PRODUCTS

DATE 4-14-94

GENERAL CHRONO

NUMBER    Weir, D.    C-02190    ND-07L    (4071)    CDC-128-B (Rev. 4/74)

Laudatory Information. Inmate Weir has been assigned as the Supervisory Leadman in the North Facility Garment Factory since 1989. His professional approach in achieving factory milestones, coupled with his attentive progression in meeting program training standards has earned him respect and responsibility in the workplace. His interpersonal skills in communicating with staff and inmates has always been honest and professional. His influence to fellow inmates in the factory are positive motivators for both the quality and quantity of our manufactured goods. Inmate Weir's four years of performance evaluations grade him as above average to exceptional. He has always maintained an acquiescent attitude with his supervisors; and should be commended for his positive contributions as a Supervisory Leadman to the Correctional Training Facilities Textiles Program.

Orig: Central File
  cc: CCI
    Inmate/File

DATE February 15, 1995    CTF-North

Ex "17"

P.H. Greenwood
Superintendent I

GENERAL CHRONO

r approximately the last four mon__s, inmate WEIR, C-02190, has been assisting this Officer d other Staff with the cleaning of the food utensils for all three meals. WEIR has done is voluntarily, without pay or personal benifit of any kind. I commend WEIR for his exemplary titude and recommend him for job placement of any kind.

R. Beandreau, C/O
Position #540
Badger Section

IG:  C-File
     Counselor
     Inmate

TE 11-26-83          (LAUDATORY CHRONO)          S.Q.          GENERAL CHRONO

AME and NUMBER    WEIR, D    C-02190    ND-64U    CDC-128-B (Rev. 4/74)

## LAUDATORY CHRONO

Inmate Weir, D. C-02190, ND-64U, was assigned to North Fabric Products on 12-1-89. Since that time Weir has become a skilled operator and has learned several different operations on blue jeans as well as jumpsuits. Weir has always been punctual and has never been a supervisory problem. He gets along well with staff and peers.

Orig: Central File
cc: Unit I P.A./North Dorm
    North Dorm CCI
    Textiles File
    Inmate

G. Soltani
Asst. Superintendent
Fabric Products
5/5/90

ATE   May 5, 1990                                   GENERAL CHRONO

NAME and NUMBER    WEIR, D.    C-02190    ND-64-L    CDC-128-B (Rev. 4/74)

Inmate WEIR, D. C-02190 has been assigned to North Textile Factory since 12-1-89. During such time, inmate WEIR has steadily progressed in this program. His skills encompass, Over-Lock operator, Bar-tack an Single Needle sewing machine. Inmate WEIR demonstrates a positive attitude toward his assignment and fellow inmates and staff, as well as demonstrating good work habits. It is the opinion of this writer that inmate WEIR has used his time wisely while assigned to this program.

DIST: Central File
cc:   Counselor CCI
      Textile File
      Inmate

S.M. MARTINE, Supervisor
North Fabric Textile

Ex 17

DATE:   Jan. 23rd, 1991          Laudatory

GENERAL CHRONO

CDC-128-B (Rev. 4/74)

THANK YOU FOR ALL YOUR HELP AND OVERTIME THAT YOU DID DURING THE RECENT LOCKDOWN SITUATION.
I WAS GREATLY APPRECIATED BY THE STAFF AT NORTH TEXTILES.  YOU WORKED WHERE EVER NEEDED AND
HIS ATTITUDE WAS COMMENDABLE.

K. HOWARD, SUPV.                    K. CARTER, SUPT. II

LAUDATORY CHRONO

C-FILE
SUPERVISOR
STAFF

DATE        11-15-97        CTF-NORTH

GENERAL CHRONO

NAME and NUMBER     Weir, D.        C-02190        LB-330L        CDC-128-B (Rev. 4/74)

This writer has known and observed Inmate Weir, C-02190, LB-330L, for approximately one
(1) year.  In this time, I have observed Inmate Weir to be both considerate and respectful
towards staff and inmates alike.  Inmate Weir is always willing to offer his assistance
in any Hall clean-up/job.  I would like to commend Inmate Weir for his behavior/attitude.

Orig:   C-File
cc:     Unit P.A.
        CC-I
        Inmate

W. B. Garnett  /O
W. B. Garnett, C/O
Lassen 'B' Section Officer
CTF-North Facility

DATE    5-4-89        (LAUDATORY CHRONO)        GENERAL CHRONO

NAME and NUMBER        WEIR, Duane        C-02190        LB-330L        CDC-128-B (Rev. 4/74)

Inmate Weir, C-02190, has been assigned, under my direct supervision, as a Lassen 'B'
Section Porter, P.M. (Pos. #4660N) for approximately seven (7) months.  During that time
Weir's conduct has been exemplary.  He is courteous towards Supervisors and Staff and is a
dependable self-motivated worker.  He gets along well with other workers and is a good team
worker.  This chrono sets to commend Inmate Weir for his conscientious work habits and his
exemplary attitude towards work and staff.

Orig:   Central File
cc:     P.A. Lassen Hall
        CC-I
        Inmate

G. Schlittenhart  C/O
G. Schlittenhart, Correctional Officer
Lassen Hall, 'B' Section, Third Watch
CTF - North Facility

DATE    5/5/89        (LAUDATORY)        CTF-N

Ex "18"

GENERAL CHRONO

NAME and NUMBER   Weir            CO2190            LB-J           CDC-128-B (Rev. 4/74)

nmate Weir, CO2190, has been . lig. i under my direct supervision 2 a Lassen 'B' Section
'o ter for approximately six (6) Months. . During that time I have observed Inmate Weir to
e both considerate and respectful towards staff and inmates.  Weir is a dependable self-
otivated worker and is always willing to offer his assistance.in any Hall clean-up job.  This
hrono is to commend Weir for his conscientious work habits and his exemplary attitude towards
ork and staff.

rig:  C-File
   cc:   Unit P.A.
        CC-I.                                         *E. Kelley*
        Inmate                                         D. Kelley, C/O
                                                       Lassen "B" Section Officer
                                                       Third Watch
                                                       CTF-North Facility

      11-7-89
ATE                        (LAUDATORY CHRONO)

                                                            GENERAL CHRONO

. . . . . . . . . . . . . . . . . . . .

AME and NUMBER   Weir, D.          CO2190        LB-330L        CDC-128-B (Rev. 4/74)

This Writer has known Inmate Weir, CO2190, LB-330 for approximately Sixteen (16) months.
In this time, this Writer, has observed Inmate Weir be both courteous and respectful to
Staff and his fellow inmates.  Inmate Weir has also shown a willingness to preform more
than his normal share of work in maintaining the cleanness of the Hall.  This Writer
wishes to commend Inmate Weir for both his attitude and his good sense of responsibility
in the time that this Writer has known him.

Orig:  C-File
   cc:   Unit P.A.
        CC-I
      (Inmate)                                         W.B. Garnett, C/O
                                                       Lassen 'B' Section, 2nd Watch
                                                       CTF-North Facility

DATE 11-9-89               (LAUDATORY CHRONO)

                                                            GENERAL CHRONO

                                            *Ex "18"*

NUMBER: C02190    NAME: IR    HOUSING: ND 59L    CDC-128-G (Rev. 4/74)

Summary:  ANNUAL        CPP TEXTILES, BPT RX REVIEWED, I/M UNDERSTANDS, DOUBLE
          POST BOARD: IN   CELL/DORM OK, NO MDO CONCERNS PER 3375.2, LEVEL II
          ABSENTIA       HOUSING APPROPRIATE.

        Custody:  MED A           Next BPT:  3/07           Level:  II
          GPL:  GED              Reclass:  3/07             CS:  19
    Work Group:  A1         Privilege Group:  A             RPS:  n/a

WEIR case factors were reviewed in absentia by Unit V U.C.C. today for a Post Board Program Review. The Board of
Prison Terms conducted a Subsequent Parole Consideration Hearing on 3/13/06. The Board made the following decisions
and recommendations: Parole denied 1 year. Stay discipline free. Earn positive chronos. WEIR was
informed that his next anticipated Board of Prison Terms Hearing is 3/07. He was issued a copy of the hearing results at
an interview on 3/16/06. WEIR stated that he understands the contents and disagrees with the Board's findings. WEIR
asked at the interview if there were still the programs, Impact and Project C.H.A.N.G.E. At the present time both
programs have been discontinued. There are limited opportunities for self-help programs. COMMITTEE ACTIONS:
The Committee elects to continue the present program for textiles. COMMENTS: WEIR participated in today's U.C.C.
and acknowledged his understanding of the Committee's actions. Committee's actions are not adverse and the action
was taken at the inmate's written request. WEIR will be notified of the Committee's action. This classification was
held within 15 days of receipt of decision. This UCC acts as WEIR's Annual Classification. He received 2 periods of no
115's and 2 periods of average or better for work.

CHAIRPERSON: C. PLYMESSER, FC(A)              Recorder: J. STUDEBAKER, CCI
Panel:    C. PLYMESSER, FC(A); R. STRICKLIN, CCI(A); J. STUDEBAKER, CCI /jjs.

Dist: C-File
      Inmate

DATE                                                        Inst: CTF-N

Ex "19"

INMATE COPY

# PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
## UPDATE CLINICAL EVALUATION
### JANUARY 2006

## CORRECTIONAL TRAINING FACILITY
### JANUARY 13, 2006

| | |
|---|---|
| NAME: | WEIR, DUANE |
| CDC#: | C-02190 |
| DOB: | 7/10/43 |
| OFFENSE: | PC 187, Murder, First Degree |
| SENTENCE: | 7 years to life |
| DATE OF OFFENSE: | 3/2/78 |
| MEPD: | 3/10/85 |
| EVALUATION DATE: | 1/13/06 |

## I.   IDENTIFYING INFORMATION

Mr. Duane Weir is a second term, 62 year old, Caucasian, male from Los Angeles County.  He is a Christian.  He has remained married to the same woman that he was married to prior to his incarceration.  The marriage is still intact and is supportive.  He has 28 years in custody.

## II.   SOURCES OF INFORMATION

This report is based upon a single 90 minute interview, plus review of the Central file and medical file.

The previous psychological evaluation dated 12-24-99 by M. Carswell PHD. Psychologist at CTF Soledad is still current and valid. The psychosocial assessment done at that time was reviewed with Mr. Weir. It remains current and valid. Therefore, this information will not be repeated in this report.

A current psychological evaluation was requested to focus on the issue of Mr. Weir's alcoholism and whether this is a current problem in his life. The need for forward participation and self-help or therapy was to also be addressed.

*Five pages*

*Ex "20"*

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

## III.  CLINICAL EVALUATION AND MENTAL STATUS

Mr. Weir appears to be his chronological age of 62. Hygiene and grooming was good. He was alert and well oriented.  His thinking was rational chronological, and coherent. His speech was normal, fluent and goal oriented. Eye contact was good. Affect was appropriate. There is no evidence of anxiety or depression. Intellectually he is functioning in the average ranges. His judgment was in tact. His memory is in tact and his self awareness and insight was very good.

Mr. Weir is a second termer. He does have a history of criminal involvement. He is a product of a criminally oriented family in which the parents encouraged the children to steal from stores in order to support the family. He began drinking alcohol as a teenager with his parent's approval. His parents were both alcoholics and were frequently in bars. He began delinquent behavior as a young teenager and continued then a life of crime until the commended offense. Mr. Weir did maintain stable employment prior to the commended offense. He was working as a journeyman mechanic and he specialized in the repair of transmissions. He has continued to work steadily throughout his years of incarceration. He is now a lead man in the PIA textiles program. He has well developed work ethics.

In an effort to address the issues raised by the board of prison terms panel, he was carefully interrogated about his thoughts and feelings about drinking alcohol at this point in his life. He stated that he thoroughly understands the severe harm that alcohol causes. He has developed deep feelings of revulsion against use of alcohol in his own life and in the life of others. He stated that at this point in his life that any indulgence in alcohol will make him physically sick. Alcohol has created irresponsible and irrational behavior in his past. Any use of alcohol would break his wife's heart. It is remarkable that the woman he was married to at the time of the commended offense has stuck with him throughout these 28 years of his incarceration. She is heavily involved in her church activities in West Covina. He spoke at length about how any use of alcohol in his life deeply hurt his wife, his other family members that have stuck with and his grand children. He spoke of how alcohol has caused 28 years of grief and loss to his family members as well as himself. He knew that inmate manufactured alcohol is readily available at this institution. Those who desire to use alcohol can access it easily. He has remained clean and sober throughout the 28 years since the commended offense occurred. This is evidence how his self control, and new found values to remain clean and sober, and his ability to say no to alcohol. He also spoke about his Christian beliefs. He spoke about his allegiance to Christ who is his Savior and Lord. He knows that the use of intoxicating alcohol is forbidden in the Christian Life. His values in this area appear to be thoroughly thought out, deep and

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

genuine. His commitment to remain clean and sober in the future and when he is released on parole appear to be sincere. He does continue to attend alcoholics anonymous as regularly as he can. Since he is housed in a dormitory at North Facility, and because North Facility is frequently locked down due to inmate riots, this program is often canceled. However attends as often as he can. He states that he believes in AA and he enjoys participating in it.

In considering the current diagnostic impression he has been consistently diagnosed in the past as having alcohol dependence in institution remission as well as an anti-social personality disorder. In view on his strongly held values to remain clean and sober and his abstinence from alcohol for 28 years, alcohol dependence cannot be a current diagnosis. Alcohol dependence was a problem for him up until the age of 34. At this point in time it is no longer a problem and it does not warrant a diagnostic label. Therefore, his label will be deleted or noted only as a historical factor. Regarding the presence of anti-social personality disorder, Mr. Weir does have strong feelings of empathy towards other, concern towards others, and there is no evidence of anti-social or criminal thinking or values in his life at this point. He looks back on his out of control childhood and early years with feelings of sorrow, remorse and unhappiness. This man has changed considerably over his years of incarceration. There is no evidence of a personality disorder at this time.

Current diagnostic impression

AXIS I:    No mental disorder.
AXIS II:   No personality disorder
AXIS III:  No physical disorder
AXIS IV:   Life term incarceration
AXIS V     GAF 90

## IV.   REVIEW OF LIFE CRIME

Mr. Weir stated that the victim in the commitment offense was shot during the time that Mr. Weir was walking towards the victim's house from his brother's house. He arrived after the shooting. However, he accepts full responsibility for his involvement in this robbery which led to the death of the victim. He indicated that if he had not become involved in the robbery that the victim would have not been attacked and hurt. In the past he has minimized his involvement in the commended offense. However, at this point I do not see evidence that he is minimizing his involvement. He looks back at his life at that time with unhappiness, recognizing that his values and thinking were irresponsible and

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

antisocial. He stated that he feels terrible about the elderly victim's death due to health problems as a result of the gun shot wound. His feelings of remorse appear to be sincere and genuine.

Mr. Weir's brother, the person that actually shot the victim, continued to lead a life of crime. After doing four years in participation in robbery he was never held responsible for the victim's death. He continued to engage in criminal behavior in Texas and is still in custody as a habitual offender.

## V.  ASSESSMENT OF DANGEROUSNESS

A. In considering a potential for dangerous behavior in the institution, Mr. Weir continues to remain disciplinary free. He has not had any serious disciplinary since 1983. He is holding a responsible position in PIA textiles. His thinking is pro-social and responsible. His potential for violence in the institutional environment is essentially nil.

B. In considering potential for dangerous behavior when released to the community on parole, the Level of Service Inventory-Revised was administered. This is an actuarial measure that assesses criminal history which in his case is serious, substance abuse history which is in his case as serious and his progress in vocational goals, family life, and other factors. His score places him at the 5.1 cumulative frequencies in comparison to other prison inmates. This means if 100 men were released on parole, he would do better than 94 of them. The only negative factor is in his life are the historical ones that all occurred before he was 34 years of age. Based upon his current attitude and maturity, his potential for violence in the community is no greater than the average citizen and in fact be lower than the average citizen based upon his growth and maturity.

C. The most significant risk factor in this significant case would be the use of alcohol. As outlined above in this report, his strong values against use of alcohol and his determination to remain clean and sober no longer makes this a significant risk factor.

## VI.  CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS

There are no mental or emotional problems in this case that would interfere with regular parole planning. He does have excellent vocational skills that will enable him to secure

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FIVE

employment easily in the community. He has a strong work ethic. He has a very supportive wife who has remained faithful and loyal over the years. He plans on attending his wife's church in West Covina. This church has numerous substance abuse programs. He plans on participating in these programs in his effort to remain clean and sober in the future. He spoke at length about his eleven grandchildren that he keeps in close contact With, through communication by phone and letters. His family appears to be very supportive and committed to him and his future success. All of these factors contribute towards a successful adjustment on parole. The prognosis for successful adjustment in the future in the community is excellent.


M. Macomber, PH. D.
Staff Psychologist
Correctional Training Facility, Soledad


B. Zika, PH. D.
Senior Psychologist
Correctional Training Facility, Soledad


MM/lc

D:    1/13/06
T:    1/13/06

NAME AND NUMBER:  WEIR          C-02190   ND 7     NORTH      CDC-128-c

This inmate has completed a course of individual therapy.  During the course
of this therapy, his understanding of his commitment offense was explored, as
well as the factors which led up to it.  Programs completed and other evidence
of his efforts to change were discussed, and he detailed his future plans and
goals.  As a result of this therapy and his increasing self-understanding, his
violence and recidivism potentials should be less than for the average inmate.

Orig: C-file:
Copy: Unit PA/CC                 *Bruce Bakeman, PhD.*
        Inmate                   BRUCE M. BAKEMAN, Ph.D.
        Medical file             Clinical Psychologist
        Chrono file              CTF - Soledad

DATE:  8/1/94    WEIR          C-02190          ch  MEDICAL-PSYCHIATRIC-DENTAL

Ex "21"

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
DECEMBER 1999 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
DECEMBER 17, 1999

This is the 13th psychological evaluation for the Board of
Prison Terms on inmate Duane Weir. This report is the
product of a personal interview, conducted on 12/17/99, as
well as a review of his Central file and unit health record.
This single contact interview was for the express purpose of
preparing this report.

I.    IDENTIFYING INFORMATION:

      Inmate Weir is a 56-year-old, married, Caucasian male.
      His stated religious affiliation is Protestant. No
      unusual physical characteristics were noted and he
      denied the use of any nicknames or aliases.

II.   DEVELOPMENTAL HISTORY:

      Inmate Weir is the third of nine children. He stated
      there were no prenatal or perinatal concerns or birth
      defects. He had no abnormalities of developmental
      milestones. All speech, language and motor development
      occurred unremarkably. He denied any history of
      cruelty to animals or any history of arson. He stated
      he had no significant childhood medical history and
      denied any childhood history of physical or sexual
      abuse as either a perpetrator or a victim.

III.  EDUCATIONAL HISTORY:

      Inmate Weir attended public school through the eighth
      grade. He received his GED in 1982 at San Quentin.
      Recent TABE scores were unavailable.

IV.   FAMILY HISTORY:

      Inmate Weir states that his mother died in 1997 and
      father soon after, also in 1997. He has many siblings.
      He is particularly close to one sister and calls

WEIR        C-02190        CTF-NORTH        12/24/99        gmj

Ex 22 Five pages

WEIR, DUANE
CDC NUMBER: C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

frequently. He characterizes his family relationships as close both historically and currently.

V.     PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION:

Inmate Weir states that he is a heterosexual male. He denied any history of high-risk sexual behavior either prior to or since incarceration.

VI.    MARITAL HISTORY:

Inmate Weir has been married for 27 years. He has two daughters who are now 27 and 26. He also has five grandchildren. He states that he phones every week and that he and his family are very close.

VII.   MILITARY HISTORY:

Inmate Weir denied any history of military service.

VIII.  EMPLOYMENT AND INCOME HISTORY:

Prior to his incarceration, inmate Weir was employed as an auto mechanic. Since incarceration, he has completed vocational auto mechanics in 1986. He has worked in textiles for the last ten years and has good chronos.

IX.    SUBSTANCE ABUSE HISTORY:

Inmate Weir states that he started using alcohol approximately in his early 20s. He was under the influence of his commitment offense. He has attended Alcoholics Anonymous for approximately 15 years. He has also completed a Life Skills program and one on one therapy with Dr. Bakeman. He also completed self-help groups through CMC.

X.     PSYCHIATRIC AND MEDICAL HISTORY:

Inmate Weir has no prior diagnoses nor serious illnesses. He has a current growth removed from his nose area and a biopsy is being performed this month (results unknown). He has had no medical or psychiatric hospitalizations and has had no serious accidents or head injuries. He has no history of

WEIR        C-02190        CTF-NORTH        12/24/99        gmj

WEIR, DUANE
CDC NUMBER:  C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

suicidal ideation or suicide attempts.  He has had no seizures or any other neurological condition.  He was had no history of disabilities or significant impairments.  He is on no medication at this time.

XI.  <u>PLANS IF GRANTED RELEASE</u>:

Should inmate Weir be given a parole date, he would parole to Los Angeles County and live with his wife. He will more than likely find employment as an auto mechanic and believes he will do fine on parole.

CLINICAL ASSESSMENT

XII.  <u>CURRENT MENTAL STATUS/TREATMENT NEEDS</u>:

A.  Inmate Weir is a 56-year-old, Caucasian male.  He was appropriately dressed and groomed.  He was cooperative, calm and alert during the interview.  His speech was clear and readily understandable.  His affect was normal.  His flow of thought was normal with no hallucinations nor delusions noted.  He was fully oriented and his intellectual functioning was estimated to be in the average range.  His attention and concentration were adequate for purposes of this examination.  There was no evidence of a mood or thought disorder.  His insight and judgment appeared to be intact.  He showed good insight into his commitment offense.

B.  <u>CURRENT DIAGNOSTIC IMPRESSIONS</u>:

AXIS I:     Alcohol Dependence, in institutional
            remission.
AXIS II:    Personality Disorder, NOS.
AXIS III:   No Contributory Physical Disorder.
AXIS IV:    Incarceration.
AXIS V:     GAF = 75.

This inmate's ability to maintain his present gains in the community after release is positive.

XIII. <u>REVIEW OF LIFE CRIME</u>:

Inmate Weir continues to assert that his brother shot the victim, who died months later, and there is now

WEIR, DUANE
CDC NUMBER:  C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

some question and controversy concerning the cause of
the victim's death.  Investigations have been held
recently.  The inmate does state, however, that he is
guilty of the robbery.  He takes responsibility for the
robbery and states that he is very sad that the victim
was shot.

XIV.  ASSESSMENT OF DANGEROUSNESS:

A.  This inmate has not received any CDC-115 violations
    since 1983.  Therefore, it is felt that he would
    pose a less than average risk for violence when
    compared to this Level II inmate population.

B.  If released to the community, his violence
    potential is estimated to be no higher than the
    average citizen in the community.

C.  Clearly, the most significant risk factor as a
    precursor to violence for this inmate would be a
    return to the use of alcohol.

XV.  CLINICIAN OBSERVATIONS, COMMENTS AND RECOMMENDATIONS:

A.  This inmate is responsible for his behavior.  He
    has the ability to abide by institutional standards
    and has been disciplinary-free for 17 years.

B.  This inmate has no mental health disorder which
    would necessitate treatment either during his
    incarceration period or after parole.

C.  Since this inmate admits having an alcohol abuse
    problem, he should attend Alcoholics Anonymous and
    have periodic testing as a mandatory part of
    parole.

M. Carswell Phd

M. CARSWELL, PH.D.
Staff Psychologist
Correctional Training Facility, Soledad


WEIR        C-02190        CTF-NORTH        12/24/99        gmj

WEIR, DUANE
CDC NUMBER:  C-02190
BPT PSYCHOLOGICAL EVALUATION
PAGE FIVE


STEVEN J. TERRINI, Ph.D.
Senior Supervising Psychologist
Correctional Training Facility, Soledad

MC/gmj

D:  12/17/99
T:  12/24/99

BOARD OF PRISON TERMS                                                STATE OF CALIFORNIA
## BPT 1073 - NOTICE AND REQUEST FOR REASONABLE ACCOMMODATION

### PRE-INTERVIEW / FILE REVIEW (STAFF ONLY)

Documents verifying/identifying disability:  (Check all verifying documents and attach copies to 1073.)

☐ CDC 128C ☐ CDC 128C-1 ☐ CDC 128C-2 ☐ CDC 611 ☐ CDC 1845 ☐ CDC 1515 ☐ Current BPT 1073

☐ CDC 128B (TABE 4.0 or lower) Score/GPL _8:3_ ☐ Other documents_____ ☐ No verifying documents in file

☐ Accommodation is required for effective communication and/or access (enter type, i.e., sign language interpreter, staff assistance, assistive listening device, alternate accessible location, etc.):

### PRISONER/PAROLEE'S SELF-CERTIFICATION

The Americans with Disabilities Act (ADA) is a law to help people with disabilities.  Disabilities are problems that make it harder for some people to see, hear, breathe, talk, walk, learn, think, work, or take care of themselves than it is for others.  Nobody can be kept out of public places or activities because of a disability.  If you have a disability, you have the right to ask for help to get ready for your BPT hearing, get to the hearing, talk, read forms and papers, and understand the hearing process.  BPT will look at what you ask for to make sure that you have a disability, that is covered by the ADA, and that you have asked for the right kind of help.  If you do not get help, or if you don't think you got the kind of help you need, ask for a BPT 1074 Grievance Form.  You can also get help to fill it out.

☐ I **do not** have a disability.  (Sign and date at the "X" below.)

☒ I **do** have a disability.

**My disability is:**

☐ Seeing          ☐ Talking          ☐ Reading ☐ Hearing          ☐ Walking

☐ Understanding/Learning     ☐ Mental Problems     ☒ Other _Alcohol- NoT To be use in Any hearing or decisions._

**I need help for my parole hearing:** (Check all boxes that apply to you)

☐ Reading          ☐ Understanding          ☐ Talking

☐ Hearing Device (type)_____     ☐ Wheelchair or_____

☐ Visual Aids/optical device (type)_____     ☐ Walking_____

☐ Sign language Interpreter (type)_____     ☐ Other_____

☐ Attorney          ☐ I do not need help for my parole hearing.

X _Dianna R. Weir_          C-02190          X _12-7-04_
Prisoner/Parolee Signature          CDC #          Date Signed

### INITIAL SERVICE OF RIGHTS (STAFF ONLY)

I have informed prisoner/parolee of the above information, and any relevant charges, and have determined that he/she:     ☒ Appears to understand.     ☐ Appears to have difficulty understanding.

☐ Non—English Speaking (indicate language): _____

☐ EFFECTIVE COMMUNICATION METHOD USED: (Sign language interpreter, staff assistance, assistive device, alternate accessible location, etc.): _____

Comments:_____

_J. Studebaker CCI_          _[signature]_          _12-7-04_
Staff Name and Title (please print)          Staff Signature          Date

### BPT REVIEW INDICATING NO CHANGES

| TYPE OF HEARING | PRINT NAME AND WRITE INITIALS | TITLE | INSTITUTION/REGION | DATE |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  | _EX "24"_ |  |  |
|  |  |  |  |  |

| NAME | CDC # | TYPE OF HEARING | DATE OF HEARING | LOCATION |
|---|---|---|---|---|
| _Weir_ | _C-02190_ | _SUB_ | _4/15_ | _CTF_ |

BPT 1073 (REV. 01/02)

*Belinda Hendrick* **MULTI-PURPOSE FORM**

TO: _Strughstraham_                                                DATE: *April 6th, 2006*
         (Name)                          (Title)

```
┌─────────────────────┐
│     RECEIVED         │
│                      │
│    APR 19 2006       │
│                      │
│      CBM II          │
└─────────────────────┘
```

- [ ] MEDICAL CONCERN
- [ ] DENTAL CONCERN
- [ ] VISITING CONCERN
- [ ] REQUEST FOR INTERVIEW
- [ ] PACKAGE ROOM
- [ ] REQUEST FOR I.D. CARD
- [ ] REQUEST TO REVIEW CENTRAL FILE
- [ ] MAIL ROOM: Request for metered envelopes (No Funds)
- [ ] E.P.R.D.: You should be within six (6) months of release date to inquire

- [ ] TRUST ACCOUNT BALANCE  $ _____
- [ ] TRUST ACCOUNT WITHDRAWAL
- [ ] REQUEST FOR ROOM CHANGE
- [ ] REQUEST FOR UNIT CHANGE
- [x] FAMILY HOUSING UNIT VISIT INTERVIEW
- [ ] REQUEST FOR CHAPLAIN INTERVIEW
- [x] MEDICALLY CLEARED FOR CULINARY REQUEST

REASON FOR REQUEST (Be specific: Explain your problem): *I Need information concerning*
*AA. - It has been long time without AA program - Need to know*
*when it may start again. Need specific info on this issue.*

DATE: _4-19-06_          STAFF RESPONSE: *We are working on putting together a*
*New and improved program. Please be patient. B. Hedrick.*

INMATE NAME: _Allen_              INMATE NUMBER: _C-02190_     CELL: _N. 18.159L_
ASSIGNMENT: _____        HOURS: _____    RDOs: _____

CTF 304 (Rev. 4/97)

*Ex "25"*

David J. Spowart
Attorney at Law
71 Via Encina
Monterey CA 93940

~~March 16 2006~~

Dear Mr. Weir;

    Just a short note to tell you what happened after your hearing on Tuesday, March 16th. As I was starting to leave the building both commissioners stopped me and tried to explain why they had not given you a date. Basically ~~the attorneys really wanted to give a date but believed that without any current AA's it~~ would be rejected upon review in Sacramento and /or by the Governor. The deputy commissioner especially claimed he wanted to vote for a date. Well, in my opinion, they should have voted for a date and let the review authorities make their own decisions. At least my objection certainly got their attention.

    Enclosed is the letter from your wife postmarked the 11th of March. There was just no way I could have gotten it on time. It arrived in my mail on the 16th.

Dave Spowart

Ex "26"

## BPT 1073 - NOTICE AND ⟪REQUEST FOR REASONABLE ⟫ ACCOMMODATION

**PRE-INTERVIEW FILE REVIEW (STAFF ONLY)**

Documents verifying/identifying disability: (Check all verifying documents and attach copies to 1073.)

☐ CDC 128C  ☐ CDC 128C-1  ☐ CDC 128C-2  ☐ CDC 611  ☐ CDC 1845  ☐ CDC 1515  ☐ Current BPT 1073

☐ CDC 128B (TABE 4.0 or lower) Score/GPL _8.3_  ☐ Other documents _____  ☒ No verifying documents in file

☐ Accommodation is required for effective communication and/or access (enter type, i.e., sign language interpreter, staff assistance, assistive listening device, alternate accessible location, etc.): _____

### I. PRISONER/PAROLEE RIGHTS & SELF IDENTIFICATION

The Americans with Disabilities Act (ADA) is a law to help people with disabilities. Disabilities are problems that make it harder for some people to see, hear, breathe, talk, walk, learn, think, work, or take care of themselves than it is for others. Nobody can be kept out of public places or activities because of a disability. If you have a disability, you have the right to ask for help to get ready for your BPT hearing, get to the hearing, talk, read forms and papers, and understand the hearing process. BPT will look at what you ask for to make sure that you have a disability, that is covered by the ADA, and that you have asked for the right kind of help. If you do not get help, or if you don't think you got the kind of help you need, ask for a BPT 1074 Grievance Form. You can also get help to fill it out.

☐ I **do not** have a disability. (Sign and date at the "X" below.)

☒ I **do** have a disability.

**My disability is:**

☐ Seeing   ☐ Talking   ☐ Reading   ☐ Hearing   ☐ Walking

☐ Understanding/Learning   ☐ Mental Problems   ☒ Other _Alcohol_

**I need help for my parole hearing:** (Check all boxes that apply to you)   *Not to be used in any hearings or decisions.*

☐ Reading   ☐ Understanding   ☐ Talking

☐ Hearing Device (type)_____   ☐ Wheelchair or _____

☐ Visual Aids/optical device (type)_____   ☐ Walking

☐ Sign language Interpreter (type)_____   ☐ Other _____

☐ Attorney   ☐ I do not need help for my parole hearing.

X _Alvina P. Weir_  _C-02190_  X _2-24-03_
Prisoner/Parolee Signature   CDC #   Date Signed

### II. INITIAL SERVICE OF RIGHTS (STAFF ONLY)

I have informed prisoner/parolee of the above information, and any relevant charges, and have determined that he/she:   ☒ Appears to understand.   ☐ Appears to have difficulty understanding.

☐ Non—English Speaking (indicate language): _____

☐ EFFECTIVE COMMUNICATION METHOD USED: (Sign language interpreter, staff assistance, assistive device, alternate accessible location, etc.): _____

Comments: _____

_J. Studebaker CF_  _(signature)_  _2-24-03_
Staff Name and Title (please print)   Staff Signature   Date

### III. REVIEW INDICATING NO CHANGES

| TYPE OF HEARING | PRINT NAME AND WRITE INITIALS | TITLE | INSTITUTION/REGION | DATE |
|---|---|---|---|---|
|  | _F. Bd._ | _C_ |  |  |
|  |  |  |  |  |

NAME   CDC #   TYPE OF HEARING   DATE OF HEARING   LOCATION
_Weir, D_   _C02190_   _Sub_   _4/2/03_   _CTF_

BPT 1073 (REV. 01/02)   Distribution: White-Central File, Yellow-BPT ADACU, Pink-Inmate, Goldenrod-Field File
_4/6/04_

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others:

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or the prisoner has given indications that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress had built over a long period of time.

(5) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(6) Age. The prisoner's present age reduces the probability of recidivism.

(7) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(8) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Section 3041, Penal Code.

HISTORY

1. Amendment of subsection (c) filed 6–28–79; effective thirtieth day thereafter (Register 79, No. 26).

2. Amendment of subsection (d)(7) filed 5–1–80; effective thirtieth day thereafter (Register 80, No. 18).

§ 2282. Base Term.

(a) General. The panel shall set a base term for each life prisoner who is found suitable for parole. The base term shall be established solely on the gravity of the base offense, taking into account all of the circumstances of that crime. The base offense is the most serious of all life offenses for which the prisoner has been committed to prison.

The base term shall be established by utilizing the appropriate matrix of base terms provided in this section for the base offense of which the prisoner was convicted. The panel shall determine the category most closely related to the circumstances of the crime. The panel shall impose the middle base term reflected in the matrix unless the panel finds circumstances in aggravation or mitigation.

If the panel finds circumstances in aggravation or in mitigation as provided in § 2283 or 2284, the panel may impose the upper or lower base term provided in the matrix, stating the specific reason for imposing such a term. A base term other than the upper, middle or lower base term provided in the matrix may be imposed by the panel if justified by the particular facts of the individual case.

(b) Matrix of Base Terms for First Degree Murder.

CIRCUMSTANCES

| 2282.(b)<br>FIRST DEGREE MURDER<br>Penal Code § 189 (15 years and does not include post conviction credit as provided in § 2290) | A. Indirect<br>Victim died of causes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force; e.g., shock producing heart attack a crime partner actually did the killing. | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from the contributing factors from the victim, e.g., victim initiated struggle or had goaded the prisoner. This does not include victims acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g., beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or actions calculated to induce terror in the victim. | D. Torture<br>Victim was subjected to the prolonged infliction of physical pain through the use of nondeadly force prior to act resulting in death. |
|---|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred; e.g., crime partner, drug dealer, etc. | 8-10-12 | 10-12-14 | 11-13-15 | 12-15-17 |
| II. Prior Relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc.) which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense, see Category IV. | 10-12-14 | 12-14-16 | 13-15-17 | 15-17-19 |
| III. No Prior Relationship<br>Victim had little or no personal relationship with prisoner, or motivation for act resulting in death was related to the accomplishment of another crime; e.g., death of victim during robbery, rape, or other felony. | 11-13-15 | 13-15-17 | 14-16-18 | 16-18-20 |
| IV. Threat to Public Order or Murder for Hire<br>The act resulting in the victim's death constituted a threat to the public order include the murder of a police officer, prison guard, public official, fellow patient or prisoner, any killing within an institution, or any killing where the prisoner hired and/or paid another person to commit the offense. | 13-15-17 | 15-17-19 | 16-18-20 | 16-20-22 |

SUGGESTED BASE TERM